**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

LEVITON MANUFACTURING, INC.    )
                                    )
             (Plaintiff)        )
                                    )
          v.             )        01CV3855 AMD
                                    )
UNIVERSAL SECURITY INSTRUMENTS, INC.)
                                    )
     and                  )
                                    )
USI ELECTRIC, INC.          )
                                    )
            (Defendants)    )

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON
INVALIDITY OF U.S. PATENT 4,595,894 FOR DOUBLE PATENTING**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants, Universal Security Instruments, Inc. and USI Electric, Inc. (hereafter collectively referred to as "USI"), through their attorneys, respectfully move for summary judgment on the issue of invalidity of the U.S. Patent 4,595,894 for double patenting in view of U.S. Patent 4,386,338 and/or U.S. Patent No. 4,518,945

USI submits that no genuine issue of material fact exists and summary judgment is proper. The issues raised herein are purely legal issues on which there exists binding precedent directing the outcome of the present motion. Accordingly, USI respectfully requests that its motion be granted and U.S. Patent No. 4,595,894 be held invalid.

A proposed Order is attached hereto for the convenience of the Court.

Respectfully submitted,

UNIVERSAL SECURITY INSTRUMENTS INC.
USI ELECTRIC, INC.


By: _____

Maurice U. Cahn, Esq.
Frederick N. Samuels, Esq.
William E. Bradley, Esq.
CAHN & SAMUELS, LLP
2000 P Street, NW, Suite 200
Washington, D.C.  20036
(202) 331-8777 (Phone)
(202) 331-3838 (FAX)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

LEVITON MANUFACTURING, INC.⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀(Plaintiff)⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀01CV3855 AMD
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
UNIVERSAL SECURITY INSTRUMENTS, INC.)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀and⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
USI ELECTRIC, INC.⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀(Defendants)⠀⠀⠀)

## ORDER

⠀⠀⠀⠀⠀Upon consideration of Defendants' Motion for Summary Judgment on the

Issue of Invalidity of U.S. Patent No. 4,595,894 for double patenting and

Plaintiff's Opposition thereto and the entire record herein, good cause being

shown, it is hereby ORDERED and ADJUDGED on this _____ day of

_____, 2003 that Defendants' Motion is GRANTED.


⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀_____
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀United States District Court Judge

3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

LEVITON MANUFACTURING, INC.                    )
                                               )
                  (Plaintiff)                  )
                                               )
         v.                                    )        01CV3855 AMD
                                               )
UNIVERSAL SECURITY INSTRUMENTS, INC.)
                                               )
         and                                   )
                                               )
USI ELECTRIC, INC.                             )
                                               )
                  (Defendants)                 )


## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON
## INVALIDITY OF U.S. PATENT 4,595,894 FOR DOUBLE PATENTING

## Table of Contents

SUMMARY OF ARGUMENT ................................................................................. 1

BACKGROUND .............................................................................................. 2

ARGUMENT ................................................................................................. 5

    I.    DOUBLE PATENTING ......................................................................... 5

      A.    Standard for Double Patenting ................................................... 5

      B.    Obviousness-Type Double Patenting ........................................ 6

        1.    Two-Step Test ................................................................ 6

        2.    Genus-Species Relationships......................................... 7

    II.    STEP ONE - CLAIM CONSTRUCTION...................................... 8

      A.    Cannons of Construction........................................................ 8

        1.    General Considerations................................................. 8

        2.    Incorporation by Reference ........................................... 9

        3.    Means-Plus-Function Claims......................................... 10

      B.    The Doyle Patents................................................................. 12

        1.    The '338 Patent ............................................................ 12

        2.    The '945 Patent ............................................................ 13

        3.    The '894 Patent ............................................................ 14

    III.    STEP TWO - CLAIM COMPARISON................................................... 16

      A.    The '894 Patent's "Movable Means" Limitation is Generic to the '338
           and '945 Patents' "Movable Cam Means" Limitation................................. 16

      B.    The '894 Patent is Invalid ................................................... 19

        1.    The '894 Patent is Generic to the '338 and '945 Patents................. 19

        2.    The Dependent Claims are Not Patentably Distinct.......................... 20

CONCLUSION ............................................................................................ 20

## Table of Authorities

**Cases**

*Chiuminatta Concrete Concepts v. Cardinal Indus.,* 145 F.3d 1303, 1307-08
(Fed. Cir. 1998)............................................................................................ 11

*Eli Lilly v. Barr,* 251 F.3d 955 (Fed. Cir. 2001)........................................ 6, 7, 8, 21

*In re Goodman,* 11 F.3d 1046, 1052-53 (Fed. Cir. 1993.................................. 7, 8

