nucleotide sequences, such as set forth in example (C), will be subject to a restriction requirement. Applicants will be required to select one combination for examination. If the selected combination contains ten or fewer sequences, all of the sequences of the combination will be searched. If the selected combination contains more than ten sequences, the combination will be examined following the procedures set forth above for example (B). More specifically, the combination will be searched until one nucleotide sequence is found to be allowable with the examiner choosing the order of search to maximize the identification of an allowable sequence. The identification of any allowable sequence(s) will cause all combinations containing the allowed sequence(s) to be allowed.

In applications containing all three claims set forth in examples (A)-(C), the Office will require restriction of the application to ten sequences for initial examination purposes. Based upon the finding of allowable sequences, claims limited to the allowable sequences as in example (A), all combinations, such as in examples (B) and (C), containing the allowable sequences and any patentably indistinct sequences will be rejoined and allowed.

Rejoinder will be permitted for claims requiring any allowable sequence(s). Any claims which have been restricted and nonselected and which are limited to the allowable sequence(s) will be rejoined and examined.

## 804    Definition of Double Patenting

*35 U.S.C. 101. Inventions Patentable.*

Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

*35 U.S.C. 121. Divisional Applications.*

If two or more independent and distinct inventions are claimed in one application, the Director may require the application to be restricted to one of the inventions. If the other invention is made the subject of a divisional application which complies with the requirements of section 120 of this title it shall be entitled to the benefit of the filing date of the original application. A patent issuing on an application with respect to which a requirement for restriction under this section has been made, or on an application filed as a result of such a requirement, shall not be used as a reference either in the Patent and Trademark Office or in the courts against a divisional application or against the original application or any patent issued on either of them, if the divisional application is filed before the issuance of the patent on the other application.

If a divisional application is directed solely to subject matter described and claimed in the original application as filed, the Director may dispense with signing and execution by the inventor. The validity of a patent shall not be questioned for failure of the Director to require the application to be restricted to one invention.

The doctrine of double patenting seeks to prevent the unjustified extension of patent exclusivity beyond the term of a patent. The public policy behind this doctrine is that:

> The public should . . . be able to act on the assumption that upon the expiration of the patent it will be free to use not only the invention claimed in the patent but also modifications or variants which would have been obvious to those of ordinary skill in the art at the time the invention was made, taking into account the skill in the art and prior art other than the invention claimed in the issued patent.

*In re Zickendraht,* 319 F.2d 225, 232, 138 USPQ 22, 27 (CCPA 1963) (Rich, J., concurring). Double patenting results when the right to exclude granted by a first patent is unjustly extended by the grant of a later issued patent or patents. *In re Van Ornum,* 686 F.2d 937, 214 USPQ 761 (CCPA 1982).

Before consideration can be given to the issue of double patenting, there must be some common relationship of inventorship and/or ownership of two or more patents or applications. Since the doctrine of double patenting seeks to avoid unjustly extending patent rights at the expense of the public, the focus of any double patenting analysis necessarily is on the claims in the multiple patents or patent applications involved in the analysis.

There are generally two types of double patenting rejections. One is the "same invention" type double patenting rejection based on 35 U.S.C. 101 which states in the singular that an inventor "may obtain a patent". The second is the "nonstatutory-type" double patenting rejection based on a judicially created doctrine grounded in public policy and which is primarily intended to prevent prolongation of the patent term by prohibiting claims in a second patent not patentably distinguishing from claims in a first patent. Nonstatutory double patenting includes rejections based on one-way determination of obviousness and on two-way determination of obviousness. Nonstatutory double patenting could include a rejection which is not the usual "obviousness-type" double patenting rejection. This type of double patenting rejection is rare and is limited to the particular facts of the case. *In re*

804                         MANUAL OF PATENT EXAMINING PROCEDURE

*Schneller*, 397 F.2d 350, 158 USPQ 210 (CCPA 1968).

Refer to Charts I-A, I-B, II-A, II-B, III-A, and III-B for an overview of the treatment of applications having conflicting claims (e.g., where a claim in an application is not patentably distinct from a claim in a patent or another application).

RESTRICTION IN APPLICATION FILED UNDER 35 U.S.C. 111; DOUBLE PATENTING      **804**



* This chart applies where the application being applied as a reference has NOT been published.

August 2001

**804**                    MANUAL OF PATENT EXAMINING PROCEDURE



## CONFLICTING CLAIMS BETWEEN: TWO APPLICATIONS *    CHART I-B

**DIFFERENT INVENTIONS** (Not Patentably Distinct)

Currently Commonly Owned: Different Inventive Entities

No Common Assignee or Inventor

At least One Common Inventor, No Common Assignee

Same Inventive Entity

And

Provisional Obviousness Double-Patenting Rejection

8.33 & 8.35 or 8.37

And

Provisional Rejection of Later Application Under 102(e)/103(a)

7.21.01

Rejection Under 102(f)/103(a) or 102(g)/103(a)

7.21

Let Senior Party Issue or Publish (if published, go to Chart III-B) and Reject Junior Party Under 102(e)/103(a)

7.21

Provisional Obviousness Double-Patenting Rejection

8.33 & 8.35 or 8.37

Commonly Owned at Time of Applicant's Invention

And

Provisional Obviousness Double-Patenting Rejection

8.33 & 8.35 or 8.37

Provisional Rejection of Later Application Under 102(e)/103(a) (for applications filed prior to Nov. 29, 1999)

7.21.01

No showing of Common Ownership at Time of Applicant's Invention

And/Or

And

And

Rejection Under 102(f)/103(a) or 102(g)/103(a)

7.21

Assignee Required to Either:
(a)  Name First Inventor of Conflicting Subject Matter Under 102(f) or (g) or
(b)  Show Inventions Were Commonly Owned at Time of Applicant's Invention

8.28

Provisional Obviousness Double-Patenting Rejection

8.33 & 8.35 or 8.37

Provisional Rejection of Later Application Under 102(e)/103(a)

7.21.01

\* This chart applies where the application being applied as a reference has NOT been published.

RESTRICTION IN APPLICATION FILED UNDER 35 U.S.C. 111; DOUBLE PATENTING          804



**CONFLICTING CLAIMS BETWEEN: APPLICATION AND A PATENT**          CHART II-A

* A rejection under 35 U.S.C. 102(e) would NOT be appropriate where the application being examined was filed on or after Nov. 29, 2000 or filed prior to Nov. 29, 2000 and voluntarily published, and the reference patent issued from an international application (reference patent has no 102(e) prior art effect).

804                    MANUAL OF PATENT EXAMINING PROCEDURE



## CONFLICTING CLAIMS BETWEEN: APPLICATION AND A PATENT     CHART II-B

DIFFERENT INVENTIONS
(Not Patentably Distinct)

*The reference patent would NOT be prior art under 35 U.S.C. 102(e) where the patent issued from an international application and the application being examined was filed on or after Nov. 29, 2000 or filed prior to Nov. 29, 2000 and voluntarily published.

