UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

--------------------------------------------------------- X
LEVITON MANUFACTURING CO., INC.,                           :

                Plaintiff,                 :

      v.                                                 :

UNIVERSAL SECURITY INSTRUMENTS,                            :    Civil Action No. 01 CV 3855 AMD
INC., *et al.,*

                Defendants.                :

--------------------------------------------------------- X

**PLAINTIFF LEVITON MANUFACTURING CO., INC.'S**
**OPPOSITION TO DEFENDANTS' EMERGENCY MOTION**
**FOR TEMPORARY RESTRAINING ORDER AND PROTECTIVE ORDER**

      The Plaintiff, Leviton Manufacturing Company, Inc. ("Leviton"), by its undersigned

counsel, respectfully submits this Opposition to Defendants' Emergency Motion for Temporary

Restraining Order and Protective Order.  Specifically, Leviton submits that Defendants are not

entitled to a temporary restraining order as Leviton's March 11, 2003 press release is neither

false nor misleading; in fact, Leviton's press release is truthful and accurate.

      In particular, recent deposition testimony has revealed  that the packaging of Defendants'

GFCIs, which bears a prominent logo, "DESIGNED & ENGINEERED IN THE USA" together

with the American Flag in red, white and blue (Ex. A hereto), is patently false and highly

misleading in conveying to Defendants' customers that their knock offs of Leviton's patented

GFCIs originate in the United States.

      The truth is that Defendants' copies of Leviton's GFCIs were "designed & engineered" in

the People's Republic of China by Defendants' supplier, Yatai, who "employs" "200 or 300"

minors, some as young as *nine years old*, to assemble the infringing products in two large rooms in a building with "no windows."  Defendants' supplier of the infringing GFCIs pays these children "less than $1 a day."  *See* Deposition of Naim Perry at 317-18 (attached hereto as Exhibit B).  Leviton submits that Defendants' attempts to suppress Leviton's speech concerning their exploitation of child labor is against the public interest.

## STATEMENT OF FACTS

**I.    The Procedural Status of this Action**

This action was commenced on December 13, 2001.  On January 22, 2002, the Defendants moved to dismiss the Complaint.  On April 5, 2002, Defendants' motion to dismiss Leviton's claim of patent infringement was denied.  On April 22, 2002, Leviton filed its First Amended Complaint, re-asserting its cause of action against the Defendants for infringement of Leviton's United States Patent No. 4,595,894 (the "'894 Patent"), entitled "Ground Fault Circuit Interrupting System."

On May 28, 2002, the Defendants filed their Joint Answer and Counterclaim to the First Amended Complaint, along with a Motion to Disqualify Paul J. Sutton and the Firm of Greenberg Traurig based upon many of the same issues that were denied by this Court in the Defendants' first motion to dismiss.  On July 29, 2002, a hearing was held before Judge Andre M. Davis and the motion to disqualify was summarily denied from the bench.  (Ex. C hereto).

Discovery in this matter has taken longer, and has been more difficult, than expected. Defendants have made only a partial production of documents and have declined to provide complete answers to Leviton's interrogatories.  On December 31, 2002, Leviton moved to compel this discovery.  On February 21, 2003, Leviton also moved for an extension of time to complete discovery.  On March 20, 2003, Leviton also moved to compel production of certain documents currently being withheld by Defendants on the basis of the attorney-client privilege

on the grounds that Defendants have waived the privilege by selectively producing privileged documents. The motions are set for an April 17, 2003 hearing.

Notwithstanding the incomplete document discovery, on February 12, 2003, Leviton went forward with the deposition of Defendants pursuant to Rule 30(b)(6), Fed. R. Civ. P., by Defendants' president, Harvey B. Grossblatt, excerpts of which are appended hereto as Exhibit D hereto.

## II.    The Patent and Related Lawsuits

During 2001, Leviton filed thirteen (13) patent infringement complaints, in various United States District Courts, against  number of entities importing and selling infringing GFCIs.[1] A number of these entities have settled with Leviton for valuable consideration, not "token" payments as Defendants allege at page 2 of their motion, have stipulated to the validity and infringement of the '894 Patent, and consented to a judgment and injunctive relief. At least ten (10) such litigations have been settled by Confidential Settlement Agreements, ranging from minimal to substantial amounts of damages.

