IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| LEVITON MANUFACTURING CO., INC.<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSAL SECURITY<br>INSTRUMENTS, INC., et al.<br><br>Defendants. | Civil Action No. 01 CV 3855 AMD |

**DECLARATION OF PHILIP G. HAMPTON, II**

I, Philip G. Hampton, II, declare as follows:

1. I have been an intellectual property law practitioner and administrator for more than twenty-two years.

2. I am a member of the Bars of the State of New York, the District of Columbia and the United States Patent and Trademark Office.

3. I received a B.S. degree and a M.S. degree in Chemical Engineering from the Massachusetts Institute of Technology in 1977, and my J.D. degree from the University of Chicago in 1980.

4. From 1980 until 1993, I practiced intellectual property law with the law firm of Kenyon & Kenyon in both its New York and Washington, D.C. offices. In the fall of 1998, I resumed the private practice of intellectual property law as a partner with the law firm of Gardner, Carton & Douglas. During my more than seventeen years in the private practice of law, my practice was limited to intellectual property law, primarily in both patent and trademark law. I have prosecuted both domestic and foreign trademark applications. I have conducted cancellation and opposition proceedings before the Trademark Trial and Appeal Board and trademark infringement and unfair competition cases before various federal district courts.

While in private practice, I have been a member of several intellectual property law associations, including the American Intellectual Property Law Association, the United States (now International) Trademark Association and the IP Law Section of the American Bar Association. From 1989 until 1991, I served as the Chair of the IP Section of the National Bar Association.

5. On November 4, 1993, President Clinton announced his intention to nominate me to become the Assistant Commissioner for Trademarks at the United States Patent and Trademark Office ("PTO"). I started at the PTO on December 9, 1993, as the Assistant Commissioner for Trademarks - Designee. I was confirmed as the Assistant Commissioner for Trademarks by the United States Senate on May 6, 1994 and sworn into that position on May 13, 1994. I served as the Assistant Commissioner for Trademarks for almost 4 ½ years, resigning my position to return to the private practice of law on October 15, 1998.

6. As the Assistant Commissioner for Trademarks, I was the CEO of the trademark operations at the PTO. As the CEO of the Trademark Office, I was ultimately responsible for the day-to-day operation and policy direction of the Trademark Office. As the Assistant Commissioner for Trademarks, I testified before Congress on proposed legislation, I represented the United States at diplomatic conferences and other international meetings, I oversaw the re-engineering of the Trademark Office and I was responsible for the policies of the Trademark Office, including examination policies related to configuration trademarks and trade dress.

7. As part of my policy responsibilities, I issued more than 150 Commissioner's Decisions, ultimately decided every Letter of Protest, created the framework for the implementation of the Trademark Law Treaty and oversaw the issuance of a new edition of the Manual of Trademark Examining Procedure. In order to carry out my policy responsibilities, I was familiar with the trademark examination practices and procedures.

8. The opinions set forth herein are preliminary in nature and may be supplemented in the future based on additional information provided to me. In reaching the conclusions set forth below, I reviewed the materials identified in Exhibit A.

9. Attached as Exhibit B is a copy of the most current version of my curriculum vitae, which further describes my professional experience and qualifications.

10. I have been an expert witness and prepared the expert reports and provided deposition testimony as an expert witness in all areas of trademark law, with an emphasis on the

examination policies of the PTO. Attached as Exhibit C is a list of the cases at which I have been retained as an expert witness.

11. In its amended complaint for trademark infringement and unfair competition, Leviton claims it "is the sole owner of all right, title and interest in and to trademark rights, including trade dress rights, in the well-known and non-functional appearance and arrangement of its ground fault circuit interrupter product line" (Complaint at ¶8). Leviton also alleges that the public has come to recognize "the well-known and non-functional appearance and arrangement" of its GFCI product line and associates that appearance and arrangement with Leviton (Complaint at ¶9). Moreover, Leviton alleges that the "well-known and non-functional appearance and arrangement" of its GFCI has acquired secondary meaning to the purchasing public (Complaint ¶10).

