## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

LEVITON MANUFACTURING, INC.     )
                                  )
          (Plaintiff)         )
                                  )
            v.            )      01CV3855 AMD
                                  )
UNIVERSAL SECURITY INSTRUMENTS, INC.)
                                  )
       and                  )
                                  )
USI ELECTRIC, INC.               )
                                  )
        (Defendants)      )

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON
## INVALIDITY OF U.S. PATENT NO. 4,595,894 FOR DOUBLE PATENTING

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants, Universal Security Instruments, Inc. and USI Electric, Inc. (hereafter collectively referred to as "USI"), through their attorneys, respectfully move for summary judgment on the issue of invalidity of the U.S. Patent No.4,595,894 for double patenting in view of U.S. Patent No. 4,386,338 and/or U.S. Patent No. 4,518,945.

USI submits that no genuine issue of material fact exists and summary judgment is proper.  The issues raised herein are purely legal issues on which there exists binding precedent directing the outcome of the present motion. Accordingly, USI respectfully requests that its motion be granted and U.S. Patent No. 4,595,894 be held invalid.

A proposed Order is attached hereto for the convenience of the Court.

Respectfully submitted,

UNIVERSAL SECURITY INSTRUMENTS INC.
USI ELECTRIC, INC.


By: _____
Maurice U. Cahn, Esq.
Frederick N. Samuels, Esq.
William E. Bradley, Esq.
CAHN & SAMUELS, LLP
2000 P Street, NW, Suite 200
Washington, D.C.  20036
(202) 331-8777 (Phone)
(202) 331-3838 (FAX)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | | |
|---|---|---|
| LEVITON MANUFACTURING, INC. | ) | |
| | ) | |
| (Plaintiff) | ) | |
| | ) | |
| v. | ) | 01CV3855 AMD |
| | ) | |
| UNIVERSAL SECURITY INSTRUMENTS, INC. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| USI ELECTRIC, INC. | ) | |
| | ) | |
| (Defendants) | ) | |

## ORDER

Upon consideration of Defendants' Motion for Summary Judgment on the

Issue of Invalidity of U.S. Patent No. 4,595,894 for Double Patenting and

Plaintiff's Opposition thereto and the entire record herein, good cause being

shown, it is hereby ORDERED and ADJUDGED on this _____ day of

_____, 2003 that Defendants' Motion is GRANTED.


_____
United States District Court Judge

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore Division)

LEVITON MANUFACTURING, INC.    )
    )
        (Plaintiff)    )
    )
        v.    )      01CV3855 AMD
    )
UNIVERSAL SECURITY INSTRUMENTS, INC.)
    )
    and    )
    )
USI ELECTRIC, INC.    )
    )
        (Defendants)    )

## DEFENDANTS' MEORANDUM IN SUPPORT OF SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 4,595,894 FOR DOUBLE PATENTING

## Table of Contents

SUMMARY OF ARGUMENT ............................................................................. 1

BACKGROUND ........................................................................................... 2

ARGUMENT .............................................................................................. 5

   I.    DOUBLE PATENTING ......................................................................... 5

      A.  Standard for Double Patenting.................................................... 5

      B.  Obviousness-Type Double Patenting........................................... 6

          1.   Two-Step Test.................................................................. 6

          2.   Genus-Species Relationships ........................................... 7

   II.   STEP ONE - CLAIM CONSTRUCTION ................................................... 9

      A.  Canons of Construction ........................................................... 9

          1.   General Considerations..................................................... 9

          2.   Incorporation by Reference ............................................. 11

          3.   Means-Plus-Function Claims............................................ 11

          4.   Meaning to One of Ordinary Skill in the Art ...................... 13

      B.  The Doyle Patents .................................................................. 14

          1.   The '338 Patent.............................................................. 14

          2.   The '945 Patent.............................................................. 15

          3.   The '894 Patent.............................................................. 16

      C.  Plaintiff Leviton's Post-Hoc Attempts to Rewrite the Claims............ 18

   III.   STEP TWO - CLAIM COMPARISON..................................................... 23

      A.  The '894 Patent's "Movable Means" Limitation is Generic to the '338 and '945 Patents' "Movable Cam Means" Limitation ................................... 23

      B.  The '894 Patent is Invalid........................................................ 26

          1.   The '894 Patent is Generic to the '338 and '945 Patents ................ 26

          2.   The Dependent Claims are Not Patentably Distinct ......................... 27

CONCLUSION ............................................................................................. 28

## Table of Authorities

**Cases**

*Auogiro Co. of America v. United States,* 384 F.2d 391,(Ct. Cl. 1967)........... 9, 10

*Chiuminatta Concrete Concepts v. Cardinal Indus.,* 145 F.3d 1303, 1307-08 (Fed. Cir. 1998)................................................................................................. 13

*Eli Lilly v. Barr,* 251 F.3d 955 (Fed. Cir. 2001) ......................................... 6, 7, 30

*Id.* .................................................................................................................. 10

*In re Goodman,* 11 F.3d 1046, (Fed. Cir. 1993) .......................................... 6, 7, 8

*In re Vamco Machine and Tool,* 752 F.2d 1564, 1577 n.5 (Fed. Cir. 1985) ......... 9

*In re Van Ornum,* 686 F.2d 937 (CCPA 1982) ...................................................... 6

*Intellicall v. Phonometrics, Inc.* 952 F.2d 1384, 1388 (Fed. Cir. 1992) .............. 10

*Ishida v. Taylor,* 221 F.3d 1310, (Fed. Cir. 2000)............................ 14, 15, 19, 20

ITC in Order No. 9 on February 21, 2003.......................................................... 19

*J.G. Peta, Inc. v. Club Protector, Inc.,* 2003 U.S. App. LEXIS 9783, *8 n.2 (Fed. Cir. 2003)..................................................................................................... 15

*James v. Campbell,* 104 U.S. 356, (1881)................................................... 28, 30

*Lockheed Martin v. Space Systems/Loral Inc.,* 249 F.3d 5 (Fed. Cir. 2001) 13, 14

*Markman,* 52 F.3d at 980 ................................................................................. 11

*Micro Chemical, Inc. v. Great Plains Chemical,* 194 F.3d 1250,(Fed. Cir. 1999) 16

