UNITED STATES INTERNATIONAL TRADE COMMISSION
WASHINGTON, D.C.
Before the Honorable Sidney Harris
Administrative Law Judge

|  |  |
|---|---|
| In the Matter of )<br><br>CERTAIN GROUND FAULT CIRCUIT )<br>INTERRUPTERS ("GFCIs") AND PRODUCTS )<br>CONTAINING SAME )<br> ) | Investigation No. 337-TA-478 |

## COMPLAINANT LEVITON MANUFACTURING CO. INC.'S MOTION FOR SUMMARY DETERMINATION THAT THE ACCUSED PRODUCTS OF RESPONDENTS YUEQING HUAMEILI ELECTRONIC CO., LTD. AND VAN-SHEEN ELECTRIC APPLIANCE CO., LTD. INFRINGE THE ASSERTED CLAIMS OF THE '894 PATENT

Pursuant to Rule 210.18 of the United States International Trade Commission's

Rules of Practice and Procedure, 19 C.F.R. § 210.18 and Rule 56 of the Federal Rules of

Civil Procedure, Complainant Leviton Manufacturing Co., Inc. ("Leviton") respectfully

moves for summary determination that Respondents Yueqing Huameili Electronic Co.,

Ltd. d/b/a HML, Yueqing Huameili Electronic Co., Ltd ("HML") and Van-Sheen Electric

Appliance Co., Ltd. d/b/a Yatai Switch Factory ("Van-Sheen")(collectively

"Respondents") infringe the asserted claims of United States Patent No. 4,595,894 ("the

'894 patent").  In support of its motion, Leviton attaches the following Memorandum in

Support of its Motion and Declarations of Messrs. Jerome W. Massie and Steve

Campolo.

Moreover, no genuine issues of material fact exist precluding summary

determination that Respondents accused GFCIs infringe the asserted claims of the '894

patent. Accordingly, for the reasons set forth in the accompanying memorandum and declarations, Leviton respectfully requests that its motion for summary determination that Respondents accused products infringe the patent-in-suit be granted.

Respectfully submitted,

Cecilia H. Gonzalez
Bert C. Reiser
Rachel A. Adams
HOWREY SIMON ARNOLD & WHITE, LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004-2402
Telephone: (202) 783-0800

Paul J. Sutton
Barry G. Magidoff
Joseph Manak
Daniel Ladow
GREENBERG TRAURIG, LLP
885 Third Avenue
New York, NY 10022
(212) 801-2100

Counsel for Complainant
LEVITON MANUFACTURING COMPANY
INC.

Date: January 8, 2003

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

## Table of Contents

Page

I.  Preliminary Statement and Introduction ........................................................................1

II.  Statement Of Facts................................................................................................3

    A.  Background of the '894 Patent ...........................................................................3

    B.  Description Of The Invention Of The '894 Patent ..................................................4

    C.  Leviton's Claim of Infringement ..........................................................................6

    D.  Respondents Have Copied The GFCI Product As Sold By Leviton .......................7

    E.  The Wall Receptacle GFCI Products Sold By Defendants Are All
       Equivalent With Respect To The Issues Of Infringement In This Litigation..........8

III. Argument ..........................................................................................................9

    A.  Summary Determination Is Appropriate At This Time ...........................................9

    B.  The Standard For Literal Patent Infringement ......................................................9

    C.  The Meaning of the Claims Follows The Plain Language Of The Claims
       Under 35 USC 112................................................................................................10

       1.  Teachings of the Patent Specification..............................................................10

    D.  There Is No Question Of Fact With Respect To The Structure And
       Operation Of Respondents' GFCI's Nor That They Literally Infringe The
       Claims Of The '894 Patent As Properly Construed...............................................14

    E.  Infringement Analysis As To HML's GFCI.........................................................16

    F.  Infringement Analysis Of Van-Sheen's GFCI......................................................19

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

## Table of Authorities

Page

### Federal Cases

*Al-Site Corp. v. VSI Intern., Inc.,*
    174 F.3d 1308, 1321, 50 U.S.P.Q. 2d 1161, 1168 (Fed. Cir. 1999) ...........................16

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 247-49 (1986) ........................................................................................9

*Avia Group Int'l v. L.A. Gear California, Inc.,*
    853 F.2d 1557, 1560, 7 U.S.P.Q. 2d 1548 (Fed. Cir. 1988) .......................................19

*Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,*
    731 F.2d 831, 835 (Fed. Cir. 1984)...............................................................................9

