**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | | |
|---|---|---|
| LEVITON MANUFACTURING, INC. | ) | |
| | ) | |
| (Plaintiff) | ) | |
| | ) | |
| vs. | ) | 01CV3855 AMD |
| | ) | |
| UNIVERSAL SECURITY INSTRUMENTS, INC. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| USI ELECTRIC, INC. | ) | |
| | ) | |
| (Defendants) | ) | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR NON-LIABILITY
FOR PATENT INFRINGEMENT FOR ACTIONS TAKEN
PRIOR TO DECEMBER 11, 2001**

Pursuant to Rule 56 of the Federal Rules of civil Procedure, Defendants, Universal Security Instruments, Inc. and USI Electric, Inc. (hereinafter collectively referred to as "USI"), through their attorneys, respectfully move for summary judgment on the issue of non-liability for actions taken prior to December 11, 2001.

USI submits that no genuine issue of material fact exists and summary judgment is proper. The issues raised herein are purely legal issues on which there exists binding precedent directing the outcome of the present motion. Accordingly, USI respectfully requests that its motion be granted.

A proposed Order is attached hereto for the convenience of the Court.

Respectfully submitted,

UNIVERSAL SECURITY
INSTRUMENTS INC.
USI ELECTRIC, INC.

By: _W. S. Bradley_    7/21/03

       Maurice U. Cahn, Esq.
       William E. Bradley, Esq.
       CAHN & SAMUELS, LLP
       2000 P Street, NW,  Suite 200
       Washington, D.C.  20036
       (202) 331-8777 (Phone)
       (202) 331-3838 (FAX)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

LEVITON MANUFACTURING, INC.          )
                                     )
            (Plaintiff)              )
                                     )
      v.                             )          01CV3855 AMD
                                     )
UNIVERSAL SECURITY INSTRUMENTS, INC.)
                                     )
      and                            )
                                     )
USI ELECTRIC, INC.                   )
                                     )
            (Defendants)             )

## ORDER

Upon consideration of Defendants' Motion for Summary Judgment for

Non-Liability for Patent Infringement for Actions Taken Prior to December 11,

2001, and Plaintiff's Opposition thereto and the entire record herein, good cause

being shown, it is hereby ORDERED and ADJUDGED on this _____ day of

_____, 2003 that Defendants' Motion is GRANTED.


                              _____
                              United States District Court Judge

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

LEVITON MANUFACTURING, INC.  )
            )
    (Plaintiff)     )
            )
    vs.       )  01CV3855 AMD
            )
UNIVERSAL SECURITY INSTRUMENTS, INC.)
            )
   and       )
            )
USI ELECTRIC, INC.     )
            )
    (Defendants)   )

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR NON-LIABILITY
FOR PATENT INFRINGEMENT FOR ACTIONS TAKEN
<u>PRIOR TO DECEMBER 11, 2001</u>**

1

## **Table of Contents**

SUMMARY OF ARGUMENT ...........................................................................................6

UNDISPUTED FACTS...................................................................................................7

ARGUMENT ................................................................................................................10

I.    THE CLAIMS OF THE '894 PATENT WERE INVALID FOR INDEFINETNESS
AT ALL TIMES PRIOR TO DECEMBER 11, 2001......................................................10

    A.    The Patent as Originally Issued in 1986 was Invalid Under 35 U.S.C. 112. ....10

    B.    The Patent as "Corrected" by the 1988 Certificate of Correction Remained
Invalid Under 35 U.S.C. 112 ...................................................................................16

    C.    The Patent Remained Facially Invalid Until December 11, 2001.....................18

II.    DEFENDANTS CANNOT BE HELD LIABLE FOR ACTION ARISING BEFORE
DECEMBER 11, 2001 .................................................................................................19

    A.    Competitors Such as the Defendants Were Entitled to Rely on the Public
Record and the Invalidity of the '894 Patent ...........................................................19

    B. Certificates of Correction only have Prospective Relief......................................20

CONCLUSION.............................................................................................................23

## Table of Authorities

**Cases**

*Allen Engineering Corp. v. Bartell Indus* 299 F.3d 1336,  (Fed. Cir. 2002) ........13, 15, 16

*Carnegie Mellon University v. Schwartz,* 105 F.3d 863 (3rd Cir. 1997).....................22, 23

*E.I. du Pont De Nemours & Co. v. Phillips Petroleum Co*, 849 F.2d 1430, 1433 (Fed.

