Hearing
April 4, 2002                                    Page 1


IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION


```
                              )
LEVITON MANUFACTURING CO., INC. )
                              )
        Plaintiff             )
                              )
    v.                        )    Civil Docket No. AMD-01-3855
                              )
UNIVERSAL SECURITY INSTRUMENTS, )
INC., et al.                  )
                              )
        Defendants            )
```

                                    Baltimore, Maryland
                                    April 4, 2002
                                    3:00 p.m.


The above-entitled matter came on for a hearing before
The Honorable Andre M. Davis


A P P E A R A N C E S

On Behalf of the Plaintiff:
John C. Dougherty, Esquire
Paul J. Sutton, Esquire
Joseph M. Manak, Esquire

On Behalf of the Defendants:
Maurice U. Cahn, Esquire
Frederick N. Samuels, Esquire

Page 34

1    the device, there is a plunger which moves up through the coil

2    when the coil is energized and creates an electromagnetic

3    field.  It causes the plunger to move up, hit another gizmo,

4    and that is what cuts off the circuit and prevents a ground

5    fault or shock.  That plunger moves because of the principal of

6    electromagnetism.

7          We see that in the language just following "said

8    housing" after the inserted language:

9                said housing for moving said plunger means when

10               energized...

11         THE COURT:  Mr. Manak, let me stop you because I --

12         MR. MANAK:  Can I tell you what I am responding to,

13   Your Honor?

14         THE COURT:  Yes.  Go ahead.

15         MR. MANAK:  Your Honor referred several times to this

16   claim as uncorrected being gibberish.

17         THE COURT:  Right.

18         MR. MANAK:  We submit, Your Honor, that to one of

19   ordinary skill in the art, reading the patent, both as

20   corrected and uncorrected, it is not gibberish.

21         When the specification is referred to, the

22   specification of the patent in suit itself as well as the

23   patent which was incorporated by reference, it is quite clear

24   that that is what is being described.

25         I would refer Your Honor now to the '894 patent, at

Page 58

1    respect, I came out and saw that the first slide was the

2    history and prosecution of the patent, or something.  I don't

3    want to go back to the beginning of time.  I want to deal with

4    the case law that it seems to me is controlling here.

5           But I certainly didn't mean to insult Mr. Sutton.

6    That was certainly not my intention.

7           MR. MANAK:  And you did not, Your Honor.  Let me just

8    say that by no means was he insulted.  I guess we were just

9    explaining to Your Honor that we are shuffling a little paper

10   over here to get to some of the specification and point you to

11   it.

12          THE COURT:  I don't understand why this was not

13   developed in your papers.  Maybe it was, and I missed it.  But

14   it seemed to me perfectly obvious that what I was going to have

15   to do is what we are I guess trying to do now.  I want you to

16   point in the specification to the language and the diagrams

17   that make it compelling to conclude that surely these seven

18   words would have been inserted there, not just by the John

19   Nashes of the world, but by every sophomore engineering student

20   at any university around the country.

21          MR. MANAK:  Can we go to that precise point, Your

22   Honor?

23          THE COURT:  Go ahead.

24          MR. MANAK:  If we look at the '894 patent in column 1,

25   Your Honor, at about line 6, underneath the heading

1    Continuation-In-Part Application, the -- I will wait until Your

2    Honor is there.

3              THE COURT:  Yes.  Okay.

4              MR. MANAK:  The specification states that it is:

5                   ... a continuation-in-part of applicants' both

6                   pending United States patent applications Ser.

7                   Nos. 431,981 now U.S. Pat. No. 4,518,945, ...

8    And going down in that paragraph, Your Honor, it says:

9                   ... and incorporates by reference as if fully

10                   set forth herein the entire contents and subject

11                   matter thereof and of any and all of their

12                   respective "parent" patent applications ...

13        So, in that passage, Your Honor, the '894

14    specification is incorporating by reference, which is also

15    common to do in patent drafting, another patent document,

16    namely the 4,518,945 patent.

17        Now, Your Honor may have a copy of that patent in

18    front of you.

19              THE COURT:  I do.

20              MR. MANAK:  If you would be so kind as to turn to

21    column 10.

22              THE COURT:  Okay.  I'm there.

23              MR. MANAK:  In particular, Claim 1.

24              THE COURT:  Okay.

25              MR. MANAK:  A review of that claim, Your Honor, we

1    submit, would show some similarities to the claim and some

2    identical language to the claim at issue in the '894 patent.

3    In particular, Your Honor, the --

4            THE COURT:  It's exactly the same language, isn't it?

5            MR. MANAK:  Yes, it's exactly the same language.

6            Now, we submit, Your Honor, one of ordinary skill in

7    the art, whether he or she rises to the level of John Nash or

8    not, would read column 1, lines 6 through 16, of the '894

9    patent and know that the '945 patent is incorporated by

10   reference fully.

11           He or she would then go to Claim 1 of the '945 patent,

12   Your Honor, and see the identical language that is missing from

13   the original Claim 1 of the '894 patent.  In particular, if you

14   look at Claim 1 of the '945 patent at about line 17, --

15           THE COURT:  I'm there.

16           MR. MANAK:  You're a lot faster than I am, Your Honor.

17                   ... between first and second positions;

18                   electromagnet coil means disposed with said

19                   housing ...

