UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| LEVITON MANUFACTURING CO., INC., <br><br> Plaintiff, <br><br> v. <br><br> UNIVERSAL SECURITY INSTRUMENTS, INC., *et al.* <br><br> Defendants. | Civil Action No. 01 CV 3855 AMD |

**LEVITON'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT
ON THE PLEADINGS AND DISMISSAL OF THE COMPLAINT**

Plaintiff Leviton Manufacturing Co., Inc. ("Leviton"), by and through its counsel, hereby opposes the Motion For Judgment On The Pleadings And Dismissal Of The Complaint For Failing To State A Cause of Action Upon Which Relief Can Be Granted filed by defendants Universal Security Instruments, Inc. and USI Electric, Inc. (collectively, "Defendants"). Defendants' attempt to avoid liability for their continued patent and trade dress infringement at this preliminary stage of the litigation is without merit and should be rejected.

Leviton has properly pled causes of action for patent infringement relating to its US Patent 4,595,894 (the "'894 Patent") and for trade dress, trademark infringement of the appearance and arrangement of the elements of the face of Leviton's ground fault circuit interrupter ("GFCI") product line. Without even a prima facie basis, Defendants' seek dismissal of both the patent and trade dress counts under Rule 12(b)(6) and 12(c).

Defendants' argue that the patent infringement count should be dismissed because the December 2001 certificate of correction issued on the '894 Patent is "defective" and the uncorrected patent is invalid for indefiniteness under 35 U.S.C. § 102. This argument has no basis to support a dismissal under any part of Rule 12. Defendants' assertion that the 2001 certificate of correction was improperly granted is unsupported by any evidence, and the 2001 certificate of correction is presumptively proper. Even before the 2001 Certificate issued, the United States District Court for the Central District of California decided that the '894 Patent was not invalid, its claims were not indefinite, and that the patent and its earlier 1988 Certificate of Correction were sufficient to put a person skilled in the art on notice of the '894 Patent claims. Defendants' motion to dismiss Leviton's patent infringement claim therefore should be denied.

Defendants' assertion that Leviton's claimed trade dress is purely functional and therefore unprotectable is likewise unavailing. Although Leviton's utility patents are directed towards its ground fault circuit system, Leviton's trade dress relates to the non-functional design and appearance of Leviton's ground fault circuit product line. Leviton has properly plead its product configuration trade dress claim and Defendants' motion to dismiss that claim should be denied.

## I.   BACKGROUND

### A.   The '894 Patent

On June 17, 1986, the United States Patent and Trademark Office ("USPTO") issued the '894 Patent entitled "Ground Fault Interrupting System," which was assigned to Leviton. (Exhibit A). The '894 Patent was a continuation-in-part of US Patent No. 4,518,945 (the "'945

Patent") (Exhibit B), which has been incorporated by reference into the '894 Patent. Shortly after issuance, Leviton became aware of a clerical or typographical error in the '894 Patent, by which a few words had been omitted in Claim 1, and thereafter filed for a first Certificate of Correction, which was issued on July 12, 1988 (the "1988 Certificate"). (Exhibit B) The basis for that 1988 Certificate is not on the record,[1] and thus it cannot be determined whether it issued as the result of an error by the USPTO or from a "mistake of a clerical or typographical nature, or of minor character, which was not the fault of the Patent and Trademark Office."[2]

In any event, the error in Claim 1 of the originally issued patent was facially obvious to anyone experienced in the field of the invention who read the '894 Patent, and the 1988 Certificate was granted by the USPTO under a presumptively proper procedure. The 1988 Certificate mistakenly placed the missing words into Claim 2 instead of Claim 1. Claim 1 of the '945 Patent, however, which was incorporated by reference in the '894 Patent, did include the missing words. On December 11, 2001, the USPTO corrected this error by issuing a second Certificate of Correction (the "2001 Certificate"). (Exhibit D) The 2001 Certificate states on its face that it "supersedes" the 1988 Certificate.

