

```
___ Priority
___ Send
___ Clsd
___ Enter
_NO_ JS-5/JS-6
___ JS-2/JS-3
___ Scan Only
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEVITON MANUFACTURING CO., INC., | Case No. CV 99-05861 DDP (RZx) |
| Plaintiff, | ORDER DENYING MOTION FOR SUMMARY JUDGMENT |
| v. | [Motion filed on 9/14/01] |
| ORBIT ELECTRIC & LIGHTING, INC., et al., | |
| Defendants. | |

This matter comes before the Court on the defendants' motion for summary judgment. After reviewing and considering the materials submitted by the parties, and hearing oral argument, the Court adopts the following Order.

I.  Background

In this action, Leviton Manufacturing Co., Inc. ("Leviton") filed a first amended complaint ("FAC") alleging that Orbit Electric & Lighting Co., Inc. ("Orbit") infringed on a patent owned by Leviton, and seeking damages and injunctive relief. Leviton alleges that Orbit distributed Ground Fault Circuit Interrupt

1  ("GFCI") switches that infringed on the claims of U.S. Patent
2  No. 4,595,894 (the "'894 Patent"). The '894 Patent was issued to
3  Leviton on June 17, 1986. (Pl's Opp. at 1.) The '894 Patent is
4  entitled "Ground Fault Circuit Interrupting System" and contains
5  one independent claim (Claim 1) and three dependent claims (Claims
6  2 through 4). (Def's Mot. at 2.)
7     The crux of this dispute turns on what legal consequences must
8  follow from the fact that certain words were inadvertently omitted
9  from the printed copy of Claim 1 of Leviton's '894 Patent. After
10 the '894 Patent was issued, Leviton became aware that, due to a
11 clerical or typographical error, language was omitted from Claim 1
12 of the '894 Patent. (Pl's Opp. at 1.) Leviton submitted a request
13 to the United States Patent and Trademark Office ("PTO") for a
14 certificate of correction that would insert the missing words. A
15 certificate containing the missing words was issued on July 12,
16 1988. However, the certificate of correction was also incorrect
17 because the certificate inaccurately provided that the corrected
18 language was to be inserted into Claim 2 instead of Claim 1 (where
19 the corrected language properly belonged). The official file
20 history of the '894 Patent was lost by the PTO and the repository
21 of "intrinsic facts" is not available to either party. (Pl's Opp.
22 at 1.)
23
24 II.  Discussion
25    A.  Legal Standard
26    Summary judgment is appropriate where "there is no genuine
27 issue as to any material fact and . . . the moving party is
28 entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

1  A genuine issue exists if "the evidence is such that a reasonable
2  jury could return a verdict for the nonmoving party," and material
3  facts are those "that might affect the outcome of the suit under
4  the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
5  248 (1986). Thus, the "mere existence of a scintilla of evidence"
6  in support of the nonmoving party's claim is insufficient to defeat
7  summary judgment. Id. at 252. In determining a motion for summary
8  judgment, all reasonable inferences from the evidence must be drawn
9  in favor of the nonmoving party. Id. at 242.
10     A patent may be invalid if it does not meet the requirements
11 for definiteness set forth in 35 U.S.C. § 112: "The specification
12 shall conclude with one or more claims particularly pointing out
13 and distinctly claiming the subject matter which the applicant
14 regards as his invention." 35 U.S.C. § 112 (second paragraph).
15 Compliance with the second paragraph of § 112 is generally a
16 question of law. Shatterproof Glass Corp. v. Libbey-Owens Ford
17 Co., 758 F.2d 613 (Fed. Cir. 1985). Underlying this conclusion of
18 law are findings of fact concerning the prior art, the particular
19 invention, and how the claims would be read by those of ordinary
20 skill in the art. Hybritech Inc. v. Monoclonal Antibodies, Inc.,
21 802 F.2d 1367, 1385 (Fed. Cir. 1986). The amount of detail
22 required to be included in the claims depends on these findings.
23 Shatterproof Glass, 758 F.2d at 624.
24     B.   Analysis
25     Orbit contends that the flawed language in Claim 1 of the '894
26 Patent renders the claim unintelligible because a key clause of the
27 claim appears to be missing entirely. Since the remaining three
28 claims of the '894 Patent depend on Claim 1, Orbit contends that

3

1 these claims are also unintelligible.  Consequently, Orbit argues
2 that the claim language of the '894 Patent fails to satisfy the
3 definiteness requirement of 35 U.S.C. § 112, which requires the
4 claims to particularly point out and claim the invention.  Claim 1
5 of the '894 Patent reads in part:

> Switching apparatus for selectively interrupting an electrical connection between input and output conductors, or the like, comprising, in combination: a housing; magnetizable plunger means disposed within a portion of said housing for movement between first and said housing for moving said plunger means when energized from the first position to the second position; an input contact electrically connected to said input conductor; an output contact electrically connected to said output conductor . . .

