1  ROBERT G. CAMPBELL (STATE BAR NO. 104274)
   COX, CASTLE & NICHOLSON LLP
2  2049 Century Park East
   28th Floor
3  Los Angeles, CA 90067-3284
   Telephone: (310) 277-4222
4  Facsimile: (310) 277-7889

5  Paul J. Sutton, Esq.
   Greenberg Traurig LLP
6  Lipstick Building
   885 Third Avenue
7  New York, NY 10022-4834
   Telephone: (212) 801-9202
8  Facsimile: (212) 688-2449

9  Attorneys for Plaintiff
   LEVITON MANUFACTURING CO., INC.

10

                    **UNITED STATES DISTRICT COURT**

11

                    **CENTRAL DISTRICT OF CALIFORNIA**

12

13  LEVITON MANUFACTURING CO., INC.,          Case No. CV 99-05861 DDP (RZX)

14              Plaintiff,

15          vs.                               **LEVITON'S MEMORANDUM OF LAW
                                              IN OPPOSITION TO MOTION FOR
16                                            SUMMARY JUDGMENT**
    YATAI USA, LLC, ORBIT ELECTRIC &
17  LIGHTING, INC. (formerly known as Regent  Complaint Filed: June 7, 1999
    Electric Corp.), VAN-SHEEN ELECTRIC       Judge Dean Pregerson
18  APPLIANCE CO., LTD. and VAN-SHEEN
    ELECTRIC APPLIANCE CO., LTD. D/B/A        Date: Nov. 5, 2001
19  YATAI SWITCH FACTORY,                     Time: 10:00 A.M.

20              Defendant.                    Courtroom: 3

21                                            Trial Date: 3-12-02

22

23

24

25

26

27

28

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA    37933\921793v1

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ............................................................................................ 1

FACTS ............................................................................................................ 1

ARGUMENT .................................................................................................... 2

    A.    CLAIM 1 OF THE '894 PATENT IS NOT INDEFINITE ........................ 2

        A Full Consideration Of The Specification Makes Clear And Definite The Meaning Of The Claim ......................................................... 5

    B.    DEFENDANT'S DISCUSSION OF THE CERTIFICATE OF CORRECTION FAILS TO SUPPORT ITS CLAIM THAT THE PATENT IS INVALID .............................................................................. 6

    C.    THE LANGUAGE IN THE CLAIM NEED NOT MEET THE FORMALISTIC REQUIREMENTS APPLICABLE TO LANGUAGE IN THE SPECIFICATION .................................................. 8

    D.    CLAIM 2 IS NOT INDEFINITE .................................................................. 9

CONCLUSION .................................................................................................. 9

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

Brandt, Inc. v. Crane,
  558 F.Supp. 1339 (N.D. Ill. E.D., 1983)................................................................. 7

Credle v. Bond,
  24 F.3d 1566 (C.A.F.C. 1994) ............................................................................. 4

In re Wright,
  999 F.2d 1557 (C.A.F.C. 1991) ........................................................................... 8

Markman v. Westview Instruments, Inc.,
  517 U.S. 370 (1996)........................................................................................... 3

Miles Laboratories, Inc. v. Shandon Inc.,
  997 F.2d 870 (C.A.F.C. 1993) ............................................................................. 4

Multiform Desiccants, Inc. v. Medzam, Ltd.,
  133 F.3d 1473 (C.A.F.C. 1998) ........................................................................... 8

Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,
  806 F.2d 1565 (C.A.F.C. 1986) ....................................................................... 4, 7

S3 Inc. v. Nvidia Corp.,
  259 F.3d 1364 (Fed. Cir. 2001)..................................................................... 3, 4, 8

Southwest Software, Inc. v. Harlequin Inc.,
  226 F.3d 1280 (C.A.F.C. 2000) ................................................................... 5, 6, 7

Union Pacific Resources Co. v. Chesapeake Energy Corp.,
  236 F.3d 684 (C.A.F.C. 2001) ............................................................................. 4

Universal Oil Products Co. v. Globe Oil & Refining Co.,
  322 U.S. 471 (1944)........................................................................................... 3

