Page 1

1        In The United States District Court
2          For The District of Maryland
3      ----------------------------------x
4   Leviton Manufacturing, Inc.          :
                                         :
5                  Plaintiff             : NO. 01CV3855 AMD
                                         :
6                    v                   :
                                         :
7   Universal Security                   :
    Instruments, Inc. and USI            :
8   Electric, Inc.                       :
9      ----------------------------------x
10  DEPOSITION OF:
11                 Jerome Massie,
12  a witness, called by counsel pursuant to notice,
13  commencing at 10:00 a.m, which was taken at 2000 P
14  Street, NW, Washington DC.
15
16
17
18
19
20
21

Ovenite Court Reporting Service        310-593-0671         Washington D.C. metro area
Washington, D.C. Metro Area                                 EMAIL SEARCHABLE TRANSCRIPT

3b97bac0-a8b7-11d7-ac75-0030843153ba

Case 1:01-cv-03855-AMD   Document 77-10   Filed 07/21/2003   Page 2 of 4

Jerome Massie                          June 26, 2003                    Leviton Manufacturings vs. USI

Page 66

1  A. He was a member of what is called the
2  executive staff to what Patent Office. The Patent
3  Office at the time had a structure slightly
4  different than what this today. The Commissioner
5  was an appointed official. Usually changed fairly
6  regularly. The assistant commissioners were
7  political appointees. The deputy assistant
8  commissioners were the people who were the career
9  senior executive service people and often referred
10 to as the executive staff.
11      Mr. Goffney filled the middle position
12 that I had just mentioned. And, of course, had a
13 number of the executive staff personnel. Good
14 example is a group technology office director
15 working for him. He made reference to those people
16 several times during his deposition.
17  Q. So was he your boss when he was Assistant
18 Commissioner?
19  A. That's correct.
20  Q. Earlier this morning we talked about
21 Ceclia Neumann. Do you recall that?

Page 67

1  A. Yes.
2  Q. When you spoke with her in the fall of
3  2002, did she mention that she was busier than
4  usual?
5  A. I never spoke to Ceclia Neumann. I did
6  mention this morning that during that time frame I
7  did call the office. They have a customer service
8  like every office in the Patent Office.
9  Q. Earlier this morning you mentioned the
10 PALM codes. Do you recall talking about that?
11  A. Yes.
12  Q. There were 500 some odd codes?
13  A. At the time that I was a PALM specialist,
14 I had a clearance to do transactions beyond what a
15 regular employee would have access to. That is a
16 reasonably good estimate. Now the number of PALM
17 codes may have increased. I just don't know. I'm
18 not privy to that information.
19  Q. For Certificate of Corrections are there
20 separate codes for an applicant's mistake and PTO
21 mistake for entering a PALM record?

Page 68

1  A. Yes, there should be; yes.
2  Q. Do you know what the different codes are?
3  Do you know what the codes were when you were
4  responsible --
5  A. By number I do not.
6  Q. If a patent claim is missing language, can
7  an examiner reject that under 35 U.S.C. 112 being
8  indefinite?
9  A. Yes, that is one of the options an
10 examiner has.
11  Q. If a claim term is lacking an antecedent
12 basis, can an examiner reject the claim under 35
13 U.S.C. 112?
14  A. Could you clarify the time frame you are
15 asking this question.
16  Q. How about today?
17  A. Today the answer is no.
18  Q. What would an examiner do today?
19  A. They would issue an objection to the
20 claim.
21  Q. What about ten years ago?

Page 69

1  A. They would have, depending on the
2  examiner, issued either an objection or a rejection.
3  Q. When you were an examiner, did you ever
4  reject a patent claim under 35 U.S.C. 112 for lack
5  of antecedent basis?
6  A. Yes.
7  Q. Did you ever reject a claim under 35
8  U.S.C. 112 on the grounds of indefiniteness?
9  A. Yes.
10  Q. Did you ever reject a claim under 35
11 U.S.C. 112 on the grounds of indefiniteness because
12 the claim was missing language?
13  A. I do not recall a specific instance, but
14 having done probably close to 1600 or 1700
15 applications during my current Patent Office, it's
16 very likely.
17      MR. BRADLEY: I would like to mark as
18 Massie Exhibit 1, U.S. Patent '4595894.
19      BY MR. BRADLEY:
20  Q. Can you identify this document.
21  A. Yes. This appears to be a copy of the

