UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

---------------------------------------------------------------X
LEVITON MANUFACTURING CO., INC.,           )
                                            )
            Plaintiff,                      )
                                            )   Civil Action No. 01 CV 3855 AMD
    vs.                                     )
                                            )
UNIVERSAL SECURITY                          )
INSTRUMENTS, INC., et al.                   )
                                            )
            Defendants.                     )
---------------------------------------------------------------X

## DECLARATION OF JEROME W. MASSIE

I, JEROME W. MASSIE, declare as follows:

1.    I am a resident of the Commonwealth of Virginia, employed since February 28, 2001, as a registered patent agent with the firm of Nixon Peabody LLP, having an office at 8180 Greensboro Drive, McLean, Virginia 22102. My *curriculum vitae* is attached hereto as Exhibit A.

2.    From 1972 until the end of 2001, I was employed by the United States Patent & Trademark Office (the "USPTO"). I was an Examiner from 1972 until 1978, and then a Primary Examiner until 2001. In the period between 1988 and 1990 my duties and responsibilities were as a Supervisory Patent Examiner ("SPE"), and then as the first ever Special Program Examiner ("SPRE") (1990-2001), During 2001, I was appointed to be the

acting Group Director of Technology Center 1700. My duties as Special Program Examiner included the administration of examiners handling matters involved with the statutes and rules for "special laws cases", such as PCT applications, reexaminations and reissue applications. My additional duties involved problem applications, primarily dealing with petitions to the commissioner, including petitions from denials of Certificates of Corrections by the Patent Office.

3.   During the approximately 23 years that I was employed as a Primary Examiner and as a Supervisory Patent Examiner at the USPTO, I reviewed and ruled on numerous requests for Certificates of Correction for U.S. patents, filed by patentees or their assignees. As a required part of my review of such requests, I read the file history of the patent, including without limitation, the originally filed application, which includes the Declaration (or oath), the specification, claims and drawings. It was normal Patent Office procedure to receive and to review the file history of the patent involved, as set forth in the Manual of Patent Examining Procedure ("MPEP") Chapter 1485 (a copy of which is attached as Exhibit B).

4.   I am familiar with the Patent Application Information Retrieval system (PAIR") available on line from the USPTO (www.USPTO.GOV). This system is intended to provide to the public a record of "transactions" and identify the "movement" with respect to individual applications and issued patents. This is done by providing each application with a unique Bar Code Label identifying the application by its serial number, e.g. 06716991, which is the serial number of the patent application (the "'991 application") that issued as the '894

patent. Each time an application is "moved" or a "transaction" is needed, the Bar Code Label is scanned identifying the location and to prepare the application for the transaction to be performed. Prior to issuance of the patent, the information is maintained confidentially in an umbrella electronic system, known as PALM ("Patent Application Location and Monitoring system"), which is not available to the public but from which all the information for the PAIR records are drawn. In addition to these two record keeping systems, the USPTO also maintains separate electronic financial records system with respect to each application and patent, which is known as "RAM" ["Revenue Account Management"]. Finally, in addition to the paper file known as the "application file wrapper", the USPTO also maintains a microfiche record for all applications as they were originally filed, at least during the period of 1982-1986. This system has now been replaced by a electronic scanning/imaging system. I have not reviewed the '991 application as filed since I was informed no paper record exists in counsel's records or in the USPTO files. I have received a fax certified copy (Exhibit C) of the microfilm copy from the USPTO be retrieved for the '991 application.

5. The RAM system provides a record of all transactions involving a fee for each patent or patent application. The information provided includes the amount of any fee paid for a particular transaction, the mail receipt date of any payment received by the USPTO, the date the transaction was completed (i.e., the date of collection of the fees), the 'fee code', which identifies the type of transaction to which the fee is applied, and the manner of payment, i.e., check, deposit account charge, credit card, or cash. As an example, if a certificate of correction was issued under 37 CFR 1.323 (for applicant's error), a fee would be recorded in

the RAM system for that request for that patent. Alternatively, if a request for a Certificate of Correction were made based upon an asserted USPTO error (under 37 CFR 1.322), there would be no fee transaction recorded in the RAM system for that request since no fee is required to be paid for such an error.

6. I have reviewed documents that relate to the prosecution history of the '991 application, and the subsequent history of the issued '894 patent. These include the PAIR record for this patent (Exhibit D, hereto), the file wrappers of the two copending priority applications, the second Request for the Certificate of Correction, dated July 17, 2001 (Exhibit E), as well as a subsequent faxed copy, dated October 18, 2001 (Exhibit F), that was sent directly to Ms. Cecilia Newman, who I know to be the individual USPTO employee supervising the issuance of Certificates of Correction. I noted her stamped signature on a copy of the request for the Certificate of correction, which indicated the request has been "APPROVED" on October 23, 2001 (Exhibit G).

