**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| LEVITON MANUFACTURING CO., INC., | : |
| | |
| Plaintiff, | : |
| | Civil Action No. 01 CV 3855 AMD |
| v. | : |
| | |
| UNIVERSAL SECURITY INSTRUMENTS, | : |
| INC., *et al.,* | |
| | : |
| Defendants. | |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**PLAINTIFF LEVITON MANUFACTURING CO. INC.'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**
**THAT DEFENDANTS' PRODUCTS INFRINGE THE ASSERTED CLAIMS OF THE**
**'894 PATENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Fed. R. Civ. P., the plaintiff, Leviton Manufacturing Co., Inc. ("Leviton"), respectfully submits this Memorandum in Support if its Motion for Summary Judgment of Infringement. The motion seeks entry of a judgment that defendants, Universal Security Instruments, Inc. and USI Electric, Inc. (collectively, "Defendants") infringe the asserted claims of the patent in suit, United States Patent No. 4,595,894 "Ground Fault Circuit Interrupting System" (the "'894 Patent"). In support of its motion, Leviton submits the Declaration of technical expert Steve Campolo dated July 18, 2003. Since there are no genuine issues of material fact concerning Defendants' infringement, Leviton is entitled to judgment as a matter of law.

**PRELIMINARY STATEMENT**

This is a patent infringement action brought by Leviton concerning its '894 Patent, which covers commercialized Ground Fault Circuit Interrupters ("GFCIs") incorporating the

technology of the '894 Patent.  These commercial GFCIs are sold by Leviton for the residential construction and home repair industry, and have been an enormously successful life-saving device.  The Defendants have sought to profit from Leviton's success by willfully copying Leviton's patented GFCIs and infringing the '894 Patent through the importation, use and sale of their GFCI copies ("accused infringing products").

The '894 Patent relates to a GFCI system that interrupts a ground fault, *i.e.*, an electrical circuit created when someone touches an electrical outlet.  Leviton's GFCI patented system thus, avoids injury or serious shock in the event of an electrical fault.  The '894 Patent does this via novel electromechanical and mechanical components which, in response to a signal, the electrical circuit is interrupted by physically separating electrically conducting contacts.  The GFCI of the '894 Patent is also small enough to fit within a standard electrical outlet or receptacle box at a lower cost, with fewer component parts, when compared to systems previously marketed.  For these reasons, the Defendants (and many others) have chosen to copy and willfully infringe the GFCI of the '894 Patent by selling copies of Levition's patented GFCI switch products.

When the '894 Patent claims are properly construed, and Defendants' accused products are compared to the properly construed claims, infringement is certain.  Therefore summary judgment should be granted as a matter of law since no genuine issue of material fact remains.

## STATEMENT OF FACTS

### A.    The Procedural Status Of This Action and Expert Discovery

This action was commenced in the United States District Court for the District of Maryland, by the filing on December 13, 2001 of the Summons and Complaint.  On January 22, 2002, the Defendants filed a Motion for Judgment on the Pleadings and Dismissal of the Complaint.  On April 5, 2002 said Motion was denied with respect to Leviton's claim of patent

2

infringement and granted in part directing Leviton to file an Amended Complaint within twenty (20) days with regard to its trade dress claims.  On April 22, 2002, Leviton filed its First Amended Complaint.

The First Amended Complaint, as well as the earlier Complaint in this action, asserts a cause of action against the Defendants pursuant to 35 U.S.C. § 271 for patent infringement in that the Defendants have been and are infringing one or more claims of Leviton's '894 Patent. Leviton is the sole owner of all right, title and interest in the '894 Patent, including the right to sue for past infringement thereof and seeks further relief under 35 U.S.C. §§ 283-284.  On May 28, 2002, the Defendants filed their Joint Answer and Counterclaim to the First Amended Complaint, along with a Motion to Disqualify Paul J. Sutton and the firm of Greenberg Traurig based upon many of the same issues that were denied by the court in the first motion to dismiss. On July 29, 2002, a hearing was held before Judge Andre M. Davis and the motion to disqualify was summarily denied from the bench and found by the Court to be frivolous.  (Hearing Transcript at 22-23, attached as Exhibit A).

By Court Order dated April 24, 2003, a deadline was set for dispositive motions on July 21, 2003.  All submissions regarding summary judgment motions whether motions, oppositions or replies, were stayed until July 21, 2003.  Also on July 21, 2003, any motion or opposition already filed as of April 17, 2003, may be supplemented or amended as necessary.  Leviton therefore files the instant motion at this time.

Consistent with the Court's observations at the April 17, 2003 hearing (Hearing Transcript at 40-44, attached as Exhibit B), at no time in this case have defendants raised any genuine factual issue concerning their infringement of the '894 Patent.  Expert discovery has now closed without any technical expert report from defendants on any infringement or validity

issue.  Instead, defendants proffered "experts" are two lawyers, Lawrence Goffney, a patent

lawyer, and Philip Hampton, a trademark lawyer.

