IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

---

LEVITON MANUFACTURING CO., INC.  )
    Plaintiff  )
      )
v.  )  Civil Docket No. AMD 01-3855
      )
UNIVERSAL SECURITY INSTRUMENTS,  )
INC., et al.  )
    Defendants  )

---

Baltimore, Maryland
April 17, 2003
10:30 AM to 1:05 PM

The above-entitled matter came on for a hearing before
The Honorable Andre M. Davis

A P P E A R A N C E S

On Behalf of the Plaintiff:
Joseph M. Manak, Esquire
Joseph G. Lee, Esquire
Roberta Daghir, Esquire

On Behalf of the Defendants:
Maurice U. Cahn, Esquire
Frederick N. Samuels, Esquire
William E. Bradley, Esquire

Sharon Cook, Official Court Reporter, U.S. District Court

---

Page 2

1          PROCEEDING HELD APRIL 17, 2003
2    THE COURT:  Good morning.
3    COUNSEL:  Good morning, Your Honor.
4    THE COURT:  We are on the record in Leviton
5 Manufacturing Company, Inc. v. Universal Security Instruments,
6 Inc., Case Number AMD 01-3855.
7    Counsel, I knew this case was going to get ugly.  I
8 think we all knew that right from the start.  We could tell
9 from some of the early skirmishes.  But I must tell you I
10 didn't think it would get this ugly.  But having said that, I
11 suppose ugly is in the eye of the beholder.
12    What I am going to do is something I almost never do
13 to start this hearing.  I am going to let you do most of the
14 talking.  What we are going to do is I am going to give first
15 the defendants ten minutes of uninterrupted, or largely
16 uninterrupted, argument on anything they want, and then I am
17 going to give plaintiffs ten minutes of uninterrupted argument
18 on anything they want, and then I am going to give the
19 defendants five minutes, and then I am going to give the
20 plaintiffs five minutes, and then we will see where we go on
21 some of motions.
22    It should be obvious to you, and I am sure it is, but
23 I will say it just in case it is not, the Court is not going to
24 entertain any serious argument today on the substance of the
25 summary judgment motions.  I am aware of the fact that as a

Sharon Cook, Official Court Reporter, U.S. District Court

---

Page 3

1 result of the facts I just received within the last few
2 minutes, the ITC has decided to take a closer look at the
3 validity questions, and there will be time enough for me to get
4 to that.
5    The principal interest I have, of course, at this
6 point, is more in the area of case management than in case
7 resolution.  You have a lot of issues hanging out there, and we
8 are going to try to reduce some of the vitriol and get back on
9 a more civil footing in this case.
10    So, let's start with the defendants.  You are free, of
11 course, to use the lectern or the table or remain there,
12 however you wish, Mr. Cahn.
13    MR. CAHN:  Thank you, Your Honor.
14    Your Honor, for the point of clarification, I would
15 like to know what motions we are going to be hearing today.
16    THE COURT:  We are going to hear all the motions.  You
17 have ten minutes to address anything you want.
18    MR. CAHN:  All right.  Well, in the first place, our
19 motion upon which we have the burden is, the first motion is
20 the motion to vacate the January 22nd order, which we submit
21 was improvidently granted predicated on the Court's mistaken
22 belief that the motion was unopposed, when, in fact, it was.
23 The Court's confusion was engendered by the fact that
24 plaintiff's counsel did not adhere to the local rules.
25    We submit that we are prepared to discuss that motion,

Sharon Cook, Official Court Reporter, U.S. District Court

---

Page 4

1 as to what survives of that motion, on the merits.  It appears
2 from the reply brief, which was filed by the defendants the day
3 before the ruling was issued, that they had conceded certain
4 points, finally.
5    But I would like to talk about the fact that that
6 motion was prepared, it was prepared and unchanged before they
7 even inspected the documents.  They sent their courier down to
8 pick up the documents.  The documents we believe eliminated
9 most of the issues that were pending in that motion.  The
10 motion was premature for that reason, and, as a result of our
11 supplementation, based on the answers given in colloquy, we
12 believe that the motion should be denied in its entirety.
13    For example, one of the issues, and it's fundamental
14 to this case and I think we are going to have to raise it
15 again, is:  What exactly constitutes the Leviton Patent or the
16 patent-in-suit?  Is it the document that issued in 1986, or is
17 it the document that was corrected in December of 2001?  That
18 was an issue that was discussed and I believe resolved between
19 the filing of the motion and the present day.
20    The second issue is the entitlement argument.
21 Plaintiffs in their motion insist that they are entitled to all
22 documents dealing with sales of the GFCI products at issue from
23 1996, when it is clear that there were no sales, as represented
24 by the defendants, there were no sales prior to 2000.  I
25 believe it was January of 2000.  They have all those records.