*In re Van Ornum,* 686 F.2d 937 (CCPA 1982)...................................................... 6

*Ishida v. Taylor,* 221 F.3d 1310, 1316 (Fed. Cir. 2000 ........................... 13, 16, 17

Order No. 9 (Investigation No. 337-TA-478) (issued February 21, 2003)........... 16

*James v. Campbell,* 104 U.S. 356, 370 (1881 ............................................. 19, 21

*Lockheed Martin v. Space Systems/Loral Inc.,* 249 F.3d 5 (Fed. Cir. 2001)....... 12

*Miller v. Eagle Manuf.,* 151 U.S. 186, 198 (1967 ............................................... 17

Order No. 11 (Investigation No. 337-TA-478)(issued March 17, 2003) .......... 6, 16

*Rogers v. Desa Int'l,* 61 USPQ.2d 1346, 1348 (E.D. Mich. 2001) ......................... 9

*Vivid Technologies v. AmericanScience and Eng'g,* 200 F.3d 795, 803 (Fed. Cir.
1999).................................................................................................................. 9

*York Prods. v. Central Tractor Farm & Family Ctr,* 99 F.3d 1568, 1574 (Fed. Cir.
1996................................................................................................................. 12

**Statutes**

35 U.S.C. 101 ...................................................................................................... 6

35 U.S.C. 112,.................................................................. 10, 11, 12, 18, 20, 21

**Other Authorities**

Manual of Patent Examining Procedures (M.P.E.P.) 201.07 ................................ 3

MPEP 201.8 201.07 ........................................................................................... 5

MPEP 608.01(p)......................................................................................... 10, 11

MPEP 804 .......................................................................................................... 4

## Index of Exhibits

Exhibit A                    U.S. Patent No. 4,386,338

Exhibit B                    U.S. Patent No. 4,518,945

Exhibit C                    M.P.E.P. 201.07

Exhibit D                    M.P.E.P. 804

Exhibit E                    U.S. Patent No. 4,595,894

Exhibit F                    M.P.E.P. 201.08

Exhibit G                    ITC Order No. 11

Exhibit H                    M.P.E.P. 608.01(p)

Exhibit I                    Claim Chart - Claim 2 of '388 patent

Exhibit J                    Claim Chart - Claim 1 of '945 patent

Exhibit K                    Claim Chart - Claim 1 of '894 patent

Exhibit L                    ITC Motion for Summary Determination

Exhibit M                    ITC Order No. 9

Exhibit N                    Claim Comparison of Claim 1 of '894 patent, Claim 2
                             of '338 patent, and Claim 1 of '945 patent

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

LEVITON MANUFACTURING, INC.  )
           )
   (Plaintiff)      )
           )
   v.         )   01CV3855 AMD
           )
UNIVERSAL SECURITY INSTRUMENTS, INC.)
           )
USI ELECTRIC, INC.     )
           )
   (Defendants)    )

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT ON INVALIDITY
OF U.S. PATENT 4,595,894 FOR DOUBLE PATENTING**

Defendants, Universal Security Instruments, Inc. and USI Electric, Inc. (hereafter collectively referred to as "USI"), through their attorneys, submit this opening memorandum in support of their motion for summary judgment of invalidity of U.S. Patent 4,595,894 for double patenting.

USI submits that the issues raised herein are purely legal issues on which there exists binding precedent directing the outcome of the present motion. Accordingly, USI submits that no additional fact discovery is warranted, no genuine issue of material fact exists, and the present motion is ripe for adjudication.

**SUMMARY OF ARGUMENT**

Double patenting is a judicially created doctrine for invalidating a later issued patent which is broader or generic to an earlier, commonly owned patent.

1

The doctrine was created to prevent a patentee from unlawfully extending the patent term of an earlier patent through a later patent which covers the same or obvious subject matter.

In the present case, there were two earlier patents (one of which was terminally disclaimed) which disclosed and claimed a first embodiment of the invention. A later patent, the patent-in-suit, was then filed disclosing a "second" preferred embodiment of the invention. The patent-in-suit also incorporated by reference one of the earlier patents disclosing and claiming the first embodiment of the invention. Thus, the patent-in-suit disclosed both embodiments of the invention.

The claims of the patent-in-suit were drafted in broad "means-plus-function" format. In construing the claims, both embodiments of the invention must be considered in discerning the scope of the claims. When properly construed, the claims of the patent-in-suit broadly cover both embodiments. Accordingly, there is no question that the patent-in-suit is generic to (or broader than) the earlier patents claiming only the first embodiment of the invention. In short, the claims of the patent-in-suit cover both embodiments of the invention and therefore are unlawfully extending the patent monopoly over the first embodiment disclosed and claimed in the earlier patents. Accordingly, the patent-in-suit is invalid for double patenting.