RESTRICTION IN APPLICATION FILED UNDER 35 U.S.C. 111; DOUBLE PATENTING    **804**



\* Apply 35 U.S.C. 102(e) rejection if the application being examined was filed on or after Nov. 29, 2000 or filed prior to Nov. 29, 2000 and voluntarily published, otherwise, apply rejection under 35 U.S.C. 102(a) or (b), where appropriate and make a "provisional" rejection of the later application under 35 U.S.C. 102(e) using form paragraph 7.15.01.

804                    MANUAL OF PATENT EXAMINING PROCEDURE



* Apply 35 U.S.C. 102(e)/103(a) rejection if the application being examined was filed on or after Nov. 29, 2000 or filed prior to Nov. 29, 2000 and voluntarily published, otherwise, apply rejection under 35 U.S.C. 102(a)/103(a) or 102(b)/103(a), where appropriate and make a "provisional" rejection of the later application under 35 U.S.C. 102(e)/103(a) using form paragraph 7.21.01.

# I.   INSTANCES WHERE DOUBLE PATENTING ISSUE CAN BE RAISED

A double patenting issue may arise between two or more  pending applications, between one or more pending applications and a patent, or between one or more pending applications and a published application. A double patenting issue may likewise arise in a reexamination proceeding between the patent claims being reexamined and the claims of one or more applications and/or patents. Double patenting does not relate to international applications which have not yet entered the national stage in the United States.

## A.   *Between Issued Patent and One or More Applications*

Double patenting may exist between an issued patent and an application filed by the same inventive entity, or by an inventive entity having a common inventor with the patent, and/or by the owner of the patent. Since the inventor/patent owner has already secured the issuance of a first patent, the examiner must determine whether the grant of a second patent would give rise to an unjustified extension of the rights granted in the first patent.

## B.   *Between Copending Applications—Provisional Rejections*

Occasionally, the examiner becomes aware of two copending applications filed by the same inventive entity, or by different inventive entities having a common inventor, and/or by a common assignee that would raise an issue of double patenting if one of the applications became a patent. Where this issue can be addressed without violating the confidential status of applications (35 U.S.C. 122), the courts have sanctioned the practice of making applicant aware of the potential double patenting problem if one of the applications became a patent by permitting the examiner to make a "provisional" rejection on the ground of double patenting. *In re Mott*, 539 F.2d 1291, 190 USPQ 536 (CCPA 1976); *In re Wetterau*, 356 F.2d 556, 148 USPQ 499 (CCPA 1966). The merits of such a provisional rejection can be addressed by both the applicant and the examiner without waiting for the first patent to issue.

The "provisional" double patenting rejection should continue to be made by the examiner in each application as long as there are conflicting claims in more than one application unless that "provisional" double patenting rejection is the only rejection remaining in one of the applications. If the "provisional" double patenting rejection in one application is the only rejection remaining in that application, the examiner should then withdraw that rejection and permit the application to issue as a patent, thereby converting the "provisional" double patenting rejection in the other application(s) into a double patenting rejection at the time the one application issues as a patent.

If the "provisional" double patenting rejections in both applications are the only rejections remaining in those applications, the examiner should then withdraw that rejection in one of the applications (e.g., the application with the earlier filing date) and permit the application to issue as a patent. The examiner should maintain the double patenting rejection in the other application as a "provisional" double patenting rejection which will be converted into a double patenting rejection when the one application issues as a patent.

## C.   *Between One or More Applications and a Published Application - Provisional Rejections*

Double patenting may exist between a published patent application and an application filed by the same inventive entity, or by different inventive entities having a common inventor, and/or by a common assignee. Since the published application has not yet issued as a patent, the examiner is permitted to make a "provisional" rejection on the ground of double patenting. See the discussion regarding "provisional" double patenting rejection in subsection B. above.

## D.   *Reexamination Proceedings*

A double patenting issue may raise a substantial new question of patentability of a claim of a patent, and thus be addressed in a reexamination proceeding. *In re Lonardo*, 119 F.3d 960, 966, 43 USPQ2d 1262, 1266 (Fed. Cir. 1997) (In giving the Commissioner authority under 35 U.S.C. 303(a) in determining the presence of a substantial new question of patentability, "Congress intended that the phrases 'patents and publications' and 'other patents or publications' in section 303(a) not be limited to *prior art* patents or printed publications." (emphasis added)). Accordingly, if the issue of double patenting was not

804                    MANUAL OF PATENT EXAMINING PROCEDURE

addressed during original prosecution, it may be considered during reexamination.

## II. REQUIREMENTS OF A DOUBLE PATENTING REJECTION (INCLUDING PROVISIONAL REJECTIONS)

When a double patenting rejection is appropriate, it must be based either on statutory grounds or nonstatutory grounds. The ground of rejection employed depends upon the relationship of the inventions being claimed. Generally, a double patenting rejection is not permitted where the claimed subject matter is presented in a divisional application as a result of a restriction requirement made in a parent application under 35 U.S.C. 121.

Where the claims of an application are substantively the same as those of a first patent, they are barred under 35 U.S.C. 101 - the statutory basis for a double patenting rejection. A rejection based on double patenting of the "same invention" type finds its support in the language of 35 U.S.C. 101 which states that "whoever invents or discovers any new and useful process ... may obtain a patent therefor ...." Thus, the term "same invention," in this context, means an invention drawn to identical subject matter. *Miller v. Eagle Mfg. Co.*, 151 U.S. 186 (1894); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); and *In re Ockert*, 245 F.2d 467, 114 USPQ 330 (CCPA 1957). Where the claims of an application are not the "same" as those of a first patent, but the grant of a patent with the claims in the application would unjustly extend the rights granted by the first patent, a double patenting rejection under nonstatutory grounds is proper.

In determining whether a proper basis exists to enter a double patenting rejection, the examiner must determine the following:

(A) Whether a double patenting rejection is prohibited by the third sentence of 35 U.S.C. 121 (see MPEP § 804.01; if such a prohibition applies, a double patenting rejection cannot be made);

(B) Whether a statutory basis exists; and

(C) Whether a nonstatutory basis exists.

Each determination must be made on the basis of all the facts in the application before the examiner. Charts I-A, I-B, II-A, II-B, III-A, and III-B illustrate the methodology of making such a determination.

Domination and double patenting should not be confused. They are two separate issues. One patent or application "dominates" a second patent or application when the first patent or application has a broad or generic claim which fully encompasses or reads on an invention defined in a narrower or more specific claim in another patent or application. Domination by itself, i.e., in the absence of statutory or nonstatutory double patenting grounds, cannot support a double patenting rejection. *In re Kaplan*, 789 F.2d 1574, 1577-78, 229 USPQ 678, 681 (Fed. Cir. 1986); and *In re Sarrett*, 327 F.2d 1005, 1014-15, 140 USPQ 474, 482 (CCPA 1964). However, the presence of domination does not preclude double patenting. See, e.g., *In re Schneller*, 397 F.2d 350, 158 USPQ 210 (CCPA 1968).

### A. Statutory Double Patenting — 35 U.S.C. 101

In determining whether a statutory basis for a double patenting rejection exists, the question to be asked is: Is the same invention being claimed twice? 35 U.S.C. 101 prevents two patents from issuing on the same invention. "Same invention" means identical subject matter. *Miller v. Eagle Mfg. Co.*, 151 U.S. 186 (1984); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); and *In re Ockert*, 245 F.2d 467, 114 USPQ 330 (CCPA 1957).