As noted in the briefing in connection with Defendants' frivolous motion to disqualify counsel, the '894 Patent issued as filed, without any prosecution or amendments of any kind to the claims. The PTO made a "first" error in the printing of claim 1 of the patent, by obviously omitting some of the words, and granted a "First Certificate of Correction" in 1988. However, the language of the First Certificate of Correction contained a "second" error on the part of the PTO containing a mistake in the identification of the column and line numbers which defined the intended location for the insertion of the missing words in claim 1. This second error simply

---

[1] These entities include:   Brite USA, HML, Yueqing Huameili Electronic Co., Ltd., Jiamei Electrical Engineering Co., Ltd., Leen & Associates d/b/a The Designer's Edge, Maloy Inc., Morris Products Inc., Naim Perry, Pro Line Products, Inc., The Reeves Company Inc., Sammax International Limited, Shanghai Huizhong Mechanical & Electric Technology Enterprises Company, TBA LLC and Tower Manufacturing Corporation.

inserted the missing words of claim 1 in the wrong place. Later, the PTO granted a Second Certificate of Correction on December 11, 2001, which expressly replaced the 1988 First Certificate of Correction, and corrected the location for the insertion of the missing words in claim 1. As this Court stated in ruling on Defendants' motion to disqualify counsel, the issue of the Certificates of Correction are no longer part of this case (Ex. C, page 4) as is the propriety of their issuance. (Ex. C, page 10).

Similarly, Judge Pregerson, in the Central District of California case against defendant Orbit and others, ruled that the '894 Patent was valid on the basis of the First Certificate of Correction alone, holding that claim 1 was not indefinite and was understandable as required by the statute, 35 U.S.C. §112.

On July 23, 2002, Leviton filed a Complaint with the United States International Trade Commission alleging violation of section 337 of the Tariff Act of 1930, as amended. The Notice of Investigation named Leviton as the Complainant. The Respondents named in the Notice of Investigation include Yueqing Huameili Electronic Co., Ltd., and Van-Sheen Electric Appliance Co., Ltd. Van-Sheen Electric Appliance Co. Ltd. is the manufacturer and source of the infringing GFCIs for the Defendants in this action.

The '894 Patent expires on June 17, 2003, a fact discussed by the parties and the ALJ during the Preliminary Conference held at the ITC on October 23, 2002. Indeed, during that conference, Leviton made it clear that it would have to obtain relief, if at all, through summary determination motion practice. (*See* Preliminary Conference Tr., at 15:1-6; attached hereto as Exhibit E). Leviton therefore filed the first of its summary determination motions on January 8, 2003, seeking summary determination that certain of Respondents' GFCI products infringe claim 1 of the '894 Patent ("Infringement Motion"). On January 22, 2003 Leviton filed its Motion for

Summary Determination of Validity and Enforceability for the '894 Patent ("Validity Motion"). Respondents HML and Van-Sheen filed an opposition to the Infringement Motion, on January 27, 2003 and an Opposition and Conditional Cross-Motion for Summary Determination that the '894 Patent is Invalid and Unenforceable ("Cross-Motion") on February 14, 2003.

On March 17, 2003, the ALJ issued Order No. 11, denying Leviton's Validity Motion and granting, in part, Respondents' Cross-Motion. (*See* Order No. 11 at 23; attached hereto as Exhibit F). The Administrative Law Judge in Order No. 11, issued the determination based, at best, upon an incomplete and improper construction of the asserted claims of the '894 Patent. Specifically, the ALJ found the claims invalid as anticipated by a prior Leviton patent, U.S. Patent No. 4,386,338 (the "'338 Patent"). Order No. 11 therefore contains numerous errors of fact and law with respect to the '894 Patent, the '338 Patent, the law of anticipation and the law governing summary determination.