12. Later, in setting out its cause of action airing under the Lanham Act, Leviton alleges that USI has marketed "products utilizing the trade dress and appearance of Leviton's ground fault interrupter products" (Complaint at ¶16). Leviton further accuses USI of "improperly and unlawfully utiliz[ing] the trade dress and trademark and appearance design which Leviton ha[d] previously adopted ..." (Complaint at ¶17).

13. Leviton has never described its trademark rights, including its trade dress rights. In response to an interrogatory requesting "what constitutes the 'well-known and non-functional appearance and arrangement' that Leviton alleges 'has acquired secondary meaning," Leviton replied that "its GFCI product line including Catalog No. 6599 ... has become well-known by its non-function appearance and arrangement, including, but not limited to, its size, shape, arrangement of visible parts, texture and graphics." Similarly, during the 30(b)(6) deposition, Leviton could not describe its GFCI product configuration trade dress.

14. The trademark and/or trade dress, *i.e.*, "the well-known and non-functional appearance and arrangement" of the Leviton GFCI product line, asserted by Plaintiff was never registered with the PTO, nor apparently was an application seeking registration ever filed with the PTO. While Leviton's complaint concerns Lanham Act Section 43(a) claim of infringement an unregistered product design, it is my opinion and that of Professor McCarthy, *McCarthy on Trademarks and Unfair Competition*, §8.12.1, that the PTO's rules regarding the registration of a product design should be the same as those for determining Section 43(a) rights in a product design.

15. As a former Assistant Commissioner for Trademarks and an experienced practitioner before the PTO, I am familiar with the procedures that Trademark Examining Attorneys are expected to follow during prosecution of a product configuration trademark application.

16. An application to obtain issuance of a federal trademark registration is filed with, and examined by the PTO. Upon completion of initial processing, the application is forwarded to an Examining Attorney. The Examining Attorney reviews the application to determine if the applied-for mark is registrable.

17. Had Leviton sought to register its GFCI configuration as a trademark, its application would have been refused on grounds of nondistinctiveness.

18. Section 1202.02(e) of the Trademark Manual of Examining Procedure ("TMEP") requires an application for registration of product configuration trade dress include a statement describing the mark so that it is clear what the applicant is seeking to register. The description provided by Leviton in response to the interrogatories does not set forth what Leviton is seeking to register. Similarly, in the Rule 30(b)(6) deposition, Leviton could not describe its alleged product configuration trade dress. Consequently, the Examining Attorney would have rejected the application to register Leviton's GFCI configuration under TMEP §1202.02(e).

19. Moreover, as pointed out in §202.02(b)(i) of the TMEP, in *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 120 S.Ct. 1339 (2000), the Supreme Court held that product configuration trade dress is not protectable unless "the applicant establishes that the mark has acquired distinctiveness under 2(f)" of the Lanham Act. Pursuant to §1202.02(b)(i) of the TMEP, the Examining Attorney must refuse "*all* applications seeking registration of a product design unless the application is filed under the provisions of 2(f) and includes sufficient evidence to show that the mark has secondary meaning."

20. "To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Inwood Laboratories, Inc. v. Ives Laboratories, inc.*, 456 U.S. 844, 851 n. 11, 214 USPQ 1, 4 n. 11 (1982). Pursuant to 37 C.F.R. §2.41(a), an applicant may, submit affidavits, declarations under 37 C.F.R. §2.20, depositions or other appropriate evidence showing the duration, extent and nature of the applicant's use of a mark in commerce that may lawfully be regulated by Congress, advertising expenditures in connection

with such use, letters or statements from the trade and/or public, or other appropriate evidence tending to show that the mark distinguishes the goods or services. TMEP §1212.06.

21.  In its complaint and responses to interrogatories, Leviton claims that its trade dress is well-known and has acquired secondary meaning. However, the 30(b)(6) deposition transcript is replete with Leviton's inability to provide evidence showing "the duration extent and use" of its GFCI product configuration trade dress. Other evidence developed in this case is similarly devoid of any appropriate evidence of Leviton's GFCI product configuration trade dress. Consequently, the Examining Attorney would have rejected an application to register Leviton's GFCI product configuration trade dress if Leviton has attempted to use affidavits, declarations or depositions as proof of the secondary meaning of its GFCI configuration trade dress pursuant to Section 2(f).