*Miller v. Eagle Manuf.,* 151 U.S. 186, 198 (1967................................................ 20

*Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1271 (Fed. Cir. 1986) 24

*Omega Engineering v. Raytek Corp.,* 2003 U.S. App. LEXIS 13570 (Fed. Cir. July 7, 2003) ................................................................................... 24, 25, 26

*Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F.3d 1298, (Fed. Cir. 1999) .... 23

*Riverwood Int'l v. R.A. Jones & Co., Inc.,* 324 F.3d 1346, (Fed. Cir. 2003).. 16, 23

*Storage Technology Corp. v. Cisco Systems, Inc.,* 329 F.3d 823, 832 (Fed. Cir. 2003) ............................................................................................................ 24

*Vitronics v. Conceptronic,* 90 F.3d 1576, 1584 (Fed. Cir. 1996)........................ 16

*Vulcan Engineering v. FATA Aluminum,* 278 F.3d 1366, 1374 (Fed. Cir. 2002) 26

*Westek Assocs. V. Tri-Lite Electronics,* 772 F. Supp. 474, 484 (N.D. III. 1989) . 10

*York Prods. v. Central Tractor Farm & Family Ctr,* 99 F.3d 1568, 1574 (Fed. Cir. 1996............................................................................................................ 13

**Statutes**

35 U.S.C. 101 ................................................................................................ 6

35 U.S.C. 112, ...................................................................10, 12, 13, 27, 29, 30

**Other Authorities**

Manual of Patent Examining Procedures (M.P.E.P.) 201.07 ................................ 3

MPEP § 806.04 ............................................................................................... 8

MPEP § 809.03 ............................................................................................... 8

MPEP 201.8 201.07 ......................................................................................... 5

MPEP 608.01(p) ............................................................................................ 12

MPEP 804 ....................................................................................................... 4

## Index of Exhibits

| | |
|---|---|
| Exhibit A | U.S. Patent No. 4,386,338 |
| Exhibit B | U.S. Patent No. 4,518,945 |
| Exhibit C | M.P.E.P. 201.07 |
| Exhibit D | M.P.E.P. 804 |
| Exhibit E | U.S. Patent No. 4,595,894 |
| Exhibit F | M.P.E.P. 201.08 |
| Exhibit G | Transcript from Deposition of Jerome Massie, 01-CV-3855, (D. Md.)(June 26, 2003) at 118-121 |
| Exhibit H | M.P.E.P. 806.04(i) |
| Exhibit I | M.P.E.P 809.03 |
| Exhibit J | M.P.E.P. 608.01(p) |
| Exhibit K | *J.G. Peta, Inc. v. Club Protector, Inc.,* 2003 U.S. App. LEXIS 9783 (Fed. Cir. 2003). |
| Exhibit L | Expert Declarations and Expert Report of Gene Haynes, from ITC 337-TA-478, filed under seal. |
| Exhibit M | Claim Chart - Claim 2 of '338 patent |
| Exhibit N | Claim Chart - Claim 1 of '945 patent |
| Exhibit O | Claim Chart - Claim 1 of '894 patent |
| Exhibit P | ITC Motion for Summary Determination |
| Exhibit Q | ITC Order No. 9 |
| Exhibit R | Claim Comparison of Claim 1 of '894 patent, Claim 2 of '338 patent, and Claim 1 of '945 patent |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | | |
|---|---|---|
| LEVITON MANUFACTURING, INC. | ) | |
| | ) | |
| (Plaintiff) | ) | |
| | ) | |
| v. | ) | 01CV3855 AMD |
| | ) | |
| UNIVERSAL SECURITY INSTRUMENTS, INC.) | | |
| | ) | |
| USI ELECTRIC, INC. | ) | |
| | ) | |
| (Defendants) | ) | |

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 4,595,894 FOR DOUBLE PATENTING

Defendants, Universal Security Instruments, Inc. and USI Electric, Inc. (hereafter collectively referred to as "USI"), through their attorneys, submit this opening memorandum in support of their motion for summary judgment of invalidity of U.S. Patent No. 4,595,894 for double patenting.

USI submits that the issues raised herein are purely legal issues on which there exists binding precedent directing the outcome of the present motion. Accordingly, no genuine issue of material fact exists and the present motion is ripe for adjudication.

### SUMMARY OF ARGUMENT

Obviousness-type double patenting is a judicially created doctrine for invalidating a later issued patent which has claims which are not patentably distinct from claims in an earlier, commonly owned patent. The doctrine was

1

created to prevent a patentee from unlawfully extending the patent term of an earlier patent through a later patent which covers the same or obvious subject matter.

In the present case, there were two earlier patents (one of which was terminally disclaimed) which disclosed and claimed a first embodiment of the invention. A later patent, the patent-in-suit, was then filed disclosing a "second" preferred embodiment of the invention. The patent-in-suit also incorporated by reference one of the earlier patents disclosing and claiming the first embodiment of the invention. Thus, the patent-in-suit disclosed both embodiments of the invention.

The claims of the patent-in-suit were drafted in broad "means-plus-function" format. In construing the claims, both embodiments of the invention must be considered in discerning the scope of the claims. When properly construed, the claims of the patent-in-suit broadly cover both embodiments. Accordingly, there is no question that the patent-in-suit is generic to (or broader than) the earlier patents claiming only the first embodiment of the invention. In short, the claims of the patent-in-suit cover both embodiments of the invention and therefore are unlawfully extending the patent monopoly over the first embodiment disclosed and claimed in the earlier patents. Accordingly, the patent-in-suit is invalid for double patenting.

## BACKGROUND

United States Patent No. 4,386,338 ("the '338 patent"), filed for on November 17, 1980, issued on May 31, 1983 with four claims directed to a switching apparatus for selectively completing or interrupting an electrical

connection between input and output conductors. A copy of the '338 patent is attached hereto as Exhibit A. The patent names Richard C. Doyle and Lester Rivera as inventors and Leviton Manufacturing Company as the assignee. Under the Patent Statute in effect at this time, the '338 patent expired on November 17, 2000 (since that term is the longer of 20 years from the effective filing date or 17 years from the issue date).