*Caterpillar Inc. v. Deere & Co.,*
    224 F.3d. 1374, 1379, 56 U.S.P.Q. 2d 1305 (Fed. Cir. 2000) ....................................16

*Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,*
    145 F.3d 1303, 1308, 46 U.S.P.Q. 2d 1752, 1755-56 (Fed. Cir. 1998)................10, 16

*Engel Indus., Inc. v. Lockformer Co.,*
    96 F.3d 1398, 1405-06 (Fed. Cir. 1996) ......................................................................9

*Markman v. Westview Instruments, Inc.,*
    52 F.3d 967, 970-71 (Fed. Cir. 1995) (in banc), aff'd, 116 S. Ct. 1384 (1996) ...........9

*Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,*
    475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)..................................................9

*Micro Chem., Inc. v. Great Plains Chem. Co.,*
    103 F.3d 1538, 1547 (Fed. Cir. 1997)........................................................................16

*Odetics, Inc. v. Storage Tech. Corp.,*
    185 F.3d 1259, 1267, 51 U.S.P.Q. 2d 1225, 1229-30 (Fed. Cir. 1999) ......................16

*Serrano v. Telular Corp.,*
    111 F.3d 1578, 1583, 42 U.S.P.Q. 2d 1538 (Fed. Cir. 1997) .....................................10

*Southwall Techs., Inc. v. Cardinal IG Co.,*
    54 F.3d 1570, 1575 (Fed. Cir. 1995)............................................................................9

*Ishida Co., Ltd. v. Taylor,*
    221 F.3d 1310, 1316, 55 U.S.P.Q. 2d 1449, 1452-53 (Fed. Cir. 2000) ......................10

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

*Uniroyal, Inc. v. Rudkin-Wiley Corp.,*
   19 U.S.P.Q. 2d 1432 (Fed. Cir. 1991)..........................................................................18

*Vitronics Corporation v Conceptronic, Inc.,*
   90 F. 3d 1576, 1583, 39 U.S.P.Q. 2d 1573 (Fed. Cir. 1996) .......................................13

**Federal Statutes**

35 U.S.C. § 112, ¶ 6 ..........................................................................................10, 15

35 U.S.C. § 271(a) ....................................................................................................9

**Federal Regulations**

19 C.F.R. § 210.18(b) (2002)......................................................................................9

**Other Authorities**

U.S. Pat. No. 4,518,945 .............................................................................................4

U.S Patent No. 4,595,894...................................................................................1, 2

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

## UNITED STATES INTERNATIONAL TRADE COMMISSION
### WASHINGTON, D.C.
### Before the Honorable Sidney Harris
### Administrative Law Judge

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| CERTAIN GROUND FAULT CIRCUIT | ) Investigation No. 337-TA-478 |
| INTERRUPTERS ("GFCIs") AND | ) |
| PRODUCTS CONTAINING SAME. | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## LEVITON'S MEMORANDUM OF LAW IN
## SUPPORT OF ITS MOTION FOR
## SUMMARY DETERMINATION OF INFRINGEMENT

### I.    PRELIMINARY STATEMENT AND INTRODUCTION

Leviton Manufacturing Co., Inc. ("Leviton") respectfully submits this memorandum in support of its motion for summary determination of infringement of all of the claims of United States Patent No. 4,595,894 (the "'894 Patent", attached hereto as Exhibit A) against Yueqing Huameili Electronic Co., Ltd d/b/a HML, Yueqing Huameili Electronic Co., Ltd ("HML") and Van-Sheen Electric Appliance Co., Ltd. and Van-Sheen Electric Appliance Co., Ltd. d/b/a Yatai Switch Factory ("Van-Sheen")(collectively, "Respondents"), in this proceeding. There is no genuine issue of material fact present in this regard, and Leviton is entitled to judgment of infringement as a matter of law.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

This is a patent infringement action brought by Leviton involving its U.S. Patent No. 4,595,894 (the "'894 Patent"), entitled "Ground Fault Circuit Interrupting System." Commercial products incorporating the technology of the '894 Patent, as sold by Leviton for the residential construction and home repair industry, have been enormously successful and constitute a large portion of all electrical safety switches sold in the market. The Respondents have sought to profit from Leviton's success by willfully copying the Leviton Products and infringing the '894 Patent through the manufacture and sale of infringing GFCI switch products ("accused infringing products").