    Cir. 1988) ....................................................................................................................14

*Eagle Iron Works v. McLanahan Corp,* 429 F.2d 1375 (3rd Cir. 1970) ...........................23

*Ex parte Fressola* 27 USPQ.2d 1608, 1609 (Bd. Pat. App. & Int'f 1993) .....11, 12, 13, 15

*John B. Adrian v. Hypertech,* 2001 U.S. Dist. LEXIS 19182 (C.D. Utah 2001) ..............22

*Pennwalt Corp. v. Durand-Wayland, Inc* 833 F.2d 931, 959 (Fed. Cir. 1987), *cert.*

    *denied* 485 U.S. 961 (1988)......................................................................................12

*Rambus v. Infineon Technologies AG,* 155 F. Supp.2d 668 (E.D. Va. 2001)................19

*Renishaw Plc v. Marposs Societa' Per Azioni* 158 F.3d 1243, 1248 (Fed. Cir. 1998)....10

*Southwest Software v. Harlequin*, 226 F.3d 1280, 1296 (Fed. Cir. 2000).............. passim

*Superior Fireplace v. Majestic Prod* 270 F.3d 1358, 1380 (Fed. Cir. 2001).......21, 24, 25

**Statutes**

35 U.S.C. 112 ....................................................................................................................11

## Index of Exhibits

Exhibit A                 U.S. Patent No. 4,595,894

Exhibit B                 April 4, 2002 Hearing Transcripts, 01-CV-3855, (D.
                          Md.) at 1-8, 34, 58-68.

Exhibit C                 Plaintiff's Opposition to Defendants' Motion for
                          Judgment on the Pleadings and Dismissal of the
                          Complaint, 01-CV-3855, (D. Md.)(filed Feb. 19, 2002)
                          at 3

Exhibit D                 *Ex parte Fressola*, 27 USPQ.2d

Exhibit E                 Declaration of Claude Narcisse, Esq., Declaration of
                          Eugene C. Rzucidlo, Esq., and Declaration of Paul J.
                          Sutton, CV 99-05861, (C.D. Calif.)(Dec. 7, 2001).

Exhibit F                 Order Denying Motion for Summary Judgment, CV
                          99-05861, (C.D. Calif.)(Dec. 7, 2001)

Exhibit G                 Leviton's Memorandum of Law in Opposition to
                          Motion for Summary Judgment, CV 99-05861, (C.D.
                          Calif.)(filed Oct. 22, 2001)

Exhibit H                 Declaration of Jereome Massie, 01-CV-3855, (D.
                          Md.)(June 14, 2002)

Exhibit I                 Transcripts from Deposition of Jerome Massie, 01-
                          CV-3855, (D. Md.)(June 26, 2002) at 66-73, 170-173

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

LEVITON MANUFACTURING, INC.    )
                                  )
        (Plaintiff)           )
                                  )
       vs.                )      01CV3855 AMD
                                  )
UNIVERSAL SECURITY INSTRUMENTS, INC.)
                                  )
     and                  )
                                  )
USI ELECTRIC, INC.             )
                                  )
       (Defendants)      )

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY
JUDGMENT FOR NON-LIABILITY FOR PATENT INFRINGEMENT
FOR ACTIONS TAKEN PRIOR TO DECEMBER 11, 2001**

Defendants, Universal Security Instruments, Inc. and USI Electric, Inc. (hereafter collectively referred to as "USI"), through their attorneys, submit this opening memorandum in support of their motion for summary judgment for non-liability for patent infringement for actions taken prior to December 11, 2001, the date the second Certificate of Correction to the patent-in-suit issued.[1]

USI submits that the issues raised herein are purely legal issues on which there exists binding precedent directing the outcome of the present motion. Accordingly, USI submits that no genuine issue of material fact exists, and the present motion is ripe for adjudication.

---

[1] Defendants' also contend that the patent is invalid under 35 U.S.C. § 112 for being indefinite due to the improper issuance, and therefore nullity, of the December 11, 2001 Certificate of Correction as set forth in the contemporaneously filed motion. In addition, Defendants' contend that the extraordinary time delay between the error and its correction bars recovery under principles of equity, intervening rights, estoppel, waiver, laches and prosecution laches.

## SUMMARY OF ARGUMENT

A patent owner has an uncompromising duty to read and correct its patents. This duty is particularly acute when errors appear in the patent's claims. In the present case, an error in the claims went unnoticed and uncorrected for some thirteen years.

Claims play a pivotal role in ascribing the scope of monopoly protection a patent affords its owner. It is the patent's claims which define for the public the boundary lines of the patent's protection. If the bounds of a patent are unintelligible, the claims have failed in their public notice function, and the patent is statutorily invalid for indefiniteness.

A claim missing words is *per se* indefinite, and, as such, unpatentable. Claims must stand alone to define the metes and bounds of the protected invention. A claim missing words, by definition, fails in its statutory mandate of particularly pointing out and distinctly claiming the invention. If a claim is missing words and therefore requires the public to guess what the patentee meant to claim, the entire purpose of the claim is defeated. Until corrected by the remedial measures set forth in the patent statute, the patent remains invalid and unenforceable.

In certain circumstances, a Certificate of Correction may be solicited to cure errors in a patent. However, in the absence of a certificate of correction, competitors are entitled to rely on the facial invalidity of a patent. Thus, for activities undertaken before the certificate of correction issues, competitors are free from any liability for patent infringement. Until corrected, competitors' reliance on the public record is sacrosanct. In other words, certificates of correction only provide a patent holder with prospective relief.