20           That is, Your Honor, precisely the very same language

21   that is missing from the original Claim 1 of the '894 patent.

22           THE  COURT:  Can I ask you a question?

23           MR. MANAK:  Of course.

24           THE COURT:  Why didn't you say that in your

25   memorandum?

1          MR. MANAK:  I believe we did refer to that, but --

2          THE COURT:  You referred to the fact that it was

3  incorporated.  But why didn't you point out that the precise

4  language that was omitted in the '894 patent appeared in

5  virtually precisely the same place in the '945 patent?

6          MR. MANAK:  I need to check the -- another attorney

7  wrote this brief, Your Honor.

8          THE COURT:  Oh, that's not fair.

9          MR. MANAK:  I know.  I am not saying the dog ate my

10  homework, Your Honor.  I'm just saying that I need to look

11  through the brief to see if we did in fact do that.

12          THE COURT:  All right.

13          MR. MANAK:  I'm not sure.

14          THE COURT:  I try to prepare.  I tried to read your

15  memorandum.  But I confess, I don't go through and read every

16  patent in a patent case.  I don't think Judge Pregerson relied

17  on that either.

18          MR. MANAK:  If we have omitted that point, -- we

19  submit, Your Honor, it is a significant point.  If we have

20  omitted that from our opposition papers, we apologize.

21          THE COURT:  I think it is very significant, and I am

22  ready to hear from the defendants on it.

23          MR. MANAK:  May I just --

24          THE COURT:  Let me give you a rest.

25          MR. MANAK:  Okay, Your Honor.

Page 62

1          THE COURT:  Let me hear from Mr. Cahn.

2          Mr. Cahn, why doesn't that take care of it in light of

3     the analysis of Superior Fireplace?

4          MR. CAHN:  Your Honor, I believe this entire

5     discussion was premised on tying the nature of the error to a

6     type one error.  Is that correct?

7          THE COURT:   No, no.  Let me review.

8          Plaintiff says it's a type one error.  I think it's a

9     type three error.  But I don't think that matters.  The point

10    here is that Superior Fireplace says -- well, first, let me do

11    it this way.  We agree, do we not, that it is a typographical

12    mistake or error?

13         MR. CAHN:  There is an error, Your Honor.  How it came

14    about and who is responsible, I can't tell you whether it was

15    typographical or what, but I will say that there is an error.

16    There is an omission and some sort of clerical error.

17         THE COURT:  The Federal Circuit says, at page 1369:

18                    The phrase "clerical or typographical nature" is

19                    not explicitly defined in Section 255...  A

20                    standard dictionary defines "clerical" as

21                    relating to an office clerk or office work, and

22                    defines "typographical" as relating to the

23                    setting of type, printing with type, or the

24                    arrangement of matter printed from type.

25         Now, I don't want to beat you over the head with it,

1    but isn't this clearly a clerical or typographical error?

2              MR. CAHN:  Maybe in the office of the attorney or in

3    the Patent Office.

4              THE COURT:  I don't care where.

5              MR. CAHN:  Yes.

6              THE COURT:  We are assuming that this is a 255 error

7    and not a 254 error.  But I don't think it matters, frankly.

8    The point is it is a typographical error.

9              MR. CAHN:  Yes, Your Honor.

10             THE COURT:  Clearly, Mr. Sutton didn't submit this

11   application intending for this language to be deleted from

12   Claim 1; right?

13             MR. CAHN:  Well, the error may have initiated at that

14   stage.  We don't know.

15             THE COURT:  Whether it initiated with Mr. Sutton, with

16   Mr. Sutton's secretary, with Mr. Sutton's law clerk, with Mr.

17   Sutton's partner, whoever it was, it is a typographical

18   mistake.

19             MR. CAHN:  I have never known a patent attorney who

20   knowingly submitted a facially invalid claim to the Patent

21   Office, so yes.

22             THE COURT:  Exactly.  So, it's a typographical error.

23   It's a type three error.

24             As I understand it, Superior Fireplace says you can

25   look at the intrinsic evidence, the patent, the drawings, the

1    specification, and the file wrapper to determine whether or not

2    the Certificate of Correction was correctly issued.

3         What we have here is a patent that incorporates by

4    reference the prior application and patent which contains in

5    Claim 1 the very language at the very location that the missing

6    language has been deleted from the patent in suit.

7         So, why isn't it perfectly clear that this was the

8    type of error that the Patent Office could correctly correct

9    through the issuance of a Certificate of Correction?

10        MR. CAHN:  I would submit, Your Honor, that in the

11   presentation of the materials to the Patent Office, there was

12   no reference to the specific language in Claim 1 of the related

13   patent.

14        THE COURT:  Why does it have to be a specific

15   reference to the specific language?

16        MR. CAHN:  There would have to be some showing that

17   there is a basis for making the change.

18        THE COURT:  I'm not with you.  Are you referring now

19   to -- well, what are you referring to?