---

[1] The USPTO has been unable to locate the file history of the '894 patent, and thus the statutory basis for granting the 1988 Certificate cannot be determined, nor can it be determined when the request for that Certificate was filed.

[2] See 35 U.S.C. §§ 254 and 255.

3

**B.     The Complaint**

On December 13, 2001, Leviton filed this lawsuit (the "Complaint"). The Complaint contains two counts: Count I for infringement of the '894 Patent; and Count II for infringement of Leviton's trade dress.

The Complaint states on its face that the '894 Patent "was duly and legally issued" and that "Leviton is the sole owner ... including the right to sue and recover for past infringement thereof." Complaint, ¶ 6-7. The Complaint further alleges that Defendants are "infringing one or more claims of the '894 patent by making, using, offering to sell or selling, and/or inducing same ...." Complaint, ¶ 12.

Count II of the Complaint alleges a claim for relief under Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a). In the Complaint, Leviton alleges that it is the owner of "trademark rights, including trade dress rights, in the well-known appearance and arrangement of the elements of the face of its ground fault circuit interrupter product line." Complaint, ¶ 8. The Complaint further alleges that Defendants' use of these rights creates a likelihood of consumer confusion: "The USI defendants have improperly and unlawfully utilized the trade dress and trademark and appearance design ... which identify Leviton's [GFCIs], thereby creating a likelihood of confusion in the minds of the purchasing public." Complaint, ¶ 19.

### III.   ARGUMENT

#### A.   Legal Standards.

The applicable pleading standards are liberal. A pleading must simply provide "fair notice of [a] claim and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957). All that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Dismissal of an initial pleading is a "drastic remedy in federal practice." Hungate v. United States, 626 F.2d 60, 62 (8th Cir. 1980). A Rule 12(b)(6) motion challenges the legal theory of the complaint and must be denied "unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 n.4 (4th Cir. 1993) (quoting Conley v. Gibson, 355 U.S. at 45-46). Thus, the Court should "take as true the material facts alleged in [the] complaint" and all reasonable inferences should be drawn in favor of Leviton. Hospital Bldg. Co. v. Trustees of Rex Hospital, 425 U.S. 738, 740 (1976); Scheuer v. Rhodes, 416 U.S. 232 (1974).

Federal courts use a similar standard to evaluate a motion pursuant to Rule 12(c). See Razor v. Perdue Farms, Inc., 176 F.3d 475, 1999 WL 178782, at *1 (4th Cir. 1999) ("The district court applies the same standard under Rule 12(c) as it applies under Fed. R. Civ. P. 12(b)(6)."). However, unlike a Rule 12(b)(6) motion, a motion pursuant to Rule 12(c) may not be made until "after the pleadings are closed." Fed. R. Civ. P. 12(c). As such, a Rule 12(c) motion made before the defendant has filed an answer must either be denied as premature or treated as a motion to dismiss under Rule 12(b)(6). See Dale v. Executive Office of the President, 164 F.

5

Supp. 2d 22, 24 (D.D.C. 2001) ("If a party files a Rule 12(c) motion before the answer, the court may treat it as a motion to dismiss under Rule 12(b)(6)."); Taylor v. City of New York, 953 F. Supp. 95, 97 (S.D.N.Y. 1997) ("A defendant may not move under Rule 12(c) until after its answer is filed."); 5A Wright, Charles A. and Miller, Arthur A., Federal Practice and Procedure, §1367, at 509-510 ("Similarly, defendant may not move under Rule 12(c) until after he has answered.").

Defendants have not yet answered the Complaint, and have not submitted any evidence to support their motion for judgment. Defendants' Rule 12(c) motion should therefore be treated as a motion under Rule 12 (b)(c), and should be denied.