11 (Hangartner Decl. Ex. A. at 19.)

12     According to Orbit, by inserting brackets where language
13 appears to be missing, Claim 1 reads as follows:

> "Switching apparatus . . . comprising, in combination: a housing; magnetizable plunger means disposed within a portion of said housing **for movement between first [ ] and [ ] said housing** for moving said plunger means when energized from the first position to the second position . . ."

17 (Def's Mot. at 3 (quoting '894 Patent)(emphasis provided by

18     Orbit asserts that the claim language makes it impossible: (1)
19 to determine the purpose of the "magnetizable plunger means" or how
20 it functions and (2) to understand the claim's reference to "first
21 position" and "second position."  Claim 1 later refers to a
22 subsequent element of a "strap means" that includes portions that
23 "define a path of the magnetic field generated by said coil means
24 to influence the position of said plunger means."  (Hangartner
25 Decl. A at 19.)  However, there is no antecedent basis for the
26 phrase "said coil means."  Orbit contends that these flaws render
27 the claim unintelligible.  (Def's Mot. at 3.)
28

4

1    Orbit argues that Claim 1 has never been corrected. The PTO
2 records reveal one certified correction to the claim language of
3 the '894 Patent. (Hangartner Decl. Ex. B.)[1] The correction, dated
4 July 12, 1988, states: "Column 7, line 3, Claim 2, after "and"
5 should read - second positions; electromagnet coil means disposed
6 within -." (Id.) The certificate, however, provides that the
7 correction applies to Claim 2 and not Claim 1. According to
8 Orbit, inserting the correction into Claim 2 at the specified
9 location renders Claim 2 completely unintelligible. (Def's Mot. at
10 5.) Therefore, Orbit argues, the correction was faulty in that it
11 both failed to correct Claim 1 and rendered Claim 2 unintelligible.
12    Leviton acknowledges that the correction issued on July 12,
13 1988 was intended to correct Claim 1 but erroneously addressed
14 Claim 2. Leviton claims, however, that the correction, along with
15 the original patent, is adequate to allow a person of skill in the
16 field to understand the claims when viewed in the context of the
17 full specification. (See Rzucidlo Decl. ¶ 11 ("It is also clear to
18 me that a competent patent practitioner . . . should be able to
19 read Claim 1 of the '894 Patent and determine whether there is
20 infringement").)
21    According to Leviton, if the words from the certificate of
22 correction are correctly inserted into Claim 1 (rather than Claim
23 2), Claim 1 would read as follows:
24    "Switching apparatus . . . comprising, in combination: a

---

[1] Title 35 U.S.C. § 255 provides that clerical or typographical errors not the fault of the Patent Office may be corrected "if the correction does not involve such changes in the patent as would constitute new matter or would require re-examination." 35 U.S.C. § 255.

5

housing; magnetizable plunger means disposed within a portion of said housing for movement between first and *second positions; electromagnet coil means disposed within* said housing for moving said plunger means when energized from the first position to the second position . . ."

(Narcisse Decl. ¶ 12 (quoting '894 Patent)(emphasis added).)

1.   Is the '894 Patent Fatally Indefinite?

An application for a patent must include in the specification "one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112. The primary purpose of claim language is to give fair warning to competitors regarding what will constitute infringement. See, e.g., Universal Oil Prods. Co. v. Globe Oil & Ref. CO., 322 U.S. 471, 484 (1944). A secondary purpose is to provide a clear measure of the invention in order to facilitate determinations of patentability. United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 236 (1942).

Orbit contends the language of Claim 1 fails to provide notice about what is claimed, and therefore cannot fulfill the definiteness requirement of 35 U.S.C. § 112. According to Leviton, however, the words of the claim can only be understood in the context of the specification and the file history of the application that ripened into the patent.[2]  (Pl's Opp. at 2.)

The requirements of 35 U.S.C. § 112 are met when a person experienced in the field of the invention would understand the scope of the subject matter that is patented when the claim is read in conjunction with the rest of the specification. S3 Inc. v.