Vitronics Corp. v. Conceptronics, Inc.,
  90 F.3d 1576 (Fed. Cir. 1996)............................................................................. 3

**Federal Statutes**

35 U.S.C. § 255............................................................................................................. 5

CAFC, 35 U.S.C. §112 ................................................................................. 1, 2, 3, 4, 7, 8

1952 Patent Statute, 35 U.S.C. 112................................................................................. 3

1

2

## I.

## INTRODUCTION

3    Defendant, by its motion for summary judgment seeks to avoid having to prove it is not liable

4    for infringement by asserting a hyper-technical legal argument based upon the administrative rules of

5    the United States Patent and Trademark Office.  It is clear however that the relevant law and the facts

6    do not support the defendant's conclusion.  The defendant's  motion for summary judgment will be

7    shown to be not well taken and should be dismissed.

8

9

## II.

## FACTS

10

11    U.S. Patent No. 4595894 (the "'894 Patent"), the patent-in-suit in the above captioned

12    litigation, was issued on June 17, 1986.  Apparently, shortly after it issued, the patentee, Leviton

13    Manufacturing Company, Inc. ("Leviton"), became aware of a clerical or typographical error in claim

14    1 of the Patent, in that some few words had been omitted.  A request for a Certificate of Correction

15    was apparently submitted to the PTO requesting correction by the insertion of the missing words; and

16    a Certificate, that contained those words, was issued as of 12 July 1988.  However, the Certificate of

17    Correction was also incorrect, as the Certificate stated that the words be inserted into Claim 2.  The

18    testimony by defendant Orbit's counsel, Jonathan Hangartner, Esq., presents only the above facts in

19    support of defendant's motion for summary judgment.  As he is apparently not a patent attorney, he

20    properly avoids providing any expert opinions as to the nature of the claims, i.e., whether they are

21    valid or invalid.  Defendant Orbit's case is based upon an erroneous interpretation of the relevant law

22    in its Memorandum, that "Claim language that does not make sense on its face does not satisfy the

23    definiteness requirement of Section 112."

24    Leviton is submitting herewith three Declarations by three patent attorneys, who set forth in

25    greater detail the facts of the case, including most significantly the intrinsic facts taken from the

26    specification of the patent.  As the defendant states, which is unfortunately accurate to the best

27    knowledge of plaintiff, the official file history of the '894 Patent was "lost" by the PTO, and thus that

28    repository of 'intrinsic facts' is not available to either party.

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA    37933\921793v1                                           -1-

1    Leviton will not burden the Court with repeating the full litany of the available intrinsic facts

2    in this paper, however a short summary may be in order. First, the testimony by way of declarations

3    of experienced patent attorneys presented by plaintiff, make clear that the specification provides ample

4    information to fully describe the details of the invention made by the applicant. Second, as is pointed

5    out by the testimony, the specification includes the "entire contents and subject matter" of U.S. Patent

6    No. 4,518,945 (the "'945 Patent"), which includes whatever disclosure may be in the claims of the

7    '945 Patent. Finally, from a full review of Claim 1 in suit, in light of the specification of the '894

8    Patent, Claim 1 clearly is seen to give fair warning to competitors and others regarding what is the

9    claimed invention and what will constitute infringement.

10    It will thus be made clear from the full facts presented, that the claims of the '894 Patent do in

11    fact meet the statutory standard, even if they may not meet the technical rules set by the U.S. Patent

12    and Trademark Office ("PTO"), upon which defendant relies. Such technicalities, upon which the

13    defendant relies, are not (and should not) be sufficient to invalidate an otherwise valid patent, and to

14    permit an intentional infringer to escape liability and to continue to infringe a valid United States

15    Patent.

16                                              **III.**

17                                          **ARGUMENT**

18    **A.    CLAIM 1 OF THE '894 PATENT IS NOT INDEFINITE**

19    The defendant fails to follow the clear precepts of the Court of Appeals for the Federal Circuit

20    ("CAFC") for construing a claim. Orbit argues in its Memorandum in Support of its Motion for

21    Summary Judgment ("Defendant's Brief"), that Claim 1 is indefinite because "[c]laim language that

22    does not make sense on its face does not satisfy the definiteness requirement of Section 112."