18 (Pages 66 to 69)

Ovenite Court Reporting Service        310-593-0671         Washington D.C. metro area
Washington, D.C. Metro Area                                  EMAIL SEARCHABLE TRANSCRIPT

3b97bac0-a8b7-11d7-ac75-0030843153ba

Page 70

1 certified issued U.S. Patent '894, as well as a copy
2 of the certified Certificate of Correction.
3   Q.  Please turn to column 6, line 49. From
4 line 49 to the bottom of column 6 what is that? Is
5 the fair to call that claim 1?
6   A.  Yes, that is claim 1.
7   Q.  Do you agree that claim 1 is missing
8 language?
9   A.  If you read the claim, it has, very often
10 because of claim structure a patent practitioner
11 will phrase the various components of an apparatus
12 claims, they would use semicolons to separate
13 distinct elements.
14       In just reading it very quickly, you see a
15 bit of a disjoint at 53, it looks like. I'll read
16 lines 52 to 53. Comprising in combination a
17 housing; magnetizable plunger means disposed within
18 a portion of said housing for movement between first
19 and said housing for moving said plunger means,
20 that's continuing on to line 54.
21       And what you see there is sort of like a

Page 71

1 bit of a disconnecting thought. You were describing
2 the magnetizable plunger. Then you are going back
3 to referring to the housing at the later part of
4 line 53.
5   Q.  Based on your experience as a patent
6 examiner, would an examiner have allowed this claim
7 as it appears in column 6?
8   A.  Working from the assumption that the
9 examiner has read the application, patent
10 application in its entirety, I would assume a patent
11 examiner who is one of ordinary skill in the art
12 would in reading the claim see as well notice the
13 disjoint at line 53, and obviously would have made
14 some sort of comment, either a rejection of an
15 objection, depending on whether they regard it as
16 severe. That is a grammatical change versus an
17 indefinite issue.
18   Q.  Would be entirely proper for a examiner to
19 reject a claim missing language as being indefinite?
20   A.  If in the examiner's opinion the examiner
21 felt there was something missing that rendered the

Page 72

1 claim indefinite or an informality which rendered
2 the claim objectionable, they would do either one of
3 those.
4   Q.  In line 55 where it says, the second
5 position. Do you agree that the second position in
6 this claim is written is lacking antecedent basis?
7   A.  I think, again, I'm not one of ordinary
8 skill in the art here, just reading the claim as a
9 person of mechanical aptitude, you do see that there
10 appears to be a disjointure between lines 51, which
11 has the phrase, comprising, and continues on to 55
12 where it says, as you repeated earlier, to the
13 second position semicolon.
14       An examiner reading that, would, I think,
15 make a reasonable judgment there appears to be a
16 disjointure. The use of the term "the" may have
17 been a key to that person recognizing the
18 disjointure. I can't speak for one of ordinary
19 skill in the art.
20   Q.  Have you ever rejected a claim as, under
21 112, for lack of antecedent basis?

Page 73

1   A.  Yes.
2   Q.  When was the last time you read the '894
3 Patent?
4   A.  The most recent time that I went through
5 the patent, as well as the Certificate of
6 Correction, was in the preparation of my Declaration
7 regarding Mr. Goffney's expert report.
8   Q.  Do you recall if there was anything in the
9 text of the '894 Patent that tells the public or one
10 of ordinary skill in the art the exact language that
11 is missing from this claim?
12   A.  Having not read it in a month or two, what
13 I would say is, that a patent examiner, one of
14 ordinary skill in the art, such as a patent examiner
15 upon reading the disclosure, getting to the claim,
16 would realize something was missing.
17       The exact language, I do not recall the
18 exact language of a first and second position
19 specifically being in the patent. I'm not sure that
20 exact quote is in there. I couldn't recall it for
21 you at this moment.