7. I have personal experience as Primary Examiner with reviewing and approving Certificates of Correction, and I have reviewed the document (Exhibit G) granting the request for Certificate of Correction for the '894 patent. I am familiar with the usual procedures followed by SPE's in Technology Center 2800 (where the Certificate of Correction for this patent had been reviewed) when carrying out that process. Normally, the second Request for the Certificate of Correction would be matched with the '991 patent application file wrapper (i.e., the paper documents of the prosecution of the application). Additionally, since the

4

Certificate of Correction dealt with a change to the claims (Exhibit D), Ms Newman would have been required by MPEP Chapter 1485 to forward the request and file wrapper to the Director of Technology Center 2800. The normal process in Technology Center 2800 is to give the request to an SPE for approval. The '991 application file, with the second Request for the Certificate of Correction, appears to have been forwarded to SPE Olik Chaudhuri, as can be seen from his initials "oc" with the date "10/22/01" and the indication "PUBLISH", on the approved second Certificate of Correction request (Exhibit G). I have spoken with SPE Chaudhuri on June 14, 2002, and he confirmed that he was the designated SPE performing the approval of certificates of correction during the period of October 2001. However, it is my understanding from speaking to SPE Chaudhuri that for a period of time, the USPTO allowed the approval of requests for certificates of correction without the file if the requested correction was an obvious typographical error, but, SPE Chaudhuri had no recollection of that being the situation, i.e., approval without the file wrapper, for the '894 patent.

8. In the normal procedure for locating misplaced application file wrappers, if the file wrapper was considered to be permanently lost, the USPTO would have contacted the counsel for the patentee and requested counsel's copy of all documents reflecting communications with the USPTO subsequent to the filing date of the application. I am informed by Mr. Paul Sutton, who I am informed was responsible for maintaining the '894 patent, that at no time had he received any request from the USPTO relating to the reconstruction of the file wrapper.

5

9. Since the Deposit Account record and the RAM record (Exhibit H) for the second Request for Certificate of Correction, mailed on July 17, 2001, indicated no fee (code "145") was applied with respect to the second Certificate of Correction issued to the '894 patent and since the postcard receipt for the Request and the request itself does not indicate that a check was sent with the Request. This indicates to me that the USPTO in granting the Certificate of Correction accepted responsibility for the error in the patent and in accordance with 35 U.S.C. Sec 254, and 37 CFR 1.322, did not charge the patentee for issuing the second Certificate of Correction. This is confirmed by the RAM record reviewed by me which does not show any charge for a certificate of correction.

10. Additionally, I have reviewed the PAIR record for the '894 patent, for the period from April 1, 1985 to June 18, 1986, which is the period during which the prosecution of the application for the '894 patent occurred. That record shows that the Examiner performed an examination on or after November 7, 1985 and as the first and only Office Action, issued a Notice of Allowability on December 9, 1985. It is further noted that the PAIR record indicates no amendment or other comments by either the Examiner or the applicant prior to issue of the '894 patent. This confirms that the application Claim 1 as originally filed was allowed unchanged. The above facts also confirm to my mind that the error that appeared in Claim 1 of the printed patent publication occurred at some point after it was allowed by the Examiner. In my experience at the USPTO, I had not seen a situation where a Primary Examiner would have allowed on first action a claim that was so obviously missing a line of text. It is standard practice, as set out in the MPEP Chapter 904.01(a) (Exhibit I), that the

6

Examiner analyze, or diagram, each feature of the claim in order to understand the scope of the invention, so that a comprehensive search of the prior art could be properly accomplished. In performing that process, the Examiner would have necessarily noticed missing text, and would have required amendment of the text of Claim 1, either by Examiner's Amendment or by an applicant's amendment following an office action. Since neither of these actions were taken, i.e., see the PAIR record for the period from November 7, 1985, to December 9, 1985 which shows no Amendment ("AMD") Transaction, it would have been extremely unlikely for the claim as originally filed to have omitted the clause set out in the second Certificates of Correction. Further, a review of the certified copy of the application as filed (Exhibit C) at Claim 1 shows that the phrase corrected by the Certificate of Correction was present in original Claim 1 as examined by the Examiner. Please note that the certified copy of the text of the original application does not agree with the text of the '894 patent since the Examiner inserted, prior to allowance, the section headers such as "BACKGROUND AND SUMMARY OF THE INVENTION" as well as a brief description of the drawings, in order to comply with the required sections of the application as set forth in 37 CFR 1.77. This is normal practice by an Examiner prior to allowance.

11. The procedure at the USPTO, subsequent to the notice of allowance being mailed, during the period 1985 through 1987 was as follows. After mailing of the Notice of Allowance, the application undergoes an 'issue revision' process in the technology center which reviews only formal matters. Thereafter, the application would be sent to the Office of

Publication to be prepared for issue. Subsequent to payment of the Issue Fee, the application would be forwarded to a contractor who would re-key the text of the application for purposes of photocomposition of the patent. It is noted that the PAIR record does not show any paper requiring an Examiner's attention after the Notice of Allowance was mailed. That is, only the issue fee was received on March 6, 1986. Since the re-keyed text of the application is not placed in the file wrapper, this means that the Examiner who examined the application never saw or reviewed the file or the re-keyed text, before the patent was printed, on June 17, 1986. It is my opinion that the error in claim 1 arose at some point after the Notice of Allowance, as a result of the 're-keying' by the USPTO. This is confirmed by my review of Claim 1 in the '894 patent which is missing the phrase inserted by the Certificate of Correction and which is present in the originally filed Claim 1.

12. I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: New York, New York
       June 14, 2002

*/s/ Jerome W. Massie*
Jerome W. Massie