Both Mr. Goffney and Mr. Hampton have testified that they are not qualified,

experienced or skilled to testify as to the technical aspects of GFCIs.  During Mr. Goffney's

deposition on June 3, 2003, he concluded that he did not consider himself skilled in the art of

GFCI technology:

> So other than that, I can't tell you who's of ordinary skill in the art
> or not in circuit interrupters, because I'm not one skilled in the art.
> I'm not one of extraordinary skill in the art, clearly that's not the
> case, and I don't consider myself one of ordinary skill in the art,
> either.

(Goffney Deposition Transcript at 18-23 to 19-3, attached hereto as Exhibit C).

Similarly, during Mr. Hampton's deposition on May 23, 2003, the following colloquy

ensued:

> Q:    Do you have any industry experience in ground fault circuit
>        interrupters?
> A:    I was a chemical engineer.
> Q:    The answer to that question is?
> A:    No.
> Q:    Ever work in the field of electronic appliances?
> A:    No, I have not.
> Q:    Do you have any experience in the marketing of ground
>        fault circuit interrupters?
> A:    No, I do not.
> Q:    Do you have any experience in the advertising of ground
>        fault circuit interrupters?
> A:    No, I do not.
> Q:    Do you have any experience in the advertising of electrical
>        wall receptacles?
> A:    No, I do not.
> Q:    Do you have any experience in the marketing of electrical
>        wall receptacles?
> A:    No, I do not.
> Q:    Do you have any experience in the manufacturing of
>        ground fault circuit interrupters?
> A:    No, I do not.

| Q: | Do you have any experience in the manufacturing of electrical wall receptacles? |
|---|---|
| A: | No, I do not. |
| Q: | Do you have any experience in the design of ground fault circuit interrupters? |
| A: | No, I do not. |
| Q: | Do you have any experience in the design of electrical wall receptacles? |
| A: | No, I do not. |

(Hampton Deposition Transcript at 118-2 to 119-8, attached hereto as Exhibit D).

Accordingly, defendants have no expert testimony that could be allowed at trial about whether defendants' GFCIs infringe the claims of the '894 Patent. Thus, defendants cannot raise a genuine dispute as to a material fact concerning infringement. They are limited to general denials, which are insufficient to defeat a motion for summary judgment. *Barmag Barmer Maschinenfabrik AG*, 731 F.2d 831, 836 (Fed. Cir. 1984).

## B.    Background of the '894 Patent

The '894 Patent issued on June 17, 1986, from United States Patent Application Serial No. 06/716,991 (the "'991 Application") filed on April 1, 1985.[1] The '894 Patent issued, to Leviton, as assignee, on June 17, 1986, without rejection of any of the claims by the Examiner. The original claims of the '991 application were allowed by the PTO without any Office Action by what is known as a "First Action Allowance," wherein the claims are allowed in the exact form as filed. As such, there was no "prosecution" of the claims, so that no limitation on the

---

[1]    Leviton owns by assignment from the inventors the entire right, title and interest in and to the '894 Patent. A copy of the two-page recorded assignment of the invention and application resulting in the '894 Patent, dated September 19, 1985, and recorded at the U.S. Patent and Trademark Office ("PTO") on September 27, 1985, at Reel 4459, Frame 822, accompanies this memorandum and is attached as Exhibit E. The original copy of the assignment is believed to be lost. A copy of a file from the United States Patent and Trademark Office Patent Application Information Retrieval ("PAIR") web site at "http://pair.uspto.gov/gci-binlfinallpairsearch.pl" accompanies this motion as Exhibit F, and identifies the official file content and history of the '894 Patent. A true copy of the official PTO microfiche copy of the underlying '991 application (Serial No. 0676991) which resulted in the '894 Patent is attached hereto as Exhibit G.

117728.00601/35585053v1

scope of the '894 Patent claims need by considered under the doctrine of prosecution history estoppel.

It is noted that in its opening text, the '894 Patent includes a statement expressly incorporating by reference "the entire content and subject matter" of an earlier patent as follows:

> The present application is a continuation-in-part of applicants' both pending United States patent applications Ser. Nos. 431,982 now **U.S. Pat. No. 4,518,945**, filed September 30, 1982 and entitled "REMOTE CONTROL SYSTEM" and Ser. No. 558,262 filed December 5, 1983 and entitled "SHOCK HAZARD PROTECTION SYSTEM", and **incorporates by reference as if fully set forth herein the entire content and subject matter thereof** and of any and all of their respective "parent" patent applications to which they are co-pending. (Col. 1, lines. 6-16, attached hereto as Exhibit H) (Emphasis added.)

## C.     Description Of The Invention Of The '894 Patent

As mentioned above, the invention claimed in the '894 Patent is a ground fault circuit interrupting system that "interrupts" a circuit when there is an electrical fault. It is a one-way automatic switch that opens, or interrupts the circuit, *i.e.,* it cannot automatically close the circuit.  In addition, Leviton's GFCI invention fits within a standard wall receptacle or "outlet" box.  The GFCI switch is held in the receptacle box by a strap, ("strap means" in the patent) formed from, as is usual, a steel sheet material.  The GFCI switch is operated by a "solenoid" formed of a "coil" and a "plunger."  The coil is placed adjacent to a portion of the strap.  The proximity of the coil and strap is such that a path of the magnetic field generated by the coil is defined by the portion of the strap adjacent to the coil.  The plunger slides along the central axis (inside) of the coil. When the coil is energized, a magnetic field is generated which causes the movement, *i.e.*, influences the position, of the plunger.  The magnetic field causes the plunger to move into the center of the coil.