Sharon Cook, Official Court Reporter, U.S. District Court

1     What they did, instead of saying, yes, we have it, or
2 no, we don't have it, they said, for certain of the
3 limitations:
4         Yes, we don't have it.
5     It's sort of a dance.
6     THE COURT: Yes, we have no bananas.
7     MR. MANAK: It's sort of like Interrogatory Number 3.
8     If we could narrow these issues, we don't have to try
9 those limitations.
10    THE COURT: Presumably you would do that through
11 requests for admissions?
12    MR. MANAK: We could do it that way.
13    THE COURT: When are you going to depose their expert?
14    MR. MANAK: We would like to talk to them about that,
15 set a schedule.
16    THE COURT: Expert discovery closes when?
17    MR. MANAK: Actually, I think it is --
18    THE COURT: In a week or so; right?
19    MR. MANAK: I think it may even be shorter than that.
20 I am not sure, Your Honor.
21    THE COURT: It's like within the next few days.
22    MR. MANAK: Yes.
23    THE COURT: And you said earlier that counsel had not
24 even talked to each other in the last month. So, I am a little
25 unclear about --

Sharon Cook, Official Court Reporter, U.S. District Court

1 identified an infringement expert?
2     MR. MANAK: I don't believe they have, Your Honor, not
3 as of yet.
4     THE COURT: Okay.
5     MR. MANAK: They have identified a patent attorney, I
6 believe, on their Certificate of Correction issues. I believe
7 that is a Mr. Goffney. And they have identified, I believe,
8 Mr. Phil Hampton, who is also a patent attorney, a patent and
9 trademark attorney. I guess he is going to testify on the
10 trade-dress issues. But I have not seen a report on the
11 infringement issues. Or the validity issues, for that matter.
12    THE COURT: Okay. Well, --
13    MR. MANAK: Is that correct?
14    MR. CAHN: If I may.
15    THE COURT: Mr. Cahn.
16    MR. CAHN: Yes. We do not plan on putting on a
17 technical expert, Your Honor. That is why they didn't get a
18 technical-expert report. But we do have a contest to the
19 validity of the patent as predicated on the -- well, several
20 issues, as reported in Mr. Goffney's expert report, which was
21 submitted to the Court as an attachment.
22    THE COURT: Yes, I have actually read his report.
23    MR. CAHN: His determination of validity and
24 inequitable conduct are predicated on patent issues, not
25 technical issues, Your Honor. So, we did not provide an expert

Sharon Cook, Official Court Reporter, U.S. District Court

Page 38

1     MR. MANAK: I didn't say we have not talked to each
2 other. I think Mr. Cahn said that.
3     THE COURT: I'm sorry. You didn't deny it.
4     MR. MANAK: Our local counsel has been in touch with
5 Mr. Cahn over the past month on a number of issues, I believe.
6     THE COURT: Mr. Ohly?
7     MR. MANAK: Yes.
8     MS. DAGHIR: I know Mr. Ohly has --
9     THE COURT: Why isn't Mr. Ohly here? I thought he was
10 really taking the lead in the case from his correspondence.
11    MR. MANAK: He's out of town.
12    MS. DAGHIR: Unfortunately, Your Honor, he couldn't be
13 here because of a long-planned commitment out of town, so he is
14 not here.
15    But, in any event, I do know there have been
16 communications between Mr. Ohly and Mr. Cahn. I can't tell you
17 precisely the dates and the content, but I do know that
18 particularly in the last few weeks, there have been
19 conversations.
20    MR. MANAK: On experts, I don't believe, and I
21 apologize if I am wrong about this, that we have gotten a
22 technical-expert report from the other side on the infringement
23 and validity issue. So, I don't know if they intend to call an
24 expert. We have a patent-law expert that has weighed in.
25    THE COURT: I see. So, the defendants have not

Sharon Cook, Official Court Reporter, U.S. District Court

Page 40

1 report for a technical expert because we were not planning on
2 putting one on.
3     THE COURT: Are you going to concede infringement?
4     MR. CAHN: No, Your Honor.
5     THE COURT: You are not?
6     MR. CAHN: We don't concede infringement because we
7 submit you can only infringe a valid patent.
8     THE COURT: Okay. But apart from the validity issues,
9 apart from validity issues, do you concede infringement?
10    MR. CAHN: No, Your Honor, we don't.
11    THE COURT: On what basis do you not concede
12 infringement?
13    MR. CAHN: Because as testified by their 30(b)(6)
14 witness, there are features absent from our device that don't
15 comport with their patent.
16    THE COURT: So, you believe that infringement is
17 defeated through an admission by the plaintiff?
18    MR. CAHN: That is correct, Your Honor.
19    THE COURT: Can we turn to that now?
20    MR. CAHN: Do we have that now?
21    THE COURT: Yes. In other words, do I have that
22 deposition?
23    MR. CAHN: I don't believe you have Mr. Campolo's
24 entire deposition, no, Your Honor.
25    THE COURT: Do you have the pages? I would like to