## BACKGROUND

United States Patent 4,386,338 ("the '338 patent"), filed for on November 17, 1980, issued on May 31, 1983 with four claims directed to a switching apparatus for selectively completing or interrupting an electrical connection

2

between input and output conductors. A copy of the '338 patent is attached hereto as Exhibit A. The patent names Richard C. Doyle and Lester Rivera as inventors and Leviton Manufacturing Company as the assignee. Under the Patent Statute in effect at this time, the '338 patent expired seventeen years from its issue date, or May 31, 2000.

United States Patent 4,518,945 ("the '945 patent") issued on May 21, 1985 from an application filed on September 30, 1982. A copy of the '945 patent is attached hereto as Exhibit B. The patent names Richard C. Doyle and Lester Rivera as inventors and Leviton Manufacturing Company as the assignee. Under the Patent Statute, the patent normally would have been set to expire on May 21, 2002. However, the '945 patent was a "continuation" of the '338 patent. A continuation is a later patent application that is filed during the pendency of a prior application and contains the same specification (written description and drawings). *See* Manual of Patent Examining Procedures (M.P.E.P.) 201.07. (Attached hereto as Exhibit C).

In addition to a common disclosure, the '945 patent also has claims directed to a switching apparatus for selectively completing or interrupting an electrical connection between input and output conductors. The '945 patent's claims, however, contain more limitations for the movable cam means described in the common specification of the '338 and '945 patents.

If a continuation application is properly filed, the applicant's prior application cannot be used as a prior art reference in rejecting the later applications' claims except for one instance – in applying the doctrine of double

patenting. *See* MPEP 804. (Attached hereto as Exhibit D). Double patenting involves the situation where a later filed patent application (having common inventors and owners as a previously filed application) fails to claim a patentably distinct invention from a previously filed application. *See id.* In such circumstances, the only remedy is for the applicant to file what is known as a "terminal disclaimer." *See id.* A terminal disclaimer is an official surrender by an applicant of any portion of the later patent's seventeen year term that would extend beyond the expiration date of the prior patent. The '945 patent included a terminal disclaimer forfeiting the terminal portion of the term extending beyond the May 31, 2000 expiration date of the '338 patent. Accordingly, the '945 patent is expired.

Years after filing for the '338 and '945 patents, Leviton filed the application leading to United States Patent 4,595,894 ("the '894 patent" or "the patent-in-suit"), which issued on June 17, 1986 with four claims directed to a switching apparatus for selectively interrupting an electrical connection between input and output conductors. A copy of the '894 patent is attached hereto as Exhibit E. The patent also names Richard C. Doyle and Lester Rivera as inventors and Leviton Manufacturing Company as the assignee. Under the Patent Statute in effect at the time, the patent (without a terminal disclaimer) is presumed to expire on June 17, 2003.

The '894 patent proclaims itself to be a "continuation-in-part" of the '945 patent.[1] A continuation-in-part application, unlike a continuation, includes additional subject matter in the written description. *See* MPEP 201.8 201.07.

---

[1] The patent does not identify or claim priority to the '338 patent.

(Attached hereto as Exhibit F). The '894 patent includes a description of a previously undisclosed "second" preferred embodiment of the Doyle and Rivera invention. The "first" preferred embodiment is also included in the '894 patent's specification due to the incorporation-by-reference of the '945 patent:

> The present application is a continuation-in-part of applicants' both pending United States patent application Ser. Nos. 431,982 now **U.S. Pat. No. 4,518,945**, filed Sept. 30, 1982 and entitled "REMOTE CONTROL SYSTEM" and Ser. No. 558,262 filed Dec. 5, 1983 and entitled SSHOCK HAZARD PROTECTION SYSTEM', **and incorporates by reference as if fully set forth herein the entire contents and subject matter thereof** and of any and all of their respective "parent" patent applications to which they are co-pending.

'894 Patent, col. 1, ln 5-16 (emphasis added).

Notably, no terminal disclaimer was filed in the '894 patent. Accordingly, if the claims are not patentably distinct over the claims of both the '338 and '945 patents, the patent is invalid for double patenting.