A reliable test for double patenting under 35 U.S.C. 101 is whether a claim in the application could be literally infringed without literally infringing a corresponding claim in the patent. *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970). Is there an embodiment of the invention that falls within the scope of one claim, but not the other? If there is such an embodiment, then identical subject matter is not defined by both claims and statutory double patenting would not exist. For example, the invention defined by a claim reciting a compound having a "halogen" substituent is not identical to or substantively the same as a claim reciting the same compound except having a "chlorine" substituent in place of the halogen because "halogen" is broader than "chlorine." On the other hand, claims may be differently worded and still define the same invention. Thus, a claim reciting a widget having a length of "36 inches" defines the same invention as a claim reciting the same widget having a length of "3 feet."

If it is determined that the same invention is being claimed twice, 35 U.S.C. 101 precludes the grant of the second patent regardless of the presence or absence of a terminal disclaimer. *Id.*

Form paragraphs 8.30 and 8.31 (between an issued patent and one or more applications) or 8.32 (provisional rejections) may be used to make statutory double patenting rejections.

## ¶ 8.30 35 U.S.C. 101, Statutory Basis for Double Patenting "Heading" Only

A rejection based on double patenting of the "same invention" type finds its support in the language of 35 U.S.C. 101 which states that "whoever invents or discovers any new and useful process... may obtain <u>a</u> patent therefor..." (Emphasis added.) Thus, the term "same invention," in this context, means an invention drawn to identical subject matter. See *Miller v. Eagle Mfg. Co.,* 151 U.S. 186 (1894); *In re Vogel,* 422 F.2d 438, 164 USPQ 619 (CCPA 1970); and *In re Ockert,* 245 F.2d 467, 114 USPQ 330 (CCPA 1957).

A statutory type (35 U.S.C. 101) double patenting rejection can be overcome by canceling or amending the conflicting claims so they are no longer coextensive in scope. The filing of a terminal disclaimer <u>cannot</u> overcome a double patenting rejection based upon 35 U.S.C. 101.

**Examiner Note:**

The above form paragraph must be used as a heading for all subsequent double patenting rejections of the statutory (same invention) type using either of form paragraphs 8.31 or 8.32.

## ¶ 8.31 Rejection, 35 U.S.C. 101, Double Patenting

Claim **[1]** rejected under 35 U.S.C. 101 as claiming the same invention as that of claim **[2]** of prior U.S. Patent No. **[3]**. This is a double patenting rejection.

**Examiner Note:**

1.   This paragraph must be preceded by form paragraph 8.30 and is used only for double patenting rejections of the same invention claimed in an earlier patent; that is, the "scope" of the inventions claimed is identical.

2.   If the conflicting claims are in another copending application, do not use this paragraph. A provisional double patenting rejection should be made using paragraph 8.32.

3.   Do not use this paragraph for non-statutory-type double patenting rejections. If non-statutory type, use appropriate form paragraphs 8.33 to 8.39.

4.   This paragraph may be used where the conflicting patent and the pending application are:

(a)   by the same inventive entity, or

(b)   by a different inventive entity and are commonly assigned even though there is no common inventor, or

(c)   not commonly assigned but have at least one common inventor.

5.   In bracket 3, insert the number of the conflicting patent.

6.   If the patent is to a different inventive entity and is commonly assigned with the application, paragraph 8.27 should <u>additionally</u> be used to require the assignee to name the first inventor.

7.   If evidence is of record to indicate that the patent is prior art under either 35 U.S.C. 102(f) or (g), a rejection should also be made using paragraphs 7.15 and/or 7.19 in <u>addition to</u> this double patenting rejection.

8.   If the patent is to a different inventive entity from the application and the effective U.S. filing date of the patent antedates the effective filing date of the application, a rejection under 35 U.S.C. 102(e) should <u>additionally</u> be made using form paragraph 7.15.02.

## ¶ 8.32 Provisional Rejection, 35 U.S.C. 101, Double Patenting

Claim **[1]** provisionally rejected under 35 U.S.C. 101 as claiming the same invention as that of claim **[2]** of copending Application No. **[3]**. This is a <u>provisional</u> double patenting rejection since the conflicting claims have not in fact been patented.

**Examiner Note:**

1.   This paragraph must be preceded by form paragraph 8.30 and is used only for double patenting rejections of the same invention claimed in another copending <u>application</u>; that is, the scope of the claimed inventions is identical.

2.   If the conflicting claims are from an issued <u>patent</u>, do not use this paragraph. See paragraph 8.31.

3.   Do not use this paragraph for non-statutory-type double patenting rejections. See paragraphs 8.33 to 8.39.

4.   This paragraph may be used where the conflicting claims are in a copending application that is:

(a)   by the same inventive entity, or

(b)   by a different inventive entity and is commonly assigned even though there is no common inventor, or

(c)   not commonly assigned but has at least one common inventor.

5.   Paragraph 8.28 may be used in place of or along with this paragraph to resolve any remaining issues relating to priority under 35 U.S.C. 102(f) or (g).

6.   In bracket 3, insert the number of the conflicting application.

7.   A provisional double patenting rejection should also be made in the conflicting application.

8.   If the copending application is by a different inventive entity and is commonly assigned, paragraph 8.27 should <u>additionally</u> be used to require the assignee to name the first inventor.

9.   If evidence is also of record to show that either application is prior art unto the other under 35 U.S.C. 102(f) or (g), a rejection should also be made in the other application using paragraphs 7.15 and/or 7.19 in <u>addition</u> to this provisional double patenting rejection.

10.   If the applications do not have the same inventive entity and effective U.S. filing date, a provisional 102(e) rejection should <u>additionally</u> be made in the later-filed application using paragraph 7.15.01.

If the "same invention" is not being claimed twice, an analysis must be made to determine whether a non-statutory basis for double patenting exists.

### B.   Nonstatutory Double Patenting

A rejection based on nonstatutory double patenting is based on a judicially created doctrine grounded in public policy so as to prevent the unjustified or improper timewise extension of the right to exclude granted by a patent. *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969); *In re White*, 405 F.2d 904, 160 USPQ 417 (CCPA 1969); *In re Schneller*, 397 F.2d 350, 158 USPQ 210 (CCPA 1968); *In re Sarett*, 327 F.2d 1005, 140 USPQ 474 (CCPA 1964).

### 1.   Obviousness-Type

In determining whether a nonstatutory basis exists for a double patenting rejection, the first question to be asked is — does any claim in the application define an invention that is merely an obvious variation of an invention claimed in the patent? If the answer is yes, then an "obviousness-type" nonstatutory double patenting rejection may be appropriate. Obviousness-type double patenting requires rejection of an application claim when the claimed subject matter is **not patentably distinct** from the subject matter claimed in a commonly owned patent when the issuance of a second patent would provide unjustified extension of the term of the right to exclude granted by a patent. See *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 58 USPQ2d 1865 (Fed. Cir. 2001); *Ex parte Davis*, 56 USPQ2d 1434, 1435-36 (Bd. Pat. App. & Inter. 2000).