However, the Federal Circuit has long held that the ITC's decisions concerning patent infringement or validity cannot have claim preclusive effect in district courts. *See, Texas Instruments Inc. v. Cypress Semiconductor Corporation,* 90 F.3d 1558, 1569 (Fed. Cir. 1996); *Bio-Technology General Corp. v. Genentech, Inc.,* 80 F.3d 1553, 1563-64 (Fed. Cir. 1996); s*ee also, Texas Instruments Inc. v. United States Int'l Trade Comm'n,* 851 F.2d 342, 344, 7 USPQ 2d 1509, 1510 (Fed. Cir. 1988) (stating that ITC determinations regarding patent issues should be given no collateral estoppel effect); *Corning Glass Works v. United States Int'l Trade Comm'n,* 799 F.2d 1559, 1570 n. 12, 230 USPQ 822, 830 n. 12 (Fed. Cir. 1986) (stating that the legislative history of the Trade Reform Act supports the position that ITC decisions have no preclusive effect in district courts).

Courts have gone as far to caution that prior verdicts and/or determinations may confuse juries. *See Texas Instruments v. Cypress Semiconductor* at 1569 n. 11; *see also, Mendenhall v. Cedarapids, Inc.,* 5 F.3d 1557, 1566-75, 28 USPQ2d 1081, 1089-97 (Fed. Cir. 1993) (affirming the trial judge's exclusion of evidence concerning other litigation involving the same patents), *cert. denied,* 511 U.S. 1031, 114 S.Ct. 1540, 128 L.Ed.2d 192 (1994).

## III.    Defendants Conduct In The GFCI Market Place And On This Motion

### A.    Defendants Falsely And Misleadingly Represent That Their GFCIs Are Designed And Engineered in the United States

Defendants complain the Leviton's press release misrepresents the origin of Defendants' GFCIs as being manufactured in the United States when their packages confirm that the GFCIs are made in China.  (TRO Motion, page 4).  In support of this assertion, Defendants attach an example of their packaging as Exhibit D to their motion .

The copy of Defendants' Exhibit D served on counsel to Leviton is a black and white copy and is difficult to read in its entirety at the bottom.  We are unsure how legible the Court's copy is.

In either event, the pertinent portion of Defendants' packaging reads as follows:



See also Exhibit A hereto.

As shown above, Defendants' GFCI packaging uses an in-color American Flag logo:



See Ex. A hereto.  As shown, Defendants' logo utilizes the capitalized words DESIGNED AND ENGINEERED together with the large capitalized words IN THE USA to represent to their customers and the public that Defendants' GFCIs are made, i.e., "engineered" and designed by engineers in the United States.

Unfortunately, Defendants' marketplace representations are untrue.  Defendants testified

**REDACTED (FILED UNDER SEAL** _____

_____

_____

_____

The following Rule 30(b)(6), Fed. R. Civ. P., testimony by Defendants' is illustrative of their deceit upon the public:

**REDACTED (FILED UNDER SEAL)**

\*        \*        \*        \*

**REDACTED (FILED UNDER SEAL)**

**REDACTED (FILED UNDER SEAL)**

**REDACTED (FILED UNDER SEAL)**

REDACTED (FILED UNDER SEAL)

## ARGUMENT

### III.    Motion For Preliminary Injunction

A preliminary injunction is an "extraordinary remed[y] involving the exercise of very far-reaching power, which is to be applied in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1991)).   Under Fourth Circuit precedent, in order to obtain a preliminary injunction, a petitioner must meet the well-settled "hardship balancing" test of *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1977).   Under *Blackwelder*, the court considers four factors:  (1) the likelihood of irreparable harm to petitioner if the preliminary injunction is denied; (2) the likelihood of harm to defendant if the injunction is granted; (3) the likelihood that petitioner will succeed on the merits; and (4) the public interest. *Id*. at 195-97.[2]

The first step in the *Blackwelder* analysis is for the Court to employ the "balance of hardships" test to evaluate the "likelihood" of irreparable harm to petitioner against the "likelihood" of harm to the defendant."   *Id.* at 195.   The district court then considers the likelihood of the petitioner's success on the merits and whether granting the request is in the public interest. *Id.* at 196.

### A.    Balance Of Hardships

---

[2] Standards for granting a preliminary injunction and issuing a TRO are the same, the difference being solely one of duration of the order. *Cornwell v. Sachs,* 99 F. Supp. 2d 695, 703 (E.D. Va. 2000); *Johnson & Johnson Orthopaedics, Inc. v. Minnesota Min. & Mfg. Co.*, 715 F. Supp. 110, 111-2 (D. Del. 1989); *see also, Tootsie Roll Industries, Inc. v. Sathers, Inc.*, 666 F. Supp. 655, 658 (D. Del. 1987).