22.  Advertisements that show a company has marketed its trade dress as an indicator of origin has been found to support a Section 2(f) claim that the trade dress has acquired distinctiveness. TMEP §1212.06(b). The ultimate test in determining whether trade dress has acquired distinctiveness is applicant's success, rather than its efforts, in educating the public to associate the product configuration with a single source. The examining attorney must review the advertising material to determine how the product configuration is being used, the commercial impression created by such use, and what the product configuration means to purchasers. *In re Redken Laboratories, Inc.*, 170 USPQ 526, 529 (TTAB 1971). In the present case, during the Rule 30(b)(6) deposition, Leviton stated it did not know of any advertisements directed to its trade dress. Moreover, none of the advertisements produced by Leviton are directed to its product configuration trade dress. Since Leviton apparently has never produced any advertisements directing customers to its product configuration trade dress, the Examining Attorney would have found that Leviton's advertisements do not support a claim of acquired distinctiveness under §2(f) of the Lanham Act.

23.  Affidavits or declarations that assert recognition of the product configuration as a source indicator may be sufficient to establish acquired distinctiveness under §2(f). TMEP §1212.06(c). Proof of distinctiveness requires more than proof that a relatively small number of people associate the product configuration with the applicant. Moreover, the declarations must refer to the product configuration with specificity to be considered persuasive. *In re Peterson Mfg. Co.*, 2 USPQ 2d 2032 (TTAB 1987). In the 30(b)(6) deposition, Leviton

could not identify any declarations from its customers that linked Leviton's alleged GFCI product configuration trade dress to Leviton. Moreover, Leviton has produced no evidence that any of its GFCI configurations are recognized as emanating from it. Since Leviton has failed to identify or produce such recognition of its trade dress by users of GFCIs, the Examining Attorney would have maintained her rejection of the application for failure to prove acquired distinctiveness.

24. Courts have found that survey evidence, market research and consumer reaction studies "are a valuable method of [proving] secondary meaning." *Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*, 259 F.3d 25, 37, 59 USPQ 2d 1720, 1730 (1st Cir. 2001). To show secondary meaning, such evidence must show that the public views the product configuration as an indication of the source of the product or service. TMEP §1212.06(d), citing *Boston Beer Co. L.P. v. Slesar Bros. Brewing Co., Inc.*, 9 F.3d 175, 28 USPQ 2d 1778 (1st Cir. 1993). During the Rule 30(b)(6) deposition, Leviton could not remember whether it had commissioned any survey or market research and/or customer reaction studies directed to its GFCI product configuration trade dress and could not point to the results of any such evidence or research. Since Leviton has not produced, and apparently does not have, such evidence, it cannot use TMEP §1212.06(d) to support a claim of distinctiveness under §2(f) of the Lanham Act.

25. A product configuration can not indicate the source of the product, if the product is sold by numerous sources under conditions indicating that each of the numerous sources is the source of the product configuration. In the 30(b)(c) deposition, Leviton admitted that it manufactured GFCIs for General Electric Co. and stamped them with the well-known GE logo. Moreover, Leviton admitted that these GFCIs were sold in packaging bearing the GE logo. Therefore, seeing identical GFCIs being sold by different companies, customers of GFCIs would not believe that the product configuration was an indicator of source.

26. Consequently, Leviton does not have any protectible product configuration trade dress in GFCIs that it manufactures and/or markets.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 1, 2003.