United States Patent No. 4,518,945 ("the '945 patent") issued on May 21, 1985 from an application filed on September 30, 1982. A copy of the '945 patent is attached hereto as Exhibit B. The patent names Richard C. Doyle and Lester Rivera as inventors and Leviton Manufacturing Company as the assignee. Under the Patent Statute, the patent normally would have been set to expire on May 21, 2002. However, the '945 patent was a "continuation" of the '338 patent. A continuation is a later patent application that is filed during the pendency of a prior application and contains the same specification (written description and drawings). *See* Manual of Patent Examining Procedures (MPEP) § 201.07. (Attached hereto as Exhibit C).

In addition to a common disclosure, the '945 patent also has claims directed to a switching apparatus for selectively completing or interrupting an electrical connection between input and output conductors. The '945 patent's claims, however, contain additional limitations for the movable cam means described in the common specification of the '338 and '945 patents.

If a continuation application is properly filed, the applicant's prior application cannot be used as a prior art reference in rejecting the later

3

application's claims except for one instance – in applying the doctrine of double patenting. *See* MPEP § 804. (Attached hereto as Exhibit D). Double patenting involves the situation where a later filed patent application (having common inventors and owners as a previously filed application) fails to claim a patentably distinct invention from a previously filed application. *See id.* In such circumstances, the only remedy is for the applicant to file what is known as a "terminal disclaimer." *See id.* A terminal disclaimer is an official surrender by an applicant of any portion of the later patent's term that would extend beyond the expiration date of the prior patent. The '945 patent included a terminal disclaimer forfeiting the terminal portion of the term extending beyond the November 17, 2000 expiration date of the '338 patent. Accordingly, the '945 patent is expired.

Years after filing for the '338 and '945 patents, Leviton filed the application leading to United States Patent No. 4,595,894 ("the '894 patent" or "the patent-in-suit"), which issued on June 17, 1986 with four claims directed to a switching apparatus for selectively interrupting an electrical connection between input and output conductors. A copy of the '894 patent is attached hereto as Exhibit E. The patent also names Richard C. Doyle and Lester Rivera as inventors and Leviton Manufacturing Company as the assignee. Under the Patent Statute, the patent (without a terminal disclaimer) expired on June 17, 2003.

The '894 patent proclaims itself to be a "continuation-in-part" of the '945 patent.[1] A continuation-in-part application, unlike a continuation, includes

---

[1] The patent does not identify or claim priority to the '338 patent, and thus is not entitled to its filing date for any common disclosure. This point was conceded by Leviton's patent expert Jerome Massie during his deposition. *See* Deposition of Jerome Massie, 01-CV-3855 (D. Md.), June 26, 2003 at 119:8 to 125:15. (Attached hereto as Exhibit G).

4

additional subject matter in the written description. *See* MPEP § 201.07, Exh. C;

MPEP § 201.08. (Attached hereto as Exhibit E). The '894 patent includes a

description of a previously undisclosed "second" preferred embodiment of the

Doyle and Rivera invention. The "first" preferred embodiment is also included in

the '894 patent's specification due to the incorporation-by-reference of the '945

patent:

> The present application is a continuation-in-part of applicants' both pending United States patent application Ser. Nos. 431,982 now **U.S. Pat. No. 4,518,945**, filed Sept. 30, 1982 and entitled "REMOTE CONTROL SYSTEM" and Ser. No. 558,262 filed Dec. 5, 1983 and entitled SHOCK HAZARD PROTECTION SYSTEM', **and incorporates by reference as if fully set forth herein the entire contents and subject matter thereof** and of any and all of their respective "parent" patent applications to which they are co-pending.

'894 Patent, col. 1, ln 5-16 (emphasis added).

Notably, no terminal disclaimer was filed in the '894 patent. Accordingly, if

the claims are not patentably distinct over the claims of both the '338 and '945

patents, the patent is invalid for double patenting.

## ARGUMENT

I.    **DOUBLE PATENTING**

A.    **Standard for Double Patenting**

Through a statutorily prescribed term, Congress limits the duration of a

patentee's right to exclude others from practicing a claimed invention. *Eli Lilly v.*

*Barr,* 251 F.3d 955, 967 (Fed. Cir. 2001). An attempt to extend the patent right

beyond its statutory limits through the filing of a second patent application with

claims which are not patentably distinct from the prior patent is known as "double

patenting." *See id.; see also In re Van Ornum,* 686 F.2d 937, 943-44 (CCPA

1982)("The fundamental reason for the rule [against 'double patenting'] is to prevent unjustified timewise extension of the right to exclude granted by a patent no matter how the extension is brought about.").

A double patenting determination involves two inquiries. The first asks if the claimed inventions are identical in scope. If so, the later claim is invalid for so called "statutory-type" double patenting because, by statute (35 U.S.C. § 101), an inventor is limited to a single patent for an invention. *In re Goodman,* 11 F.3d 1046, 1052-53 (Fed. Cir. 1993)

The second inquiry involves the situation where one claimed invention has a broader scope than the other. *Id.* In this situation, a determination must be made as to whether the later claim is directed to an obvious variation of the prior patent. *Id.* If so, the second application's claims are rejected on the grounds of "obviousness-type" double patenting. *Id.*

### B.    Obviousness-Type Double Patenting

#### 1.    <u>Two-Step Test</u>

The judicially-created doctrine of "obviousness-type" double patenting cements the legislative limitation on patent terms by prohibiting a party from obtaining an extension of exclusive right through claims in a later patent that, while different, are not patentably distinct from claims in an earlier patent. *Eli Lilly v. Barr,* 251 F.3d 955, 967 (Fed. Cir. 2001). An obviousness-type double patenting analysis entails two steps – claim construction and claim comparison. *See id.* In the first step, the court construes the claims in the earlier patent and the later patent, and then overlays the ***later*** claims on the earlier claims to determine whether the later claims encompasses subject matter previously

claimed. *Id.* In the second step, the court evaluates whether the differences in subject matter between the later claims and the earlier claims is such that the later claims are patentably distinct over the earlier claims. *Id.*

### 2. Genus-Species Relationships

Importantly for the present motion, "[a] patentable distinction does not lie where a later claim is anticipated by an earlier one." *Eli Lilly v. Barr,* 251 F.3d 955, 971 (Fed. Cir. 2001). Claims in a *later* patent which are generic to, or otherwise broader dominating claims of, the claims in the *earlier* patent are invalid for double patenting. *E.g., Eli Lilly v. Barr,* 251 F.3d 955, 971 (Fed. Cir. 2001)(invalidating later patent on summary judgment for double patenting in view of earlier patent because, *inter alia*, "case law firmly establishes that a later genus claim limitation is anticipated by, and therefore not patentably distinct from, an earlier species claim"); *In re Goodman*, 11 F.3d 1046, 1053 (Fed. Cir. 1993)(invalidating later patent generic to earlier patent because "the generic invention is 'anticipated' by the species of the patented invention" and precedent held that "without a terminal disclaimer, the species claims preclude[d] issuance of the generic application.").