The '894 Patent relates to a switching system for interrupting an electrical circuit so as to avoid injury or serious shock in the event of an electrical fault. The '894 Patent teaches a novel electromechanical and mechanical means by which, in response to a signal, the circuit is interrupted by a physically separating electrically conducting contacts. Further, the '894 Patent discloses a device small enough to fit within a standard outlet or receptacle box at a lower cost, with fewer component parts, when compared to systems previously marketed. For these reasons, Respondents have chosen to copy and willfully infringe the '894 Patent by importing into the United States, copies of Leviton's patented GFCI switch products, which Respondents manufacture in China.

Herein, Leviton will show that when the '894 Patent claims are properly construed, and Respondents' accused products are compared to the properly construed claims, infringement is certain and summary determination should be granted as no genuine issue of material fact remains.

2

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

## II.    STATEMENT OF FACTS

### A.    Background of the '894 Patent

The '894 Patent issued on June 17, 1986, from Application Serial No. 06/716991 filed on April 1, 1985. Leviton owns by assignment from the inventors the entire right, title and interest in and to the '894 Patent. A copy of the two-page recorded assignment of the invention and application resulting in the '894 Patent, dated September 19, 1985, and recorded at the U.S. Patent and Trademark Office ("PTO") on September 27, 1985, at Reel 4459, Frame 822, accompanies this memorandum and is attached as Exhibit B. The original copy of the assignment is believed to be lost. A copy of a file from the United States Patent and Trademark Office Patent Application Information Retrieval ("PAIR") web site at "http://pair.uspto.gov/gci-bin/final/pairsearch.pl" accompanies this motion as Exhibit C, and identifies the Official file content and history of the '894 Patent. A true copy of the official PTO microfiche copy of the underlying patent application (Serial No. 0676991) which resulted in the '894 Patent is attached hereto as Exhibit D.

The '894 Patent issued, without prosecution, to Leviton, as assignee, on June 17, 1986, for this invention. The patent application which issued into the '894 Patent, and its claims, were allowed by the PTO without any Office Action by what is known as a "First Action Allowance", where the claims are allowed in the exact form as had been filed. As such, no limitation on the scope of the '894 Patent claims is merited under the doctrine of prosecution history estoppel.

Moreover, in its opening text, the '894 Patent includes a statement expressly incorporating by reference "the entire contents and subject matter" of an earlier patent as follows:

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

The present application is a continuation-in-part of applicants' both pending United States patent applications Ser. Nos. 431,982 now **U.S. Pat. No. 4,518,945**, filed Sept. 30, 1982 and entitled "REMOTE CONTROL SYSTEM" and Ser. No. 558,262 filed Dec. 5, 1983 and entitled "SHOCK HAZARD PROTECTION SYSTEM", and **incorporates by reference as if fully set forth herein the entire contents and subject matter thereof** and of any and all of their respective "parent" patent applications to which they are co-pending. (Col. 1, lines. 6-16) (Emphasis added.)

## B.   Description Of The Invention Of The '894 Patent

The invention claimed in the '894 Patent is a Ground Fault Circuit Interrupting System ("GFCI"), that is a switch that "interrupts" a circuit when there is an electrical fault. It is a one-way switch, in that it only opens, or interrupts, the circuit. It cannot then close the circuit. In addition, the invention is a GFCI that fits within the standard wall receptacle box.

The switch is held in place in the receptacle box by a "strap means" formed, as is usual, of a steel sheet material. The switch is operated by a 'solenoid' formed of a 'coil' and a 'plunger' that slides within the central axis of the coil. When the coil is energized a magnetic field is generated which causes movement, i.e., influences the position, of the plunger to move into the center of the coil. The coil is placed adjacent a portion of the strap means such that a path of the magnetic field generated by the coil is defined by the portion of the strap means adjacent the coil. The strap means is defined as being formed of a magnetic material, i.e., steel sheet.

Movement of the plunger, in response to the magnetic field, in turn moves a first movable member, which in turn moves a second movable member, which causes separation of the electrical connection, thus interrupting the electrical connection. As defined in the claim, and as described in the specification, the claimed GFCI cannot by itself, without manual assist, reclose the electrical connection.

4

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

The '894 Patent is a continuation in part of the '945 Patent, which in turn is a continuation of the '338 Patent. The latter two patents are both directed to two-way switches which can be triggered to automatically open and subsequently triggered again to reclose an electrical connection. The disclosures of those latter two patents are identical, including the drawings. The reason the '894 Patent claims it is a "c-i-p" of the '945 Patent, is that they both are operated by a solenoid that includes the same coil adjacent a strap means, so that the adjacent portion of the strap means will "define a path of the magnetic field" when the coil is energized. The strap means are slightly different however, in that the '894 strap means is shown and described as having a pair of tabs extending out from the strap means towards the coil. One of the tabs is adjacent one end of the coil, and extends to the central axis of the coil. The second tab is spaced away from the coil and is extremely short, extending only to the edge of the coil. There are no similar tabs in the strap described and shown in the '945 Patent. In both cases, however, portions of the strap means define a path of the coil's magnetic field.