In the present case, the patent-in-suit's claims were missing language and unintelligible until a second Certificate of Correction issued on December 11, 2001. The invalidity of the uncorrected claims forecloses any claim for infringement for any activities of USI before December 11, 2001.[2]

## UNDISPUTED FACTS

Plaintiff, Leviton Manufacturing Company, Inc. ("Leviton"), is the owner of United States Patent No. 4,595,894 (the "'894 patent")(Exhibit A). The '894 patent issued on June 17, 1986 with an obvious error in claim 1, the only independent claim in the patent. Specifically, claim 1 as issued was missing the bolded text below:

> Switching apparatus for selectively interrupting an electrical connection between input and output conductors, or the like,
> comprising, in combination:
> a housing;
> magnetizable plunger means disposed within a portion of said housing for movement between first and **second positions; electromagnetic coils means disposed within** said housing for moving said plunger means when energized from the first position to the second position;
> an input contact electrically connected to said input conductor; an output contact electrically connected to said output conductor;
> strap means for mounting the switching apparatus upon a selected surface, said strap means including portions thereof which define a path of the magnetic field generated by said coil means to influence the position of said plunger means, and
> movable means responsive to movement of said plunger means for influencing a separation of said input and output contacts, thereby
> interrupting electrical connection between them, said movable means including first and second movable

---

[2] Again, Defendants contend that the December 11, 2001 Certificate of Correction is inoperable due to the failure of the PTO to follow the statutory and internal procedures for issuing such certificates. However, for the purposes of the present motion, the propriety of the second Certificate of Correction is presumed.

members, movement of said second member being caused
by movement of said first member.

After discovering the error sometime in 1988, Plaintiff solicited and procured on

July 12, 1988, a Certificate of Correction to the '894 patent. The Certificate of

Correction failed to correct the errors in claim 1 in as much as it "corrected" claim **2**

instead of claim 1:

> It is certified that error appears in the above-identified patent and that said
> Letters Patent is hereby corrected as shown below:
>
> **Column 7, line 3, Claim 2, after "and" should read –second positions;
> electromagnet coil means disposed within—**

The error in the July 12, 1988 Certificate of Correction is not simply a "2" being printed

where a "1" should have been printed. To correct claim 1 to read as it is presently being

asserted, the Certificate of Correction should have read:

> **Column 6, line 53, Claim 1 after "and" should read – second
> positions; electromagnet coil means disposed within--.**

Neither the United States Patent and Trademark Office ("USPTO"), counsel that

prosecuted the patent application, nor the Plaintiff have a copy of the file history of the

'894 patent. The USPTO has reported its copy lost, Plaintiff cannot find its copy, and

Plaintiff's prosecution counsel's copy was destroyed by a fire/flood.[3]

Sometime in the late 1990s and early 2000-2001 time period, Plaintiff

initiated a series of lawsuits alleging infringement of the '894 patent (as "corrected" by

the July 12, 1988 Certificate of Correction). All but one of these suits was dismissed

---

[3] Plaintiff's prosecution counsel is Greenberg, Truarig LLP, its present litigation counsel in this matter.

without prejudice.  One of the suits filed was Civil Action No. 01-cv-2789 (D. Md. 2001),

filed on September 20, 2001, against USI.  This suit was dismissed in October 2001.

On July 17, 2001, Plaintiff filed for a second Certificate of Correction to correct

the errors in the '894 patent.  The USPTO issued the second Certificate of Correction

on December 11, 2001.  The present action was filed two days later.  Shortly thereafter,

some 20 other suits were filed against other defendants around the country.

USI moved to dismiss the patent infringement claim pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure on the basis that the second Certificate of

Correction was improperly issued because, *inter alia*, it could not be determined if the

USPTO or the applicant was the source of the error, and because the correction was

not one of a minor character.  In defending the motion, Plaintiff asked the Court to

accept the proposition that the first sentence of the '894 patent resulted in the entire

contents of the incorporated materials to be considered as part of the '894 patent's

disclosure:

> The present application is a continuation-in-part of applicants' both
> pending United States patent application Ser. Nos. 431,982 now U.S. Pat. No.
> 4,518,945, filed Sept. 30, 1982 and entitled "REMOTE CONTROL SYSTEM" and
> Ser. NO. 558,262 filed Dec. 5, 1983 and entitled "SHOCK HAZZARD
> PROTECTION SYSTEM", and incorporates by reference as if fully set forth
> herein the entire contents and subject matter thereof and of any and all their
> respective "parent" patent application to which they are co-pending.

*See* April 4, 2002 Hearing Transcripts at 34, 58-68 (Exhibit B); *see also* Plaintiff's

Opposition to Defendants' Motion for Judgment on the Pleadings and Dismissal of the

Complaint at 3 ("Claim 1 of the '945 Patent, however, which was incorporated by

reference in the '894 Patent, did include the missing words.")(Exhibit C).  The Court

found in favor of the Plaintiff and denied Defendants' motion.  Exh. B at 60-68.