20        MR. CAHN:  The submission of the language -- the

21   Certificate of Correction issued because Mr. Sutton filed the

22   document with the Patent Office saying, take this language and

23   insert it here.  Quote, this language.  Put it at this

24   particular location.  He didn't say that this language could be

25   found in some related patent or some connected patent.

1          THE COURT:  Why does he have to say that?

2          MR. CAHN:  Well, Your Honor, again, going back to the

3     public-notice function, in the event that the public is

4     required to sift through collateral documents, and they are

5     collateral documents, and try to --

6          THE COURT:  What do you mean collateral documents?

7          They are not collateral documents.  The incorporation

8     of this continuation-in-part makes it a part of this

9     application.

10         MR. CAHN:  The specification, the description is what

11    you typically consider as being incorporated in part, not

12    claims.  Again, I have never seen a situation where somebody

13    tries to incorporate by reference the specific language of a

14    claim from another patent into the claim of --

15         THE COURT:  No, no.  They are not trying to

16    incorporate the specific language.  As the '894 was

17    submitted -- I think we have to infer that, as submitted, the

18    language was there.  The language was there.

19         MR. CAHN:  Your Honor, we don't know in the first

20    instance.  In the second instance, I would like to look at

21    the -- if I may have a moment to look at the timing of the two

22    patents.

23         THE COURT:  Sure.

24         (Pause in the proceeding.)

25         THE COURT:  The '945 issued May 1985 on an application

Page 66

1    filed in 1982.

2              MR. CAHN:  All right.

3              THE COURT:  And the '894 issued June 1986 on an

4    application filed in April 1985.

5              MR. CAHN:  Before the claims of this earlier patent

6    actually issued, Your Honor.

7              THE COURT:  But the application had been pending for

8    three years.

9              MR. CAHN:  The claims are constantly subject to

10   amendment, Your Honor.

11             THE COURT:  Of course.

12             MR. CAHN:  So, where and when that particular language

13   arose, when it was introduced, is something that one would not

14   expect to look for, in any event, in the context of

15   incorporation by reference.

16             Number two, I would like to point out that in view of

17   the exercise that we, ourselves, are going through in this very

18   courtroom, --

19             THE COURT:  Which, in all respect, I now believe was

20   totally unnecessary.  I guess I have to bear some of the blame

21   myself.  I suppose I am supposed to read all of the patents

22   that are submitted to me.  But if this had been pointed out in

23   the plaintiff's memorandum, --

24             MR. MANAK:  May I address that, Your Honor?

25             THE COURT:  Did I miss it?

1        MR. MANAK:  Yes, Your Honor.

2        THE COURT:  Where did I miss it?

3        MR. MANAK:  I made a mistake, Your Honor, and Mr.

4    Dougherty has pointed out the error of my ways.

5        Your Honor, in our opposition brief at page 3, --

6    well, it starts on page 2, under Background, there is a

7    sentence which reads:

8                The '894 patent was a continuation-in-part of

9                U.S. Patent Number 4,518,945.  The '945 patent,

10               Exhibit B, has been incorporated by reference.

11       THE COURT:  Yes.

12       MR. MANAK:  And then, if Your Honor reads down on page

13   3, in the second full paragraph, the third line down:

14               The 1988 Certificate mistakenly placed the

15               missing words into Claim 2 instead of Claim 1.

16       THE COURT:  Yes.

17       MR. MANAK:  And the next sentence is:

18               Claim 1 of the '945 patent, however, which was

19               incorporated by reference in the '894 patent,

20               did include the missing words.

21       THE COURT:  And I am supposed to know what all of that

22   meant.

23       MR. MANAK:  We should have been more explicit, Your

24   Honor.

25       THE COURT:  By the way, the -- I wasn't going to bring

Page 68

1    this up, but, frankly, since we are all doing mea culpas here,

2    you cite on that same page, page 3, as Exhibit B -- well, you

3    actually assign Exhibit B to two different exhibits.  When I

4    read line 4 on page 3, which was issued on July 12, 1988, (the

5    1988 Certificate, Exhibit B), I turned to Exhibit B, and I saw

6    the '945 patent.  Do you see that?

7              MR. MANAK:  Yes, Your Honor.

8              THE COURT:  Does your copy have the same mistake?

9              MR. MANAK:   It's a mistake, Your Honor.

10             MR. DOUGHERTY:  It's a typographical error.

11             THE COURT:  It's a clerical mistake.

12             My point is -- look, nobody is perfect, not even John

13   Nash.  My point is that you are absolutely right, it's there.

14   I mean, it's there.  I like to consider myself a careful judge,

15   and I suppose, as I say, if I had actually sat down and read

16   through the entire two patents, it would have hit me that, in

17   fact, precisely the seven words that were missing from the '894

18   appeared in the '945.

19             MR. MANAK:  That is correct, Your Honor.  And we

20   should have made that more explicit.

21             THE COURT:  I really wish you had.

22             MR. MANAK:  We apologize for that, Your Honor.

23             THE COURT:  Let me give Mr. Cahn a chance to finish

24   this up.

25             MR. CAHN:  I think this underscores exactly the

Sharon Cook, Official Court Reporter, U.S. District Court