### B. Leviton's Claim for Patent Infringement is Proper.

Leviton has stated a claim for infringement of the '894 patent, which, along with its two certificates of correction, is presumptively valid and enforceable. Defendants' unsupported argument fails to overcome the presumption of validity attaching to all actions taken by the USPTO, which can only be overcome by clear and convincing evidence. In addition, substantially the same argument was recently rejected with respect to this same patent by the United States District Court for the Central District of California (the "California District Court"), which found the claims of the '894 Patent to "meet the statutory standard" as the patent existed prior to the 2001 Certificate.[3]

---

[3] The opinion of the California District Court is appended hereto as Exhibit E.

1.  **Leviton Has Properly Pled A Claim For Patent Infringement.**

Leviton has properly pled the necessary elements of a claim for patent infringement. Leviton alleges that it "is the sole owner of all right, title and interest in the '894 Patent, including the right to sue and recover for past infringement thereof." Complaint, ¶ 7. Leviton further alleges that "[t]he USI defendants, in violation of 35 U.S.C. § 271, have been, and are infringing one or more claims of the '894 Patent by making, using, offering to sell or selling, and/or inducing same in this Judicial District and/or elsewhere, ground fault circuit interrupter products which embody the patented invention . . ." Complaint, ¶ 12.

The Complaint thus states a claim for relief under 35 U.S.C. §271. A patent owner need only plead facts sufficient to place the alleged infringer on notice. Phonometrics, Inc. v. Hospitality Franchise Sys., Inc., 203 F.3d 790, 794 (Fed. Cir. 2000) (holding that the complaint placed the defendant on notice when it alleged ownership of the asserted patent, named the individual defendants, cited the patents that are allegedly infringed, described the means by which the defendants allegedly infringed the patents, and pointed to specific sections of the patent law invoked); see also LG Electronics v. Asustek Computers, 126 F.Supp.2d 414 (E.D. Va. 2000). Thus, Defendants' motion should be denied.

2.  **The 2001 Certificate Is Presumptively Valid And Defeats Defendants' Motion.**

A patent issued the USPTO is presumptively valid. See 35 U.S.C. § 282. As such, anyone attempting to demonstrate the invalidity of a patent must do so by clear and convincing evidence. See Kaufman Co. v. Lantech, Inc., 807 F.2d 970, 973-974 (Fed. Cir. 1986). The burden of proof by clear and convincing evidence also applies to the validity of certificates of correction. See Superior Fireplace Co. v. The Majestic Products Co., 270 F.3d 1358, 1367 (Fed.

Cir. 2001) ("we find that clear and convincing standard apposite to the certificates correcting the language of a claim"). Defendants' conclusory assertions that the 2001 Certificate is invalid completely fail to meet the clear and convincing burden. Id. Defendants present **no** evidence in support of their assertion that the 2001 Certificate was improperly granted.

The 2001 Certificate is presumptively valid and was properly issued by the USPTO. A valid Certificate of Correction may issue, among other reasons, to correct a mistake made by the USPTO, 35 U.S.C. § 254, or to correct a "mistake of a clerical or typographical nature, or of minor character," not made by the USPTO. 35 U.S.C. § 255.[4] Regardless of whether the USPTO issued the 1988 Certificate under Section 254 or Section 255 (both of which are possible from a review of the pleadings), either would suffice to demonstrate that the certificate was properly issued. No evidence has been presented by Defendants – much less clear and convincing evidence – to support their invalidity arguments. There is no evidence from the original file history, for example, that the omission of the language was not the result of a

---

[4] Section 254 reads, in pertinent part:

> Whenever a mistake in a patent, incurred through the fault of the Patent and Trademark office, is clearly disclosed by the records of the Office, the Director may issue a certificate of correction . . . to be recorded in the records of patents.

Section 255 reads, in pertinent part:

> Whenever a mistake of clerical or typographical nature, or of minor character, which was not the fault of the patent office, appears in a patent and a showing has been made that such mistake has been made in good faith, the director may . . . issue a certificate of correction

Importantly, section 255 allows a patent holder to correct a mistake that is either "of a clerical or typographical nature" or "of minor character." The provision is clearly disjunctive. As such, Defendants' argument that the December 12, 2001 certificate of correction improperly broadened the scope of the '894 Patent is completely irrelevant.