---

[2] In this case, the file history for the '894 Patent is lost due to a fire at the office of Leviton's counsel, Mr. Sutton. (Sutton Decl. ¶ 6.)

6

Nvidia Corp., 259 F.3d 1364, 1367 (Fed. Cir. 2001). "If the claims read in light of the specification reasonably apprise those skilled in the art of the scope of the invention, § 112 demands no more." Miles Labs., Inc. v. Shandon Inc., 997 F.2d 870, 875 (Fed. Cir. 1993). In Solomon v. Kimberly-Clark Corp., 216 F.3d 1372 (Fed. Cir. 2000), the court explained the purpose of the statutory requirement: "As has been noted in the context of definiteness, the inquiry under section 112 . . . now focuses on whether the claims, as interpreted in view of the written description, adequately perform their function of notifying the public of the [scope of the] patentee's right to exclude." Id. at 1379.

In this case, the plaintiff argues, when Claim 1 of Patent '894 is read in the context of the full specification, which also includes the specification and claims of the '945 Patent, there is no question that the scope of the subject matter that is patented is definitely and particularly pointed out. Leviton claims that the fact that certain key terms lack antecedent bases is not fatal because, for all these elements, reference to the specification clarifies exactly what is meant. (Decl. Narcisse ¶ 12.) The Federal Circuit has made clear that for purposes of a claim construction inquiry into definiteness, claims must be read in the context of the specification and file history (which is not available in this case). For example, the court in S3 Incorporated noted:

> Comprehension of the terse language of the [patent] claims is aided by recourse to the rest of the specification, for the body of the specification explains and illustrates [items in the claimed product] such that their meaning and scope would be understood by a person experienced in the field of the invention. The claims are directed to the invention that is

7

described in the specification; they do not have meaning removed from the context from which they arose.

259 F.3d at 1369 (quotations and citations omitted).

Therefore, a decision on whether a claim is invalid under § 112 requires a determination of whether those skilled in the art would understand what is claimed when the claim is read in light of the specifications. According to declarations submitted to the Court by the plaintiff, persons experienced in the field of the invention (electrical engineering) are able to understand the scope of the claim and what would constitute an infringing device, despite the facial error in the language of Claim 1.

In addition, Leviton argues that there is sufficient information within the specification itself to inform the public what is claimed. The specification states:

> The present application is a continuation-in-part of applicants' both pending United States patent applications Ser. Nos. 431,982 now U.S. Pat. No. 4,518,945, filed Sept. 30, 1982 and entitled "REMOTE CONTROL SYSTEM" and Ser. No. 558,262 filed Dec. 5, 1983 and entitled "SHOCK HAZARD PRTECTION [sic] SYSTEM", and incorporates by reference as if fully set forth herein the entire contents and subject matter thereof and of any and all of their respective "parent" patent applications to which they are co-pending.

(Narcisse Decl. Ex. B at 17.)

Leviton argues that the '945 Patent, incorporated by reference into the '894 Patent, includes the identical language that is at issue in the faulty certificate of correction. (Pl's Stmt. of Facts ¶ 10.) However, the '945 Patent includes the language in the correct place in Claim 1. Therefore, Leviton argues, reference to the '945 Patent fully resolves any inadvertent ambiguity in the '894 Patent.

8

In short, Leviton claims that one skilled in the art, properly taking into account the description in the full specification, could understand that the language of the certificate of correction was intended to correct Claim 1, but was erroneously addressed to Claim 2 as a result of a clerical or typographical error. The Court agrees.

In Brandt, Inc. v. Crane, the defendant asserted that the claim was unintelligible "gobbledygook." 558 F. Supp. 1339, 1341 (N.D. Ill. 1983).[3] The court found that "[t]he two typographical errors corrected by the certificate were hardly so substantial as to convert 'gobbledygook' into an intelligible claim." Id. at 1342. The court therefore rejected the defendant's contention that the claim was fatally indefinite under 35 U.S.C. § 112. In this case, as compared to the facts of Brandt, there are more errors in the claim language, and the certificate of correction fails to accurately state where the correction language is to be inserted. Still, the Court finds that in this case, the claims remain

---

[3] In Brandt, the challenged portion of the claim at issue originally read:

> ". . . sensing means for sensing the presence of a magnetic field created by particles on said bill magnetized by said magnetizing means for generating a suspect signal when the position of the bill passing said magnetizing contains no magnetized particles. . . ."