23    Defendant's Brief at 2.

24    This is not the law as enunciated by the CAFC, and defendant presents no support for such a

25    blanket statement. Indeed, such a statement is actually contrary to current law. The CAFC has very

26    clearly and often stated that in order to construe a claim it is not sufficient to merely read the words in

27    the claim, the words of the claim can only be understood in the context of the specification and of the

28    file history of the application that ripened into the patent. Second, the defendant does not explain

1  specifically in what manner Claim 1 does not meet the statutory standard for a patent claim, as

2  enunciated by the Supreme Court. *Universal Oil Products Co. v. Globe Oil & Refining Co.*, 322 U.S.

3  471, 484 (1944).  Although Universal Oil Products was decided under the prior patent statute, this

4  case also finds resonance under the present 1952 Patent Statute, 35 U.S.C. 112, which in paragraph 2

5  requires only that the claim "particularly point out and definitely claim the subject matter which the

6  applicant regards as his invention".

7       Citing *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996), the CAFC has clearly

8  stated that "the intrinsic evidence of record", i.e., the '894 Patent itself, including the claims and the

9  specification, and the prosecution history are sufficient to determine the scope and meaning of the

10  claims and of all of the terms used in the claims. *Vitronics Corp. v. Conceptronics, Inc.*, 90 F.3d

11  1576, 1582 (Fed. Cir. 1996).  Thus according to the CAFC, 35 U.S.C. §112 "demands no more" than

12  that "a person experienced in the field of the invention would understand the scope of the subject

13  matter that is patented when the claim is read in conjunction with the rest of the specification

14  [citations omitted]." *S3 Inc. v. Nvidia Corp.*, 259 F.3d 1364, 1367 (Fed. Cir. 2001).

15       When the first claim of the '894 Patent is read in the context of the full specification, which

16  includes the specification and claims of the '945 Patent, there is no question but that the "scope of the

17  subject matter that is patented" is definitely and particularly pointed out.  It is not fatal that "several

18  key terms lack antecedent basis" or that it is "unclear: (a) which element generates the 'magnetic

19  field', ..., and (2) what kind of 'coil means' is referred to by the claim".  For all of these elements,

20  reference to the specification makes clear exactly what is meant.  (See the Declarations of Claude

21  Narcisse and of Eugene Rzucidlo, submitted herewith.)

22       Although it is also true that in the original printed patent document words were inadvertently

23  omitted from Claim 1, defendant had no difficulty recognizing that words had been omitted, and was

24  even able to clearly determine where the omission occurred.  Properly, he should not have stopped

25  there.  The Federal Circuit and other courts have made clear that, rather than looking at a claim solely

26  on its face for the purpose of a claim construction inquiry, including the issue of definiteness, claims

27  must be read in the context of the specification, and where available, the file history.  Thus, in the *S3,*

28  *Inc.* case, the CAFC stated that "[t]he claims are directed to the invention that is described in the

1 specification; they do not have meaning removed from 'the context from which they arose.'"

2 (Citations omitted) *Id.* At 1369.

3     In *S3 Inc.*, the lower court granted summary judgment to the alleged infringer of an integrated

4 circuit for use in computer video color display, on the grounds that the claims were invalid for

5 indefiniteness. *Id.* at 1366.  On appeal, the Federal Circuit reversed, stating "Comprehension of the

6 terse language of the [patent] claims is aided by recourse to the rest of the specification, for the body

7 of the specification explains and illustrates …[items in the claimed product] …such that their meaning

8 and scope would be understood by <u>a person experienced in the field of the invention</u>." (Emphasis

9 added) *Id.* at 1369.

10     It is for this reason that Plaintiff Leviton presented the testimony of Claude Narcisse, an

11 experienced electrical engineer who holds a masters degree in electrical engineering as well as being

12 an experienced patent attorney.  Mr. Narcisse, from his experience and training as an electrical

13 engineer and a patent attorney, explains how he can definitely and with precision understand the scope

14 of the claim, and know what is an infringing device.