19 (Pages 70 to 73)

Ovenite Court Reporting Service        310-593-0671        Washington D.C. metro area
Washington, D.C. Metro Area                                EMAIL SEARCHABLE TRANSCRIPT

3b97bac0-a8b7-11d7-ac75-0030843153ba

Case 1:01-cv-03855-AMD   Document 77-10   Filed 07/21/2003   Page 4 of 4

Jerome Massie                    June 26, 2003              Leviton Manufacturings vs. USI

Page 170

1   A. Yes.
2   Q. If he didn't, he would not have been
3   following proper PTO procedures?
4   A. That's correct.
5   Q. Turning back to Massie Exhibit 9, your
6   expert report. In paragraph 10.7.3 on page 13 in
7   the last sentence of the first full paragraph. Can
8   you read that into the record.
9   A. 10.7.3.
10  Q. Last sentence of that paragraph.
11  A. Okay. In my experience at the PTO I have
12  not seen a situation where a primary examiner would
13  have allowed on the first official office action a
14  claim that was so obviously missing a line of text
15  as to make the claim "unintelligible".
16  Q. That claim we are referring to is claim 1
17  of the '894 Patent?
18  A. That's correct.
19  Q. Would you agree that claim 1 of the '894
20  Patent, as it issued in 1986, would have been
21  rejected by an examiner in the form that it was

Page 171

1   presented?
2   A. It would have had, in my experience, some
3   communication between the examiner and the patent
4   applicant by telephone or written communication. If
5   it was a written communication, it could be a
6   objection or rejection. There are a number of
7   options.
8   Q. Turning to page 14, that first full
9   paragraph. If you could read that into the record.
10  A. Additionally, it would have been obvious
11  to a skilled patent examiner or interested third
12  party upon reading the "unintelligible" claim 1 in
13  the '894 Patent that a review of the original
14  application file would be needed.
15      Then, upon making the above simple
16  comparison, the two versions of claim one, that is,
17  originally filed versus patented, the proper scope
18  of protection sought by the '894 Patent was the
19  scope outlined in claim one as originally filed.
20      And further, that the claim one in the
21  '894 Patent needed correction due to an obvious

Page 172

1   clerical error on part of the USPTO in printing the
2   '894 Patent.
3   Q. Without the file history and knowing what
4   transpired in the Patent Office, is there really any
5   way interested third party can determine the
6   protection afforded by the '894 Patent?
7   A. I think as a patent practitioner in my
8   experience, in two years plus that have been
9   practicing on the outside, and the amount of time I
10  spent in the Patent Office, what is stated in here
11  is what experienced patent professionals would
12  assume, that since the office action was, first
13  office action to allow the case occurred initially,
14  there did not appear to be any changes in the
15  record, that a third party could deduce, not
16  definitively, with absolute certainty, but could
17  very reasonably deduce that the claim that was
18  originally filed was in fact the claim that was
19  allowed. That defines the scope of coverage.
20      I think one of the things that further
21  reinforces it is that, it is also very clear that

Page 173

1   the examiner did an informal examiners amendment,
2   which he is allowed to do by rule and regulation for
3   adding such things as the continuity date, if they
4   want to correct the continuity date to the proper,
5   to add the headers. So are sort of things that
6   reinforce to me that nothing was done to the claims
7   in terms of an examiners amendment. Looking at the
8   entirety of the record that is available to us.
9   Q. No way for a third party to know if a
10  particular interpretation of the claim was forfeited
11  during prosecution?
12  A. That's correct.
13  Q. No way for an interested third party to
14  know if the examiner gave reasons for allowance in
15  allowing the case?
16  A. Definitively it can not be deduced without
17  the file record.
18  Q. So it is possible that Examiner Goldberg
19  in allowing the '894 Patent issued reasons for
20  allowance, such as the prior art does not disclosed,
21  a strap having a pair of depending tabs on opposite

44 (Pages 170 to 173)

Ovenite Court Reporting Service          310-593-0671         Washington D.C. metro area
Washington, D.C. Metro Area                                   EMAIL SEARCHABLE TRANSCRIPT

3b97bac0-a8b7-11d7-ac75-0030843153ba