117728.00601/35585053v1

Movement of the plunger, in response to the magnetic field, in turn moves a "first movable member," which, in turn, moves a "second movable member," which causes separation of the electrical connection, thus interrupting the electrical connection and the ground fault preventing injury. As defined in the claims, and as described in the specification, the claimed GFCI cannot automatically reclose the electrical connection by responding to a further change in current flow, but requires manual assistance.

The '894 Patent is a continuation in part of United States Patent No. 4,518,945 (the "'945 Patent") which in turn is a continuation of United States Patent No. 4,386,338 (the "'338 Patent").[2]  The '945 and '338 patents are both directed to two-way switches which can be triggered to automatically open and subsequently triggered again to automatically reclose the electrical connection. The disclosures of both the '945 and '338 patents are identical, including the drawings. The reason the '894 Patent claims it is a "continuation-in-part" of the '945 Patent is that they have some common subject matter, *i.e.*, both are operated by a solenoid that includes a coil adjacent to a strap means, so that the adjacent portion of the strap means will "define a path of the magnetic field" when the coil is energized.

The strap means are slightly different structurally, in that the '894 Patent strap means is shown and described as having a pair of tabs extending out from the strap means at either end of the coil. One of the tabs is immediately adjacent at one end of the coil, and extends to the central axis of the coil. The second tab is spaced away from the coil and is extremely short, extending only to the edge of the coil. There is no similar tab configuration in the strap described and shown in the '945 Patent, and thus, of course, no argument that the strap means is limited to any

---

[2]     The '945 and '338 patents are both directed to two-way switches which can be triggered to automatically open and subsequently be triggered again to automatically reclose the electrical connection. The disclosures of both the '945 and '338 patents are identical, including the drawings. (See Exhibits I-J, attached hereto).

number or configuration of tabs.  In both cases, however, portions of the strap means define the path of the magnetic field of the coil, and that is all that is important.

The '894 Patent is only a partial continuation of the '945 Patent because the remaining functions are different.  The GFCI of the '894 Patent only opens the circuit and cannot provide for a subsequent automatic reclosing by energizing the coil.  The '945 Patent, on the other hand, requires automatic closing and opening functions for its switching system, provided by a rotating cam that rocks back and forth between two positions each time the coil is energized, performing two functions, one closing and one opening the circuit, respectively.  Further, the claims of both of these patents are "means plus function" type claims, and thus the structure of the claimed device, which is not described in so many words in the claim, must be defined by the function described in the specification and drawings.

Since the '894 Patent expressly incorporates the subject matter of the '945 Patent, to the extent there are elements disclosed in the '945 Patent that have the functions required by the claims of the '894 Patent, those structures are alternative structures for the '894 claims.  Specifically, the coil and the strap means have the same function in both patents, and therefore the structures that are shown in either of the patents, or their equivalents, can be used to define the "strap means" in the claims of the '894 Patent, pursuant to 35 U.S.C. § 112, paragraph 6, the "means plus function" provision.  However, the functions that are not the same, *i.e.*, the one-way shut-off function for the GFCI of the '894 Patent and the two-way flip-flop switch of the '945 Patent, require the clearly different switching mechanisms shown in each of the respective specifications, in order to provide the desired result, and therefore are not common to both.

D.    **Leviton's Infringement Claims and the Issues Allegedly In Dispute**

The GFCIs imported into and sold in the United States by defendants are copies of Leviton's patented commercial GFCIs and infringe the claims of the '894 Patent; therefore the

8

The issue of infringement is whether the elements of the claims are met by the allegedly infringing device. *Pennwalt Corp. v. Durand-Wayland, Inc.,* 833 F.2d 931, 934 (Fed. Cir. 1987). As explained below, with respect to main, independent Claim 1, for example, Defendants admit that their GFCIs meet 7 of the 10 elements of Claim 1. However, as to the three remaining elements, defendants baldly deny infringement, although they submitted no expert evidence to support this denial. The claims of the '894 Patent are reproduced below with the admitted elements in bold and the disputed limitations appearing in italics:

Claim 1 • **Switching apparatus for selectively interrupting an electrical connection between input and output conductors, or the like, comprising, in combination:**

• **a housing**;

• **magnetizable plunger means disposed within a portion of said housing for movement between first and second positions; electromagnet coil means disposed within said housing for moving said plunger means when energized from the first position to the second position;**

• **an input contact electrically connected to said input conductor;**

• **an output contact electrically connected to said output conductor;**

• *strap means for mounting the switching apparatus upon a selected surface, said strap means including portions thereof which define a path of the magnetic field generated by said coil means to influence the position of said plunger means,*

• *and movable means responsive to movement of said plunger means for influencing a separation of said input and output contacts, thereby interrupting electrical connection between them,*

• **said movable means including first and second movable members, movement of said second member being caused by movement of said first member.**

117728.00601/35585053v1

Claim 2     •     **Switching apparatus according to claim 1, wherein said first member is movable with and operatively connected to said plunger means.**

Claim 3     •     **Switching apparatus according to claim 1, wherein said plunger means comprises a plunger member formed with a relatively elongated portion which extends into portions of said electromagnetic coil means.**