Sharon Cook, Official Court Reporter, U.S. District Court

Page 41

```
1  see that.  Do you agree that your expert, your 30(b)(6), has
2  made an admission of non-infringement?
3          MR. MANAK:  I recall no such testimony, Your Honor.
4          THE COURT:  I would like to look at that.  Do you have
5  the deposition here?  I mean, that would really permit us to
6  cut to the chase.
7          MR. MANAK:  We will look for it, Your Honor.  I don't
8  know if we have it.
9          THE COURT:  You don't have the deposition?
10         MR. MANAK:  It wasn't part of any of the motions that
11 we had, so I don't know.  We will look through our files and
12 see if we have it, but I don't think we do.
13         THE COURT:  What are you referring to, Mr. Cahn?
14         MR. CAHN:  Your Honor, the patent requires tabs, two
15 tabs associated with the strap, one on each side of the
16 solenoid.  The accused infringing device does not have two
17 tabs.  It only has one tab.  And that was acknowledged by their
18 technical expert.
19         Now, their technical expert argues that the strap does
20 not require both tabs.  But it's a means plus function
21 limitation.  The specification has the two tabs.  It comes down
22 to an issue of claims construction, which is a legal issue.
23         THE COURT:  You say the specification has two tabs?
24         MR. CAHN:  Yes, Your Honor.  The specification --
25         THE COURT:  Does the claim have two tabs?
```

Sharon Cook, Official Court Reporter, U.S. District Court

Page 42

```
1          MR. CAHN:  The claim has means plus function language.
2  It's means plus function, which means there's reference to the
3  specification.
4          THE COURT:  Well, I'm not sure I follow that.  That
5  would not be a matter of an admission by the plaintiff, would
6  it?
7          MR. CAHN:  It's not an admission.
8          THE COURT:  I mean, that is on the face of the patent.
9          MR. CAHN:  That's correct, Your Honor.
10         THE COURT:  You said there was some admission made
11 during the 30(b)(6) deposition that you're going to rely on for
12 non-infringement.
13         MR. CAHN:  Exactly.  That our device does not have two
14 tabs.
15         THE COURT:  Well, you don't need an admission for
16 that.  That is on the face of the patent, isn't it?
17         MR. CAHN:  That is correct, Your Honor.
18         THE COURT:  And on the face of your device.
19         MR. CAHN:  That is correct, Your Honor.
20         THE COURT:  Okay.  So, what is the admission?
21         MR. CAHN:  That is the admission.
22         THE COURT:  That is the admission.  Okay.  So, it's
23 not really an admission.  In other words, he acknowledged your
24 product does not have two tabs; correct?
25         MR. CAHN:  That is correct, Your Honor.
```

Sharon Cook, Official Court Reporter, U.S. District Court

Page 43

```
1          THE COURT:  I wouldn't call that an admission.
2          MR. CAHN:  Okay.
3          THE COURT:  Is there any other argument or ground of
4  non-infringement that you are relying on, or is that it?
5          MR. CAHN:  There have been grounds specified in the
6  declarations, Your Honor.
7          THE COURT:  Okay.  So, what are they?
8          MR. CAHN:  In the interrogatories.
9          THE COURT:  What are they?
10         MR. CAHN:  Your Honor, to be candid, I did not spend
11 time reviewing the substance of the merits.  I think the tab
12 issue is probably the most telling.  There's claims
13 construction, means plus function, the incorporation by
14 reference, which is what, as I understand your ruling on the
15 Certificate of Correction, is the basis for saying that the
16 missing claims language was present by the incorporation of
17 reference of the claims language from the prior patent.  There
18 is the '338 Patent, the grandparent -- not the grandparent,
19 it's the related patent that was not cited to the examiner on
20 the double-patenting issue.  There are a series of invalidity
21 and non-infringement issues that are present.
22         THE COURT:  No, there is not a series of
23 non-infringement issues.  There may be a series of invalidity
24 issues, but you haven't identified but one infringement issue.
25         MR. CAHN:  I am only prepared to talk about that one
```

Sharon Cook, Official Court Reporter, U.S. District Court

Page 44

```
1  at this point, Your Honor.
2          THE COURT:  All right.  Well, somebody called my law
3  clerk yesterday, and I suppose it was Mr. Ohly or somebody from
4  his office, --
5          MR. MANAK:  Yes, Your Honor.
6          THE COURT:  -- who wanted to know what issues.  And my
7  response was to be prepared on all motions.
8          MR. CAHN:  Well, that is --
9          THE COURT:  In other words, you are not seeking
10 summary judgment on non-infringement?
11         MR. CAHN:  That's right, Your Honor.  We have not
12 filed anything on non-infringement.  We have filed on the trade
13 dress, and we have filed on the double patenting thus far.  We
14 have not sought summary judgment on non-infringement, Your
15 Honor.
16         THE COURT:  Fair enough.  All right.
17         Let me ask this question of each of you, counsel,
18 because, frankly, I don't know the answer to this.  Maybe there
19 is no answer, and maybe you don't know, or maybe you would
20 rather not say, but is it sort of a practice in the trade, if
21 you will, that as the termination date of a patent approaches,
22 there is a flurry of litigation?  Is that sort of the final
23 money-maker for the patent holder?
24         MR. CAHN:  Not based on my experience, Your Honor.
25         THE COURT:  No?  You don't see any particular up-tick
```

Sharon Cook, Official Court Reporter, U.S. District Court