Recently, the U.S. International Trade Commission ("ITC") found that the claims of the '894 patent were not patentably distinct over the claims of the '338 patent. *See* Order No. 11 at 16 (Investigation No. 337-TA-478)(issued March 17, 2003)(Attached hereto as Exhibit G). Indeed, the ITC invalidated the '894 patent on the basis of anticipation by the '338 patent. *See id.* at 23

## ARGUMENT

### I. DOUBLE PATENTING

#### A. Standard for Double Patenting

Through a statutorily prescribed term, Congress limits the duration of a patentee's right to exclude others from practicing a claimed invention. *Eli Lilly v. Barr,* 251 F.3d 955, 967 (Fed. Cir. 2001). An attempt to extend the patent right

5

beyond its statutory limits through the filing of a second patent application with claims which are not patentably distinct from the prior patent is known as "double patenting." *See id.; see also In re Van Ornum,* 686 F.2d 937, 943-44 (CCPA 1982)("The fundamental reason for the rule [against 'double patenting'] is to prevent unjustified timewise extension of the right to exclude granted by a patent no matter how the extension is brought about.").

A double patenting determination involves two inquiries.  The first asks if the claimed inventions are identical in scope.  If so, the later claim is invalid for so called "statutory-type" double patenting because, by statute (35 U.S.C. 101), an inventor is limited to a single patent for an invention.  *In re Goodman,* 11 F.3d 1046, 1052-53 (Fed. Cir. 1993)

The second inquiry involves the situation where one claimed invention has a broader scope than the other.  *Id.*  In this situation, a determination must be made as to whether the later claim is directed to an obvious variation of the prior patent.  *Id* If so, and the patentee had control over the order[2] in which the claims issued, the second application's claims are rejected on the grounds of "obviousness-type" double patenting.  *Id*

### B.    Obviousness-Type Double Patenting

#### 1.    <u>Two-Step Test</u>

The judicially-created doctrine of "obviousness-type" double patenting cements the legislative limitation on patent term by prohibiting a party from obtaining an extension of exclusive right through claims in a later patent that, while different, are not patentably distinct from claims in an earlier patent. *Eli*

---

[2] There is no dispute that the '894 patent was filed after the '945 and '338 patents.

6

*Lilly v. Barr,* 251 F.3d 955, 967 (Fed. Cir. 2001). An obviousness-type double patenting analysis entails two steps – claim construction and claim comparison. *See id.* In the first step, the court construes the claims in the earlier patent and the later patent, and then overlays the *later* claims on the earlier claims to determine whether the later claims encompasses subject matter previously claimed. *Id.* In the second step, the court evaluates whether the differences in subject matter between the later claims and the earlier claims is such that the later claims are patentably distinct over the earlier claims. *Id.*

### 2.    Genus-Species Relationships

Importantly for the present motion, "[a] patentable distinction does not lie where a later claim is anticipated by an earlier one." *Eli Lilly v. Barr,* 251 F.3d 955, 971 (Fed. Cir. 2001).[3] Claims in a *later* patent which are generic to, or otherwise broader dominating claims of, the claims in the *earlier* patent are invalid for double patenting. *E.g., Eli Lilly v. Barr,* 251 F.3d 955, 971 (Fed. Cir. 2001)(invalidating later patent on summary judgment for double patenting in view of earlier patent because, *inter alia*, "case law firmly establishes that a later genus claim limitation is anticipated by, and therefore not patentably distinct from, an earlier species claim"); *In re Goodman*, 11 F.3d 1046, 1053 (Fed. Cir. 1993)(invalidating later patent generic to earlier patent because "the generic invention is 'anticipated' by the species of the patented invention" and precedent held that "without a terminal disclaimer, the species claims preclude[d] issuance of the generic application.").

---

[3] The ITC found it "clear that the claims of the '338 patent anticipate, and therefore render invalid, the claims of the later '894 patent." *See* Exh. G at 16.

7

To illustrate why a later genus claim is invalid for obviousness-type double patenting over an earlier species claim, consider the following example. An inventor invents and claims a "zipper." Under the Patent Statute, the inventor is entitled to prevent anyone from making, using or selling zippers for a period of seventeen years (now the period is 20 years from the patent's filing date). Assume two years after getting a patent on the zipper the inventor gets a second patent claiming a "fastening mechanism." Clearly, a zipper is a special kind of fastening mechanism. Thus, allowing the inventor to prevent others from making, using or selling any fastening mechanism for a period of seventeen years (now 20 years) means that the inventor is effectively extending the monopoly over the zipper for another two years. The judicially created doctrine of obviousness-type double patenting was created to prevent this unlawful timewise extension over inventions.

Applying the two step process for evaluating obviousness-type double patenting to the present controversy clearly establishes that the claims of the '894 patent are generic (or broader dominating) to those of the '338 patent and the '945 patent, and accordingly, invalid as a matter of law.

## II.    STEP ONE - CLAIM CONSTRUCTION

### A.    Cannons of Construction

#### 1.    General Considerations

For the purposes of this motion, determining the precise meaning to one of ordinary skill in the art of any disputed claim terminology is unnecessary. *See Vivid Technologies v. AmericanScience and Eng'g,* 200 F.3d 795, 803 (Fed. Cir.