A double patenting rejection of the obviousness-type is "analogous to [a failure to meet] the nonobviousness requirement of 35 U.S.C. 103" except that the patent principally underlying the double patenting rejection is not considered prior art. *In re Braithwaite*, 379 F.2d 594, 154 USPQ 29 (CCPA 1967). Therefore, any analysis employed in an obviousness-type double patenting rejection parallels the guidelines for analysis of a 35 U.S.C. 103 obviousness determination. *In re Braat*, 937 F.2d 589, 19 USPQ2d 1289 (Fed. Cir. 1991); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985).

Since the analysis employed in an obviousness-type double patenting determination parallels the guide-

lines for a 35 U.S.C. 103(a) rejection, the factual inquiries set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), that are applied for establishing a background for determining obviousness under 35 U.S.C. 103 are employed when making an obvious-type double patenting analysis. These factual inquiries are summarized as follows:

(A) Determine the scope and content of a patent claim and the prior art relative to a claim in the application at issue;

(B) Determine the differences between the scope and content of the patent claim and the prior art as determined in (A) and the claim in the application at issue;

(C) Determine the level of ordinary skill in the pertinent art; and

(D) Evaluate any objective indicia of nonobviousness.

The conclusion of obviousness-type double patenting is made in light of these factual determinations.

Any obviousness-type double patenting rejection should make clear:

(A) The differences between the inventions defined by the conflicting claims — a claim in the patent compared to a claim in the application; and

(B) The reasons why a person of ordinary skill in the art would conclude that the invention defined in the claim in issue is an obvious variation of the invention defined in a claim in the patent.

When considering whether the invention defined in a claim of an application is an obvious variation of the invention defined in the claim of a patent, the disclosure of the patent may not be used as prior art. This does not mean that one is precluded from all use of the patent disclosure.

The specification can always be used as a dictionary to learn the meaning of a term in the patent claim. *In re Boylan*, 392 F.2d 1017, 157 USPQ 370 (CCPA 1968). Further, those portions of the specification which provide support for the patent claims may also be examined and considered when addressing the issue of whether a claim in the application defines an obvious variation of an invention claimed in the patent. *In re Vogel*, 422 F.2d 438, 441-42, 164 USPQ 619, 622 (CCPA 1970). The court in *Vogel* recognized "that it is most difficult, if not meaning-

less, to try to say what is or is not an obvious variation of a claim," but that one can judge whether or not the invention claimed in an application is an obvious variation of an embodiment disclosed in the patent which provides support for the patent claim. According to the court, one must first "determine how much of the patent disclosure pertains to the invention claimed in the patent" because only "[t]his portion of the specification supports the patent claims and may be considered." The court pointed out that "this use of the disclosure is not in contravention of the cases forbidding its use as prior art, nor is it applying the patent as a reference under 35 U.S.C. 103, since only the disclosure of the invention claimed in the patent may be examined."

### (a)    One-Way Obviousness

If the application at issue is the later filed application or both are filed on the same day, only a one-way determination of obviousness is needed in resolving the issue of double patenting, i.e., whether the invention defined in a claim in the application is an obvious variation of the invention defined in a claim in the patent. See, e.g., *In re Berg,* 46 USPQ2d 1226 (Fed. Cir. 1998) (the court applied a one-way test where both applications were filed the same day). If a claimed invention in the application is obvious over a claimed invention in the patent, there would be an unjustified timewise extension of the patent and an obvious-type double patenting rejection is proper. Unless a claimed invention in the application is obvious over a claimed invention in the patent, no double patenting rejection of the obvious-type should be made, but this does not necessarily preclude a rejection based on another type of nonstatutory double patenting (see MPEP § 804, paragraph II.B.2. below).

Similarly, even if the application at issue is the earlier filed application, only a one-way determination of obviousness is needed to support a double patenting rejection in the absence of a finding of: (A) administrative delay on the part of the Office causing delay in prosecution of the earlier filed application; and (B) applicant could not have filed the conflicting claims in a single (i.e., the earlier filed) application. See MPEP § 804, paragraph II.B.1.(b) below.

Form paragraph 8.33 and the appropriate one of form paragraphs 8.34 - 8.37 may be used to make nonstatutory rejections of the obvious-type.

### (b)    Two-Way Obviousness

If the patent is the later filed application, the question of whether the timewise extension of the right to exclude granted by a patent is justified or unjustified must be addressed. A two-way test is to be applied only when the applicant could not have filed the claims in a single application *and* there is administrative delay. *In re Berg,* 46 USPQ2d 1226 (Fed. Cir. 1998) ("The two-way exception can only apply when the applicant could not avoid separate filings, and even then, only if the PTO controlled the rates of prosecution to cause the later filed species claims to issue before the claims for a genus in an earlier application . . . In Berg's case, the two applications could have been filed as one, so it is irrelevant to our disposition who actually controlled the respective rates of prosecution."). In the absence of administrative delay, a one-way test is appropriate. *In re Goodman,* 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993) (applicant's voluntary decision to obtain early issuance of claims directed to a species and to pursue prosecution of previously rejected genus claims in a continuation is a considered election to postpone by the applicant and not administrative delay). Unless the record clearly shows administrative delay by the Office and that applicant could not have avoided filing separate applications, the examiner may use the one-way obviousness determination and shift the burden to applicant to show why a two-way obviousness determination is required.

When making a two-way obviousness determination where appropriate, it is necessary to apply the *Graham* obviousness analysis twice, once with the application claims as the claims in issue, and once with the patent claims as the claims in issue. Where a two-way obviousness determination is required, an obvious-type double patenting rejection is appropriate only where each analysis compels a conclusion that the invention defined in the claims in issue is an obvious variation of the invention defined in a claim in the other application/patent. If either analysis does not compel a conclusion of obviousness, no double patenting rejection of the obvious-type is made, but this does not necessarily preclude a nonstatutory double patenting rejection based on the fundamental reason to prevent unjustified timewise extension of the right to exclude granted by a patent. *In re Schneller,* 397 F.2d 350, 158 USPQ 210 (CCPA 1968).

804                          MANUAL OF PATENT EXAMINING PROCEDURE

Although a delay in the processing of applications before the Office that would cause patents to issue in an order different from the order in which the applications were filed is a factor to be considered in determining whether a one-way or two-way obviousness determination is necessary to support a double patenting rejection, it may be very difficult to assess whether an applicant or the administrative process is primarily responsible for a delay in the issuance of a patent. On the one hand, it is applicant who presents claims for examination and pays the issue fee. On the other hand, the resolution of legitimate differences of opinion that must be resolved in an appeal process or the time spent in an interference proceeding can significantly delay the issuance of a patent. Nevertheless, the reasons for the delay in issuing a patent have been considered in assessing the propriety of a double patenting rejection. Thus, in *Pierce v. Allen B. DuMont Laboratories, Inc.*, 297 F.2d 323, 131 USPQ 340 (3d. Cir. 1961), the court found that administrative delay may justify the extension of patent rights beyond 17 years but "a considered election to postpone acquisition of the broader [patent after the issuance of the later filed application] should not be tolerated." In *Pierce*, the patentee elected to participate in an interference proceeding [after all claims in the application had been determined to be patentable] whereby the issuance of the broader patent was delayed by more than 7 years after the issuance of the narrower patent. The court determined that the second issued patent was invalid on the ground of double patenting. Similarly, in *In re Emert*, 124 F.3d 1458, 44 USPQ2d 1149 (Fed. Cir. 1997), the court found that the one-way test is appropriate where applicants, rather than the Office, had significant control over the rate of prosecution of the application at issue. In support of its finding that the applicants were responsible for delaying prosecution of the application during the critical period, the court noted that the applicants had requested and received numerous time extensions in various filings. More importantly, the court noted, after initially receiving an obviousness rejection of all claims, applicants had waited the maximum period to reply (6 months), then abandoned the application in favor of a substantially identical continuation application, then received another obviousness rejection of all claims, again waited the maximum period to reply, and then again abandoned the application in favor of a second