In the case at hand, USI claims that without a preliminary injunction it will suffer irreparable harm "if [Leviton's] false and misleading statements are not restrained." USI points to no economic losses it will incur. On the other hand, Leviton's potential loss will be great. Leviton will suffer economic harm due to the continued infringement of its Patent and the public will continue to be misled by the trade dress violations by USI. Leviton's GFCI product line has been marketed in the United States for over fifteen years and has attained recognition by its nonfunctional appearance and arrangement. The purchasing public, including electrical distributors, professional electricians, as well as ultimate consumers, have come to recognize the good will acquired by Leviton.

Further, the well known and non-functional appearance and arrangement of Leviton's GFCIs have acquired secondary meaning, i.e., the public has come to recognize the trade dress associated with Leviton's GFCI product line. USI's GFCI product line is likely to confuse or mislead purchasers and ultimate consumers, either by (1) causing them to believe that USI's products are Leviton's products or (2) by causing the public to believe that the two products come from the same source or (3) that Defendants are licensees of Leviton and are commercializing USI's product line with the authority and/or approval of Leviton, all of which are not the case.

USI is deliberately trading upon the good will Leviton has acquired in the marketplace by marketing and distributing copies of Leviton's products. Indeed, by Defendants' own admission, since the summer of 2000 USI has been aware of the '894 Patent and the infringement of that patent by Defendants' supplier and manufacturer, Van-Sheen Electric. Defendant is well aware of Van-Sheen Electric's attempt to design around Leviton's patent.

Leviton respectfully submits that the balance of hardships leans heavily in favor of Leviton.

**B.    Defendants' Have Shown No Likelihood Of Success On The Merits**

"When, as here, the balance of the hardships 'does not tilt decidedly in the petitioner's favor'", then the petitioner must "demonstrate a 'strong showing of likelihood of success' or a 'substantial likelihood of success' by 'clear and convincing evidence' in order to obtain relief." *Microstrategy, supra,* at 340.  The Fourth Circuit has held that the "petitioner must prove the 'probability (not mere possibility)' of success on the merits; in other words, the petitioner must have 'a very clear and strong case.'"  *Id*. (quoting *Direx, supra,* 952 F.2d at 813)).  Thus, "if there is doubt as to the probability of petitioner's ultimate success on the merits, the preliminary injunction must be denied." *Id*.

Defendants have made no showing of a likelihood of success on the merits on the issues. Indeed, it is even unclear what causes of action, if any, Defendants are asserting. In the last paragraph of its motion, Defendants provide two conclusory statements declaring, without making the requisite showing, that Leviton's press release is "commercial speech" and that the First Amendment does not protect false and misleading commercial speech.  However, Defendants make no showing that Leviton's press release is not fully protected speech, and present no evidence that the release is either false or misleading.

In point of fact, it is Defendants' packaging that is violating the law, not Leviton's press release.  As shown above, Defendants admit that their DESIGNED AND ENGINEERED IN THE USA/American Flag logo is, for the most part, false in that Defendants' GFCIs were "designed and engineered" in China not the United States.  Defendants' use of "Made in China" in smaller, black and white print does not necessarily protect Defendants against violations of the U.S. Tariff Act, 19 USC § 1304 aand the Fair Packaging and Labeling Act, 15 USC § 1451 et

*seq.* The Federal Trade Commission, in summarizing its enforcement actions in the area of false U.S. origin claims has stated that it looks to determine whether "the net impression of the advertisement is likely to convey to consumers a claim that the product is of U.S. origin." *See* Ex. G, U.S. Origin Claims: *Enforcement and Compliance Activities Since December 1997, A Report by the Federal Trade Commission*, March 1999, page 3.

Clearly, as shown above, Defendants' American Flag logo, in its placement and use of colors is meant to create, at best, confusion as to the origin of the design, engineering and manufacture of Defendants' GFCIs in that it sends a mixed message. Further, Defendants' packaging may indeed be false advertising in that it uses a "false or misleading description of fact, or false or misleading representation of fact." *See* Section 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

Given the testimony of Defendants in Mr. Grossblatt's deposition, cited above, Leviton is well within its rights to inform the public that Defendants' are attempting to mislead consumers about the origin of their GFCIs.