_____
Philip G. Hampton, II

**Exhibit A**

**LIST OF DOCUMENTS REVIEWED**

- First Amended Complaint and Jury Demand

- Defendants' Joint Answer and Counterclaim

- Plaintiff's Fed. R. Civ. P. 26(A)(1) Initial Disclosures

- Plaintiff Leviton's First Responses to Defendants' First Set of Interrogatories (Nos. 1-2) to Plaintiff

- Plaintiff Leviton's Responses to Defendants' Second Set of Interrogatories (3-15) to Plaintiff

- The deposition of Leviton Manufacturing Co. pursuant to Rule 30(b)(6) and various exhibits marked during the deposition

Exhibit B

# CURRICULUM VITAE
for
**PHILIP G. HAMPTON, II**

**SUMMARY**
22+ years as a successful intellectual property law practitioner and administrator

**PUBLIC SECTOR EXPERIENCE**
**U.S. Department of Commerce** (Patent and Trademark Office), Washington, D.C.
**Assistant Commissioner for Trademarks** (1993-1998). As the CEO of the Trademark Office, responsible for operations and policy of the Trademark Office.

- Testified before Congress on proposed legislation
  - Trademark Dilution Act
  - Anticounterfeiting Consumer Protection Act of 1996

- Represented the United States at diplomatic and technical conferences
  - Deputy Head of Delegation at 1994 WIPO Diplomatic Conference which adopted the Trademark Law Treaty ("TLT")
  - Head of Delegation at 1997 CARICOM Conference on TRIPPS implementation in Port of Spain, Trinidad
  - U.S. government representative and speaker at 1998 U.S.-Israel High Technology Conference in Tel Aviv
  - PTO representative at opening of USPTDL at the University of Puerto Rico, Mayaquez

- Oversaw the re-engineering of Trademark Office
  - Reduced front-end processing time from 145 days to 23 days.
  - Doubled number of attorneys in less than 5 years.
  - Doubled work load in 5 years.
  - Revenues outpaced expenditures every year.

- Oversaw substantive policy changes
  - Framework for TLT implementation rules package
  - Over 150 Commissioner's Decisions
  - New edition of Manual of Trademark Examining Procedure

- Speeches on the operations and policy initiatives at the Trademark Office, the prosecution of trademark applications and/or substantive trademark law to:

- American Intellectual Property Law Assn.
- National Bar Association
- ABA-IPL Section
- NBA-IPL Section
- LA IPLA
- Philadelphia IPLA
- NY IPLA

- Pittsburgh IPLA
- Washington State Bar IP Section
- Oregon Bar IP Section
- Connecticut IPLA
- New Jersey IPLA
- Cleveland IPLA
- D.C. Bar Association
- Chicago Bar Association - IP Section
- San Francisco Patent & Trademark Law Assn.
- Association of Collegiate Licensing Administrators
- Coalition to Preserve the Integrity of American Trademarks ("COPIAT")
- South Florida Patent Law Assn.
- Suffolk County Bar Assn.
- Sunnyvale Center for Innovation, Invention and Ideas
- John Marshal Law School
- Georgia State Bar Assn. – IP Section
- DePaul Law School

**PRIVATE SECTOR EXPERIENCE**

**Gardner, Carton & Douglas**, Washington, D.C. (1998 -)
**Kenyon & Kenyon**, New York, NY and Washington, D.C. (1980-1993) - Involved in all phases of patent and trademark law, including prosecution, litigation, licensing and counseling of individuals, corporations and non-profit organizations.

<u>Expert Witness</u> - Prepare reports and provide deposition and trial testimony as an expert witness in all areas of trademark law, with an emphasis on the prosecution of trademark applications in the USPTO.

<u>Special Master</u> – Appointed special master by Judge Alexander Williams (U.S. District Court for the District of Maryland) to handle all pre-trial matters in *Invitrogen Corporation v. Clonetech Laboratories Inc.*, a patent infringement action involving three biotechnology patents.

<u>Litigation</u> - Drafting of pleadings, discovery requests and motion papers; taking and defending depositions; preparation of fact and expert witnesses for depositions and trial; participation in all phases of U.S. District Court trials, mini-trials, ITC Section 337 hearings and Trademark Trial and Appeal Board opposition and cancellation proceedings; preparation of pre-trial and post-trial briefs, including coordination of legal and technical research.

<u>Trademarks</u> - Preparation and filing of U.S. trademark applications; prosecution of U.S. and foreign trademark applications; preparation of trademark opinion letters; preparation and filing of appeals to the Trademark Trial and Appeal Board; preparation of oppositions and cancellations.