As set forth in the MPEP, Examiners are to reject later presented generic claims for double patenting:

> The Office no longer follows the practice of prohibiting the allowance of generic claims that are presented for the first time after the issuance of a copending application claiming plural species. Instead, the Office may reject the generic claims on the grounds of obviousness-type double patenting. Applicant may overcome such a rejection by filing a terminal disclaimer. See *In re Braithwaite,* 379 F.2d 594, 154 USPQ 29 (CCPA 1967).

7

MPEP § 806.04 (i)(Attached hereto as Exhibit H). This remains true even if the broader claim covers, or links, two otherwise completely independent and distinct inventions which could have been presented or divided into separate applications. *See* MPEP § 809.03 (Attached hereto as Exhibit I).

To illustrate why a later genus claim is invalid for obviousness-type double patenting over an earlier species claim, consider the following example. An inventor invents and claims the letter "A." Under the Patent Statute, the inventor is entitled to prevent anyone from making, using or selling zippers for a period of 20 years from the patent's filing date. Assume two years after getting a patent on the letter "A" the inventor gets a second patent claiming "a letter of the alphabet." Clearly, the letter "A" is a letter of the alphabet. Thus, allowing the inventor to prevent others from making, using or selling the letter "A" for a period of 20 years from the second patent's filing date means that the inventor is effectively extending the monopoly over the letter "A" for another two years. The judicially created doctrine of obviousness-type double patenting was created to prevent this unlawful timewise extension over inventions.

Applying the two step process for evaluating obviousness-type double patenting to the present controversy clearly establishes that the claims of the '894 patent are generic (or broader dominating) to those of the '338 patent and the '945 patent, and accordingly, invalid as a matter of law.

II.    **STEP ONE - CLAIM CONSTRUCTION**

A.    **Canons of Construction**

1.    <u>**General Considerations**</u>

A court must follow several guidelines for proper claim construction.

Claims are the numbered paragraphs appearing at the end of the patent

specification which contain words used by the inventor to describe his or her

invention. *In re Vamco Machine and Tool,* 752 F.2d 1564, 1577 n.5 (Fed. Cir.

1985). Courts can neither broaden nor narrow the claims to give the patentee

something different from what he or she had set forth in the claims. *Auogiro Co.*

*of America v. United States,* 384 F.2d 391, 396-97 (Ct. Cl. 1967). While courts

are confined by the language of the claims, they may consider the patent's

specification, drawings, and prosecution history in construing the claims. *Id.*

The specification of a patent is a written description of the invention,

sometimes supplemented by figures or drawings. *35 U.S.C. § 112, first*

*paragraph.* While a specification may not be used to alter the explicit language

of a claim, the specification may act as dictionary in explaining and interpreting

the claim language. *Autogiro,* 384 F.2d at 398. Moreover, while a patentee is

free to be his or her own lexicographer, any special definition of a word used in a

claim must be clearly defined in the specification. *Intellicall v. Phonometrics, Inc.*

952 F.2d 1384, 1388 (Fed. Cir. 1992). Without a special definition, a word will be

given its ordinary and accustomed meaning. *Westek Assocs. V. Tri-Lite*

*Electronics,* 772 F. Supp. 474, 484 (N.D. Ill. 1989).

A court must also consider the patent's prosecution history, or "file

wrapper," however, the prosecution history should be used to understand the

langue used in the claims, but, similar to the specification, it cannot "enlarge, diminish, or vary" the limitations in the claims." *Markman*, 52 F.3d at 980.

Finally, a court may, in its discretion, receive extrinsic evidence in order to assist the court in understanding scientific principles, the meaning of technical terms, and terms of art that appear in the patent and prosecution history. *Id.* However, the decision to utilize extrinsic evidence rests solely with the trial judge. Furthermore, the extrinsic evidence is to be used only for the purpose of assisting the court in understanding the patent, and not for the purpose of varying or contradicting the terms of the claim. *Id.* at 981.

As will become apparent herein, the double patenting determination relies on the undisputed relationship of the patents and their common, and indeed identical, language. In particular, by virtue of incorporating by reference the entire contents of the '945 patent (which has an identical specification to that of the '338 patent), any construction of the claims of the '894 patent necessarily requires the written description of the '945 patent to be considered.[2] Ultimately, the conclusion that the '894 patent is generic to the earlier '338 and '945 patents is inescapable.

The only canons of claim construction at play in the present motion are those surrounding the doctrine of incorporation by reference and those surrounding interpretation of claims drafted in means-plus-function format pursuant to 35 U.S.C. § 112, sixth paragraph.

---

[2] As set forth more particularly herein, the claims of the '894 patent were drafted in "means-plus-function" format and therefore have rules of construction that require resort to the structure, or in this case, the structures, described in the specification.

### 2.    Incorporation by Reference

Material may be incorporated by reference into United States patent applications. *See* MPEP 608.01(p). (Attached hereto as Exhibit J). If a document is specifically incorporated by reference, the material contained in the document is to be treated as if it was specifically set forth in the text of the patent application.

There is no dispute that the '945 patent was properly incorporated by reference into the '894 patent. Accordingly, construing the claims of the '894 patent in view of the specification necessitates consideration of the disclosure in the '945 patent.