The reason the '894 Patent is only a partial continuation of the '945 Patent is because of the difference in its function, which is only to open a circuit, and not to provide for a subsequent automatic reclosing by energizing the coil, and a necessary change in the switching system, utilizing the plunger to serially move two members that move to change their position, instead of having the plunger operate a rotating cam, that rocks back and forth between two positions each time the coil is energized.

The claims of both of these patents are all 'means plus function' type of claims, and thus the structure of the claimed device, which is not described in so many words in the claim, must be defined by what is described in the specification and drawings as

5

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

providing for each of the listed functions. As the '894 Patent expressly incorporates the subject matter of the '945 Patent, to the extent there are elements disclosed in the '945 Patent, that have the functions required by the claim of the '894 Patent, those structures are alternative structures for the '894 Claims. Specifically, the coil and the strap means have the same function in both patents, and therefore the structures that are shown in either of the patents, or their equivalents, can be used to define the "strap means" in the claims of the '894 Patent.

### C.   Leviton's Claim of Infringement

Leviton asserts that the wall receptacle type of GFCI's sold into the United States by HML and by Van Sheen are copies of Leviton's patented GFCI products and infringe the claims of the '894 Patent.

HML and Van Sheen have both asserted that the accused products do not infringe the '894 Patent because their products do not meet one of the limitations of independent Claim 1. *See* Respondent HML's Supplemental Responses to Leviton's First Set of Interrogatories, Supplemental Response No. 21, attached hereto as Exhibit F and Respondent Van-Sheen's Supplemental Responses to Leviton's First Set of Interrogatories, Response No. 21 (Exhibit G). Van-Sheen has also denied infringement of Claim 4, asserting that its accused infringing products do not contain the limitation to the spring means.

The claims of the '894 Patent are reproduced below with the disputed limitations appearing in italics.

Claim 1   ▪        Switching apparatus for selectively interrupting
                  an   electrical   connection   between   input   and   output

6

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

conductors, or the like, comprising, in combination:

- a housing;

- magnetizable plunger means disposed within a portion of said housing for movement between first and second positions; electromagnet coil means disposed within said housing for moving said plunger means when energized from the first position to the second position;

- an input contact electrically connected to said input conductor;

- an output contact electrically connected to said output conductor;

- strap means for mounting the switching apparatus upon a selected surface, *said strap means including portions thereof which define a path of the magnetic field generated by said coil means* to influence the position of said plunger means,

- and movable means responsive to movement of said plunger means for influencing a separation of said input and output contacts, thereby interrupting electrical connection between them,

- said movable means including first and second movable members, movement of said second member being caused by movement of said first member.

Claim 2 ▪ Switching apparatus according to claim 1, wherein said first member is movable with and operatively connected to said plunger means.

Claim 3 ▪ Switching apparatus according to claim 1, wherein said plunger means comprises a plunger member formed with a relatively elongated portion which extends into portions of said electromagnetic coil means.

Claim 4 ▪ Switching apparatus according to claim 1, further including *spring means for returning said plunger means to said first position after energization of said coil means.*

## D.    **Respondents Have Copied The GFCI Product As Sold By Leviton**

The GFCI products sold by Leviton are substantially the same product as is shown in the drawings of the '894 Patent. One insubstantial difference is that the strap means in the Leviton product only has one of the tabs described above, which extends

7

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

across one end of the coil to its central axis. The GFCI products being sold by Respondents are substantial copies of the Leviton products, including the use of strap means that have the same single tab. The Respondents apparently believed that the design of the Leviton products, i.e., the claimed invention in the '894 Patent, is especially effective. After all, copying is the sincerest form of flattery.

Both Respondents have admitted substantial sales of their GFCI products intended for importation into the United States. *See* Respondent HML's Supplemental Responses to Leviton's First Set of Interrogatories, No. 7, attached hereto as Exhibit F; Respondent Van-Sheen's Supplemental Responses to Leviton's First Set of Interrogatories, No. 7, attached hereto as Exhibit G.

**E.    The Wall Receptacle GFCI Products Sold By Defendants Are All Equivalent With Respect To The Issues Of Infringement In This Litigation**

Complainant is filing together with this motion a Declaration by Steven Campolo, incorporating his Expert Report, previously filed in this Investigation. The Expert Report makes clear that each of the claim limitations are met by elements in the several samples of GFCI products from HML and Van Sheen actually analyzed by Steven Campolo.