Defendants subsequently filed a Motion to Disqualify Plaintiff's counsel on the grounds that the service as both prosecution and litigation counsel created a conflict of interest in view of the allegation that the prosecution errors of counsel resulted in a forfeiture of certain damages. The motion was denied from the bench. In denying the motion, the Court reserved judgment on the date liability for infringement could commence for a later date. Defendants now move herein for a dispositive ruling on the issue of non-liability for actions taken prior to the issuance of the December 11, 2001 Certificate of Correction.

## ARGUMENT

I.  **THE CLAIMS OF THE '894 PATENT WERE INVALID FOR INDEFINETNESS AT ALL TIMES PRIOR TO DECEMBER 11, 2001[4]**

A.  **The Patent as Originally Issued in 1986 was Invalid Under 35 U.S.C. 112.**

1.  **Claims Must Stand on Their Own – The Specification Cannot Be Relied Upon to Supply Missing Claim Language**

The parties do not dispute that language was missing from claim 1 of the '894 patent when it issued. A basic premise of patent law is that in order for a claim to be valid, the claim language must stand alone to define the invention. "[T]he claim construction inquiry, therefore, begins and ends in all cases with *the actual words of the claim*. [T]he resulting claim interpretation must, in the end, accord with the words chosen by the patentee to stake out the boundary of the claimed property." *Renishaw Plc v. Marposs Societa' Per Azioni* 158 F.3d 1243, 1248 (Fed. Cir. 1998)(emphasis added). Oddly, Plaintiff attempts to refute this fundamental principle of patent law by arguing that the presence of the missing language in another part of a separate patent

---

[4] Claim indefiniteness under 35 U.S.C. 112, second paragraph, is a question of law. *Orthokinetics v. Safety Travel Chairs,* 806 F.2d 1565 (Fed. Cir. 1986).

incorporated by reference cures the absence of the language from the claim. This incorporation by reference argument is fatally flawed and contrary to law. The law is clear in that a party may not resort to the written description of the invention to supply words missing from a claim. As set forth by the Board of Patent Appeals and Interferences in no uncertain terms: "The written description and the claims are separate statutory requirements. *Modern claim practice requires that the claims stand alone to define the invention.*" *Ex parte Fressola* 27 USPQ.2d 1608, 1609 (Bd. Pat. App. & Int'f 1993)(Exhibit D).[5]

Despite the unassailable proposition that claims must stand alone, Plaintiff and its attorneys have taken the position that due to the incorporation by reference of the '945 patent, and that due to the fact that claims are to be interpreted with reference to the specification, the missing language from claim 1 of the '894 patent is to be deemed present in the claim. *See* Exh. B at 58-68; *see also* Exhibit E (Declaration of Claude Narcisse, Esq., Declaration of Eugene C. Rzucidlo, Esq., and Declaration of Paul J. Sutton, CV 99-05861 (C.D. Calif.)(filed October 19, 2001)). Their position is simply contrary to law. "Modern claim interpretation requires that the claims particularly point out and distinctly claim the invention *without* reading in limitations from the specification." *Pennwalt Corp. v. Durand-Wayland, Inc* 833 F.2d 931, 959 (Fed. Cir. 1987), *cert. denied* 485 U.S. 961 (1988). "It is no more permissible on principle to refer to the description for some limitations which should be and are intended to be included

---

[5] The only exception, which is not relevant here, is where there is no way to define the invention using words, as when a ***drawing or table*** is a limitation of the claims: "Incorporation by reference . . . is permitted only in exceptional circumstances where there is no practical way to define the invention in words and where it is more concise to incorporate by reference than duplicating a ***drawing or table*** into the claim. However, "[i]ncorporation by reference is a necessity doctrine, not for applicant's convenience." *Ex parte Fressola,* 27 USPQ.2d 1608, 1609 (Bd. Pat. App. & Int'f 1993)(emphasis added).

11

in the claim than it is to refer to the description for all of the limitations, as by a claim covering 'The device substantially as described.'" *Ex parte Fressola* 27 USPQ.2d 1608, 1610 (Bd. Pat. App. & Int'f 1993 (quoting *Ex parte Shelpler,* 1903 Dec. Comm'r Pat. 17, 19 (Comm'r Pat. 1902)).

Every patent practitioner knows that the written description and the claims are separate statutory requirements and serve different purposes. Plaintiff's attempts, apparently successful in California,[6] to obfuscate the difference should not go unnoticed by this Court. "A claim which refers to the specification defeats the purpose of a claim." *Ex parte Fressola* 27 USPQ.2d 1608, 1612 (Bd. Pat. App. & Int'f 1993). As reemphasized by the Board:

> The aim, end, and purpose of *the specification*, under the present statute, is to *describe* the invention sought to be covered by the patent, and the manner of making, constructing, and using the same. The aim, the end, the purpose of *the claim* is to *point out particularly* and *distinctly define* the invention to be secured to the individual. The *claim* is the measure of the patent, and **the day has passed when the courts will search the specification for information which it is the very office of the *claim* to impart.**

*Ex parte Fressola* 27 USPQ.2d 1608, 1612 (Bd. Pat. App. & Int'f 1993)(quoting *Ex parte Holt*, 1884 Dec. Comm'r Pat. 43, 62-63 (Comm'r Pat. 1884)(bolding added).