8

typographical omission by the USPTO printer, and that error was not obvious in 1988 when the 1988 Certificate was approved. Without such evidence, the presumption as to the validity to the 2001 Certificate carries the day.[5]

There is also no evidence or law to support the assertion by Defendants that "Plaintiff Admits that Originally Issued Claim 1 is Defective." Defendants' Memorandum at 12. Defendants have cited no precedent supporting their assertion that merely filing a Certificate of Correction is such an admission. Indeed, both statutes (Sections 254 and 255) expressly state that the corrected patent with the Certificate of Correction "shall have the same effect and operation in law . . . as if the same had been originally issued in such corrected form."

Defendants further make the unsupported assertion at page 9 of their Memorandum that Claim 1 prior to the 2001 Certificate "does not recite the same GFCI system recited by claim 1" as corrected by the 2001 Certificate. Defendants also assert that "as issued, claim 1 does not cover the alleged infringing structures." Id. at 11. There is no factual or legal support provided for these assertions. Defendants' argument is merely a series of unsupported and inaccurate assumptions. Basing a motion on such inaccurate assumptions runs contrary to the basic requirement of a judgment on the pleadings that any assumptions that may be made can only be made in favor of the nonmoving party. Hospital Bldg. Co., 425 U.S. at 740.[6]

---

[5] The file history for the '894 Patent prior to 1989 is not available because it was lost by the USPTO. Thus, there is now no way to determine whether the 1988 Certificate was based on Section 254, as a readily obvious error of omission by the USPTO, or on Section 255

[6] Defendants' remaining arguments also lack merit. This case has nothing to do with the reissue statute of 35 U.S.C. § 251. Similarly, the dismissal of the prior action against Defendants was without prejudice under FRCP 41(a) is of no consequence. Likewise, Defendants' reliance on Superior is misplaced. When

*(footnote continued to next page)*

9

3.  **Even Without the 2001 Certificate of Correction, the '894 Patent Is Not Invalid Under 35 U.S.C. §112.**

Even if it is assumed for purposes of argument that the 2001 Certificate was not properly issued (which Plaintiff denies and Defendants have filed to prove by clear and convincing evidence), Defendants still have not carried their burden of showing that Claim 1 of the '894 Patent, as it existed prior to the 2001 Certificate, failed to meet the requirements of 35 U.S.C. §112.

Paragraph 2 of Section 112 requires that patent claims "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention." 35 U.S.C. §112 (paragraph 2). This requirement is met "when <u>a person experienced in the field of the invention would understand</u> the scope of the subject matter that is patented . . . ." S3, Inc., 259 F.3d at 1367 (emphasis added). Thus, the inquiry under Section 112 is whether one "skilled in the art" or "experienced in the field of the invention" would understand the invention and be able to put it into practice.

Defendants' motion does not even attempt to make the necessary showing of invalidity under Section 112. Defendants do not address the likelihood that one skilled in the art would understand that the 1988 Certificate was intended for Claim 1, not Claim 2. Indeed, the '894

---

*(footnote continued from previous page)*
determining the propriety of a Certificate of Correction, the total file of the patent must be reviewed, "including the rest of the claim, the other claims and the written description and drawings .... and prosecution history." <u>Superior</u>, 270 F.3d at 1368. The facts of this case are entirely different than those before the <u>Superior</u> court. Unlike the situation in <u>Superior</u>, "the claim limitation in question is [not] itself syntactically correct and on its face raises ... [a] question of a mistake." <u>Id.</u> It is further submitted that contrary to the facts of <u>Superior</u>, the clerical nature of the error in the 1988 Certificate was <u>apparent</u> from the face of the patent, and "that it would be unfair to enforce the error." <u>Id.</u> at 1372.