As corrected, Claim 16 reads in relevant part:

> ". . . sensing means for sensing the presence of a magnetic field created by particles on said bill magnetized by said magnetizing means for generating a suspect signal when the portion of the bill passing said magnetizing means contains no magnetized particles. . . ."

Id. (emphasis added).
In sum, the word "position" was corrected to read "portion," and the word "means" was inserted before the word "contains."

intelligible. The errors are simply not substantial enough to convert the claim into "gobbledygook."

Orbit responds that the erroneous certificate of correction, even if intended to correct Claim 1 rather than Claim 2, cannot cure the defect in the claim language. Orbit contends that error in a patent, even if clerical or typographical, renders the patent invalid and cannot be retroactively corrected, even if the error was not caused by the applicant. <u>Southwest Software, Inc. v. Harlequin Inc.</u>, 226 F.3d 1280 (Fed. Cir. 2000). In <u>Southwest</u>, the court held that a certificate of correction for an error in a patent specification was only effective for lawsuits filed after the certificate of correction was issued. <u>Southwest</u> is distinguishable on several grounds from the case at hand. First, in that case, the certificate of correction was issued after the alleged infringement took place. Here, the certificate of correction was issued more than ten years prior to the commencement of the infringement action against Orbit. Second, <u>Southwest</u> addressed a defect in the specification rather than the claim itself. In <u>Southwest</u>, Claim 1 of the patent was held invalid because the specification did not include a necessary appendix and therefore failed to satisfy the requirements of 35 U.S.C. § 112. In this case, Leviton claims, the language of the specification is complete and resolves any confusion as to where the language included in the certificate of correction belongs.

Orbit contends that the principle that patent claims must generally be read in light of the patent specification evolved in situations where courts looked to the specification to determine the undisputed language of the claims, not to determine what the

language of the claims was supposed to be. (Def's Reply at 7.) Therefore, the cases cited by Leviton are distinguishable from the instant case because they all involved interpretation of language actually contained in the claims. Orbit contends that Leviton's argument that the claim is intelligible with reference to the specification requires competitors to engage in a number of assumptions and guesswork in order to determine the probable claim language.

Orbit also opposes what it characterizes as Leviton's improper attempt to ask that the Court find that the July 12, 1988 certificate of correction actually modified Claim 1 of the '894 Patent rather than Claim 2 as so stated. Orbit contends this action would exceed the Court's judicial power because Congress has expressly delegated the authority to issue corrections in the language of an issued patent to the Director of the PTO. 35 U.S.C. §§ 3, 254 & 255.[4] Moreover, Orbit argues, Leviton had actual notice that its effort to correct Claim 1 of the '894 Patent had failed when the certificate of correction "correcting" Claim 2 was issued to Leviton on July 12, 1988, and Leviton simply chose to take no further action to correct Claim 1.

---

[4] In *Fina Technology, Inc. v. Ewen*, the court reversed the district court's order to the Director of Patents and Trademarks to issue a certificate of correction pursuant to 35 U.S.C. § 256 for the patents at issue, reversing the order of inventors. 265 F.3d 1325 (Fed. Cir. 2001). The appellate court held that under 35 U.S.C. § 256, a district court lacked the power to order the Director to change the order of the inventors on an issued patent. However, in this case, the Court is not ordering the PTO to issue a certificate of correction. Instead, the Court has been asked to decide whether the claims are sufficiently definite to meet the statutory requirements of 35 U.S.C. § 112.

11

1  The Court understands Orbit's argument that a claim
2  construction inquiry must begin with the actual words of the claim.
3  See e.g. AbTox, Inc. v. Exitron Corp., 122 F.3d 1019, 1023 (Fed.
4  Cir. 1997). Orbit correctly points out that the case law which
5  establishes that claims are to be construed in light of the
6  specification of which they are a part almost entirely addresses
7  situations where language is actually present in the claim but is
8  somehow ambiguous or confusing. In contrast, in this case,
9  language is in fact missing from the claim. However, the Court is
10 not persuaded that this distinction is ultimately as significant as
11 Orbit contends. The overall proposition - that interpretation of
12 claims must occur within the context of the specification - remains
13 applicable. The standard of definiteness remains one of
14 reasonableness under the circumstances. See, e.g., Charvat v.