15     Similarly, in *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1575 (C.A.F.C.

16 1986), the district court had determined that the patent at issue was invalid because claim 1 of the

17 patent did not describe the invention "in full, clear, concise and exact terms."  Reversing, the circuit

18 court stated that the district court had employed "two measures impermissible in law" by: (1)

19 requiring "that claim 1 'describe the invention, which is the role of the disclosure portion of the

20 specification, not the role of the claims"; and (2) "app[lying] the 'full, clear, concise, and exact'

21 requirement of the first paragraph of §112 to the claim, when that paragraph applies only to the

22 disclosure portion of the specification, not to the claims [citations omitted]."  *Id.*

23     The court stressed again that "[a] decision on whether a claim is invalid under §112 requires a

24 determination of whether those skilled in the art would understand what is claimed when the claim is

25 read in light of the specification [citations omitted]."  *Id.*  See, also, *Miles Laboratories, Inc. v.*

26 *Shandon Inc.*, 997 F.2d 870, 876 (C.A.F.C. 1993); *Credle v. Bond*, 24 F.3d 1566, 1576 (C.A.F.C.

27 1994); and *Union Pacific Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 692 (C.A.F.C.

28 2001), all of which make very clear that a claim should never be read for the literal meaning of the

1    words of the claim alone, but rather recognize that a claim must be read in light of the specification,

2    by those skilled in the art who would understand the scope of the claim when the claim is read in light

3    of the rest of the specification.  In other words, unlike the missing specification in the *Southwest*

4    *Software* case cited by defendant Orbit, the claims do not stand alone and are not considered merely

5    by reading a claim in isolation.

A Full Consideration Of The Specification Makes
Clear And Definite The Meaning Of The Claim.

6
7
8    As acknowledged by Leviton, the  certificate of correction issued July 12, 1988,  was intended

9    to correct Claim 1, but was erroneously addressed to Claim 2. Under 35 U.S.C. § 255:

10           Whenever a mistake of a clerical or typographical nature, or of minor
             character, which was not the fault of the Patent and Trademark Office,
11           appears in a patent and a showing has been made that such mistake
             occurred in good faith, the Director may ... issue a certificate of
12           correction.... Such patent, together with the certificate, shall have the
             same effect and operation in law on the trial of actions for causes
13           thereafter arising as if the same had been original issued in such
             corrected form.

14   In this instance, the certificate of correction was issued in accordance with § 255.  As stated in the

15   statute, once issued, the certificate of correction and the patent are read together.  When viewed in the

16   context of the specification, the certificate of correction issued July 12, 1988, along with the original

17   patent, is more than adequate to allow a person of skill in the field to understand the claims viewed in

18   the context of the specification.

19           It is highly disingenuous for defendants to suggest that one skilled in the art would not

20   understand that the words in the Certificate of Correction belong in Claim 1 at line 5, and not in Claim

21   2. For example, Claim 3 references Claim 1 and talks about the "said electromagnetic coil," for which

22   there must exist an antecedent reference.  From this, one should infer that the reference to

23   "electromagnet coil" in the certificate of correction belongs in Claim 1.  Reference to the Specification

24   bears this out.

25           Moreover, there is ample information contained in the four corners of the specification so that

26   one would know what is claimed.  The specification states that:

27           The present application is a continuation-in-part of applicants' both
             pending United states patent applications ser. Nos. 431,982 now U.S.
28           Pat. No. 4,518,945 filed Sept. 30, 1982 and entitled "REMOTE

CONTROL SYSTEM" and Ser. No. 558,262 filed Dec. 5, 1983 and
entitled "SHOCK HAZARD PRTECTION [sic] SYSTEM", <u>and
incorporates by reference as if fully set forth herein the entire contents
and subject matter thereof and of any and all of their respective "parent"
patent applications to which they are co-pending.</u> (Emphasis added.)