*Claim 4*     •     *Switching apparatus according to claim 1, further including spring means for returning said plunger means to said first position after energization of said coil means.*

### E.    Defendants Have Copied The GFCI Products Sold By Leviton

The GFCI products sold by Leviton are substantially the same product as is shown in the drawings of the '894 Patent. One insubstantial difference is that the strap means in the Leviton GFCI product only has one of the tabs described above, which extends across one end of the coil to its central axis. The GFCI products being sold by Defendants are substantial copies of the Leviton products, including the use of strap means that have the same single tab. The Defendants apparently believe that the design of the Leviton products, *i.e.*, the claimed invention in the '894 Patent, is especially effective. Defendants have admitted to substantial sales of their GFCI products. (*See* Defendants' Response to Interrogatory No. 1 in Leviton's First Set of Interrogatories, attached hereto as Exhibit K).

### F.    The Wall Receptacle GFCI Products Sold By Defendants Are All Equivalent With Respect To The Issues Of Infringement In This Litigation

Leviton submits with this motion a Declaration of Steven Campolo, incorporating his Expert Report, previously filed in this litigation. (*See* Campolo Expert Report attached hereto as Exhibit L). The Campolo Expert Report makes clear that each of the claim limitations are met by elements in the numerous samples of GFCI products from Defendants analyzed by Mr. Campolo. The Defendants have admitted that all of the GFCI'S that they market and sell are

10

virtually identical, as regards the switch operating components. (*See* Deposition of H. Grossblatt, attached hereto as Exhibit M at 88 - 93).

What is more, defendants have submitted no expert support for their bald assertions that there are any differences between their copies of Leviton's GFCIs. On this basis alone, the Court should find that if one of defendants' GFCIs infringe the '894 Patent, they all do. At the least, Mr. Campolo's analyses of infringement must be accepted because they have not been challenged by any competent evidence.

## I. ARGUMENT

### A.    <u>Summary Judgment Of Infringement Is Appropriate At This Time</u>

Summary judgment is appropriate where, as here, there is "no genuine issue as to any material fact." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986); *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984). Summary determination sought by a moving party shall be rendered if the pleadings and any depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1322 (Fed. Cir. 2001); *Becton Dickinson and Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 795 (Fed. Cir. 1990).

While the moving party has the burden of demonstrating that there is no genuine issue of material fact, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Bristol-Myers Squibb Company v. Ben Venue Laboratories, Inc.*, 246 F.3d 1368, 1374 (Fed. Cir. 2001), if the movant meets its initial burden, the burden of coming forward with evidence raising a genuine factual dispute shifts to the party opposing the motion. *Vivid Technologies, Inc. v. American*

11

*Science & Engineering, Inc.*, 200 F.3d 795, 806 (Fed. Cir. 1999). The opposing party must show

that there are material issues of fact which require resolution at trial. *Id.*, at 806-07.

Summary judgment is to avoid an unnecessary trial, and "it is not designed to substitute

lawyers' advocacy for evidence, or affidavits for examination before the fact-finder, when there

is a genuine issue for trial." *Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264,

1265 (Fed. Cir. 1991). The trier of fact should "assure itself that there is no reasonable version of

the facts, on the summary judgment record, whereby the nonmovant could prevail, recognizing

that the purpose of summary judgment is not to deprive a litigant of a fair hearing, but to avoid

an unnecessary trial." *EMI Group North America, Inc. v. Intel Corp.*, 157 F.3d 887, 891 (Fed.

Cir. 1998).   Leviton has presented an expert in the field, Mr. Campolo, to explain the

understanding of one skilled in the art when reading the claims and the allowance of the '894

Patent.  The defendants have not presented any evidence to rebut that, as discussed above.

## B.    The Determination Of Infringement

As this Court is aware, a determination of whether a patent claim is infringed "entails a

two step analysis -- construction of the claims, *i.e.*, a matter of law; followed by application of

the claims to the accused device, *i.e.*, a question of fact." *Voice Technologies Group, Inc. v. VMC

Systems, Inc.*, 164 F.3d 605, 612 (Fed. Cir. 1999).   The patentee bears the burden of

demonstrating, by a preponderance of the evidence, "that every limitation of the claim is literally

met by the accused device." *Kahn v. General Motors Corp.*, 135 F.3d 1472, 1474 (Fed. Cir.

1998).

First, the court must construe the scope of the patent claims. Second, it must be

determined whether the claims, thus construed, cover the accused device. The first step presents

a question of law for the court. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71

(Fed. Cir. 1995) (en banc), *aff'd*, 116 S. Ct. 1384 (1996).[3]  The second step presents a question of fact, *see Engel Indus., Inc. v. Lockformer Co.*, 96 F.3d 1398, 1405-06 (Fed. Cir. 1996), but one which may be resolved by summary judgment. *See Barmag Barmer Maschinenfabrik v. Murata Machinery Ltd.,* 731 F.2d 831, 835 (Fed. Cir. 1984).

A patent claim is literally infringed if the accused device includes elements that correspond identically to, or that are the substantial equivalent of, each and every limitation recited in the patent claim. *See Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995); *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). As demonstrated below, there can be no genuine dispute that each limitation in each of the four (4) claims of the '894 Patent, as properly construed, is present in the accused products. Therefore, no genuine issues of fact remain, infringement is clear, and Leviton is entitled to summary judgment of infringement of the '894 Patent.