1999)(finding that only terms in controversy need be construed and then "only to the extent necessary to resolve the controversy"); *Rogers v. Desa Int'l*, 61 USPQ.2d 1346, 1348 (E.D. Mich. 2001)(allowing party to adopt a claim construction for the sole purpose of a summary judgment motion). As will become apparent herein, the double patenting determination does not rely upon a clever claim construction, but rather upon the undisputed relationship of the patents and their common, and indeed, identical language. In particular, by virtue of incorporating by reference the entire contents of the '945 patent (which has an identical specification to that of the '338 patent), any construction of the claims of the '894 patent necessarily requires the written description of the '945 patent to be considered.[4] In any event, regardless of the meaning ascribed to the claim terms by the Court, the conclusion that the '894 patent is generic to the earlier '338 and '945 patents is inescapable.

The only cannons of claim construction at play in the present motion are those surrounding the doctrine of incorporation by reference and those surrounding interpretation of claims drafted in means-plus-function format pursuant to 35 U.S.C. 112, sixth paragraph.

### 2.    Incorporation by Reference

Material may be incorporated by reference into United States patent applications. *See* MPEP 608.01(p). (Attached hereto as Exhibit H). If a document is specifically incorporated by reference, the material contained in the document is to be treated as if it was specifically set forth in the text of the patent

---

[4] As set forth more particularly herein, the claims of the '894 patent were drafted in "means-plus-function" format and therefore have rules of construction that require resort to the structure, or in this case, the structures, described in the specification.

application. However, in 1986, "essential material" could only be incorporated from a U.S. patent, pending application, or abandoned application.[5] "Essential material" is defined as that which is necessary to (1) described the claimed invention, (2) provide an enabling disclosure of the claimed invention, or (3) describe the best mode of practicing the invention. *See* MPEP 608.01(p). In other words, "essential material" is information necessary to satisfy an application's disclosure requirements under 35 U.S.C. 112.

There is no dispute that the '945 patent was properly incorporated by reference into the '894 patent, and thus, as a U.S. patent, is a source of **essential** material in any section 112 inquiry. Accordingly, construing the claims of the '894 patent in view of the specification necessitates consideration of the disclosure in the '945 patent.

### 3. Means-Plus-Function Claims

A means-plus-function element under 35 U.S.C. 112, paragraph 6,[6] is one that refers to a "means" for performing a given function without specifying in the claim the structure for performing that function. *Chiuminatta Concrete Concepts v. Cardinal Indus.,* 145 F.3d 1303, 1307-08 (Fed. Cir. 1998). The applicant is presumed to have used the word "means" in a claim to invoke the imprimatur of 35 U.S.C. 112, paragraph 6. *York Prods. v. Central Tractor Farm & Family Ctr,* 99 F.3d 1568, 1574 (Fed. Cir. 1996).

---

[5] Although not relevant to this case, the sources of essential material have changed slightly since 1986 when the patent-in-suit was filed. *See* MPEP 608.01(p) (8th Ed. August 2001).

[6] 35 U.S.C. 112, paragraph 6, recites: "An element in a claim for a combination may be express as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

Means-plus-function elements have additional claim construction rules.  In

*Lockheed Martin v. Space Systems/Loral Inc.,* 249 F.3d 1314, 1324-25 (Fed. Cir.

2001), the Federal Circuit set forth a three step process for construing the

means-plus-function language of a claim.  First, the court must identify the

claimed function.  *Id.*  Once this function is identified, it must be construed using

the ordinary principles of claim construction.  *Id.*  The function of a 'means-plus-

function' claim must be construed to include the limitations contained in the claim

language.  *Id.*  However, a claimed function may not be improperly narrowed or

limited beyond the scope of the claim language.  *Id.*  Finally, the court must

determine the corresponding structure disclosed in the patent specification for

performing the function.  *Id.*

In this regard, it is noteworthy to point out that when the patent

specification is reviewed for corresponding structure, a number of distinct

embodiments of the invention may perform the recited function in distinct ways.

*See Ishida v. Taylor,* 221 F.3d 1310, 1316 (Fed. Cir. 2000).  The means plus

function claim is interpreted to cover the structures identified as performing the

recited function, regardless of how different the structures in separate

embodiments are:

> In *Serrano*, this court determined that the district court had
> erroneously limited the structure corresponding to the claimed function to
> only one of the alternative structures in the specification.  *Serrano* states
> that the proper application of § 112 ¶ 6 generally reads the claim element
> to embrace distinct and alternative described structures for performing the
> claimed function.  Specifically, "disclosed structure includes that which is
> described in a patent specification, including any alternative structures
> identified."