continuation application substantially identical to the original filing. On the other hand, in *General Foods Corp. v. Studiengesellschaft Kohle mbH*, 972 F.2d 1272, 23 USPQ2d 1839 (Fed. Cir. 1992), the court elected not to hold the patentee accountable for a delay in issuing the first filed application until after the second filed application issued as a patent, even where the patentee had intentionally refiled the first filed application as a continuation-in-part after receiving a Notice of Allowance indicating that all claims presented were patentable. Similarly, where, through no fault of the applicant, the claims in a later filed application issue first, an obvious-type double patenting rejection is improper, in the absence of a two-way obviousness determination, because the applicant does not have complete control over the rate of progress of a patent application through the Office. *In re Braat*, 937 F.2d 589, 19 USPQ2d 1289 (Fed. Cir. 1991). While acknowledging that allowance of the claims in the earlier filed application would result in the timewise extension of an invention claimed in the patent, the court was of the view that the extension was justified under the circumstances in this case, indicating that a double patenting rejection would be proper only if the claimed inventions were obvious over each other — a two-way obviousness determination.

Form paragraph 8.33 and the appropriate one of form paragraphs 8.34-8.37 may be used to make nonstatutory rejections of the obvious type.

¶    *8.33 Basis for Nonstatutory Double Patenting, "Heading" Only*

The nonstatutory double patenting rejection is based on a judicially created doctrine grounded in public policy (a policy reflected in the statute) so as to prevent the unjustified or improper timewise extension of the "right to exclude" granted by a patent and to prevent possible harassment by multiple assignees. See *In re Goodman*, 11 F.3d 1046, 29 USPQ2d 2010 (Fed. Cir. 1993); *In re Longi*, 759 F.2d 887, 225 USPQ 645 (Fed. Cir. 1985); *In re Van Ornum*, 686 F.2d 937, 214 USPQ 761 (CCPA 1982); *In re Vogel*, 422 F.2d 438, 164 USPQ 619 (CCPA 1970); and *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

A timely filed terminal disclaimer in compliance with 37 CFR 1.321(c) may be used to overcome an actual or provisional rejection based on a nonstatutory double patenting ground provided the conflicting application or patent is shown to be commonly owned with this application. See 37 CFR 1.130(b).

Effective January 1, 1994, a registered attorney or agent of record may sign a terminal disclaimer. A terminal disclaimer signed by the assignee must fully comply with 37 CFR 3.73(b).

**Examiner Note:**

This form paragraph is to be used as a heading before a non-statutory double patenting rejection using any of form paragraphs 8.34 - 8.39.

*¶ 8.34 Rejection, Obviousness Type Double Patenting - No Secondary Reference(s)*

Claim [1] rejected under the judicially created doctrine of obviousness-type double patenting as being unpatentable over claim [2] of U.S. Patent No. [3]. Although the conflicting claims are not identical, they are not patentable distinct from each other because [4].

**Examiner Note:**

1. This paragraph is used for obviousness-type double patenting rejections based upon a patent.
2. If the obviousness-type double patenting rejection is based upon another application, do not use this paragraph. A provisional double patenting rejection should be made using form paragraphs 8.33 and 8.35 or 8.37.
3. This paragraph may be used where the conflicting invention is claimed in a patent which is:
(a) by the same inventive entity, or
(b) by a different inventive entity and is commonly assigned even though there is no common inventor, or
(c) not commonly assigned but has at least one inventor in common.
4. Form paragraph 8.33 must precede any one of paragraphs 8.34 to 8.39 and must be used only ONCE in an Office action.
5. In bracket 3, insert the number of the patent.
6. If evidence indicates that the conflicting patent is prior art under 35 U.S.C. 102(f) or (g), a rejection should additionally be made under 102(f)/103(a) or 102(g)/103(a) using paragraph 7.21.
7. If the patent is to another inventive entity and has an earlier U.S. filing date, a rejection under 35 U.S.C. 102(e)/103(a) may be made using form paragraph 7.21.02. For applications filed on or after November 29, 1999, rejections under 35 U.S.C. 102(e)/103(a) should not be made or maintained if the applicant provides evidence that the subject matter of the reference and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.
8. In bracket 4, provide appropriate rationale of obviousness for any claims being rejected over the claims of the cited patent.

*¶ 8.35 Provisional Rejection, Obviousness Type Double Patenting - No Secondary Reference(s)*

Claim [1] provisionally rejected under the judicially created doctrine of obviousness-type double patenting as being unpatentable over claim [2] of copending Application No. [3]. Although the conflicting claims are not identical, they are not patentably distinct from each other because [4].

This is a provisional obviousness-type double patenting rejection because the conflicting claims have not in fact been patented.

**Examiner Note:**

1. This paragraph should be used when the conflicting claims are in another copending application.

2. If the conflicting claims are in a patent, do not use this paragraph. Use form paragraphs 8.33 and 8.34.
3. This paragraph may be used where the conflicting claims are in a copending application that is:
(a) by the same inventive entity, or
(b) is commonly assigned even though there is no common inventor, or
(c) not commonly assigned but has at least one common inventor.
4. Form paragraph 8.33 must precede any one of paragraphs 8.34 to 8.39 and must be used only ONCE in an office action.
5. If the conflicting application is currently commonly assigned but the file does not establish that the conflicting inventions were commonly owned at the time the later invention was made, form paragraph 8.28 may be used in place of or in addition to this form paragraph to also resolve any issues relating to priority under 102(f) and/or (g).
6. In bracket 3, insert the number of the conflicting application.
7. A provisional double patenting rejection should also be made in the conflicting application.
8. If evidence shows that either application is prior art unto the other under 35 U.S.C. 102(f) or (g) and the copending application has not been disqualified as prior art in a 103 rejection based on common ownership), a rejection should additionally be made in the other application under 35 U.S.C. 102(f)/103(a) or 102(g)/103(a) using paragraph 7.21.
9. If the disclosure of one application may be used to support a rejection of the other and the applications have different inventive entities and different U.S. filing dates, use paragraph 7.21.01 to additionally make a rejection under 35 U.S.C. 102(e)/103(a) rejection in the other application. For applications filed on or after November 29, 1999, rejections under 35 U.S.C. 102(e)/103(a) should not be made or maintained if the applicant provides evidence that the subject matter of the reference and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.
10. In bracket 4, provide appropriate rationale for obviousness of claims being rejected over the claims of the cited patent.