As this Court is aware, the First Amendment protects speech in the exclusionary sense; that is, basically all speech is protected unless it falls into one of several recognized exceptions.[3] Commercial speech, engaged in by a corporation, is subject to the same standards of protection as when natural persons engage in it. *Consolidated Edison Co. of New York, Inc. v Public Service Commission of New York*, 447 U.S. 530, 533-35, 100 S. Ct. 2326, 2335 (1980). Here, USI has argued that (i) the press release misrepresents the status of the United States

---

[3] As to those narrow areas of speech not protected by the First Amendment -- the so-called "exceptions" -- they are few and narrowly construed, falling into two general categories: (1) obscenity and (2) words which by their very utterance inflict injury. This category of speech includes the advocacy of lawless action i.e., fighting words which is defined as speech that "tends to incite an immediate breach of the peace," and defamatory statements. *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710 (1964).

International Trade Commission ("USITC") proceedings; (ii) puts the merits of Leviton's suit in a false light; and (iii) misrepresents USI. In making these broad conclusory statements, USI completely fails to apply any legal standard to its blanket allegations. First, USI has not applied the applicable law to argue that Leviton's "commercial speech" in the form of its press release falls within one of the recognized exceptions to the First Amendment protection. Second, USI does not define the term "commercial speech" in accordance with current legal standards. Third, USI utterly fails to recognize that Leviton's press release is protected opinion.

Leviton is not arguing that the statements contained in its press release are absolutely immunized; however, the First Amendment places certain requirements on what USI must prove in order to predicate liability on those statements. These requirements were first set forth in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S. Ct. 710 (1964), where the Court considered under what circumstances an individual or group may be held liable for its speech. The Court held that speakers may not be punished or held liable for their allegedly false statements unless the plaintiff proves that "the statement was made with 'actual malice' -- that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co., supra,* 376 U.S. at 279-80.

Implicit in this test is the precept that truth is an absolute defense. This means that a party cannot be held liable for true statements. Even allegedly misleading half-truths are not actionable when they are fully protected speech. Indeed, USI has not provided any evidence that specific statements made by Leviton were knowingly false under *New York Times*. Therefore, the statements made in Leviton's press release cannot form the basis for a temporary restraining order, preliminary injunction, or protective order. Because no competent evidence exists to show

that any statement that may have been made was knowingly false when made, USI's claim is without merit.

Here USI also seeks a prior restraint[4] against Leviton to enjoin the communications by Leviton of "false and misleading statements regarding Defendants, Defendants' products, and the status of the various litigations and proceedings around the United States involving…" the "patent-in-suit." Such an order clearly would constitute a prior restraint on speech in violation of the First Amendment. *Organization for a Better Austin v. Keefe,* 402 U.S. 415, m 419 (1971) (an injunction is a "prior restraint on expression [that] comes to this Court with a 'heavy presumption' against its constitutional validity") (citing *Carroll v. President and Comm'rs of Princess Anne,* 393 U.S. 175, n.5 and 181 (1968); *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70 (1963); *Alberti v. Cruise, supra*, 383 F.2d at 272.

### (i)    Leviton's Patent Enforcement Efforts Are Fully Protected Speech

USI argues that Leviton's statements concerning its patent enforcement actions are commercial speech and therefore only afforded mid-level constitutional protection instead of the strict scrutiny applied to restrictions on fully-protected speech. This contention is without merit; in fact, commercial speech is expression that does "no more than propose a commercial transaction." *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 762, 96 S. Ct. 1817, 1825-26 (1976). Leviton's statements, made in its press release, do not meet this definition. Commercial speech applies to advertisements attempting to sell a product, and does not apply to a company's participation in issues of public interest, i.e.,

---

[4] The term prior restraint is use 'to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.'" *Peck v. Upshur County Board of Education,* 941 F.Supp 1478, 1482 (N.D.W.Va. 1996) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993)). "Temporary restraining orders and permanent injunctions – i.e., court orders that actually forbid speech activities – are classic examples of prior restraints." *Id.*

willful infringement of genuine goods, when not made in connection with direct efforts to sell the product.