<u>Patents</u> - Preparation and filing of U.S. patent applications; prosecution of U.S. and foreign patent applications; preparation of patentability, validity and infringement opinions; preparation of appeal briefs to the Board of Appeals, conducting interviews of Examiners at the Patent Office.

**Licensing** - Preparation of licensing and merchandising agreements based on patents, trademarks, trade secrets and copyrights; negotiations of the transfer of intellectual property and preparation of documents pursuant to corporate acquisitions; preparation of state and federal disclosure documents and the franchise agreement for a new, national franchisor.

## ACADEMIC CREDENTIALS
**J.D., University of Chicago Law School**, Chicago, Illinois (1980)
**S.B.,S.M., Chemical Engineering, Massachusetts Institute of Technology,** Cambridge, Massachusetts (1977). Thesis - "Dynamic Mechanical Properties of Network Polymers".

## BAR MEMBERSHIPS
New York;
District of Columbia;
U.S. Patent and Trademark Office;
U.S. Court of Appeals for the Federal Circuit;
U.S. Claims Court;
U.S. District Courts - S.D.N.Y., E.D.N.Y.

## PROFESSIONAL AFFILIATIONS
**National Bar Association**
   Member-Executive Committee (1990-1993)
   Member-Board of Governors (1989-1994)
   Chair-Budget Committee (1992-1993)
   Chair-Intellectual Property Law Section (1989-1991)
**International Trademark Association**
   Firm Representative (1990-1993); (1998 - )
   Member-Parallel Imports Subcommittee (1999-2001)
**American Bar Association (Patent, Trademark and Copyright Law Section)**
**American Intellectual Property Law Association**
   Chair-Membership Committee (2000 - 2002)

## CIVIC INVOLVEMENT
Member – Intellectual Property Advisory Board, DePaul University College of Law (1999- )
Member - Visiting Committee, University of Chicago Law School (1995 - 1998)
Chairman - Independent Judicial Screening Panel for New York County Civil Court (1987)
Deputy State Whip (for Clinton/Gore) - Democratic National Convention (1992)
Candidate - Member, D.C. Board of Education (1990)

**Exhibit B**

## CASES IN WHICH I HAVE BEEN DEPOSED OR TESTIFIED AT TRIAL

1. <u>M2 Software, Inc. v. Viacom, *et al.*,</u> (C.D. Cal.) Civil Action No. 98-8734 (Deposition testimony relating to "use in commerce," confusing similarity, reverse confusion, relative strength of marks.)

2. <u>Plaintiff Manufacturing Co. v. Tinker & Rasor,</u> (C.D. Cal.) Civil Action No. 98-9196 (Deposition testimony relating to Trademark Office practice and functionality of configuration trademarks.)

3. <u>AT&T Corp. and AT&T Wireless Services, Inc. v. Cellular One Group</u> (W.D. Texas) Civil Action No. 3:99-CV-1723-P (Deposition testimony relating to trademark office practice, descriptiveness, use in commerce, composite trademarks, secondary meaning.)

## CASES IN WHICH I HAVE PROVIDED AN EXPERT REPORT

1. <u>Safway Steel Scaffolds Co. of Pittsburgh v. Safway Steel Products Inc.</u>, (Pa. Ct. of Common Pleas) G.D. No. 98-14677

2. <u>American Homecare Federation, Inc. v. Paragon Scientific Corp., *et al*</u> (W.D. Tex) Civil Action No. A 99CA 025 JN

3. <u>Nissan Motor Co., Ltd., *et al* v. Nissan Computer Corporation,</u> (C.D. Cal) Civil Action No. 99-12980 DDP (Mex)

4. <u>Becoming, Inc. v. Avon Products, Inc.</u>, (S.D.N.Y.) Civil Action No. 01-CV-5863

5. <u>Sundles, *et al.* v. Hornady Manufacturing Co., *et al.*</u>, (D. Idaho) Civil Action No. CIV-01-0126E-BLW

DC01/390403.4