### 3.    Means-Plus-Function Claims

A means-plus-function element under 35 U.S.C. § 112, paragraph 6,[3] is one that refers to a "means" for performing a given function without specifying in the claim the structure for performing that function. *Chiuminatta Concrete Concepts v. Cardinal Indus.,* 145 F.3d 1303, 1307-08 (Fed. Cir. 1998). The applicant is presumed to have used the word "means" in a claim to invoke the imprimatur of 35 U.S.C. § 112, paragraph 6. *York Prods. v. Central Tractor Farm & Family Ctr.,* 99 F.3d 1568, 1574 (Fed. Cir. 1996).

Means-plus-function elements have additional claim construction rules. In *Lockheed Martin v. Space Systems/Loral Inc.,* 249 F.3d 1314, 1324-25 (Fed. Cir. 2001), the Federal Circuit set forth a three step process for construing the

---

[3] 35 U.S.C. § 112, paragraph 6, recites: "An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

means-plus-function language of a claim. First, the court must identify the claimed function. *Id.* Once this function is identified, it must be construed using the ordinary principles of claim construction. *Id.* The function of a 'means-plus-function' claim must be construed to include the limitations contained in the claim language. *Id.* However, a claimed function may not be improperly narrowed or limited beyond the scope of the claim language. *Id.* Finally, the court must determine the corresponding structure disclosed in the patent specification for performing the function. *Id.*

In this regard, it is noteworthy to point out that when the patent specification is reviewed for corresponding structure, a number of distinct embodiments of the invention may perform the recited function in distinct ways. *See Ishida v. Taylor,* 221 F.3d 1310, 1316 (Fed. Cir. 2000). The means plus function claim is interpreted to cover the structures identified as performing the recited function, regardless of how different the structures in separate embodiments are:

> In *Serrano*, this court determined that the district court had erroneously limited the structure corresponding to the claimed function to only one of the alternative structures in the specification. *Serrano* states that the proper application of § 112 ¶ 6 generally reads the claim element to embrace distinct and alternative described structures for performing the claimed function. Specifically, "disclosed structure includes that which is described in a patent specification, including any alternative structures identified."

*Id.* (quoting *Serrano v. Telular Corp.*, 11 F.3d 1578, 1583 (Fed. Cir. 1997)).

By virtue of incorporating by reference the entire contents of the '945 patent, the disclosed embodiment in the '945 patent (the "first preferred embodiment") is treated as having been specifically set forth in the specification in addition to the

"second preferred embodiment" described in the '894 patent. Therefore, both structures must be considered in interpreting the means-plus-function limitations of the '894 patent's claims.

### 4.    Meaning to One of Ordinary Skill in the Art

Given the relatively simple technology involved and the lone disputed claim limitation, the Court may properly construe the limitation without the help of extrinsic evidence or attorney argument. *J.G. Peta, Inc. v. Club Protector, Inc.,* 2003 U.S. App. LEXIS 9783, *8 n.2 (Fed. Cir. 2003)(unpublished)("In this case, the district court properly concluded that a hearing was not necessary in light of the simple technology and relatively straightforward claim language at issue. Extrinsic evidence was unnecessary, and the district court did not err in declining to conduct a hearing to consider it.")(Attached hereto as Exhibit K). However, to the extent the Court finds it helpful, USI is attaching hereto the expert report and declarations of Gene Haynes. (Attached hereto as Exhibit L). Gene Haynes served as the technical expert for USI's GFCI supplier in the ITC action initiated by Plaintiff on these devices and the '894 patent. *See Riverwood Int'l v. R.A. Jones & Co., Inc.,* 324 F.3d 1346, 1358 (Fed. Cir. 2003)(rejecting a challenge to a district court's consideration of expert testimony from an engineer at a corporation defending infringement allegations in another case involving the same patents). USI submits that Mr. Haynes' analysis and opinions are at least as helpful as those of Leviton's own Vice President of Engineering, Steve Campolo, who is serving as Plaintiff's technical expert in this litigation (and also as Leviton's expert in the ITC matter).

Again, USI remains convinced that this is not a situation where the claim language is ambiguous and resort to extrinsic evidence is necessary or proper. *See Vitronics v. Conceptronic,* 90 F.3d 1576, 1584 (Fed. Cir. 1996)("[W]here the patent documents are unambiguous, expert testimony regarding the meaning of a claim is entitled to no weight."). USI believes the Court is more than adequately equipped to carry out the Federal Circuit's mandate of "identifying the function of the means-plus-function element" in dispute and then "identify[ing] the structure corresponding to that function" remembering that "identification of corresponding structure may embrace more than the preferred embodiment." *Micro Chemical, Inc. v. Great Plains Chemical,* 194 F.3d 1250, 1258 (Fed. Cir. 1999).

### B.    The Doyle Patents

#### 1.    The '338 Patent

Exhibit M attached hereto is a chart for construing the relevant language of claim 2 of the '338 patent. The chart presents each of the claim limitations and the written description of the claim elements from the specification. For limitations drafted in means-plus-function format, the claim chart recites the structure recited in the specification for performing the function. Claim 2 of the '338 patent recites a particular movable means (a "movable cam means") for separating the electrical contacts upon energization of the coil in response to a fault. The disclosed cam structure responds to movement of the armature (or plunger). In particular, as the plunger moves into the center of the coil, the actuator (or kicker) moves along with the plunger. The plunger and actuator (which is the "first movable member") move from a first position (prior to

14

energization of the coil wherein the contacts are touching) to a second position (after the circuit is broken wherein the contacts are separated). As the plunger and actuator move, the cam (which is the "second movable member" having "movement of said second member being caused by movement of said first member") rotates to force the arms with contacts to move away from the fixed contacts, thereby separating the contacts. Thus, the cam structure performs the function of separating the electrical contacts and does so with a first movable member and a second movable member.

### 2.    The '945 Patent

Exhibit N attached hereto is a chart for construing the relevant language of claim 1 of the '945 patent. The '945 patent is a "continuation" of the '338 patent, which means that the '945 patent has the identical specification (written description and drawings) of the '338 patent. The only difference between the '945 patent and the '338 patent is that the claims of the '945 patent are narrower, or a species, of the claims of the '338 patent. Notably, the '945 patent includes a terminal disclaimer which forfeited the portion of its statutory term extending beyond the life of the '338 patent. In situations where a second patent claims an obvious variant of the first patent (assuming common inventorship and ownership) a terminal disclaimer is the only way to overcome a double patenting rejection.