The Respondents HML and Van Sheen have admitted, by a letter from their joint counsel, that all of the GFCI's that they have identified in this Investigation are equivalent with respect to the issues of infringement in this Investigation.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

## III.    ARGUMENT

### A.    Summary Determination Is Appropriate At This Time

Summary determination is appropriate in cases when, as here, there is "no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. 19 C.F.R. § 210.18(b) (2002); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-49 (1986); *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,* 731 F.2d 831, 835 (Fed. Cir. 1984).

### B.    The Standard For Literal Patent Infringement

Whoever without authority, makes, uses, imports, sells, or offers to sell a patented invention within the United States infringes the patent. *See* 35 U.S.C. § 271(a) The infringement inquiry has two steps. First, the court must construe the scope of the patent claims. Second, it must be determined whether the claims, thus construed, cover the accused device. The first step presents a question of law for the court.[1] *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 970-71 (Fed. Cir. 1995) (in banc), *aff'd,* 116 S. Ct. 1384 (1996). The second step presents a question of fact, *see Engel Indus., Inc. v. Lockformer Co.,* 96 F.3d 1398, 1405-06 (Fed. Cir. 1996), but one which may be obtained by summary judgment. *See Barmag,* 731 F.2d at 835.

A patent claim is infringed if the accused device includes elements that correspond identically to, or that are the substantial equivalent of, each and every limitation recited in the patent claim. *See Southwall Techs., Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1575 (Fed. Cir. 1995); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As demonstrated below,

---

[1]    The Federal Circuit acknowledged in *Markman* that a court may construe patent claims in the context of dispositive motions such as Rule 56 summary judgment motions. *See Markman,* 52 F.3d at 981.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

there can be no genuine dispute that each limitation in each of the four (4) claims of the '894 patent, as properly construed, is present in the accused products. Therefore, no issues of fact remain, infringement is clear, and Leviton is entitled to partial summary determination that there is infringement of the '894 Patent.

### C.    The Meaning of the Claims Follows The Plain Language Of The Claims Under 35 USC 112

As is apparent from the above-quoted claim language, the disputed claim limitations, as well as most of the other limitations, are written in 'means plus function' format. This format is acceptable pursuant to 35 U.S.C. § 112, ¶ 6, which reads:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

Determining the claimed function and the corresponding structure, for a claim limitation written in means-plus-function format, are both matters of claim construction. *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,* 145 F.3d 1303, 1308, 46 U.S.P.Q. 2d 1752, 1755-56 (Fed. Cir. 1998). "[P]roper application of § 112 ¶ 6 generally reads the claim element to embrace distinct and alternative described structures for performing the claimed function. Specifically, '[d]isclosed structure includes that which is described in a patent specification, including any alternative structures identified.'" *Ishida Co., Ltd. v. Taylor,* 221 F.3d 1310, 1316, 55 U.S.P.Q. 2d 1449, 1452-53 (Fed. Cir. 2000) *citing Serrano v. Telular Corp.,* 111 F.3d 1578, 1583, 42 U.S.P.Q. 2d 1538 (Fed. Cir. 1997).

### 1.    Teachings of the Patent Specification

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

The "strap means" has a double function as defined in claim 1: first, the strap means has the function of "mounting the switching apparatus upon a selected surface"; and second, the strap means also has as its function that "portions thereof [of the strap means] ... define a path of the magnetic field...". The functions of that limitation are thus fully defined, but by providing only a general statement as to its structure, i.e., "strap means", reference must be made to the written description of the '894 specification and the drawings. In the specification, the strap 326 is more fully defined and illustrated (*see* Figs. 1-5 and 10, and the accompanying text in the specification).

The specification clearly states that a magnetic field is generated when the coil is energized, and "the path of the [electromagnetic field] ... extends through strap 326" (col. 3, lines 17 through 20). The "magnetic field influences the position of an armature or plunger 348, which responds to the energizing of coil assembly 346 by being drawn toward the center of the coil assembly...."

The structure of the "strap means" of claim 1 is described and illustrated in the patent specification, in greater detail, as follows:

- The mounting strap is clearly shown in Figures. 1, 2, 3, 4, 5, and 10 of the '894 Patent, identified by numeral "326." Specifically Figure 2 serves "to illustrate the position of the mounting strap 326 with respect to its neighboring components" (Col. 2, l. 67-68)

- In Figure 3, the position of the strap means 326 in relation to the coil 346 and plunger 348 is clearly shown. It is noteworthy that the coil is adjacent to the strap along portions of the strap length.