It is undisputed that claim 1 of the '894 patent issued with missing language. Plaintiff is attempting to argue that the specification can be relied upon to save the validity of this claim. Again, this position is simply contrary to law. A claim is invalid under 35 U.S.C. 112, second paragraph, if "the claim does not itself define the

---

[6] *See* Order Denying Motion for Summary Judgment, CV 99-05861 (C.D. Calif.)(issued on December 10, 2001)(Pregerson, J.) at 8 ("Leviton argues that the '945 Patent, incorporated by reference into the '894 Patent, includes the identical language that is at issue in the faulty certificate of correction. (Pl's Stmt. Of Facts 10.) However, the '945 Patent includes the language in the correct place in Claim 1. ***Therefore, Leviton argues, reference to the '945 Patent fully resolves any inadvertent ambiguity in the '894 Patent.***"). Copy attached hereto as Exhibit F.

invention, but relies on external material." *Ex parte Fressola,* 27 USPQ.2d 1608, 1613

(Bd. Pat. App. & Int'f 1993). USI is not aware of, and Plaintiff has not identified,

precedent that directs district courts to "blue pencil" indefinite patent claims for the

express purpose of rescuing those claims and making them definite. There is simply no

issue of material fact as to the invalidity of claim 1 of the '894 patent as issued.

### 2.    Claims Missing Words are Per Se Indefinite – The Obviousness of the Omission is Irrelevant

Claims missing limitations are *per se* indefinite under 35 U.S.C. 112, second

paragraph. There is no conceivable way for a claim having missing limitations and

words to particularly set forth and distinctly claim the invention. *Allen Engineering Corp.*

*v. Bartell Indus* 299 F.3d 1336, 1348-49 (Fed. Cir. 2002)(finding a claim having an

incomplete limitation hopelessly indefinite).

In a sister litigation in California, Plaintiff strenuously argued that one of ordinary

skill in the art reading the claim in light of the specification would understand what the

patentee meant to claim and therefore the claim is valid and enforceable. *See* Leviton's

Memorandum of Law in Opposition to Motion for Summary Judgment, CV 99-05861

(C.D. Calif.)(filed October 22, 2001) at 3 ("When the first claim of the '894 Patent is read

in the context of the full specification, which includes the specification and claims of the

'945 Patent, there is no question but that the 'scope of the subject matter that is

patented; 'is definitely and particularly pointed out."). (Exhibit G). Again, Plaintiff's

position is directly contrary to settled law. While true that the *language* of the claims is

to be interpreted in light of the specification, it is not true that ***missing*** *language* can be

ignored or interpreted, regardless of how clear the absence of the language. "It is

entirely proper to use the specification to interpret what the patentee meant by a word or

13

a phrase *in the claim*. But this is not to be confused with adding an extraneous limitation appearing in the specification, which is improper." *E.I. du Pont De Nemours & Co. v. Phillips Petroleum Co*, 849 F.2d 1430, 1433 (Fed. Cir. 1988)(emphasis added).

In light of the fortuitous discovery of the microfiche copy of the '894 patent's original application text, Plaintiff is likely to modify its missing language excuse to assert that since the language missing from claim 1 was present in claim 1 when originally filed, the absence of the language in the printed claim is harmless because one of ordinary skill in the art reading the microfiche knows how the claim was intended to read. However, the fact that one of ordinary skill in the art can somehow figure out what the applicant meant to claim is of no significance. "The claims define the boundary of the invention . . . . That one skilled in the art understands the written description does not equate with knowledge of the boundary lines." *Ex parte Fressola* 27 USPQ.2d 1608, 1613 (Bd. Pat. App. & Int'f 1993).[7]

Plaintiff's argument in this case that missing language can be ignored clearly fails in light of clear and binding Federal Circuit precedent. In *Allen Engineering Corp. v. Bartell Indus,* 299 F.3d 1336 (Fed. Cir. 2002), the Federal Circuit addressed the *per se* indefiniteness of claims which are obviously missing words:

> Claim 23 is an example of a failure to meet the second of the requirements set forth in *Solomon.*[8] This claim ends in the middle of a limitation: "coupled to said gear box means by rigid", '220 patent, col. 21, ll. 43-44. Since it is impossible to discern the scope of such a truncated limitation, claim 23 is indefinite and thus invalid under 35 U.S.C. 112, paragraph 2.

[7] The claim reconstruction hypothesis is particular dubious in a situation such as this where the prosecution history is lost.
[8] "We have explained that the second paragraph of 112 contains two requirements: 'first, [the claim] must set forth what "the applicant regards as his invention," and second, it must do so with sufficient particularity and distinctness, i.e., the claim must be sufficiently "definite." *Solomon v. Kimberly-Clark,* 216 F.3d 1372, 1377 (Fed. Cir. 2000).