Patent withstood a substantially identical validity challenge on summary judgment in California. In that case, Judge Pregerson of the United States District Court for the Central District of California rejected defendants' arguments that the '894 Patent was invalid under Section 112. In the court's words:

> In short, Leviton claims that <u>one skilled in the art</u>, properly taking into account the description in the full specification, could understand the language of the [1988] certificate of correction was intended to correct claim 1, but was erroneously addressed to claim two as a result of clerical or typographical error. The Court agrees.

Exhibit E at 12 (emphasis added).

The California District Court reached this conclusion with the aid of evidence concerning the nature of "one skilled in the art." The California District Court found that, prior to the issuance of the 2001 Certificate, the claims of the '894 Patent were not invalid on their face when properly construed by "a person skilled in the art, when the claim is read in conjunction with the rest of the specification." Exhibit E, at 13. The California District Court found that "the claims of the '894 Patent are sufficiently definite to meet the statutory standard of definiteness as the printed patent currently exists, including the erroneous first certificate of correction." <u>Id.</u> at 13-14. In other words, even before the 2001 Certificate was issued, a person skilled in the art "would understand the scope of the subject matter that is patented when the claim is read in conjunction with the rest of the specification" and the 1988 Certificate. <u>S3 Inc.</u>, 259 F.3d at

11

1367. In the present case, Defendants cannot show, and have not shown, that the conclusion reached by the California District Court was wrong.[7]

The claims and specification of the '894 Patent as it existed prior to the 2001 Certificate define the scope of the invention and enable one skilled in the art to understand the boundaries of the claimed invention and to practice what is disclosed. The '894 patent prior to the 2001 Certificate is therefore not invalid, and Defendants' motion must therefore be denied.

### C. Leviton's Claim For Trademark Infringement And False Designation Of Origin is Proper.

Count II of the Complaint alleges a claim for relief under Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a). Defendants' argument that Leviton's trademark and false designation claims should be dismissed is based on a misreading of the Supreme Court's decision in TrafFix Devices Inc. v. Marketing Displays, Inc., 121 S. Ct. 1255 (2001). In addition, Defendants' argument fails because functionality is a question of fact and, therefore, should not be adjudicated on a motion to dismiss.

### 1. Leviton Has Properly Pled A Claim For Trademark Infringement.

To state a claim under Sections 32(1) and 43(a) of the Lanham Act for trademark or trade dress infringement, a plaintiff must allege that: (1) its trademark or trade dress qualifies for

---

[7] That decision by a sister Court should be given substantial weight under the principles of comity, especially where the issue is one of law based on the pleadings. Mast, Foos & Co. v. Stover MSG. Co., 177 U.S. 485, 488-89 (1900); Hill v. BASF Wyandotte Corp., 696 F.2d 287, 290 n.3 (4th Cir. 1982); Mendenhall v. Cedarapids, Inc., 5 F.3d 1557, 1569, 28 USPQ2d 1081, 1092 (Fed. Cir. 1993); Wang Labs, Inc. v. OKI Electric Industry Co., Ltd., 15 F. Supp. 2d 166, 175 (D.Mass. 1998).

protection, and (2) defendant's use of a colorable imitation of the trademark or trade dress is likely to cause confusion among consumers. See Pebble Beach Co. v. Tour 18 I Ltd., 155 F.3d 526, 536 (5th Cir. 1998); see also Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 930 (4th Cir. 1995).

Leviton's Complaint satisfies this standard. Leviton alleges that it is the owner of "trademark rights, including trade dress rights, in the well-known appearance and arrangement of the elements of the face of its ground fault circuit interrupter product line." Complaint, ¶ 8. The Complaint further alleges that Defendants' use of these rights creates a likelihood of consumer confusion: "The USI defendants have improperly and unlawfully utilized the trade dress and trademark and appearance design . . . which identify Leviton's [GFCIs], thereby creating a likelihood of confusion in the minds of the purchasing public." Complaint, ¶ 19. Because the Complaint asserts that Leviton has trademark or trade dress rights and that Defendants' infringement of those rights create a likelihood of confusion, the Complaint properly states a claim for infringement under Sections 32(1) and 43(a) of the Lanham Act.