15 Commissioner of Patents, 503 F.2d 138, 147-151 (Fed. Cir. 1974).

16      2.   Specification v. Claim Language Standard

17      Leviton argues that the claim language should not be held to
18 the more strict statutory requirements applicable to the
19 specification language because there are different requirements for
20 what constitutes a sufficient specification disclosure and what
21 constitutes a valid claim. Pursuant to 35 U.S.C. § 112:

> The specification shall contain a written description of the
> invention, and of the manner and process of making and using
> it, in such full, clear, concise, and exact terms as to enable
> any person skilled in the art to which it pertains, or with
> which it is most nearly connected, to make and use the same,
> and shall set forth the best mode contemplated by the inventor
> of carrying out his invention.

26 See 35 U.S.C. § 112.

27      The requirements for the claims, however, are different. "The
28 specification shall conclude with one or more claims particularly

12

pointing out and distinctly claiming the subject matter which the applicant regards as his invention." Id.; see also Orthokinectics, Inc. v. Safety Travel Chairs, Inc., 806 F.2d 1565, 1575 (Fed. Cir. 1986) (holding that while specifications must meet the "full, clear, concise, and exact" requirements of § 112, claims may be sufficient if "those skilled in the art would understand what is claimed when the claim is read in light of the specification."). Leviton argues that the claim, as it existed on the date that this litigation commenced, was sufficient to meet the statutory standard, and that one experienced in the field would understand the nature of the claimed invention, and what products infringed it.

Finally, the Court agrees that because it was clear that the language included in the certificate of correction was meant for Claim 1, and not Claim 2, one skilled in the art would have known that Claim 2 remained unaltered by the certificate and therefore is not indefinite.

III. Conclusion

The Court finds that the missing language of Claim 1 does not render it unintelligible to those skilled in the art, when the claim is read in conjunction with the rest of the specification. A person skilled in the art would have been put on notice as to the nature of the invention being claimed and what product would infringe the claim. The Court finds that the claims of the '894 Patent are sufficiently definite to meet the statutory standard of definiteness as the printed patent currently exists, including the

1 | erroneous first certificate of correction. Therefore, the Court
2 | denies Orbit's motion for summary judgment.
3 |
4 | IT IS SO ORDERED.
5 |
6 | Dated: _____12-7-04_____
7 |
        DEAN D. PREGERSON
        United States District Judge

2:99-CV-05861

Paul J Sutton
Greenberg Traurig
Unit Lipstick Building
885 3rd Ave, 21st Fl
New York, NY    10022-0000

Number of Pages:        14

*It is hereby certified that this document was served by first class mail postage prepaid or by fax or e-mail delivery to counsel (or parties) at their respective address or fax number or e-mail address of record.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## OPTICAL SCANNING PROGRAM

The United States District Court for the Central District of California has developed an Optical Scanning Program which allows the Office of the Clerk to transmit copies of civil judgments, orders, and notices to attorneys of record, including notice of entry of these documents, by Internet e-mail or facsimile within 24 hours from the date the document is entered on the docket.

### *HOW THE PROGRAM WORKS...*

- Attorneys who enroll in the program consent and agree to receive copies civil judgments, orders, notices, and notice of entry as required by Federal Rule of Civil Procedure 77(d) by Internet e-mail or facsimile.

- Documents are transmitted by Internet e-mail in TIFF format or fax in lieu of mailing copies. It is recommended that a single e-mail address is used for the entire law firm, rather using an attorney's personal e-mail address.

- Only attorneys who have been admitted to practice in the United States District Court, Central District of California who are counsel of record for named parties, and attorneys appearing pro hac vice are eligible to enroll.

- A one-time enrollment is all that is required to receive documents on pending cases in this district, as well as for cases filed in the future. Attorneys are responsible for notifying the clerk's office if their fax number or e-mail address changes to ensure that documents are transmitted to the proper fax number or e-mail address.

- There is no fee for the program.

### *HOW TO GET ENROLLED...*

To enroll in this free program, please complete an enrollment form G-76 and return it to the address or fax it to the number indicated on the form. Forms may be obtained through the court's website at www.cacd.uscourts.gov, at the clerk's office, or by calling the Optical Scanning Department at (213) 894-5474.

A list of frequently asked questions concerning the Optical Scanning Program is available on the court's website. If you have any other questions, please call the Optical Scanning Department at (213) 894-5474. We look forward to providing this service to you.

Thank you.

Sherri R. Carter
District Court Executive
and Clerk of Court

(07/00)