When one turns to the '945 Patent incorporated by reference in the Specification of the '894
Patent, one sees that the almost exact same language at issue in the faulty certificate of correction is
correctly placed in Claim 1 of the older patent. The only difference in Claim 1 of the '945 patent is
the reference to "armature" in place of "plunger." The Specification of the '894 Patent expressly
equates the two words at column 3, line 22. Here, again, reference to the Specification clearly
resolves any ambiguity created by the certificate. As such, Defendant's transparent attempt to feign
ignorance as to the proper placement of the language should not be countenanced.

**B.    DEFENDANT'S DISCUSSION OF THE CERTIFICATE OF CORRECTION FAILS
TO SUPPORT ITS CLAIM THAT THE PATENT IS INVALID**

Unlike the case cited by defendant, a certificate of correction was timely issued that set forth
the language omitted from the claims. One skilled in the art, properly taking into account the
description in the Specification, could easily understand that the language of the Certificate of
Correction was intended to correct Claim 1, but was erroneously addressed to Claim 2, as a result of a
clerical or typographical error.   The only case cited in Defendant's Brief addressing the issue of the
certificate of correction, *Southwest Software, Inc. v. Harlequin Inc.*, 226 F.3d 1280 (C.A.F.C. 2000), is
inapposite. That court did not discuss whether a certificate of correction was effective. Unlike
*Southwest Software*, in the present case, a timely certificate of correction issued setting forth the
missing language, but inadvertently including a further typographical error placing that language in
the wrong claim.

Most significantly, the facts in *Southwest Software* related to an omission and failure in the
specification, and the relevant issue before the Federal Circuit was the effective date of correction,
because the litigation was brought prior to issuance of the certificate. *Id.* at 297. The court held that
the certificate of correction was only effective for lawsuits filed after it was issued. *Id.* Defendant
cites this case for the proposition that "an error, even if purely clerical or typographical, in a patent

1    that renders the patent invalid cannot be retroactively corrected, even if the error was not caused by

2    the applicant." Defendant's Brief at 9.

3        In the present matter, defendant alleges, no certificate curing the defect in Claim 1 has been

4    issued. *Id.* However, as discussed above, although the certificate of correction was issued with a

5    typographical error referring to Claim 2 instead of Claim 1, one skilled in the art and taking into

6    account the description in the specification, would easily understand the scope of the claim and could

7    determine with definiteness whether a product infringed. Moreover, in this case the Certificate of

8    Correction was issued on July 12, 1988, and Leviton filed the complaint initiating the current action

9    against Orbit on June 7, 1999. Thus, the Certificate of Correction was issued more than 10 years prior

10   to the commencement of the infringement action against Orbit.

11       Furthermore and even more significantly, *Southwest Software* is also wholly irrelevant to the

12   present matter because in that case it was the specification, as opposed to the claim, that was defective,

13   and had to be corrected. There, claim 1 of the patent was held invalid because the specification did

14   not include a necessary Appendix, and thus failed to satisfy the best mode and enablement

15   requirements of 35 U.S.C.§ 112. Here, to the contrary, the specification is very complete and resolves

16   any confusion as to where the language included in the Certificate of Correction belongs, and even

17   makes the Certificate unnecessary to understand the claims.

18       The distinction between the requirements for a sufficient specification disclosure and for a

19   valid claim were clearly set forth by the CAFC, in *Orthokinetics, Inc.*, supra, at page 1575, where the

20   Court reemphasized that only the specification must meet the "full, clear, concise and exact"

21   requirement of the first paragraph of §112, not the claims, which are sufficient if "those skilled in the

22   art would understand what is claimed when the claim is read in light of the specification". *Id.* This

23   has been shown by Leviton.