### 1.    Construction Of The Claims

The first step in an infringement analysis is to construe the asserted claims to determine their scope. *See, e.g., Bell Atlantic Network Services, Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims and the specification, and, if in evidence, the prosecution history.  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Only those claim terms that are in controversy need be construed, and only to the extent necessary to resolve the controversy. *Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999). Claim construction begins with the language of the claims themselves, which should be given its

---

[3]    The Federal Circuit acknowledged in *Markman* that a court may construe patent claims in the context of dispositive motions such as Rule 56 summary judgment motions.  *See Markman*, 52 F.3d at 981.

ordinary and customary meaning as understood by one of ordinary skill in the art. *Hockerson-Halberstadt, Inc. v. Avia Group International, Inc.*, 222 F.3d 951, 955 (Fed. Cir. 2000). There is a "heavy presumption" in favor of construing claim terms in a manner consistent with their ordinary and accustomed meaning. *K-2 Corp. v. Salomon S.A.*; 191 F.3d 1356, 1362-63, (Fed. Cir. 1999).

**C.     The Meaning of the Claims Follows The Plain Language Of The Claims Under 35 USC 112**

As is apparent from the above-quoted claim language, the disputed claim limitations, as well as most of the other limitations, are written in "means plus function" format. This format is acceptable pursuant to 35 U.S.C. § 112, ¶ 6, which provides in pertinent part:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112.

Determining the claimed function and the corresponding structure, for a claim limitation written in means-plus-function format, are both matters of claim construction. *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1308 (Fed. Cir. 1998). "[P]roper application of § 112 paragraph 6 generally reads the claim element to embrace distinct and alternative described structures for performing the claimed function. Specifically, the "[d]isclosed structure includes that which is described in a patent specification, including any alternative structures identified." *Ishida Co., Ltd. v. Taylor*, 221 F.3d 1310, 1316 (Fed. Cir. 2000) *citing Serrano v. Telular Corp.*, 111 F.3d 1578, 1583 (Fed. Cir. 1997).

14

1.      **Teachings of the Patent Specification**

(a)      **The Strap Means**

The "strap means" limitation, has a double function as defined in claim 1; namely, the functions of first, "mounting the switching apparatus upon a selected surface;" and second, "portions thereof [of the strap means] ... define a path of the magnetic field. . . ." (col. 6, lines 58-61).  The functions of the "strap means" are thus fully defined in Claim 1, but the claim provides only a general statement as to its structure; therefore the "strap means" can only be properly construed by reference to the written description of the '894 specification and the drawings, in order to determine the exact structure that meet the limitations of the claim.  In the specification, the strap 326 is more fully defined and illustrated (*see* Figs. 1-5 and 10 and the accompanying text in the specification, attached hereto as Exhibit H).

The specification clearly states that a magnetic field is generated when the coil is energized, and "the path of the [electromagnetic field] ... extends through strap 326" (Col. 3, lines 17 through 20). The "magnetic field influences the position of an armature or plunger 348, which responds to the energizing of the coil assembly 346 by being drawn toward the center of the coil assembly. . . ." (Col. 3, lines 21-23).

The structure of the "strap means" of claim 1 is described and illustrated in the patent specification, in greater detail, as follows:

•      The mounting strap is clearly shown in Figures. 1, 2, 3, 4, 5, and 10 of the '894 Patent, identified by numeral "326." Specifically Figure 2 serves "to illustrate the position of the mounting strap 326 with respect to its neighboring components" (Col. 2, lines 67-68).

- In Figure 3, the position of the strap means 326 in relation to the coil 346 and plunger 348 is clearly shown. It is noteworthy that the coil is adjacent to the strap along portions of the strap length.

- The mounting strap 326 is described as being formed from "steel sheet metal."[4] (Col. 3, lines 12-13).

- Further, the "path of [the electromagnetic field] ... extends through strap 326, as in the case of strap 22." (Col. 3, lines 19-21).

The structure corresponding to the "strap means" 326 is shown as spanning the entire vertical length of the GFCI, and has end portions 328 (see Fig. 10) intended to connect the GFCI to any surface. Moreover, the strap is made of steel, a magnetizable, high permeability metal, and a central portion of the strap is positioned immediately adjacent to the coil, such that it is within any magnetic field generated by the coil if it were to be energized. As is explained by Mr. Campolo, Leviton's technical expert, it is basic physics that placing a magnetizable, high permeability, material, such as steel, within the magnetic field, causes the flux of the field to follow a path through the magnetic material, in preference to passing through the air, and the closer the magnetizable, high permeability strap material is to the coil, the more concentrated is the magnetic field at the coil. (See Campolo Expert Report at Exhibit L.) Therefore, the proper construction of this element would include a strap means, made of a magnetizable substance, such as steel, positioned immediately adjacent to the coil, such that it defines, the path of, and concentrates, the magnetic field generated when the electromagnet coil means is energized. Again, Leviton's expert explains that following general physical principles of magnetism, that a

---

[4]      It is worth nothing that the '945 Patent expressly incorporated into the '894 Patent, also contains a strap reflected as Strap 22 which is also preferably formed from "steel sheet metal". See col. 5, line 27, attached hereto as Exhibit I.