*Id.* (quoting *Serrano v. Telular Corp.,* 11 F.3d 1578, 1583 (Fed. Cir. 1997)).

The importance of this truism of patent law will become clearer herein. Suffice it for now to point out that by virtue of incorporating by reference the entire contents of the '945 patent, the disclosed embodiment in the '945 patent (the "first preferred embodiment") is treated as having been specifically set forth in the specification in addition to the "second preferred embodiment" described in the '894 patent. Therefore, both structures must be considered in interpreting the means-plus-function limitations of the '894 patent's claims.

**B.    The Doyle Patents**

      **1.    The '338 Patent**

Exhibit I attached hereto is a claim chart of claim 2 of the '338 patent for the purposes of construing the relevant claim language. The chart presents each of the claim limitations and the written description of the claim elements from the specification. For limitations drafted in means-plus-function format, the claim chart recites the structure recited in the specification for performing the function. Claim 2 of the '338 patent recites a particular movable means (a "movable cam means") for separating the electrical contacts upon energization of the coil in response to a fault. The disclosed cam structure responds to movement of the armature (or plunger). In particular, as the plunger moves into the center of the coil, the actuator (or kicker) moves along with the plunger. The plunger and actuator (which is the "first movable member") move from a first position (prior to energization of the coil wherein the contacts are touching) to a second position (after the circuit is broken wherein the contacts are separated). As the plunger and actuator move, the cam (which is the "second movable member" having "movement of said second member being caused by movement of said first

12

member") rotates to force the arms with contacts to move away from the fixed contacts, thereby separating the contacts. Thus, the cam structure performs the function of separating the electrical contacts and does so with a first movable member and a second movable member.

### 2.    The '945 Patent

Exhibit J attached hereto is a claim chart of claim 1 of the '945 patent for the purposes of construing the relevant claim language. The '945 patent is a "continuation" of the '338 patent, which means that the '945 patent has the identical specification (written description and drawings) of the '338 patent. The only difference between the '945 patent and the '338 patent is that the claims of the '945 patent are narrower, or a species, of the claims of the '338 patent. Notably, the '945 patent includes a terminal disclaimer which forfeited the portion of its statutory term extending beyond the life of the '338 patent. In situations where a second patent claims an obvious variant, usually a genus or species, of the first patent (assuming common inventorship and ownership), a terminal disclaimer is the only way to overcome a double patenting rejection.

As discerned from the claim chart, the '945 patent recites structure associated with the cam means and claims the performance of a function additional to that of the '338 patent's claims. Specifically, the '945 patent claims a movable cam means (movable means) which not only includes a first movable member (the actuator) and a second movable member (the cam body) moving in response to movement of the first movable member (movement of said second member being caused by movement of said first member) to physically separate

13

the contacts, thereby interrupting electrical connection between them, but also
claims the **additional function** of being able to close the contacts.

### 3.    The '894 Patent

Exhibit K depicts a claim chart of claim 1 of the '894 patent for purposes of
construing the claim.  The chart refers to both the '894 specification and the '945
specification because the '894 patent specifically incorporates by reference the
'945 patent.  The parties do not dispute that resort to the '945 patent disclosure
(which is identical to that of the '338 patent) in construing the means-plus-
function limitations is proper in view of its incorporation by reference.  See Exhibit
L at 5-6 and 10.[7]  Indeed, the '894 specification declares it to be describing a
"'second' preferred embodiment."  '894 Patent, col. 1, ln 20.  In light of the
interpretation of the claims asserted by Leviton in the ITC, the parties do not
diverge in their interpretation of the claims with the exception of the very last
limitation ("movable means").  See Exh. G at 19-23.  As clear in the ITC's Order
No. 11 invalidating the '894 patent, the Commission did not accept Leviton's
interpretation.  See Exh. G at 22-23.

As shown in the chart, the "movable means" limitation requires two
separate claim constructions.  When a patent has limitations drafted in means-
plus-function format and discloses multiple embodiments, each embodiment gets
its own claim construction for the structure disclosed for performing the recited
function.  See Ishida v. Taylor, 221 F.3d 1310, 1316 (Fed. Cir. 2000)("[P]roper
application of section 112(6) generally reads the claim element to embrace

---

[7] Exhibit L is a Motion for Summary Determination of Infringement filed by Leviton in the ITC
proceeding.  This motion was denied by the ITC in Order No. 9 on February 21, 2003.  (Attached
hereto as Exhibit M).

distinct and alternative described structures for performing the claimed function. Specifically, 'disclosed structure includes that which is described in a patent specification, including any alternative structures identified.'").