*¶ 8.36 Rejection, Obviousness Type Double Patenting - With Secondary Reference(s)*

Claim [1] rejected under the judicially created doctrine of obviousness-type double patenting as being unpatentable over claim [2] of U.S. Patent No. [3] in view of [4]. [5]

**Examiner Note:**

1. This paragraph is used for obviousness-type double patenting rejections where the primary reference is a conflicting patent.
2. If the obviousness double patenting rejection is based on another application, do not use this paragraph. A provisional obviousness-type double patenting rejection should be made using form paragraphs 8.33 and 8.35 or 8.37.
3. This paragraph may be used where the prior invention is claimed in a patent which is:
(a) by the same inventive entity, or
(b) by a different inventive entity and is commonly assigned even though there is no common inventor, or

804                     MANUAL OF PATENT EXAMINING PROCEDURE

(c) not commonly assigned but has at least one common inventor.

4.    Form paragraph 8.33 must precede any one of paragraphs 8.34 to 8.39 and must be used only ONCE in an office action.

5.    In bracket 3, insert the number of the conflicting patent.

6.    In bracket 4, insert the secondary reference.

7.    In bracket 5, insert an explanation of the obviousness-type rejection.

8.    If evidence shows that the conflicting patent is prior art under 35 U.S.C. 102(f) or (g), a rejection should additionally be made under 35 U.S.C. 102(f)/103(a) or 102(g)/103(a) using paragraph 7.21.

9.    If the patent issued to a different inventive entity and has an earlier U.S. filing date, a rejection under 35 U.S.C. 102(e)/103(a) may be made using paragraphs 7.15.02 or 7.21.02. For applications filed on or after November 29, 1999, rejections under 35 U.S.C. 102(e)/103(a) should not be made or maintained if the applicant provides evidence that the subject matter of the reference and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

¶ 8.37 Provisional Rejection, Obviousness Type Double Patenting - With Secondary Reference(s)

Claim [1] provisionally rejected under the judicially created doctrine of obviousness-type double patenting as being unpatentable over claim [2] of copending Application No. [3] in view of [4]. [5]

This is a provisional obviousness-type double patenting rejection.

**Examiner Note:**

1.    This paragraph is used for obviousness-type double patenting rejections where the primary reference is a conflicting application.

2.    If the conflicting claims are in a patent, do not use this paragraph, use form paragraph 8.34.

3.    This paragraph may be used where the conflicting claims are in a copending application that is:

(a) by the same inventive entity, or

(b) is commonly assigned even though there is no common inventor, or

(c) not commonly assigned but has at least one common inventor.

4.    Form paragraph 8.33 must precede any one of paragraphs 8.34 to 8.39 and must be used only ONCE in an office action.

5.    If the conflicting cases are currently commonly owned but the file does not establish that the conflicting inventions were commonly owned at the time the later invention was made, form paragraph 8.28 may be used in place of or in addition to this form paragraph to also resolve any issues relating to priority under 102(f) and/or (g).

6.    In bracket 3, insert the number of the conflicting application.

7.    In bracket 4, insert the secondary reference.

8.    In bracket 5, insert an explanation of the obviousness-type rejection.

9.    A provisional double patenting rejection should also be made in the conflicting application.

10.   If evidence shows that either application is prior art unto the other under 35 U.S.C. 102(f) or (g) and the copending application has not been disqualified as prior art in a 35 U.S.C. 103(a) rejection based on common ownership, a rejection should additionally be made under 35 U.S.C. 102(f)/103(a) or 102(g)/103(a) using paragraph 7.21.

11.   If the disclosure of one application may be used to support a rejection of the other and the applications have different inventive entities and different U.S. filing dates, use paragraph 7.21.01 to additionally make a rejection under 35 U.S.C. 102(e)/103(a). For applications filed on or after November 29, 1999, rejections under 35 U.S.C. 102(e)/103(a) should not be made or maintained if the applicant provides evidence that the subject matter of the reference and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

## 2.    Another Type of Nonstatutory Double Patenting Rejection

There are some unique circumstances where it has been recognized that another type of nonstatutory double patenting rejection is applicable even where the inventions claimed in two or more applications/patents are considered nonobvious over each other. These circumstances are illustrated by the facts before the court in *In re Schneller*, 397 F.2d 350, 158 USPQ 210 (CCPA 1968). In affirming the double patenting rejection, the court summed up the situation:

in appellant's own terms: The combination ABC was old. He made two improvements on it, (1) adding X and (2) adding Y, the result still being a unitary clip of enhanced utility. While his invention can be practiced in the forms ABCX or ABCY, the greatest advantage and best mode of practicing the invention as disclosed is obtained by using both inventions in the combination ABCXY. His first application disclosed ABCXY and other matters. He obtained a patent claiming [a clip comprising] BCX and ABCX, . . . *so* claiming these combinations as to cover them *no matter what other feature is incorporated in them*, thus *covering effectively ABCXY*. He now, many years later, seeks more claims directed to ABCY *and ABCXY*. Thus, protection he already had would be extended, albeit in somewhat different form, for several years beyond the expiration of his patent, were we to reverse.

397 F.2d at 355-56, 158 USPQ at 216 (emphasis in original).

The court recognized that "there is no double patenting in the sense of claiming the same invention because ABCX and ABCY are, in the technical patent law sense, different inventions. The rule against 'double patenting,' however, is not so circumscribed. The

fundamental reason for the rule is to *prevent unjustified timewise extension of the right to exclude* granted by a patent no matter how the extension is brought about. To . . . prevail here, appellant has the burden of establishing that the invention claimed in his patent is 'independent and distinct' from the invention of the appealed claims...appellant has clearly not established the independent and distinct character of the inventions of the appealed claims." 397 F.2d at 354-55, 158 USPQ at 214-15 (emphasis in original). The court observed:

> The controlling fact is that patent protection for the clips, fully disclosed in and covered by the claims of the patent, would be extended by allowance of the appealed claims. Under the circumstance of the instant case, wherein we find no valid excuse or mitigating circumstances making it either reasonable or equitable to make an exception, and wherein there is no terminal disclaimer, the rule against "double patenting" must be applied.

397 F.2d at 355, 158 USPQ at 215.

The decision in *In re Schneller* did not establish a rule of general application and thus is limited to the particular set of facts set forth in that decision. The court in *Schneller* cautioned "against the tendency to freeze into rules of general application what, at best, are statements applicable to particular fact situations." *Schneller*, 397 F.2d at 355, 158 USPQ at 215. Nonstatutory double patenting rejections based on *Schneller* **will be rare.** The Technology Center (TC) Director must approve any nonstatutory double patenting rejections based on *Schneller*. If an examiner determines that a double patenting rejection based on *Schneller* is appropriate in his or her application, the examiner should first consult with his or her supervisory patent examiner (SPE). If the SPE agrees with the examiner then approval of the TC Director must be obtained before such a nonstatutory double patenting rejection can be made.