To use the analogy put forth in *Virginia State Board*, in commercial speech the sole "idea" one wishes to communicate is this: I will sell you the X product for the Y price. *Virginia State Board*, *supra,* 425 U.S. at 760-761. The distinction between commercial speech and fully protected speech was outlined by the Supreme Court in two companion cases decided recently after *Virginia State Board*. In the first of these two cases, *Consolidated Edison Co. of New York, Inc. v. Public Service Commission of New York*, 447 U.S. 530, 100 S. Ct. 2326 (1980), the Court held that corporations enjoy the full array of First Amendment protections for their commentary on issues of public interest. In that case, Consolidated Edison had inserted written materials in its billing envelopes advocating the use of nuclear power. The Public Service Commission ruled that the inserts violated its order prohibiting inclusion of inserts discussing controversial issues. Relying on its holding in *First National Bank v. Bellotti*, 435 U.S. 765 (1978), that corporate entities are entitled to full protection under the First Amendment, the Supreme Court held that the Commissioner's order was an impermissible content-based restriction on Consolidated Edison's right to free speech. In overruling the Commission's restriction, the Court did not even question that the speech was entitled to full First Amendment protection.

The second case, *Central Hudson Gas & Elec. Corp. v. New York Public Service Commission*, 447 U.S. 557, 100 S. Ct. 2343 (1980), involved the Commissioner's ban on "promotional advertising" intended to stimulate purchases of utility services. The Court noted that the Commissioner's order, by its terms, restricted only commercial speech. The Court then held that even purely commercial speech was entitled to protection under the First Amendment,

albeit to a lesser extent.  In so holding, however, the Court left no doubt that its ruling did not

apply to corporate speech on issues of public importance:

> We rule today in *Consolidated Edison v. Public Service Comm'n of New York,* 447 U.S. 530 (1980) that utilities enjoy the full panoply of First Amendment protections for their direct comments on public issues.

*Id.* at 562 n. 5, 100 S. Ct. at 2349.

In this case, Leviton's statements are obviously more than commercial speech.  In its

press release, Leviton has not conjoined its public statements regarding its exclusive right to

manufacture and distribute its patented products and enforce its patent with their brand

advertising, nor has Leviton offered any product for sale as part of its public statements

concerning its enforcement and litigation efforts.  Quite simply, the statements containing the

substance of its pleadings, namely its request for relief from courts of competent jurisdiction has

not been made in a context "proposing a commercial transaction."

If Leviton's statements regarding its enforcement activities were held to be commercial

speech and, thus, more easily regulated, it would effectively take away the right of owners of

valuable intellectual property to inform and warn other parties and the public that infringing

conduct will not be tolerated.  Such a result would be directly contrary to the protections

guaranteed by the First Amendment and would deprive the public of information and free

expression in direct contravention of fundamental precepts of free speech.

In short, it is well settled that a manufacturer retains a fully protected right to comment

on its activities, as long as it does not promote, simultaneously and directly, the sale of its

product.  This is so even if a company "speaks" through advertising.  In *Virginia State Board,*

*supra*, the Court pointed out that "speech does not lose its First Amendment protection because

money is spent to protect it, as in a paid advertisement of one form or another."  *Virginia State*

*Board, supra*, 425 U.S. at 76, 96 S. Ct. at 1825. (citations omitted). As the Court noted in *New York Times*, unpopular speakers are often forced to take out advertisements in order to get their message across. *New York Times Co., supra*, 376 U.S. at 265-66. Similarly, the Court found that even if an advertiser's interest is largely economic, it does not disqualify him from protection under the First Amendment as "the interests of the contestants in a labor dispute are primarily economic, but it has long been settled that both the employee and the employer are protected by the First Amendment when they express themselves on the merits of the dispute in order to influence its outcome." *Virginia State Board, supra*, 425 U.S. at 76, 96 S. Ct. at 1825. As the United States Supreme Court held in *Arte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 667, 109 S. Ct. 2678, 2688 (1989), a profit motive cannot strip otherwise constitutionally-protected speech of its shield.