As discerned from the claim chart, the '945 patent recites structure associated with the cam means and claims the performance of a function additional to that of the '338 patent's claims. Specifically, the '945 patent claims a movable cam means (movable means) which not only includes a first movable

member (the actuator) and a second movable member (the cam body) moving in response to movement of the first movable member (movement of said second member being caused by movement of said first member) to physically separate the contacts, thereby interrupting electrical connection between them, but also claims the **additional function** of being able to close the contacts.

### 3.    The '894 Patent

Exhibit O is a chart for construing the relevant language of claim 1 of the '894 patent. The chart refers to both the '894 specification and the '945 specification because the '894 patent specifically incorporates by reference the '945 patent. The parties do not dispute that resort to the '945 patent disclosure (which is identical to that of the '338 patent) in construing the means-plus-function limitations is proper in view of its incorporation by reference. *See* Exhibit P at 5-6 and 10.[4]  Indeed, the '894 specification declares it to be describing a "'second' preferred embodiment." '894 Patent, col. 1, ln 20. In light of the interpretation of the claims asserted by Leviton in the ITC, the parties greatly diverge in their interpretation of the very last limitation in claim 1 of the '894 patent ("movable means").

As shown in the chart, the function of the "movable means" limitation embraces two structures which perform the function for claim construction purposes. When a patent has limitations drafted in means-plus-function format and discloses multiple embodiments, each embodiment is considered for any structure disclosed for performing the recited function. *See Ishida v. Taylor*, 221

---

[4] Exhibit P is a Motion for Summary Determination of Infringement filed by Leviton in the ITC proceeding. This motion was denied by the ITC in Order No. 9 on February 21, 2003. (Attached hereto as Exhibit Q).

F.3d 1310, 1316 (Fed. Cir. 2000)("[P]roper application of section 112(6) generally reads the claim element to embrace distinct and alternative described structures for performing the claimed function. Specifically, 'disclosed structure includes that which is described in a patent specification, including any alternative structures identified.'").

Interestingly, despite quoting the above language in its motion before the ITC, Leviton appears to distance itself from the multiple embodiments when it comes to the "movable means" limitation. *See* Exh. L at 10. In any event, the fact that the structures may be very different makes no difference when construing means-plus-function claims. *See Ishida v. Taylor*, 221 F.3d 1310, 1316 (Fed. Cir. 2000) ("The specification depicted two separate embodiments that performed the claimed function, and the two embodiments were structurally very different. . . . embodiment 1 . . . features cam tracks, while embodiment 2 has no cam tracks."). Each structure capable of performing the recited function is considered in construing the claim limitation. *Id.* ("The district court properly identified 'the corresponding structures' for ***each embodiment*** as required by 112 ¶ 6."). Accordingly, the claim chart construes both embodiments when considering the "movable means" limitation. Assuming the presence of all other claim limitations, an accused device having either structure infringes the claim. Likewise, a prior art reference disclosing either structure, including Leviton's own patents, anticipates the claim. "When a patentee anticipates himself, he cannot, in the nature of things, give validity to the second patent." *Miller v. Eagle Manuf.*, 151 U.S. 186, 198 (1967)(Jackson, J.).

### C.     Plaintiff Leviton's Post-Hoc Attempts to Rewrite the Claims

There is no dispute that the "movable cam means" of the '338 patent

performs the function of "influencing a separation of said input and output

contacts, thereby interrupting electrical connection between them." Indeed, the

'338 patent claims such a feature.  In an attempt to escape the plain and

unmistakable language of the patents and their claims, and the clear double-

patenting problem it presents, Plaintiff has crafted several novel excuses why the

claims should be rewritten to now not only include a previously undisclosed

negative limitation having no support in the specification, but also to require the

'894 patent claims to be restricted from claiming "a switching device" to claiming

a specific type of switching device (a "ground fault circuit interrupter") which, by

the way, Plaintiff also now asks to be construed to exclude the structures of the

parent application (which were also disclosed for use as ground fault circuit

interrupters).

### a.  Incorporation-by-Reference

Plaintiff's latest claim construction is at complete odds with its original

position taken before this Court.  As the Court may recall, Plaintiff argued in its

first appearance before the Court that the incorporation-by-reference of the '945

patent in its entirety showed that these devices were intended to be one related

invention and that any ambiguity in the claims of the '894 patent could be cured

by resort to the '945 patent.  Now, however, Plaintiff argues that only certain

parts of the '945 patent should be viewed as incorporated into the '894 patent.

This position is simply at complete odds with the word "entirety."

18

### b. Intrinsic Evidence

Plaintiff also selectively quotes the specification to support its latest construction that the '894 patent's claims were intended to exclude the '945 circuit interrupting features. Rather than regurgitate lengthy portions of the specification, USI would simply like to point out the three things noticeably missing from Plaintiff's recitations from the intrinsic evidence. First, the first sentence of the '338 patent (second sentence of the '945 patent) states: "The present invention relates to remote control systems and receptacles, and more particularly to a universal switch receptacle system capable of use in conjunction with either remote control systems or *ground fault circuit interrupting devices."* Clearly, the '338 and '945 patents disclose the invention as including ground fault circuit interrupters.

Secondly, the body of the '894 patent does not distance the disclosure from the '945 patent, it does quite the opposite: "In addition to the advantages of the *present invention* already set forth in copending applications noted above, the contents of which are incorporated by reference in their entirety, the *second embodiment* of this invention concentrates upon the ground fault circuit interrupting features of the invention." '894 patent, col. 1, ln 32-36. Plaintiff is attempting to limit the invention to one of the embodiments by manufacturing negative limitations having no support in the specification or claims.

Finally, nowhere in the '894 patent does the word "only" appear, especially with reference to the movable means or the interrupting of electrical contact between the input and output contacts. These are not single-use, disposable

19

devices; they are intended to be capable of both interrupting and making electrical connection between the input and output conductors.