11

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

- The mounting strap 326 is described as being formed from "steel sheet metal".[2](Col. 3, lines 12-13).

- Further, the "path of [the electromagnetic field] ... extends through strap 326, as in the case of strap 22." (Col. 3, ll. 19-21)

The structure corresponding to the "strap means" 326 is shown as spanning the entire vertical length of the GFCI, and has end portions 328 (*see* Fig. 10) intended to connect the GFCI to any surface. Moreover, the strap is made of steel, a magnetizable, high permeability metal, and a central portion of the strap is positioned immediately adjacent to the coil, such that it is within any magnetic field generated by the coil if it were to be energized. As is explained by Steve Campolo, Leviton's technical expert, it is basic physics that placing a magnetizable, high permeability, material, such as steel, within the magnetic field, causes the flux of the field to follow a path through the magnetic material, in preference to passing through the air. Therefore, the proper construction of this element would include a strap means, made of a magnetizable substance, such as steel, positioned such that it is within, and thus defines, the path of the magnetic field generated when the electromagnet coil means is energized. Again, the expert explains that following general physical principles of magnetism, that magnetic field will "influence the position of the plunger", i.e., cause it to move to the center of the coil. Thus, the limitation to the 'strap means', in this claim 1, must encompass at least the strap shown in the drawings of the '894 Patent, as well as the strap shown in the drawings of the '945 Patent (which are the preferred embodiments), and their substantial

---

[2] It is worth nothing that the '945 Patent expressly incorporated into the '894 Patent, also contains a strap reflected as Strap 22 which is also preferably formed from "steel sheet metal". *See* col. 5, line 27.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

equivalents. *See Vitronics Corporation v Conceptronic, Inc.*, 90 F. 3d 1576, 1583, 39 U.S.P.Q. 2d 1573 (Fed. Cir. 1996).

The function of the tabs 342, 344 on the strap, referred to above, is not set forth in the '894 Patent. However, it is noted that the strap 22 described in the specification of the '945 Patent does not include such tabs (*see* Fig. 12, '945 Patent). The '945 Patent does state that strap 22 does "part of the magnetic circuit" generated by the coil (Col. 7, ll. 22-23).

For the first time, in the Expert Report of Gene Haynes, served on January 6, 2003, respondent raises the issue that the commercial products include only one of the tabs 342,344, i.e., the larger tab 342, as raising a question as to whether the field follows a path through the strap. Mr. Haynes fails to consider the fact that there are no tabs in the strap 22 of the '945 Patent, which also is expressly described as defining a path for the magnetic field without such tab Mr. Haynes sets out no basis for asserting that both tabs are necessary to achieve the purpose of causing movement of the plunger. Leviton reserves its right to supplement this filing if Mr. Haynes raises further issues.

Additionally, Respondent Van-Sheen alleges that its GFCI does not infringe dependent claim 4 of the '894 Patent because it does not contain the "*spring means for returning said plunger means to said first position after energization of said coil means*", as described in the specification. Again, this claim limitation is drafted in 'means plus function' format, so the construction of the claim is dictated by the same principles as above.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

The function of the "spring means" is clearly recited as being "to return the plunger to said first position after energization of the coil means". This is the only function recited for the spring means.

As discussed above, an electrical fault will cause energization of the coil creating a magnetic field force that draws the plunger into the center of the coil resulting in a disconnect of the electrical circuit. After the disconnect takes place, the magnetic field force diminishes and the force exerted on the plunger by the spring means, compressed during energization, returns the plunger to its original position. This is described in the Expert Report by Steve Campolo. The "spring means" accomplishes that task simply and mechanically. In the '894 Patent, the spring structure is identified as "370" in Figs. 3, 6, 7, 8, and 10, and is shown and described as a coil, or helical spring that "extends over plunger shank portion 368" (Col. 3, 11. 40-43.) The spring means of Van-Sheen is also a helical, or coil, spring.

Clearly, the "spring means" is to be construed in terms of its function, as described in the specification, encompassing the particular spring structure shown in the specification and the 'substantial equivalents' thereof.

### D0.    There Is No Question Of Fact With Respect To The Structure And Operation Of Respondents' GFCI's Nor That They Literally Infringe The Claims Of The '894 Patent As Properly Construed

There is no issue of fact as to what is the structure of the Respondents' devices. Nor is there any issue that the operation of the Respondents' GFCI's provide for energization of the coil upon the detection of an electrical fault, and that the energized coil will generate a magnetic field that will "influence the position of said plunger" , i.e.,

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

draw in the plunger into the coil, and thereby pulling on the banger, which in turn causes opening of the contacts.