14

*Allen Engineering Corp. v. Bartell Indus*, 299 F.3d 1336, 1348-1349 (Fed. Cir. 2002). The Federal Circuit did not resort to an examination of the specification before declaring the claim invalid. Quite the opposite is the case - If a claim is missing language, then the claim is invalid on its face, and that is the end of the inquiry. "Semantic indefiniteness of claims 'is not rendered unobjectionable merely because it *could* have been corrected.'" *Id* at 1349 (quoting *In re Hammack*, 427 F.2d 1384, 1388 n.5 (CCPA 1970)).

The duty of a patentee to read and correct its patents is uncompromising. *See Southwest Software v. Harlequin*, 226 F.3d 1280, 1296 (Fed. Cir. 2000)("Moreover, it does not seem to us to be asking too much to expect a patentee to check a patent when it is issued in order to determine whether it contains any errors that require a certificate of correction."). Regardless of how clear the error to one of ordinary skill in the art, the Federal Circuit does not allow courts "to rewrite claims to preserve their validity." *Allen Engineering,* 299 F.3d at 1349.[9] Accordingly, there is no issue of material fact as to the invalidity of claim 1 of the '894 patent as issued.

### 3.    Plaintiff's Own Expert Concedes Invalidity

Plaintiff's own expert even admits that claim 1 of the '894 patent would have been rejected by the U.S. Patent and Trademark Office (USPTO) if the missing language had not been in the claim as filed:

---

[9] "Allen argues that one of skill in the art would understand that the term 'perpendicular' in the claim should be read to mean 'parallel.' Allen stretches the law too far. It is not our function to rewrite claims to preserve their validity. . . . We are simply tasked with determining whether the claims 'particularly point [] out and distinctly [] claim' what the inventor regards as his invention." *Allen Engineering,* 299 F.3d at 1349.

> In my experience at the USPTO, I had not seen a situation where a Primary Examiner would have allowed on first action a claim that was so obviously missing a line of text. It is standard practice, as set out in the MPEP Chapter 904.01(a), that the Examiner analyze, or diagram, each feature of the claim in order to understand the scope of the invention, so that a comprehensive search of the prior art could be properly accomplished. In performing that process, **the Examiner would have necessarily noticed missing text, and would have required amendment of the text of Claim 1,** either by Examiner's Amendment or by an applicant's amendment following an office action.

See Declaration of Jerome Massie (Civ. Action 01 CV 3855 (AMD)) at ¶ 10, filed as Exhibit to Plaintiff's Opposition to Defendants' Motion to Disqualify, (emphasis added)(Attached hereto as Exhibit H). Plaintiff's expert reiterated this statement in his expert report and confirmed the invalidity of the claim during his deposition. *See* Deposition of Jerome Massie, 01-CV-3855, June 26, 2003, at 68:6 to 73:1 and 170:5 to 171:7 (Exhibit H). Plaintiff's expert is correct, the claim would not have been allowed with the missing text. The necessary implication is that since the claim is missing text and would not have been allowed, it is facially invalid.

Given the admission of Plaintiff that claim 1 in the form it issued would have been rejected by the USPTO, there can be no issue of material fact as to the invalidity of claim 1 of the '894 patent as it issued.

### B. The Patent as "Corrected" by the 1988 Certificate of Correction Remained Invalid Under 35 U.S.C. 112

#### 1.    The Certificate of Correction Failed to Correct the Errors

Sometime in 1988, Plaintiff or its attorneys realized that claim 1 of the patent was missing text. Plaintiff sought a Certificate of Correction to correct the error. The paperwork submitted by Plaintiff's attorneys to solicit the Certificate of Correction remains missing with the lost file wrapper. In any event, the Certificate of Correction issued on July 12, 1988 reads: "Column 7, line 3, Claim 2, after 'and' should read –

16

second positions; electromagnet coil means disposed within—." The Certificate of Correction should have read: "Column 6, line 53, Claim 1 after 'and' should read – second positions; electromagnet coil means disposed within--." Accordingly, the Certificate of Correction failed to correct the errors in claim 1. The Plaintiff even concedes this point. In addition, the Certificate of Correction injected further ambiguity into claim 2. There is no material fact that the plain language of the patent left the claims facially invalid after the issuance of the 1988 Certificate of Correction. Remarkably, the deficiencies in this Certificate of Correction went unnoticed for some 13 years until after Plaintiff initiated its initial round of lawsuits.

Whether the failure of the Certificate of Correction to correct the patent was the fault of the USPTO or Plaintiff's attorneys remains unknown. Regardless of the source of the error, the fact remains that claim 1 was still missing text after the issuance of the 1988 Certificate of Correction.

### 2.    A Patent Claim Missing Language is Invalid Regardless of How Obvious the Error

As previously set forth above, the law is clear that claims must stand alone. One cannot resort to the written description to supply missing text to a claim. This tenet of patent law holds true regardless of how clear the error. Again, Plaintiff's own expert concedes that the claim was invalid as issued and was not corrected by the 1988 Certificate of Correction. There is simply no issue of material fact as to the invalidity of claim 1 of the '894 patent after the issuance of the first Certificate of Correction.