### 2. Because Leviton's Trade Dress Is Neither Functional Nor Claimed By Any Patent, Defendants' Motion Must Be Denied.

Product configuration is functional "if it is essential to the use or purpose of the article or affects the cost or quality of the article." TrafFix, 121 S. Ct. at 1261. Courts look to the following factors to determine whether a feature is functional: (1) the existence of a utility patent disclosing the utilitarian advantages of the design; (2) advertising materials in which the originator of the design touts the design's utilitarian advantages; (3) the availability to competitors of functionally equivalent designs; and (4) facts indicating that the design results in a

comparatively simple or cheap method of manufacturing the product. See Value Engineering, Inc. v. Rexnord Corp., 2002 WL 84247, *3 (Fed. Cir. 2002). On the other hand, if the design when considered as a whole is ornamental, incidental or arbitrary, it is not functional and can be protected as trade dress. See TrafFix, 121 S. Ct. at 1260; see also Coach, Inc. v. We Care Trading Co., 2001 WL 812126, *8 (S.D.N.Y. 2001) ("a collection of functional features may nonetheless be protectable trade dress").

The Complaint provides no basis for the Court to determine that Leviton's trade dress is functional. Contrary to Defendants' position and as explained in greater detail below, there is no utility patent claiming the utilitarian advantages of the "well-known appearance and arrangement of the elements of the face of its ground fault circuit product line." Complaint, ¶ 8. There are no advertising materials before the Court. There is no evidence regarding functionally equivalent designs or comparable methods of manufacturing. Simply stated, the pleadings do not allow anyone to conclude that the overall design of Leviton's GFCIs is functional.

Contrary to Defendants' contentions, the '894 Patent does not claim the features that Leviton claims to be protectable trade dress.[8] The '894 Patent discloses a "switching system for interrupting an electrical circuit . . . able to be installed within a conventional receptacle box." Exhibit A. The claims of the '894 Patent are completely silent on the appearance and arrangement of the face of the GFCI.

---

[8] In fact, Leviton is not even required to identify those features at this stage of the litigation. E-Z Implements, Inc. v. Marv Haugen Ent. Inc., 25 F. Supp. 2d 1012, 1015 n. 4 (D. Minn. 1998)

14

The '894 Patent's silence in its claims regarding those features renders the TrafFix decision inapposite. In TrafFix, the plaintiff sought trade dress protection for the "dual-spring design" used in a wind-proof traffic sign and claimed in expired utility patents. The features claimed in the utility patents and the features that the plaintiff sought to protect as trade dress were identical. TrafFix, 121 S. Ct. at 1260 ("In the case before us, the central advance claimed in the expired utility patents . . . is the essential feature of the trade dress MDI now seeks to establish and protect.") (emphasis added). The '894 Patent does not claim – and Defendants have not argued (and cannot credibly argue) that it claims – the "appearance and arrangement of the face" of the GFCI as part of the invention. As such, Defendants' reliance on TrafFix is misplaced and their motion to dismiss should be denied.

3.  **Because Functionality Is A Question Of Fact Not To Be Decided On A Motion To Dismiss, Defendants' Motion Must Be Denied.**

It is settled law in this circuit and elsewhere that functionality is a question of fact. See Washington Speakers Bureau, Inc. v. Leading Authorities, Inc., 49 F. Supp. 2d 496, 499 n.5 (E.D. Va. 1999) ("The functionality, distinctiveness, or secondary meaning of a mark . . . are questions of fact.") (quoting Pebble Beach, 155 F.3d at 537); see also Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 843 (9th Cir. 1987) ("functionality is a question of fact").