24       Another District Court faced the same argument as defendants are making here. In *Brandt,*

25   *Inc. v. Crane*, 558 F.Supp. 1339 (N.D. Ill. E.D., 1983), the defendant claimed that the claim is

26   "unintelligible 'gobbledygook'". *Id* at p. 1341. The District court found that it did not matter that the

27   Certificate of Correction, correcting typographical errors was obtained after the filing of the litigation

28   because the claims were clearly intelligible even without a proper Certificate of Correction. That

1    court based its decision in part on the fact that a Certificate of Correction was going to be issued by

2    the PTO, and that clearly that meant that the PTO considered the error to be "clerical or typographical

3    errors" and is a minor error, not requiring reexamination. The present motion is certainly no stronger,

4    where the missing words are part of the earlier Certificate of Correction, and it is clear from a

5    consideration of the specification what the claim means (even without the earlier Certificate of

6    Correction), and further considering the Certificate, where the words in the Certificate should be

7    properly inserted.

8    **C.    THE LANGUAGE IN THE CLAIM NEED NOT MEET THE FORMALISTIC**

9    **REQUIREMENTS APPLICABLE TO LANGUAGE IN THE SPECIFICATION**

10    The claims language should not be held to the more strict statutory requirements applicable to

11    the specification. Under 35 U.S.C. §112, the specification must meet the stringent test of

12    "contain[ing] a written description of the invention, and of the manner and process of making and

13    using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which

14    it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the

15    best mode contemplated by the inventor of carrying out his invention." 35 U.S.C. §112. As the

16    federal circuit has noted, "[t]o be enabling, the specification of a patent <u>must teach those skilled in the</u>

17    <u>art how to make and use the full scope of the claimed invention without 'undue experimentation.'</u>" *In*

18    *re Wright*, 999 F.2d 1557, 1561 (C.A.F.C. 1991) (emphasis added).

19    On the other hand, the statutory language addressed to the claims is significantly different,

20    requiring only that the claims "particularly point[] out and distinctly claim[] the subject matter which

21    the applicant regards as his invention." *Id.* Courts addressing this language have found that this

22    requirement is met "when a person <u>experienced in the field of the invention would understand</u> the

23    scope of the subject matter that is patented [.]" *S3, Inc., supra*, at 1367 (emphasis added); <u>see, also</u>

24    *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (C.A.F.C. 1998) ("It is the person of

25    ordinary skill in the field of the invention through whose eyes the claims are construed. Such person

26    is deemed to read the words used in the patent documents with an understanding of their meaning in

27    the field, and to have knowledge of any special meaning and usage in the field."). To require a stricter

28    formula for claims language would simply exalt form over substance.

1    Clearly, Claude Narcisse is such a person experienced in the field of the invention. His

2   testimony (beginning at the third page of his Declaration), as both an engineer and a patent attorney,

3   provides irrefutable evidence that the claim as it existed at the date this litigation was commenced,

4   was sufficient to meet the statutory standard, and that one experienced in the field would understand

5   the nature of the claimed invention, and what products infringed.

6   **D.    CLAIM 2 IS NOT INDEFINITE**

7    For the all the reasons discussed above, it is obvious that the language included in the

8   Certificate of Correction was meant for Claim 1, and not Claim 2. As such, one skilled in the art

9   would have known that Claim 2 remained unaltered by the Certificate, and therefore not indefinite.

10    Moreover, defendant acknowledges that the certificate of correction language when inserted

11   into Claim 2 simply makes a readily understood claim unintelligible. Defendant's Brief at 10. At this

12   point, a reasonable individual would look to the specification to understand what makes sense. As

13   discussed above, the specification clearly resolves any uncertainty caused by the typographical

14   omission in Claim 1, and the typographical error in the first Certificate of Correction. It is not tenable

15   that defendant, once aware of the flaw in the Certificate of Correction, would be unable to fathom the

16   correct placement of the missing language.

17    A second Declaration by Eugene Rzucidlo, a patent attorney having had 15 years working

18   within the PTO including a term as an administrative patent judge, clarifies the operations of the PTO

19   and how the error in the patent probably occurred as the result of a printer's error. If the PTO had not

20   lost the prosecution file for the '894 Patent, that intrinsic evidence would undoubtedly have supported

21   the testimony of Mr. Narcisse and Mr. Rzudiclo, as well as the statements by Paul J. Sutton, in his

22   Declaration. Most importantly, the file wrapper would have served to confirm the proper language of

23   the claim, which is otherwise available by a reading of the specification if one is experienced in the

24   field, or is an experienced patent attorney, as are Messrs. Narcisse and Rzucidlo.