16

magnetic field will "influence the position of the plunger", *i.e.*, cause it to move to the center of the coil. (*See* Campolo Expert Report at Exhibit L.)  Thus, the limitation to the "strap means" in Claim 1, must encompass at least the strap 326 shown in the drawings of the '894 Patent, as well as the strap 22 shown in the drawings of the '945 Patent (which are the preferred embodiments), and their substantial equivalents. *See Vitronics Corporation v Conceptronic, Inc.*, 90 F. 3d 1576, 1583 (Fed. Cir. 1996).

It is worth noting that the function of the tabs 342, 344 on the strap, referred to above, is not set forth in the '894 Patent; however, strap 22 described in the specification of the '945 Patent does not include such tabs (*see* Fig. 12, '945 Patent). The '945 Patent does state that strap 22 defines "part of the magnetic circuit" generated by the coil (Col. 7, 11.22-23).

**(b)    The "movable means"**

The defendants also assert that they "do not understand the meaning of the word 'influencing' as used herein", *i.e.*, with respect to the "movable means" in Claim 1 of the '894 Patent.  Indeed, that term is internally described in the same section of the claim, where it is stated "thereby interrupting electrical connection between them [the input and output contacts]." It is quite clear from the language of the claim that the "movable means" are caused to move by the movement of the plunger into the coil, and this in turn causes "separation" of the contacts, which interrupts the electrical connection.  Reference to the specification, at column 5, beginning at line 46, and continuing to column 6, gives the entire explanation of the operation of the switch defined by Claim 1.

Again, this is also a "means plus function" limitation, so that a reference to the specification is necessary.  Referring to the specification disclosure, the "movable means;" which is further defined in the claims as including "first and second movable members," and where

"movement of said second member being caused by movement of said first member," are defined by the particular structure shown in the specification and drawings as having the function of moving in response to the plunger and causing the interrupting of the electrical connection. This structure, is exemplified in the specification and drawings by the "banger" 354, with its "banger dogs" 362, which comprise the "first movable member" directly moved by the plunger, and the latching member portions 470, the "second movable member," moved by the first movable member. Movement of the second member, as explained at column 5, line 58- column 6, line 4, releases the spring-loaded contacts, allowing the contacts to separate, and thus interrupting the electrical connection. Accordingly, the meaning of the limitation of the "movable means" in Claim 1 of the '894 Patent is set by the disclosed structure described above, and any structure that is its substantial equivalent, *Vitronics Corporation, supra.* The defendants have not raised issues as to any other limitation in Claim 1.

Defendants have also raised an issue with respect to the limitation in dependant Claim 4. They assert that the "patent does not teach or describe a spring means for returning the plunger means to said first position …." This is clearly incorrect. The reference to "spring means" again raises the requirement of paragraph 6 of 35 U.S.C. §112. Reference to the specification at column 3, beginning at line 40, and Figs. 3 and 6-8, shows a description of the "helical banger return spring 370" which surrounds the plunger shank portion 368. The return spring 370 is compressed when the plunger is forced towards the center of the coil when the coil is energized and "exerts a biasing force tending to return the banger to the position shown in Fig. 3," or Fig. 8 (col. 3, lines 48-50). It is clear from a comparison of Fig. 7 with Figs. 3, 6 or 8, that when the "banger" is returned to the position of Figs. 3 or 8, the plunger 348 is necessarily also returned to

18

the first position, as required by Claim 4.  Accordingly, Claim 4 covers the coil spring 370 and

its equivalents.

**D.    There Is No Question Of Fact With Respect To The Structure And Operation Of Defendants' GFCIs Or That They Literally Infringe The Claims Of The '894 Patent As Properly Construed**

There is no issue of fact as to what is the structure of the Defendants' devices.  Nor is

there any issue that the operation of the Defendants' GFCIs provide for energization of the coil

upon the detection of an electrical fault, and that the energized coil will generate a magnetic field

that will "influence the position of said plunger;"  *i.e.,* draw in the plunger into the coil, thereby

pulling on the banger, which in turn causes opening of the contacts, thereby interrupting the

circuit.

The arguments against infringement presented by Defendants are reflected in Defendants'

Fourth Supplemental Responses and Objections to Interrogatory No. 6, as follows:

INTERROGATORY NO. 6

If the defendants contend that any of the defendants' GFCIs do not meet all of the limitations (either literally or by equivalents) of each of the claims of the Leviton Patent, then, using the claims chart depicted below, identify which limitations of the claims are not met by an element of each of the defendants' GFCIs, and set forth in detail why each such element does not meet each such limitation.

| CLAIM LIMITATION | ELEMENTS NOT FOUND IN DEFENDANTS' PRODUCT (If found, state "YES") |
|---|---|
| 1.  Switching apparatus for selectively interrupting an electrical connection between input and output conductors, or the like, comprising, in combination | YES |
| a housing; | YES |
| magnetizable plunger means disposed within a portion of said housing for movement between first and second positions; | YES |
| electromagnet coil means disposed within said housing for moving said plunger means when energized from the first position to the second | YES |