Interestingly, despite quoting the above language in its motion before the ITC, Leviton appears to distance itself from the multiple embodiments when it comes to the "movable means" limitation. *See* Exh. L at 10. In any event, the fact that the structures may be very different makes no difference when construing means-plus-function claims. *See Ishida v. Taylor*, 221 F.3d 1310, 1316 (Fed. Cir. 2000) ("The specification depicted two separate embodiments that performed the claimed function, and the two embodiments were structurally very different. . . . embodiment 1 . . . features cam tracks, while embodiment 2 has no cam tracks."). Each structure capable of performing the recited function is considered in construing the claim limitation. *Id.* ("The district court properly identified 'the corresponding structures' for **each embodiment** as required by 112 ¶ 6."). Accordingly, the claim chart construes both embodiments when considering the "movable means" limitation. Assuming the presence of all other claim limitations, an accused device having either structure infringes the claim. Likewise, a prior art reference disclosing either structure, including Leviton's own patents, anticipates the claim.[8] "When a patentee anticipates himself, he cannot, in the nature of things, give validity to the second patent." *Miller v. Eagle Manuf.*, 151 U.S. 186, 198 (1967)(Jackson, J.).

---

[8] As previously noted, the ITC determined that the '338 patent anticipated the '894 patent.

### III.    STEP TWO - CLAIM COMPARISON

#### A.    The '894 Patent's "Movable Means" Limitation is Generic to the '338 and '945 Patents' "Movable Cam Means" Limitation

Exhibit N depicts a comparison of claim 1 of the '894 patent with claim 2 of the '338 patent and with claim 1 of the '945 patent. The claims are virtually identical until the last limitation.[9] In considering the scope of the final limitation, the conclusion that claim 1 of the '894 patent is generic to the claims of the '338 and '945 patents is inescapable. Comparing the language clearly shows that the '894 patent is broader.

##### 1.    "movable means responsive to movement of said plunger means for influencing a separation of said input and output contacts, thereby interrupting electrical connection between them"

Claim 1 (and claim 2 depending therefrom) of the '338 patent includes the identical limitation with the exception of "movable *cam* means" in place of "movable means" and the use of "armature" in place of "plunger." The terms "armature" and "plunger" are identified in the '894 patent specification as being synonymous, and thus, coterminous in scope. *See* '894 Patent, col. 3, ln 21-22.

As for the "movable means" which performs the function of separating the contacts to interrupt the electrical connection, it is undeniable that a "movable *cam* means" which performs the same function is a subset, or species, of the broader "movable means" limitation. Both structures in the '894 patent (the "second preferred embodiment" and the "first preferred embodiment" of the '945

---

[9] The '338 and '945 patents use the term "armature" instead of "plunger." However, the '894 patent itself teaches the terms are synonymous at column 3, lines 21-22: "This magnetic field influences the position of an **armature or plunger** 348."

patent incorporated by reference) have movable means which separate the electrical contacts, thereby interrupting the electrical connection.

The fact that the claimed function is performed by different mechanisms in the different embodiments makes no difference under 35 U.S.C. 112 ¶ 6 because the corresponding structure of each embodiment is covered by the claim. Accordingly, "movable means" covers the movable cam mechanism of the first preferred embodiment (which is found in both the '338 patent and the '945 patent which was incorporated by reference) as well as the banger/latch mechanism of the '894 patent's second preferred embodiment.

Clearly, claim 1 of the '894 patent covers a broader, more generic scope than the '338 and '945 patents, in view of the fact that it includes their structure and an additional structure. In short, the '338 patent and '945 patent have claims covering the first preferred embodiment while the '894 patent has claims covering not only the first preferred embodiment but also a second preferred embodiment. "It is hardly necessary to remark that the patentee could not include in a subsequent patent any invention embraced or described in a prior one, granted to himself, any more than he could an invention embraced or described in a prior patent granted to a third person." *James v. Campbell,* 104 U.S. 356, 370 (1881).

### 2. "said movable means including first and second movable members, movement of said second member being caused by movement of said first member"

The "first movable member" of the "movable means" in the '894 patent's second preferred embodiment is the "banger" (ref. # 352 in the Figures). The "first movable member" in the first preferred embodiment (or the "'945 embodiment" incorporated by reference) is the "actuating member" (ref. # 104 in

the Figures of the '338 and '945 patents). A comparison of the features in Figure

3 of the '894 patent and Figure 4 of the '945 patent (and of course Figure 4 of the

'338 patent) shows that the banger of the second preferred embodiment and the

actuating member of the first preferred embodiment are attached to the plunger

and move with the plunger as it moves into the coil.[10]

Again, under 35 U.S.C. 112, sixth paragraph, each embodiment is

construed in identifying the scope of the claim. Accordingly, in interpreting the