A fact situation similar to that in *Schneller* was presented to a Federal Circuit panel in *In re Kaplan*, 789 F.2d 1574, 229 USPQ 678 (Fed. Cir. 1986). Kaplan had been issued a patent on a process of making chemicals in the presence of an organic solvent. Among the organic solvents disclosed and claimed as being useful were tetraglyme and sulfolane. One unclaimed example in the patent was specifically directed to a mixture of these two solvents. The claims in the application to Kaplan and Walker, the

application before the Office, were directed to essentially the same chemical process, but requiring the use of the solvent mixture of tetraglyme and sulfolane. In reversing the double patenting rejection, the court stated that the mere fact that the broad process claim of the patent requiring an organic solvent reads on or "dominates" the narrower claim directed to basically the same process using a specific solvent mixture does not, *per se*, justify a double patenting rejection. The court also pointed out that the double patenting rejection improperly used the disclosure of the joint invention (solvent mixture) in the Kaplan patent specification as though it were prior art.

A significant factor in the *Kaplan* case was that the broad invention was invented by Kaplan, and the narrow invention (i.e., using a specific combination of solvents) was invented by Kaplan and Walker. Since these applications (as the applications in *Braat*) were filed before the Patent Law Amendments Act of 1984 (Pub. Law 98-622, November 8, 1984) amending 35 U.S.C. 116 to expressly authorize filing a patent application in the names of joint inventors who did not necessarily make a contribution to the invention defined in each claim in the patent, it was necessary to file multiple applications to claim both the broad and narrow inventions. Accordingly, there was a valid reason, driven by statute, why the claims to the specific solvent mixture were not presented for examination in the Kaplan patent application.

Each double patenting situation must be decided on its own facts.

Form paragraph 8.33 and the appropriate one of form paragraphs 8.38 (between an issued patent and one or more applications) and 8.39 (provisional rejections) may be used to make this type of nonstatutory double patenting rejection.

¶ *8.38 Double Patenting - Non-Statutory (Based Solely on Improper Timewise Extension of Patent Rights) With a Patent*

Claim [1] rejected under the judicially created doctrine of double patenting over claim [2] of U. S. Patent No. [3] since the claims, if allowed, would improperly extend the "right to exclude" already granted in the patent.

The subject matter claimed in the instant application is fully disclosed in the patent and is covered by the patent since the patent and the application are claiming common subject matter, as follows: [4]

Furthermore, there is no apparent reason why applicant was prevented from presenting claims corresponding to those of the instant application during prosecution of the application which

matured into a patent. See *In re Schneller*, 397 F.2d 350, 158 USPQ 210 (CCPA 1968). See also MPEP § 804.

**Examiner Note:**

1.   This form paragraph should only be used where approval from the TC Director to make a nonstatutory double patenting rejection based on *In re Schneller* has been obtained.

2.   Use this form paragraph only when the subject matter of the claim(s) is fully disclosed in, and covered by at least one claim of, an issued U.S. Patent which is commonly owned or where there is common inventorship (one or more inventors in common).

3.   In bracket 3, insert the number of the patent.

4.   In bracket 4, insert a description of the subject matter being claimed which is covered in the patent.

5.   Form paragraph 8.33 must precede any one of form paragraphs 8.34 to 8.39 and must be used only ONCE in an Office action.

6.   If evidence indicates that the conflicting patent is prior art under 35 U.S.C. 102(f) or (g), a rejection should additionally be made under 35 U.S.C. 102(f)/103(a) or 102(g)/103(a) using form paragraph 7.21.

7.   If the patent is to another inventive entity and has an earlier U.S. filing date, a rejection under 35 U.S.C. 102(e)/103(a) may be made using paragraph 7.21.02. For applications filed on or after November 29, 1999, rejections under 35 U.S.C. 102(e)/103(a) should not be made or maintained if the applicant provides evidence that the subject matter of the reference and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

¶ 8.39 Double Patenting - Non-Statutory (Based Solely on Improper Timewise Extension of Patent Rights) With Another Application

Claim **[1]** provisionally rejected under the judicially created doctrine of double patenting over claim **[2]** of copending Application No. **[3]**. This is a provisional double patenting rejection because the conflicting claims have not in fact been patented.

The subject matter claimed in the instant application is fully disclosed in the referenced copending application and would be covered by any patent granted on that copending application since the referenced copending application and the instant application are claiming common subject matter, as follows:  **[4]**

Furthermore, there is no apparent reason why applicant would be prevented from presenting claims corresponding to those of the instant application in the other copending application. See *In re Schneller*, 397 F.2d 350, 158 USPQ 210 (CCPA 1968). See also MPEP § 804.

**Examiner Note:**

1.   This form paragraph should only be used where approval from the TC Director to make a nonstatutory double patenting rejection based on *In re Schneller* has been obtained.

2.   Use this form paragraph only when the subject matter of the claim(s) is fully disclosed in, and covered by at least one claim of, another copending application which is commonly owned or where there is common inventorship (one or more inventors in common).

3.   In bracket 3, insert the number of the conflicting application.

4.   In bracket 4, insert a description of the subject matter being claimed which is covered in the copending application.

5.   Form paragraph 8.33 must precede any one of form paragraphs 8.34 to 8.39 and must be used only ONCE in an office action.

6..  If the conflicting application is currently commonly assigned but the file does not establish that the conflicting inventions were commonly owned at the time the later invention was made, form paragraph 8.28 may be used in place of or in addition to this form paragraph to also resolve any issues relating to priority under 35 U.S.C. 102(f) and/or (g).

7.   A provisional double patenting rejection should also be made in the conflicting application.

8.   If evidence shows that either application is prior art unto the other under 35 U.S.C. 102(f) or (g) and the copending application has not been disqualified (as prior art in a 103 rejection based on common ownership), a rejection should additionally be made in the other application under 35 U.S.C. 102(f)/103(a) or 102(g)/103(a) using paragraph 7.21.

9.   If the disclosure of one application may be used to support a rejection of the other and the applications have different inventive entities and different U.S. filing dates, use paragraph 7.21.01 to additionally make a rejection under 35 U.S.C. 102(e)/103(a). For applications filed on or after November 29, 1999, rejections under 35 U.S.C. 102(e)/103(a) should not be made or maintained if the applicant provides evidence that the subject matter of the reference and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

### 3.    Design/Plant — Utility Situations

Double patenting issues may be raised where an applicant has filed both a utility patent application (35 U.S.C. 111) and either an application for a plant patent (35 U.S.C. 161) or an application for a design patent (35 U.S.C. 171). In general, the same double patenting principles and criteria that are applied in utility-utility situations are applied to utility-plant or utility-design situations. Double patenting rejections in utility-plant situations may be made in appropriate circumstances.

Although double patenting is rare in the context of utility versus design patents, a double patenting rejection of a pending design or utility application can be made on the basis of a previously issued utility or design patent, respectively. *Carman Indus. Inc. v. Wahl*, 724 F.2d 932, 220 USPQ 481 (Fed. Cir. 1983). The rejection is based on the public policy preventing the extension of the term of a patent. Double patenting may be found in a design-utility situation irrespective of whether the claims in the patent relied on in the rejection and the claims in issue involve the same

invention, or whether they involve inventions which are obvious variations of one another. *In re Thorington*, 418 F.2d 528, 163 USPQ 644 (CCPA 1969).