### (ii)    Leviton's Statements Are Protected Opinions

Furthermore, many of Leviton's press release statements regarding its litigation and enforcement conduct are fully protected by the First Amendment because they are clearly statements of opinion. Under the First Amendment, there can be no liability for opinions -- malicious or not. "Under the First Amendment there is no such thing as a false idea. However harmful an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz v. Robert Welch, Inc., supra*, 418 U.S. 323, 339-40 (1974) (footnote omitted). The courts have interpreted this passage as an absolute privilege for opinions -- as opposed to facts. Laurence H. Tribe, *American Constitutional Law*, 2d Ed., at 871. The principle is as follows:

> The line between beliefs (or opinions) and facts is blurry at best.
> What seems like a provable fact to one person is only an opinion to
> another…Throughout history, many societies have decided that the
> government should arbitrate truth and falsehood, fact and opinion;

> their record is not comforting…[T]he First Amendment forbids the
> government from arbitrating truth from fiction.

*Rushman v. City of Milwaukee, supra*, 959 F. Supp. 1040, 1041 (E.D. Wis. 1997).

Regulating subjective speech, such as opinion, would result in a great risk of chilling protected speech because it is easier to determine the truth or falsity of objective facts than subjective opinions. Thus, with respect to Leviton's statements that "Leviton has identified several importers of infringing devices and companies who have misrepresented their devices as being manufactured in the United States" and further statement that USI is but one of those infringing companies, is subjective opinion and fully protected by the First Amendment.

Indeed, Leviton has filed the instant action against USI based on its belief that USI has infringed its patents. Moreover, the additional statement that Universal Security Instruments, Inc and USI have not only infringed on Leviton's patent rights, but "also used a graphic of the American flag to falsely suggest their GFCIs were designed and engineered in the United States" is also subjective opinion based again, on the belief that the use of the American flag is misleading and deceptive to the consumers who purchase USI's GFCIs. As such, if Leviton could be punished for its subjective opinions which include statements of its belief concerning the merits of its claims, this would chill free speech due to the fear that the speaker's opinions would be labeled "false" by a fact finder biased against them.

Leviton respectfully submits it is readily apparent that the likelihood of success on the merits by USI is, at best, minimal.

### C.    Public Interest

The final *Blackwelder* factor that the Court must evaluate is the public interest. In that regard, Leviton submits that the public policy to protect consumers from confusion and to promote integrity with regard to intellectual property rights is served by denying USI's motion.

The public is entitled to know that "knock-off" products are being sold in the United States resulting in confusion among the public.

Furthermore, Naim Perry, the President of Orbit Electric & Lighting, Inc., which like USI distributes GFCIs manufactured by Van-Sheen/Yatai, has testified that he visited Van-Sheen/Yatai's assembly facility in Baixiang, China where he saw GFCIs being assembled. Specifically, Mr. Perry testified that "200 or 300" minors, some as young as nine years old, assemble the products in two large rooms in a building with "no windows" and are paid "less than $1 a day." Mr. Perry described his experience as "very unpleasant." *See* Deposition of Naim Perry at 317-18 (attached hereto as Exhibit B). Leviton submits that its attempts to curtail the abuses of child labor in China promotes the public interest.

## CONCLUSION

Based on the foregoing, the Court should deny USI's motion for a TRO and/or preliminary injunction. Not only has USI failed to show that the balance of hardships tilts decidedly in its favor, but further analysis under the *Blackwelder* test demonstrates that USI has failed to establish by clear and convincing evidence that there is a likelihood of success on the merits, or that the public interest favors its claims. As a result, the Court should deny the instant motion. For all of the above reasons, Leviton respectfully requests that this Court deny Defendants' Emergency Motion for a Temporary Restraining Order and Protective Order in all respects and grant such other and further relief as this Court deems just under the circumstances.

Dated: April 7, 2003                    Respectfully submitted,

_____

D. Christopher Ohly, Esq.
BLANK ROME COMISKY & McCAULEY, LLP
The Farragut Building
900 17th Street NW

Washington DC 20006
Telephone:  (202) 530-7400


Paul J. Sutton
Joseph M. Manak
Barry G. Magidoff
Joseph G. Lee
GREENBERG TRAURIG, LLP
885 Third Avenue
New York, New York 10022
Telephone:  (212) 801-2100
Facsimile:  (212) 688-2449

Attorneys for Plaintiff
LEVITON MANUFACTURING CO., INC.