Clearly, Plaintiff's claim construction is based on selective quotes from the disclosure of one of the preferred embodiments and attorney argument and extrinsic evidence to alter the plain language of the claims and downplay other parts of the intrinsic evidence. "[E]xtrinsic evidence 'may not be used to vary or contradict the claim language' or 'the import of other parts of the specification.'" *Riverwood Int'l v. R. A. Jones & Co.*, 324 F.3d 1346, 1358 (Fed. Cir. 2003)(quoting *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1578 (Fed. Cir. 1996)).

### c. Preamble

Plaintiff also attempts to bootstrap the difference in the claim preambles to proffer that the '894 patent is restricted to devices which <u>only</u> interrupt electrical connections. The '894 patent's preamble recites that the invention is directed to a "switching apparatus for selectively interrupting an electrical connection between input and output conductors, or the like." This preamble states nothing more than the intended use or purpose of the device recited in the claim. Accordingly, the preamble is <u>not</u> to be considered a limitation of the claim. *See Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F.3d 1298, 1305 (Fed. Cir. 1999)(finding that if the preamble "merely states, for example, the purpose or intended use of the invention, then the preamble is of no significance to claim construction.").

Furthermore, the transition phrase "comprising" is used in the '894 patent. Thus, the claim is open, and additional features, such as "completing" electrical connection, are not deemed outside the scope of the claim. *Moleculon Research Corp. v. CBS, Inc.,* 793 F.2d 1261, 1271 (Fed. Cir. 1986).

Nowhere in the patent is the disclosure limited to switches which only "selectively interrupt electrical connection." However, Plaintiff is attempting to use extrinsic evidence under the guise of how one of ordinary skill in the art would interpret the preamble to add that negative limitation. This is in direct contravention to Federal Circuit precedent. *See Storage Technology Corp. v. Cisco Systems, Inc.*, 329 F.3d 823, 832 (Fed. Cir. 2003)("Moreover, the district court did not use the extrinsic evidence to assist in defining a claim limitation, but rather used it to limit claim scope based on the purpose of the invention, which is impermissible.").

### d. "Only" – Negative Limitation

The driving force behind all of Plaintiff's claim construction theories is the need to read the negative limitation "only" into the claims of the '894 patent, thereby sidestepping the fact that the '338 and '945 patents have structures which perform the recited function and, as argued, additional functions. Earlier this month, the Federal Circuit rejected a similar attempt to read negative limitations into means-plus-function claims. *Omega Engineering v. Raytek Corp.,* 2003 U.S. App. LEXIS 13570 (Fed. Cir. July 7, 2003).

The *Omega* Court reemphasized that in construing means-plus-function claims, the court "must identify the function, ***staying true to the claim language***

21

*and the limitations expressly recited by the claims,"* and "then ascertain the corresponding structures in the written description that perform those functions." *Id.* at *12-13 (emphasis added)(citations omitted). Further, '[w]hen construing the functional statement in a means-plus-function limitation, [the court] must take great care not to impermissibly limit the function by adopting a function different from that explicitly recited in the claim.' *Id.* at *14. The Court then found that "[d]espite that admonition, the trial court's ruling incorporated a *novel* negative limitation. . . ." *Id.* (emphasis added). Plaintiff is likewise trying to impermissibly add a novel negative limitation to the claims.

Furthermore, Plaintiff is attempting to do so by identifying the function after identifying the structure. The *Omega* Court found such an approach also impermissible:

> The district court justified the addition of the [new] limitation by reference to two preferred embodiments in the written description. . . . We find that justification inadequate, because such reasoning turns our rule of construction for means-plus-function claims upside down. The district court's approach essentially starts with a structure, and defines the function in light of that structure. Our case law, however, requires the exact opposite procedure. In construing means-plus-function claims, courts must first identify the claimed function using traditional tools of claim construction and then determine the structure corresponding to the identified function. Consequently, the additional limitation has no support in the patent's specification.

*Id.* at *39-40 (citations omitted). If the function of the "movable means" limitation is identified first, then the specification reviewed for corresponding structure, the conclusion that the "movable cam means" of the '338 (and '945 patents) performs the claimed function is inescapable. The fact that the movable cam means may be able to perform additional functions, such as completing an

22

electrical connection, is irrelevant. *See Vulcan Engineering v. FATA Aluminum,* 278 F.3d 1366, 1374 (Fed. Cir. 2002)("It is irrelevant whether an element has capabilities in addition to that stated in the claim. When the claimed function is performed in the accused system, by the same or equivalent structure, infringement of that claim element is established.").[5]

## III.    STEP TWO - CLAIM COMPARISON

### A.    The '894 Patent's "Movable Means" Limitation is Generic to the '338 and '945 Patents' "Movable Cam Means" Limitation

Exhibit N depicts a comparison of claim 1 of the '894 patent with claim 2 of the '338 patent and with claim 1 of the '945 patent. The claims are virtually identical until the last limitation.[6] In considering the scope of the final limitation, the conclusion that claim 1 of the '894 patent is broader than, and encompasses, the claims of the '338 and '945 patents is inescapable. Comparing the language clearly shows that the '894 patent is broader.

### 1.    "movable means responsive to movement of said plunger means for influencing a separation of said input and output contacts, thereby interrupting electrical connection between them"

Claim 1 (and claim 2 depending therefrom) of the '338 patent includes the identical limitation with the exception of "movable *cam* means" in place of "movable means" and the use of "armature" in place of "plunger." The terms "armature" and "plunger" are identified in the '894 patent specification as being synonymous, and thus, coterminous in scope. *See* '894 Patent, col. 3, ln 21-22.

---

[5] Clams are interpreted the same way for both infringement and validity.
[6] The '338 and '945 patents use the term "armature" instead of "plunger." However, the '894 patent itself teaches the terms are synonymous at column 3, lines 21-22: "This magnetic field influences the position of an *armature or plunger* 348."

As for the "movable means" which performs the function of separating the contacts to interrupt the electrical connection, it is undeniable that a "movable *cam* means" which performs the same function is a subset, or species, of the broader "movable means" limitation.  Both structures in the '894 patent (the "second preferred embodiment" and the "first preferred embodiment" of the '945 patent incorporated by reference) have movable means which separate the electrical contacts, thereby interrupting the electrical connection.