The only argument presented by Respondents' is whether in the Respondents' devices "a path" of the magnetic field passes through the strap, and thus meet the limitations of the claims as properly construed.

Mr. Haynes, Respondents' expert, argues, without factual support, that the lack of a second "tab" on the straps of the Respondents' devices is sufficient to avoid the magnetic field finding a path through the strap. It is not *seen* how Mr. Haynes can assert that the magnetic field will not affect the position of the plunger nor deny that the magnetic field will pass through the strap. Two Examiners, in each of the '894 Patent and the '945 Patent, who are reasonably familiar with the subject matter of the case, accepted the statement in the claims and in the specification, that the strap provides the "path" for the magnetic field. This was the case for the '894 patent embodiment, where the strap included two tabs, as well as for the '945 embodiment, where the strap had no tabs at the locations adjacent the coil. Complainant's expert Mr. Campolo, also explains how basic laws of physics compel the magnetic field to find its path through the adjacent strap.

It is clear, therefore, that in the Respondents' GFCI's, the magnetic field of the energized coil also passes through the strap and moves the plunger.

The CAFC has settled that in a situation where there is identity with respect to the function of an element and the claim limitation, and only an insignificant difference in the structure, literal infringement is found in the context of a means plus function limitation, under Para. 6 of 35 U.S.C. Sec. 112. *See Micro Chem., Inc. v. Great Plains*

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

*Chem. Co.*, 103 F.3d 1538, 1547 (Fed. Cir. 1997); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus. Inc.*, 145 F.3d 1303, 1309, 46 U.S.P.Q. 2d 1752, 1756 (Fed. Cir. 1998); and *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267, 51 U.S.P.Q. 2d 1225, 1229-30 (Fed. Cir. 1999).

The "insubstantial difference" analysis requires a determination of "whether the 'way' the accused structure performs the claimed function, and the 'result' of that performance, are substantially different from the 'way' the claimed function is performed by the 'corresponding structure ... described in the specification,' or its 'result.'" "Literal infringement of a § 112, ¶ 6 limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification." *Caterpillar Inc. v. Deere & Co.*, 224 F.3d 1374, 1379, 56 U.S.P.Q. 2d 1305 (Fed. Cir. 2000) *quoting Odetics, Inc., supra.* "Functional identity and either structural identity or equivalence are *both* necessary." *Id.* Also *see, Al-Site Corp. v. VSI Intern., Inc.* 174 F.3d 1308, 1321, 50 U.S.P.Q. 2d 1161, 1168 (Fed. Cir. 1999).

As will be shown below, there is no true factual dispute as to the function and structure of the Respondent's GFCI's.


### E.    Infringement Analysis As To HML's GFCI

HML denies that its GFCI product literally infringes the '894 Patent asserting that it does not meet the claim limitation requiring "*strap means including portions thereof which define a path of the magnetic field generated by said coil means to influence the position of said plunger means.*" Respondent HML's Supplemental Responses to

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

Leviton's First Set of Interrogatories, Supplemental Response to No. 21, Exhibit G. HML first denies that their strap means define a path of the magnetic field. However, as their strap is also made of steel, it must necessarily include the function of defining a path of the magnetic field generated by said coil means, to which it is immediately adjacent. Absent a revocation of the laws of physics, there can be no question but that a magnetic field generated by the coil when it is energized will have a path defined by the immediately adjacent strap made of a material, steel plate, that has a very high magnetic permeability compared to air. *See* the Declaration of Steve Campolo, attached hereto.

The expert report and deposition testimony of Mr. Steve Campolo conclusively prove that the HML GFCI indeed contains a "strap means" that falls within claim 1 of the '894 Patent, as well as, structures that meet all other limitations of the '894 Patent claims. *See* Expert Report of Steve Campolo ("Campolo Report"), dated January 6, 2003; attached hereto as Exhibit H.

Mr. Campolo has had more than twenty five (25) years of experience in both the practical and theoretical application and design of electronic products, personal protection devices, laboratory testing of such devices and Underwriter Laboratories procedures. As part of his analysis, Mr. Campolo was asked by Leviton to examine the HML product and determine whether HML's product contains the elements in dispute (Campolo Report, Exhibit H, p.2).