## C. The Patent Remained Facially Invalid Until December 11, 2001

### 1.     The First Set of Lawsuits Involving the '894 Patent

On September 21, 2001 Leviton filed Civil Action No.01-cv-2789 (D. Md. 2001) accusing USI of infringing the '894 patent. This suit was only one of more than a dozen Plaintiff filed to rid the marketplace of competitors. Plaintiff was subsequently informed by Defendants in October of 2001 that USI would not submit to Plaintiff's litigation tactics and apprised Plaintiff of the existence of the Federal Circuit's opinion in *Southwest Software v. Harlequin,* 226 F.3d 1280 (Fed. Cir. 2000)(holding that an invalid claim corrected by a Certificate of Correction issued after the commencement of litigation cannot be relied upon in the action to save the validity of the claims). Presumably, realizing that continuance of the suit would result in a finding of bad faith, Plaintiff dismissed the suit. *Rambus v. Infineon Technologies AG,* 155 F. Supp.2d 668 (E.D. Va. 2001), *rev'd on other grounds,* (awarding attorneys fees for the attempted enforcement of claims having typographical or clerical errors). Dismissals of the companion suits around the country soon followed with the exception of the California case which was too far along for dismissal without prejudice.

Plaintiff's dismissals were a tacit admission that the '894 patent was invalid and the Defendants could not be liable for infringing an invalid patent.

### 2.    The Second Certificate of Correction Issued on December 11, 2001

Despite the fact that neither the Plaintiff, its prosecution counsel, nor the PTO had a copy of the patent's prosecution history, Plaintiff succeeded in soliciting and securing a second Certificate of Correction from the PTO on December 11, 2001 to

correct the errors in the patent.[10]  Two days later, Leviton filed the present action

against USI.

## II. DEFENDANTS CANNOT BE HELD LIABLE FOR ACTION ARISING BEFORE DECEMBER 11, 2001

### A. Competitors Such as the Defendants Were Entitled to Rely on the Public Record and the Invalidity of the '894 Patent

The Patent Statute allows a patent holder to seek damages for the six-years

preceding the filing of the lawsuit.[11]  However, if the patent issues with errors in the

claims, competitors cannot be held liable for actions taken in reliance on the public

record.  There is clear Federal Circuit precedent directly on point:

> Until the PTO issues a certificate of correction . . . , such a claim would appear invalid to the public, and reasonable competitors would be justified in conducting their affairs accordingly.  In such a case, ***where the claim is invalid on its face*** without the certificate of correction, it strikes us an illogical result to allow the patent holder, once the certificate of correction has issued, to sue an alleged infringer ***for activities that occurred before*** the issuance of the certificate of correction.

*Southwest Software v. Harlequin,* 226 F.3d 1280, 1295 (Fed. Cir. 2000)(emphasis

added).  In the present case, the claim is invalid ***on its face*** without the second

Certificate of Correction.  Following the reasoning of the Federal Circuit, "reasonable

competitors were justified in conducting their affairs accordingly" and Leviton cannot

"sue an alleged infringer for activities that occurred before the issuance of the [second]

certificate of correction."

---

[10] The improper issuance of the Certificate of Correction is addressed in the contemporaneously filed motion for summary judgment of invalidity for indefiniteness.

[11] Normally, a patentee begins to accrue damages on the day the patent issues if certain other statutory provisions, not relevant for the present motion, are met.  The patentee can sue at any time during the life of the patent and a period of six-years thereafter.  However, damages are limited to the six-year period proceeding the filing of suit (if the patent was issued and in force during that six-year period) and prospectively for the remaining life of the patent.

Plaintiff may continue to argue that the error was so obvious to one of ordinary skill in the art that infringers of the uncorrected claim should be liable for damages. However, the Federal Circuit disagrees: "Because *Southwest* requires that the certificate of correction be treated as valid only for acts occurring after the certificate issues, the public's reliance on the public record is protected, ***regardless of whether the mistake is evident in the original prosecution history.***" *Superior Fireplace v. Majestic Prod* 270 F.3d 1358, 1380 (Fed. Cir. 2001)(Dyk, J., dissenting)[12](emphasis added). There is simply no issue of material fact that there was an error in the patent and the public was entitled to rely on the public record. Accordingly, there is no issue of material fact as to non-liability of Defendants for any actions accruing before December 11, 2001.

### B. Certificates of Correction only have Prospective Relief

Federal Circuit precedent makes it quite clear that a Certificate of Correction only allows a patent holder to seek prospective relief. *See Southwest Software v. Harlequin*, 226 F.3d 1280 (Fed. Cir. 2000); *see also John B. Adrian v. Hypertech*, 2001 U.S. Dist. LEXIS 19182 (C.D. Utah 2001)("The most natural reading of the statute is that the effect of issuance of a certificate of correction does not have retroactive effect, but rather, only prospective effect upon all case 'thereafter arising.'"). Thus, the only liability for infringement, if any,[13] is for actions taken after the date the second Certificate of Correction issued.