Applying these principles, district courts have rejected motions to dismiss trade dress claims on the grounds that the trade dress is functional. See Fritz, DMA, Inc. v. Arthur D. Little, Inc., 944 F. Supp. 95, 102 (D. Mass. 1996) ("Thus, 'claims under Section 43(a) of the Lanham Act cannot be dismissed on the grounds that the trade dress is functional.'"); Morton v. Rank America, Inc., 812 F. Supp. 1062, 1069 (C.D. Ca. 1993) ("Because functionality is a question of

15

fact, the Plaintiffs' claim under Section 43(a) of the Lanham Act cannot be dismissed on the grounds that the Hard Rock Café trade dress in functional"); see also Naso v. Ki Park, 850 F. Supp. 264, 270 (S.D.N.Y. 1994) (denying defendants' motion to dismiss a claim for trade dress infringement).[9]

Defendants' motion to dismiss the Complaint should likewise be rejected. Defendants argue that, as a matter of law, the configuration and appearance of the GFCI are functional. This argument flatly contradicts settled precedent holding that functionality is a question of fact. As such, because Leviton has pleaded a claim for trade dress infringement, the law gives Leviton an opportunity to prove (either at summary judgment or trial) that its trade dress is not functional.

The Supreme Court's decision in TrafFix does not change this result. In TrafFix, the Court observed that "[a] utility patent is strong evidence that the features therein claimed are functional" and, as a result, "one who seeks to establish trade dress protection [for those features] must carry the heavy burden of showing that that feature is not functional." TrafFix, 121 S. Ct. at 1260. Even if Leviton's trade dress were covered by the claims of the '894 Patent, the TrafFix decision nevertheless mandates that Leviton be afforded the opportunity to prove that the trade

---

[9] One federal district court has dismissed a trade dress claim on the grounds that the functionality of the trade dress was conclusively illustrated in a utility patent. See Shock-tek, L.L.C. v. Trek Bicycle Corp., 2001 WL 1680191, at*3-4 (E.D. Mich. 2001). Leviton respectfully submits that this case was wrongly decided. The court should have given-- as required by the TrafFix decision – the plaintiff an opportunity to prove that the trade dress in question was not functional. See TrafFix, 121 S. Ct. at 1260 (observing that a trade dress plaintiff can overcome the functionality presumption by "showing that [the feature] is merely an ornamental, incidental or arbitrary aspect of the device"). In addition, as explained above, because the features of Leviton's trade dress are simply not covered by the claims of the '894 Patent (or any other patent), TrafFix and Shock-tek are readily distinguishable.

dress of its GFCIs is not functional. Therefore, Defendants' motion to dismiss Count II of the Complaint must be denied.

### III.   CONCLUSION

For the foregoing reasons, Leviton respectfully asks the Court to deny Defendants' Motion for Judgment on the Pleadings or for Dismissal.

Respectfully submitted,

_____
John C. Dougherty
Hugh J. Marbury
Denis C. Mitchell

PIPER MARBURY RUDNICK & WOLFE LLP
6225 Smith Avenue
Baltimore, Maryland  21209-3600
(410) 580-3000

Attorneys for Plaintiff
Leviton Manufacturing Co., Inc.

OF COUNSEL:

Paul J. Sutton
Barry G. Magidoff
Joseph M. Manak
Brad S. Needleman

GREENBERG TRAURIG, LLP
Lipstick Building
885 Third Avenue
New York, New York 10022
(212) 801-2100

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of February, 2002, a copy of Leviton's Opposition to Defendants' Motion for Judgment on the Pleadings or Dismissal of the Complaint was mailed, postage prepaid, and electronically mailed to: Frederick N. Samuels, Esquire, Cahn & Samuels, LLP, Headquarters Building, 2000 P Street, NW, Suite 200, Washington, D.C. 20036.

_____
Hugh J. Marbury