25    **IV.**

26    **CONCLUSION**

27    The claims of the '894 Patent are sufficiently definite to meet the statutory standard of

28   definiteness as the printed patent currently exists, including the erroneous first Certificate of

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA    37933\921793v1                                    - 9 -

1    Correction. One skilled in the art or experienced in the field would have been put on notice as to what

2    is the invention being claimed and what product would infringe the claim. That is all that is necessary.

3    Defendant has failed to show otherwise, so that the motion for summary judgment should be

4    dismissed.

5    DATED: October 22, 2001                    Respectfully submitted,

6                                               Robert G. Campbell
                                                COX, CASTLE & NICHOLSON LLP
7

8                                               By:

9                                                  Robert G. Campbell
                                                   Attorneys for Plaintiff LEVITON
10                                                 MANUFACTURING CO., INC.

11

12                                             Paul J. Sutton
                                               Barry G. Magidoff
                                               Greenberg Traurig LLP
13                                             Lipstick Building
                                               885 Third Avenue
14                                             New York, NY 10022-4834

15                                             Attorneys for Plaintiff LEVITON
                                               MANUFACTURING CO., INC.
16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
COX, CASTLE &
NICHOLSON LLP
LOS ANGELES, CA    37933\921793v1                    - 10 -

## PROOF OF SERVICE AND CERTIFICATION

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 2049 Century Park East, 28th Floor, Los Angeles, California 90067-3284.

☐ (For messenger) my business address is 130 S. Beaudry Avenue, Unit A, Los Angeles, CA 90012.

On October 22, 2001, I served the foregoing document(s) described as LEVITON'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT on ALL INTERESTED PARTIES in this action by placing ☐ the original ☒ a true copy thereof enclosed in a sealed envelope addressed as follows:

Jonathan Hangartner, Esq.
Liu & Liu, LLP
905 Van Nuys Street
San Diego, California 92109

David Liu, Esq.
Liu & Liu, LLP
811 West Seventh Street, Suite 1100
Los Angeles, California 90017

Stephen Duke, Esq.
8664 Wilshire Blvd., Suite 210
Beverly Hills, California 90211

On the above date:

☐ (BY ☐ U.S. MAIL/BY ☐ EXPRESS MAIL) The sealed envelope with postage thereon fully prepaid was placed for collection and mailing following ordinary business practices. I am aware that on motion of the party served, service is presumed invalid if the postage cancellation date or postage meter date on the envelope is more than one day after the date of deposit for mailing set forth in this declaration. I am readily familiar with Cox, Castle & Nicholson LLP's practice for collection and processing of documents for mailing with the United States Postal Service and that the documents are deposited with the United States Postal Service the same day as the day of collection in the ordinary course of business.

☒ (BY FEDERAL EXPRESS OR OTHER OVERNIGHT SERVICE) I deposited the sealed envelope in a box or other facility regularly maintained by the express service carrier or delivered the sealed envelope to an authorized carrier or driver authorized by the express carrier to receive documents.

☐ (BY FACSIMILE TRANSMISSION) On October 22, 2001, at _____ a.m./p.m. at Los Angeles, California, I served the above-referenced document on the above-stated addressee by facsimile transmission pursuant to Rule 2008 of the California Rules of Court. The telephone number of the sending facsimile machine was (___) ___-____, and the telephone number of the receiving facsimile number was (___) ___-____. A transmission report was properly issued by the sending facsimile machine, and the transmission was reported as complete and without error. Copies of the facsimile transmission cover sheet and the transmission report are attached to this proof of service.

☐ (BY PERSONAL DELIVERY) By causing a true copy of the within document(s) to be personally hand-delivered to the office(s) of the addressee(s) set forth above, on the date set forth above.

☐ (BY PERSONAL SERVICE) I delivered such envelope by hand to the offices of the addressee.

☒ (FEDERAL ONLY) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I hereby certify that the above document was printed on recycled paper.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 22, 2001, at Los Angeles, California.

_____
Darlene L. Beckles