19

| | |
|---|---|
| position; | |
| an input contact electrically connected to said input conductor; | YES |
| an output contact electrically connected to said output conductor, | YES |
| strap means for mounting the switching apparatus upon a selected surface, | No, Defendants' GFCI models do not have the structural features (or equivalents) of the structure of the strap means disclosed in the specification. |
| said strap means including portions thereof which define a path of the magnetic field generated by said coil means to influence the position of said plunger means, | No, Defendants' GFCI models do not include this feature as understood from the specification and the claims of the Leviton patent. Defendants' GFCI models do not have a strap means with portions which define a path of the magnetic field. Furthermore, Defendants do not understand the meaning of the word "influence" as used herein because no guidance is provided in the Leviton patent or its history. Defendants' GFCI models do not have a strap means with portions that influence the position of said plunger means. |
| and movable means responsive to movement of said plunger means for influencing a separation of said input and output contacts, thereby interrupting electrical connection between them, | No, Defendants' GFCI models do not include this feature as Defendants do not understand the meaning of the word "influencing" as used herein even after careful review of the Leviton patent. |
| Said movable means including first and second movable members, movement of said second member being caused by movement of said first member. | YES |
| 2. Switching apparatus according to claim 1, wherein said first member is movable with and operatively connected to said plunger means. | YES |
| 3. Switching apparatus according to claim 1, wherein said plunger means comprises a plunger member formed with a relatively elongated portion which extends into portions of said electromagnetic coil means. | YES |
| 4. Switching apparatus according to claim 1, further including spring means for returning said plunger means to said first position after energization of said coil means. | No, Defendants' GFCI models do not include this feature as Defendants do not understand this claim feature as the patent does not teach or describe a "spring means for returning the plunger means to said first position after energization of said coil means." |

20

Defendants' arguments are simply meritless. First, Leviton's expert Mr. Campolo, has stated that his comparison of the specimens of USI's GFCIs, made it clear that the strap in the USI product was "substantially identical to the strap shown in the '894 drawings, except for the second tab 344." The claimed strap in the '894 Patent and the USI strap both were intended to be the "direct mounting member for mounting the GFCI to a wall" (See Campolo Expert Report, at 10). In addition, Mr. Campolo points out that the USI strap is made of magnetizable steel, and also is "immediately adjacent to the coil" (See Campolo Expert Report, at 12). Therefore, Mr. Campolo explains, the laws of physics require that the magnetic field from the energized coil must "concentrate along a path through the magnetic material" of the strap. *Id.*

The defendant has failed to present any evidence, by way of expert testimony, or otherwise, to contradict any of the expert opinions of Mr. Campolo. Accordingly, there is no factual disagreement possible based upon all of the responses by defendants to plaintiff's discovery requests.

The '894 specification expressly states that the path of the electromagnetic field from the coil "extends through strap 326, as in the case of strap 22." Strap 22 is the strap depicted in U.S Patent No. 4,518,945 (the "'945 Patent"), which does not have an identical construction (it does not have tabs) but is made of steel and is immediately adjacent to the coil. As Mr. Campolo concludes, the field from the coil in the USI GFCI passes through that strap, and is not substantially changed because it only has a single tab, at one end of the coil, instead of two tabs. The specification also confirms that the tabs are not necessary for the effectiveness of the strap in this function, where it states at col. 5, lines 50-54,

> The energization of coil 346 results in the generation of a magnetic field therearound with the aid of mounting strap 326, with the further result that plunger 348 is forcibly drawn toward coil 346.

Clearly, the strap in the USI product literally meets the terms of the strap means in claim 1 of the '894 Patent. The functions of the USI strap are identical to that required by the claim, *i.e.*, supporting the device and providing a path for the coil magnetic field. The structure is either identical or <u>insubstantially</u> different, *i.e.*, lacking the smaller of the two tabs which Mr. Campolo shows is not significant to either function. Accordingly, direct infringement is made out as a matter of law.

The Federal Circuit has long held that in a situation where there is identity with respect to the function of an element and the claim limitation, and only an insignificant or insubstantial difference in the structure, literal infringement is found in the context of a means plus function limitation, under paragraph 6 of 35 U.S.C. § 112. *See Micro Chem., Inc. v. Great Plains Chem. Co.*, 103 F.3d 1538, 1547 (Fed. Cir. 1997); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus. Inc.*, 145 F.3d 1303, 1309 (Fed. Cir. 1998); and *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999).

The "insubstantial difference" analysis requires a determination of "whether the 'way' the accused structure performs the claimed function, and the 'result' of that performance, are substantially different from the 'way' the claimed function is performed by the 'corresponding structure ... described in the specification,' or its 'result.'" "Literal infringement of a § 112, ¶ 6 limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification." *Caterpillar Inc. v. Deere & Co.*, 224 F.3d 1374, 1379 (Fed. Cir. 2000) *quoting Odetics, Inc., supra.* "Functional identity and either structural identity or equivalence are both necessary." *Id; see also, Al-Site Corp. v. VSI Intern., Inc.* 174 F.3d 1308, 1321 (Fed. Cir. 1999).

117728.00601/35585053v1

As will be shown below, there is no genuine factual dispute as to the function and structure of the Defendants' GFCIs.