"movable means" limitation in view of the two embodiments, both the banger and

actuating member are considered to be "first movable member(s)." The "second

movable member" of the movable means in the '894 patent's second preferred

embodiment is at least one of the "latching member(s)" (ref. # 426 and 428).[11]

The second movable member of the first preferred embodiment (or "'945

embodiment") is the "cam" (ref. # 132). This interpretation for each embodiment

is clear when Figure 3 and Figure 4 of the '945 and '894 patents are reviewed in

conjunction with the claim language requiring "movement of said second member

being caused by movement of said first member." In each embodiment, the first

movable member is attached to the plunger and moves as the plunger moves. In

the '894 patent's second embodiment, the first movable member (banger) hits

the second movable member(s) (latching member) to release the latch to allow

the leaf-spring (with the movable contact) to spring away from the fixed contact,

---

[10] Although a number of parts of the embodiments move, it is clear that the "first movable member" is the banger or actuating member because claim 2 of the '894 patent recites: "2. Switching apparatus according to claim 1, wherein said first member is movable with and operatively connected to said plunger means." The banger and actuating member are the only structures that are attached to, and move with, the plunger.
[11] Although the patent discloses the use of two latching members, one for each contact, the claim was drafted to only require one latching member.

thereby interrupting the electrical connection. In the first preferred embodiment (or "'945 embodiment"), the first movable member (actuating member or kicker) hits the second movable member (cam) which rotates to force the contact arm to separate the movable contact from the fixed contact. In either case, the function of separating the contacts to interrupt the electrical connection is performed. Again, the structure of each embodiment which performs the claimed function is considered in construing the claim pursuant to 35 U.S.C. 112, ¶ 6 Both the first and second preferred embodiments are viewed as covered claim 1 of the '894 patent. Accordingly, by virtue of the '338 patent and '945 patent claiming only one of the two embodiments, it is undisputable that the '894 patent is broader, and generic, to the '338 patent and '945 patent.

**B.    The '894 Patent is Invalid**

**1.    The '894 Patent is Generic to the '338 and '945 Patents**

As previously set forth herein, a patent is invalid for double-patenting if it has claims which are broader and subsume those of an earlier patent. *E.g., Eli Lilly v. Barr,* 251 F.3d 955, 971 (Fed. Cir. 2001). That is precisely the situation with the '894 patent. The '894 patent includes the '894 embodiment and the '945 embodiment due to the incorporation by reference of the '945 patent. Claim 1 as properly construed is accordingly broader than the '338 and '945 patents as they only cover the '945 embodiment. In simple terms, the '894 patent is the "fastening mechanism" of which the '338 and '945 patents are previously patented "zippers" "It is hardly necessary to remark that the patentee could not include in a subsequent patent any invention embraced or described in a prior one, granted to himself, any more than he could an invention embraced or

19

described in a prior patent granted to a third person." *James v. Campbell,* 104 U.S. 356, 370 (1881).

### 2.    The Dependent Claims are Not Patentably Distinct

Claims 2-4 of the '894 patent are also invalid for double patenting. Claim 2 includes the further limitation of "wherein the first member is movable with and operatively connected to said plunger means." This limitation is also satisfied and disclosed in the '945 embodiment. Both the banger ('894 embodiment) and the actuator ('945 embodiment) are attached to, and move with, the plunger. Accordingly, the claim is not patentably distinct and invalid.

Claim 3 includes the further limitation of "wherein said plunger means comprises a plunger member formed with a relatively elongated portion which extends into portions of said electromagnetic coil means." This limitation is also satisfied and disclosed in the '945 embodiment. The plungers of the '894 and '945 embodiments have a stem portion that is pulled into the coil upon energization. Accordingly, the claim is not patentably distinct and invalid.

Claim 4 includes the further limitation of a "spring means for returning said plunger means to said first position after energization of said coil means." While not a feature of the '945 embodiment, the use of a spring to return the plunger from the interior of the coil is an obvious and well known means of performing the function. Accordingly, the claim is not patentably distinct and invalid.

### CONCLUSION

In view of the foregoing, Defendants' respectfully request that their motion for summary judgment on the issue of invalidity for double patenting be granted.

Respectfully submitted,

20

UNIVERSAL SECURITY INSTRUMENTS INC.
USI ELECTRIC, INC.


By: _W. E. Bradley_
Maurice U. Cahn, Esq.
Frederick N. Samuels, Esq.
William E. Bradley, Esq.
CAHN & SAMUELS, LLP
2000 P Street, NW, Suite 200
Washington, D.C.  20036
(202) 331-8777 (Phone)
(202) 331-3838 (FAX)