In *Carman Indus.*, the court held that no double patenting existed between a design and utility patent since the claims in the utility patent, drawn to the interior construction of a flow promoter, were not directed to the same invention or an obvious variation of the invention claimed in a design patent directed to the visible external surface configuration of a storage bin flow promoter. The majority opinion in this decision appears to indicate that a two-way obviousness determination is necessary in design-utility cases. 724 F.2d at 940-41, 220 USPQ at 487-88. But see *Carman Indus.* (J. Nies, concurring).

In *Thorington*, the court affirmed a double patenting rejection of claims for a fluorescent light bulb in a utility patent application in view of a previously issued design patent for the same bulb. In another case, a double patenting rejection of utility claims for a finger ring was affirmed in view of an earlier issued design patent, where the drawing in both the design patent and the utility application illustrated the same article. *In re Phelan*, 205 F.2d 183, 98 USPQ 156 (CCPA 1953). A double patenting rejection of a design claim for a flashlight cap and hanger ring was affirmed over an earlier issued utility patent. *In re Barber*, 81 F.2d 231, 28 USPQ 187 (CCPA 1936). A double patenting rejection of claims in a utility patent application directed to a balloon tire construction was affirmed over an earlier issued design patent. *In re Hargraves*, 53 F.2d 900, 11 USPQ 240 (CCPA 1931).

## III. CONTRAST BETWEEN DOUBLE PATENTING REJECTION AND REJECTIONS BASED ON PRIOR ART

Rejections over a patent or another copending application based on double patenting or 35 U.S.C. 103(a) are similar in the sense that both require comparison of the claimed subject matter with at least part of the content of another patent or application, and both may require that an obviousness analysis be made. However, there are significant differences between a rejection based on double patenting and one based on 35 U.S.C. 102(e) prior art under

35 U.S.C. 103(a). *In re Bartfeld*, 925 F.2d 1450, 17 USPQ2d 1885 (Fed. Cir. 1991).

One significant difference is that a double patenting rejection must rely on a comparison with the claims in an issued or to be issued patent, whereas an obviousness rejection based on the same patent under 35 U.S.C. 102(e)/103(a) relies on a comparison with what is disclosed (whether or not claimed) in the same issued or to be issued patent. In a 35 U.S.C. 102(e)/103(a) rejection over a prior art patent, the reference patent is available for all that it fairly discloses to one of ordinary skill in the art, regardless of what is claimed. *In re Bowers*, 359 F.2d 886, 149 USPQ 570 (CCPA 1966).

A second significant difference is that a terminal disclaimer cannot be used to obviate a rejection based on 35 U.S.C. 102(e)/103(a) prior art. *In re Fong*, 378 F.2d 977, 154 USPQ 25 (CCPA 1967). The purpose of a terminal disclaimer is to obviate a double patenting rejection by removing the potential harm to the public by issuing a second patent, and not to remove a patent as prior art.

Where the inventions are made by inventors that have assigned their rights to a common assignee, the assignee can take some preemptive measures to avoid having a copending application become prior art under 35 U.S.C. 102(e). The applications can be filed on the same day, or copending applications can be merged into a single continuation-in-part application and the parent applications abandoned. If these steps are undesirable or the first patent has issued, the prior art effect of the first patent may be avoided by a showing under 37 CFR 1.132 that any unclaimed invention disclosed in the first patent was derived from the inventor of the application before the examiner in which the 35 U.S.C. 102(e)/103(a) rejection was made. *In re Katz*, 687 F.2d 450, 215 USPQ 14 (CCPA 1982). See also MPEP § 716.10. It may also be possible for applicant to respond to a 35 U.S.C. 102(e)/103(a) rejection by showing, under 37 CFR 1.131, that the date of invention of the claimed subject matter was prior to the effective filing date of the reference patent which has been relied upon for its unclaimed disclosure. See MPEP § 715. See also 37 CFR 1.130 and MPEP § 718 for affidavits or declarations to disqualify a commonly owned patent as prior art under 35 U.S.C. 103.

Because there are significant differences between a rejection based on double patenting and one based on prior art under 35 U.S.C. 102(e)/103 over the same issued patent, it is both appropriate and necessary that an examiner make both rejections when the facts support both rejections. A prior art reference that renders claimed subject matter obvious under 35 U.S.C. 102(e)/103(a) does not create a double patenting situation where that subject matter is not claimed in the reference patent. Where the subject matter that renders a claim obvious is both claimed and disclosed in a U.S. patent which satisfies the criteria of 35 U.S.C. 102(e), the examiner should make rejections based both on double patenting and 35 U.S.C. 103(a). For applications filed on or after November 29, 1999, rejections under 35 U.S.C. 102(e)/103(a) should not be made or maintained if the applicant provides evidence that the subject matter of the reference and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

## 804.01    Prohibition of Double Patenting Rejections Under 35 U.S.C. 121

35 U.S.C. 121 authorizes the Commissioner to restrict the claims in a patent application to a single invention when independent and distinct inventions are presented for examination. The third sentence of 35 U.S.C. 121 prohibits the use of a patent issuing on an application with respect to which a requirement for restriction has been made, or on an application filed as a result of such a requirement, as a reference against any divisional application, if the divisional application is filed before the issuance of the patent. The 35 U.S.C. 121 prohibition applies only where the Office has made a requirement for restriction. The prohibition does not apply where the divisional application was voluntarily filed by the applicant and not in response to an Office requirement for restriction. This apparent nullification of double patenting as a ground of rejection or invalidity in such cases imposes a heavy burden on the Office to guard against erroneous requirements for restrictions where the claims define essentially the same invention in different language and which, if acquiesced in, might result in the issuance of several patents for the same invention.

The prohibition against holdings of double patenting applies to requirements for restriction between the related subjects treated in MPEP § 806.04 through § 806.05(i), namely, between combination and subcombination thereof, between subcombinations disclosed as usable together, between process and apparatus for its practice, between process and product made by such process and between apparatus and product made by such apparatus, etc., so long as the claims in each application are filed as a result of such requirement.

The following are situations where the prohibition of double patenting rejections under 35 U.S.C. 121 does not apply:

(A) The applicant voluntarily files two or more applications without a restriction requirement by the examiner. *In re Schneller*, 397 F.2d 350, 158 USPQ 210 (CCPA 1968).

(B) The claims of the different applications or patents are not consonant with the restriction requirement made by the examiner, since the claims have been changed in material respects from the claims at the time the requirement was made. For example, the divisional application filed includes additional claims not consonant in scope to the original claims subject to restriction in the parent. *Symbol Technologies, Inc. v. Opticon, Inc.*, 935 F.2d 1569, 19 USPQ2d 1241 (Fed. Cir. 1991) and *Gerber Garment Technology, Inc. v. Lectra Systems, Inc.*, 916 F.2d 683, 16 USPQ2d 1436 (Fed. Cir. 1990). In order for consonance to exist, the line of demarcation between the independent and distinct inventions identified by the examiner in the requirement for restriction must be maintained. 916 F.2d at 688, 16 USPQ2d at 1440.

(C) The restriction requirement was written in a manner which made it clear to applicant that the requirement was made subject to the nonallowance of generic or other linking claims and such generic or linking claims are subsequently allowed. Therefore, if a generic or linking claim is subsequently allowed, the restriction requirement must be withdrawn.