The fact that the claimed function is performed by different mechanisms in the different embodiments makes no difference under 35 U.S.C. § 112 ¶ 6 because the corresponding structure of each embodiment is covered by the claim.  Accordingly, "movable means" covers the movable cam mechanism of the first preferred embodiment (which is found in both the '338 patent and the '945 patent which was incorporated by reference) as well as the banger/latch mechanism of the '894 patent's second preferred embodiment.

Clearly, claim 1 of the '894 patent covers a broader, more generic scope than the '338 and '945 patents, in view of the fact that it includes their structure and an additional structure.  In short, the '338 patent and '945 patent have claims covering the first preferred embodiment while the '894 patent has claims covering not only the first preferred embodiment but also a second preferred embodiment. "It is hardly necessary to remark that the patentee could not include in a subsequent patent any invention embraced or described in a prior one, granted to himself, any more than he could an invention embraced or described in a prior patent granted to a third person." *James v. Campbell,* 104 U.S. 356, 370 (1881).

24

**2.    "said movable means including first and second movable members, movement of said second member being caused by movement of said first member"**

The "first movable member" of the "movable means" in the '894 patent's second preferred embodiment is the "banger" (ref. # 352 in the Figures).  The "first movable member" in the first preferred embodiment (or the "'945 embodiment" incorporated by reference) is the "actuating member" (ref. # 104 in the Figures of the '338 and '945 patents).  A comparison of the features in Figure 3 of the '894 patent and Figure 4 of the '945 patent (and of course Figure 4 of the '338 patent) shows that the banger of the second preferred embodiment and the actuating member of the first preferred embodiment are attached to the plunger and move with the plunger as it moves into the coil.[7]

Again, under 35 U.S.C. 112, sixth paragraph, each embodiment is construed in identifying the scope of the claim.  Accordingly, in interpreting the "movable means" limitation in view of the two embodiments, both the banger and actuating member are considered to be "first movable member(s)."  The "second movable member" of the movable means in the '894 patent's second preferred embodiment is at least one of the "latching member(s)" (ref. # 426 and 428).[8] The second movable member of the first preferred embodiment (or "'945 embodiment") is the "cam" (ref. # 132).  This interpretation for each embodiment is clear when Figure 3 and Figure 4 of the '945 and '894 patents are reviewed in

---

[7] Although a number of parts of the embodiments move, it is clear that the "first movable member" is the banger or actuating member because claim 2 of the '894 patent recites: "2. Switching apparatus according to claim 1, wherein said first member is movable with and operatively [sic] connected to said plunger means."  The banger and actuating member are the only structures that are operatively connected to, and move with, the plunger.

[8] Although the patent discloses the use of two latching members, one for each contact, the claim was drafted to only require one latching member.

conjunction with the claim language requiring "movement of said second member being caused by movement of said first member." In each embodiment, the first movable member is attached to the plunger and moves as the plunger moves. In the '894 patent's second embodiment, the first movable member (banger) hits the second movable member(s) (latching member) to release the latch to allow the leaf-spring (with the movable contact) to spring away from the fixed contact, thereby interrupting the electrical connection. In the first preferred embodiment (or "'945 embodiment"), the first movable member (actuating member or kicker) hits the second movable member (cam) which rotates to force the contact arm to separate the movable contact from the fixed contact. In either case, the function of separating the contacts to interrupt the electrical connection is performed. Again, the structure of each embodiment which performs the claimed function is considered in construing the claim pursuant to 35 U.S.C. § 112, ¶ 6 Both the first and second preferred embodiments are viewed as covered claim 1 of the '894 patent. Accordingly, by virtue of the '338 patent and '945 patent claiming only one of the two embodiments, it is undisputable that the '894 patent is broader, and generic, to the '338 patent and '945 patent.

### B.    The '894 Patent is Invalid

#### 1.    The '894 Patent is Generic to the '338 and '945 Patents

As previously set forth herein, a patent is invalid for double-patenting if it has claims which are broader and subsume those of an earlier patent. *E.g., Eli Lilly v. Barr,* 251 F.3d 955, 971 (Fed. Cir. 2001). That is precisely the situation with the '894 patent. The '894 patent includes the '894 embodiment and the '945 embodiment due to the incorporation by reference of the '945 patent. Claim 1 as

properly construed is accordingly broader than the '338 and '945 patents as they only cover the '945 embodiment. In simple terms, the '894 patent is the alphabet to which the '338 and '945 patents are previously patented letters. "It is hardly necessary to remark that the patentee could not include in a subsequent patent any invention embraced or described in a prior one, granted to himself, any more than he could an invention embraced or described in a prior patent granted to a third person." *James v. Campbell,* 104 U.S. 356, 370 (1881).

## 2. The Dependent Claims are Not Patentably Distinct

Claims 2-4 of the '894 patent are also invalid for double patenting. Claim 2 includes the further limitation of "wherein the first member is movable with and operatively connected to said plunger means." This limitation is also satisfied and disclosed in the '945 embodiment. Both the banger ('894 embodiment) and the actuator ('945 embodiment) are attached to, and move with, the plunger. Accordingly, claim 2 is not patentably distinct and is invalid.

Claim 3 includes the further limitation of "wherein said plunger means comprises a plunger member formed with a relatively elongated portion which extends into portions of said electromagnetic coil means." This limitation is also satisfied and disclosed in the '945 embodiment. The plungers of the '894 and '945 embodiments have a stem portion that is pulled into the coil upon energization. Accordingly, claim 3 is not patentably distinct and invalid.

Claim 4 includes the further limitation of a "spring means for returning said plunger means to said first position after energization of said coil means." The '945 patent teaches the use of a spring means for returning the plunger to its first

27

position when the coil is deenergized. '945 Patent, Col. 6, ln 56-63. Accordingly, claim 4 is not patentably distinct and invalid.

## CONCLUSION

In view of the foregoing, Defendants respectfully request that their motion for summary judgment on the issue of invalidity for double patenting be granted.

Respectfully submitted,

UNIVERSAL SECURITY INSTRUMENTS INC.
USI ELECTRIC, INC.

By: _____
Maurice U. Cahn, Esq.
Frederick N. Samuels, Esq.
William E. Bradley, Esq.
CAHN & SAMUELS, LLP
2000 P Street, NW, Suite 200
Washington, D.C. 20036
(202) 331-8777 (Phone)
(202) 331-3838 (FAX)