To that end, Mr. Campolo has dismantled several of the accused devices and examined each component in issue (Campolo Report, Exhibit H, p.5). Color photographs clearly showing the "strap means" of the accused devices are attached to the Campolo Report as Exhibits 18, 20, 25 and 27. The color photographs clearly show that the

17

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

accused product contains a "strap means" formed of steel plate and positioned adjacent to the coil, and in the same juxtaposition to the coil and the plunger as is shown in the Drawings of the '894 Patent.

Additionally, Mr. Campolo explains in his Declaration why the magnetic field created when the electromagnet coil was energized must include a path through a portion of the "strap means." His testimony conclusively proves that the accused devices must contain a "strap means" that "defines a path of the magnetic field" generated by their energized coil. *See* Campolo Declaration and Report Exhibit H.

The structure of the strap of the accused product is only insignificantly different from the straps depicted in the drawings of the '894 Patent or of the '945 Patent. The only difference from the '894 Patent strap is the absence in the accused strap of a very small "tab" below one end of the coil. The only difference from the '945 Patent strap is the presence in the accused strap of a relatively large "tab" adjacent one end of the coil, and which extends across the end of the coil. *See* Campolo Report Exhibit H. Clearly, the presence or absence of the tabs is not critical to the path of the magnetic field passing through the strap. Whether the two tabs together enhance the effect of the magnetic field, which Mr. Campolo denies, is not critical to a finding of infringement . It is well settled that slightly changing the claimed invention, so as to achieve a less effective version, is not sufficient to avoid infringement. *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 19 U.S.P.Q. 2d 1432 (Fed. Cir. 1991).

In a motion for summary determination, once the moving party meets its initial burden of demonstrating the absence of any genuine issue of material fact and its entitlement to judgment as a matter of law, the burden then shifts to the nonmovant who

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

must demonstrate that a genuine factual issue exists. *Avia Group Int'l v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560, 7 U.S.P.Q. 2d 1548 (Fed. Cir. 1988). It is not enough to present mere argument to contradict factual testimony.

The Respondents' specious attempt at a non-infringement position must be rejected. It is plain from the Campolo Report, and to the naked eye, that the HML products not only infringe the '894 patent but have **copied** the Leviton product design. HML should not be permitted to successfully strain and twist the straightforward claim language in the '894 Patent, to raise a spurious issue of fact to avoid a summary judgment of infringement by this tribunal.

### F.    Infringement Analysis Of Van-Sheen's GFCI

Van-Sheen disputes infringement of claim 1 of the '894 Patent for the same reason set forth by HML, i.e., asserting without foundation that its accused product does not have a strap means that defines the path of the magnetic field. As the design of the Van Sheen GFCI products are substantially the same as the HML products, with respect to these issues, the Van Sheen arguments also must fail for the same reasons as are set forth above for HML. Van Sheen also has a strap means, made of steel plate, for supporting the GFCI in the wall receptacle, that has the same juxtaposition relative to the coil and therefor also must infringe Claim 1 of the '894 Patent for the same reasons All of the other limitations of Claim 1 are admittedly met by the Van Sheen and HML GFCI products.

In addition to asserting non-infringement by reason of not meeting the strap means limitation of claim 1, Van-Sheen asserts non-infringement of the spring means element of claim 4. In doing so, Van-Sheen is quick to point out that in its device the

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

spring means is positioned inside the coil in contrast to the device described in the '894 Patent, that shows its spring means on the opposite side of the plunger. Van-Sheen's argument completely misses the mark.

The Van-Sheen GFCI duplicates the spring means of the '894 Patent Claim 4, in that its structure is the same, viz. a spring, and its function is to return the plunger to its original pre-energization position. It is insignificant and unsubstantial that the spring is located inside or outside the coil. Infringement may not be avoided by this simple insignificant difference.

CONTAINS CONFIDENTIAL BUSINESS INFORMATION
SUBJECT TO THE PROTECTIVE ORDER

## CONCLUSION

For the reasons set forth herein, the Complainant Leviton respectfully requests the adoption of its proffered claim construction and a finding that the accused products manufactured by HML and Van-Sheen literally infringe the claims of the '894 Patent, as they are thus construed.

Cecilia H. Gonzalez
Bert C. Reiser
Rachel A. Adams
HOWREY SIMON ARNOLD & WHITE, LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004-2402
Telephone: (202) 783-0800

Paul J. Sutton
Barry G. Magidoff
Joseph Manak
Daniel Ladow
GREENBERG TRAURIG, LLP
885 Third Avenue
New York, NY 10022
(212) 801-2100

Counsel for Complainant

Date: January 8, 2003

LEVITON MANUFACTURING COMPANY INC.

(#680660v8)