---

[12] It is noteworthy to point out that Judge Dyk's dissent was on an unrelated issue of statutory interpretation and not evidence of a departure from the understanding of the court on the Certificate of Correction issue.

[13] Defendants' contend that no recovery is available because the cause of action arose before the second Certificate of Correction issued and the statute only allows the corrections to be used for "causes thereafter arising." *See* 35 U.S.C. 254, 255. Also, the Defendants' contend that the extraordinary time

In *Carnegie Mellon University v. Schwartz,* 105 F.3d 863 (3rd Cir. 1997), the Third

Circuit reversed a grant of summary judgment by a district court in a malpractice case

involving analogous facts. In that case, a patent attorney representing Carnegie Mellon

either errantly filed a terminal disclaimer with the wrong application serial number or

failed to correct a Patent Office error in which a disclaimer was entered into the wrong

patent file. *Id.* at 865. Regardless of the source of the error, the Third Circuit rejected

the district court's rationale that under *Eagle Iron Works v. McLanahan Corp.,* 429 F.2d

1375 (3rd Cir. 1970) a certificate of correction applies retroactively (thereby cutting off

any intervening rights third parties may have accrued in the 15 month period before

correction) and thus there was no monetary harm to the university and no action against

the attorney. *Id.* at 867.

In reversing, the Third Circuit noted that it "was not so confident in the broad

ameliorative powers of the certificate of correction."[14] *Id* The Third Circuit's doubt as to

the vitality of *Eagle Iron Works v. McLanahan Corp.,* 429 F.2d 1375 (3rd Cir. 1970),

which allowed retroactive application for a certificate of correction, was well founded. *Id*

As alluded to previously herein, the United States Court of Appeals for the Federal

Circuit addressed the issue of the effects of certificates of correction on alleged

infringers and explicitly overruled the holding in *Eagle Iron Works. See Southwest*

*Software v. Harlequin,* 226 F.3d 1280, 1296-97 (Fed. Cir. 2000). In no uncertain terms,

---

delay between the error and its correction may bar recovery under principles of equity, intervening rights, estoppel, waiver, laches and prosecution laches.

[14] The Third Circuit also expressed the possibility that other courts might reach different conclusions on the certificate of correction issue. *Carnegie Mellon University v. Schwartz,* 105 F.3d 863, 867 (3rd Cir. 1997)("[E]ven if we were to render a definitive holding regarding the effect of the certificate of correction on all intervening rights, we could not ensure that a district court sitting in [another circuit] would find our reasoning persuasive."). As this Honorable Court already acknowledged, what Judge Pregerson in the Central District of California had to say on one certificate of correction issue is unavailing. April 4, 2002 Hearing Transcripts at 4-5 (Exh. B).

the court held that the plain language of the statute only provides for issued certificates

of correction to be used in "causes thereafter arising."

The Federal Circuit decided that certificates of correction can only have a

prospective effect for two independent reasons. First, the court grounded its opinion by

simply looking at the plain language of the statute:

> We conclude that this [statutory] language requires that, for causes arising
> after the PTO issues a certificate of correction, the certificate of correction is to
> be treated as part of the original patent – i.e., as if the certificate had been issued
> along with the original patent. **By necessary implication, for causes arising
> before its issuance, the certificate of correction is not effective.**

*Id* at 1294 (emphasis added).

The second ground for its holding that certificates of correction do not have

retroactive effect was that a contrary interpretation would "produce an illogical and

unworkable result." *Id*

> Until the PTO issues a certificate of correction . . . , such a claim would
> appear invalid to the public, and reasonable competitors would be justified in
> conducting their affairs accordingly. In such a case, *where the claim is invalid on
> its face* without the certificate of correction, it strikes us an illogical result to allow
> the patent holder, once the certificate of correction has issued, to sue an alleged
> infringer *for activities that occurred before* the issuance of the certificate of
> correction.

*Id.* at 1295 (emphasis added). In other words, the public cannot be held liable for

actions occurring before the Certificate of Correction issued. *Superior Fireplace v.

Majestic Prod,* 270 F.3d 1358, 1380 (Fed. Cir. 2001)(Dyk, J., dissenting)("Because

*Southwest* requires that the certificate of correction be treated as valid only for acts

occurring after the certificate issues, the public's reliance on the public record is

protected, regardless of whether the mistake is evident in the original prosecution

history."). Accordingly, applying the relevant authority, there is simply no issue of

material fact as to the non-liability of Defendants for actions taken prior to December 11, 2001.

## CONCLUSION

In view of the foregoing, Defendants' respectfully request that their motion for summary judgment on the issue of non-liability for actions taken before December 11, 2001 be granted.

Respectfully submitted,

UNIVERSAL SECURITY INSTRUMENTS INC.
USI ELECTRIC, INC.

By: _W. S. Bradley_  7/21/13
    Maurice U. Cahn, Esq.
    William E. Bradley, Esq.
    CAHN & SAMUELS, LLP
    2000 P Street, NW, Suite 200
    Washington, D.C. 20036
    (202) 331-8777 (Phone)
    (202) 331-3838 (FAX)

23