**E.    Infringement Analysis As To Defendants' GFCI**

Defendants deny that their GFCI products literally infringe the '894 Patent, asserting that it does not meet the claim limitation requiring "*strap means including portions thereof which define a path of the magnetic field generated by said coil means to influence the position of said plunger means.*" (Defendants' Second Supplemental Responses to Leviton's First Set of Interrogatories, Supplemental Response to No. 6, attached hereto as Exhibit N). Defendants first deny that their strap means define a path of the magnetic field. However, as their strap is also made of steel, it must necessarily include the function of defining a path of the magnetic field generated by said coil means, to which it is immediately adjacent. Absent a revocation of the laws of physics, there can be no question but that a magnetic field generated by the coil when it is energized will have a path defined by the immediately adjacent strap made of a material, steel plate, that has a very high magnetic permeability compared to air. (*See* Campolo Expert Report, attached as hereto Exhibit L). The unrefuted expert report and deposition testimony of Mr. Campolo conclusively prove that the USI GFCI indeed contain "strap means" that fall within claim 1 of the '894 Patent, as well as structures that meet all other limitations of the '894 Patent claims. (*See* Campolo Expert Report, attached hereto as Exhibit L).

Mr. Campolo has had more than twenty five (25) years of experience in both the practical and theoretical application and design of electronic products, personal protection devices, laboratory testing of such devices and Underwriter Laboratories procedures. As part of his analysis, Mr. Campolo was asked by Leviton to examine the USI products and determine whether the USI products contain the elements in dispute (*See* Campolo Expert Report, at Exhibit L).

To that end, Mr. Campolo has dismantled numerous accused devices and examined each component in issue (See Campolo Expert Report at Exhibit L).  Photographs clearly showing the "strap means" of the accused devices are attached to the Campolo Report as Exhibits 18, 20, 25 and 27. The color photographs clearly show that the accused product contains a "strap means" formed of steel plate and positioned adjacent to the coil, and in the same juxtaposition to the coil and the plunger as is shown in the drawings of the '894 Patent.

Additionally, Mr. Campolo explains in his Declaration why the magnetic field created when the electromagnet coil is energized must include a path through a portion of the "strap means." His testimony conclusively proves that the accused devices must contain a "strap means" that "defines a path of the magnetic field" generated by their energized coil. (See Campolo Declaration at Exhibit L).

The structure of the strap of the accused product is only insignificantly different from the straps depicted in the drawings of the '894 Patent or of the '945 Patent. The only difference from the '894 Patent strap is the absence in the accused strap of a very small "tab" below one end of the coil. The only difference from the '945 Patent strap is the presence in the accused strap of a relatively large "tab" adjacent to one end of the coil, which extends across the end of the coil. (See Campolo Expert Report at Exhibit L). Clearly, the presence or absence of the tabs is not critical to the path of the magnetic field passing through the strap. Whether the two tabs together enhance the effect of the magnetic field, which Mr. Campolo denies, is not critical to a finding of infringement. It is well settled that slightly changing the claimed invention, so as to achieve a less effective version, is not sufficient to avoid infringement. *Uniroyal, Inc. v. Rudkin-Wiley Corp.,* 939 F.2d 1540, 1543 (Fed. Cir. 1991).

In a motion for summary judgment, once the moving party meets its initial burden of demonstrating the absence of any genuine issue of material fact and its entitlement to judgment as a matter of law, the burden then shifts to the nonmovant who must demonstrate that a genuine issue of material fact exists. *Avia Group Int'l v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988). It is not enough to present mere argument to contradict the movant's evidence, whether testimonial or documentary. The Defendants' specious attempt at a non-infringement position, as set forth in its Responses to the Interrogatories from plaintiff, should be refused. It is plain from the Campolo Expert Report, and to the naked eye, that the accused products not only infringe the '894 Patent but directly copy the Leviton commercial product design. Defendants should not be permitted to successfully strain and twist the straightforward claim language in the '894 Patent to raise a spurious issue of fact to avoid summary judgment of infringement by this Court.

In addition to asserting non-infringement by reason of not meeting the strap means limitation and the "movable means" limitation of claim 1, Defendants assert non-infringement of the spring means element of claim 4. Defendants' GFCI'S duplicate the spring means of the '894 Patent in that its structure is the same, *viz.* a helical or coil spring, and its function is to return the plunger to its original pre-coil energization position.

117728.00601/35585053v1

## CONCLUSION

For all of the above reasons, Leviton respectfully requests that this Court grant its motion for summary judgment in all respects.

Dated: July 21, 2003

Respectfully submitted,


_____/s/_____
D. Christopher Ohly, Esq.
BLANK ROME COMISKY & McCAULEY, LLP
250 West Pratt Street
Suite 110
Baltimore, MD 21201
Telephone:  (410) 659-1400
Facsimile:  (401) 659-1414

Paul J. Sutton
Joseph M. Manak
Barry G. Magidoff
Joseph G. Lee
GREENBERG TRAURIG, LLP
885 Third Avenue
New York, New York 10022
Telephone:  (212) 801-2100
Facsimile:  (212) 688-2449

Attorneys for Plaintiff,
LEVITON MANUFACTURING CO., INC.

117728.00601/35585053v1