**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

LEVITON MANUFACTURING CO., INC.,          :

          Plaintiff,          :

      v.          :      Civil Action No. 01 CV 3855 AMD

UNIVERSAL SECURITY INSTRUMENTS,          :
INC., *et al.*,

                          :

         Defendants.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**PLAINTIFF LEVITON MANUFACTURING CO. INC.'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**
**OF VALIDITY AND ENFORCEABILITY FOR THE '894 PATENT**


Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Plaintiff, Leviton

Manufacturing Co., Inc. ("Leviton"), by its undersigned counsel, respectfully submits this

Memorandum in Support of its Motion for Summary Judgment of Validity and Enforceability of

United States Patent No. 4,595,894 (the "'894 Patent") against Defendants, Universal Security

Investments, Inc. and USI Electric, Inc. (collectively, "Defendants"), seeking a finding that the

'894 Patent is valid and enforceable.  In support of the Motion, Leviton submits Expert Reports

and Declarations of Messrs. Jerome W. Massie and Steve Campolo.  There being no genuine

issue of material fact present in this regard, Leviton is entitled to summary judgment as a matter

of law that the claims of the '894 Patent are valid and enforceable.

**PRELIMINARY STATEMENT**

This is a patent infringement action brought by Leviton involving Leviton's '894 Patent,

entitled "Ground Fault Circuit Interrupting System."  Commercial products incorporating the

technology of the '894 Patent, as sold by Leviton for the residential construction and home repair industry, have been enormously successful and constitute a large portion of all electrical safety switches sold in the market. The Defendants, recognizing the paramount success of Leviton's Ground Fault Circuit Interrupter ("GFCI") products, have sought to profit from that success by willfully copying Leviton's GFCI Products, and then infringing the '894 Patent through the sale of their infringing copied GFCI switch products ("accused infringing products") in the United States.

The '894 Patent relates to a GFCI system that interrupts a ground fault, *i.e.*, an electrical circuit created when someone touches an electrical outlet. Leviton's GFCI patented system thus, avoids injury or serious shock in the event of an electrical fault. The '894 Patent does this via novel electromechanical and mechanical components which, in response to a signal i.e., the electrical circuit is interrupted by physically separating electrically conducting contacts. The GFCI of the '894 Patent is also small enough to fit within a standard electrical outlet or receptacle box at a lower cost, with fewer component parts, when compared to systems previously marketed. For these reasons, the Defendants (and many others) have chosen to copy and willfully infringe the GFCI of the '894 Patent by selling copies of Levition's patented GFCI switch products.

**STATEMENT OF FACTS**

A.    **The Procedural Status Of This Action**

This action was commenced in the United States District Court for the District of Maryland, by the filing on December 13, 2001 of the Summons and Complaint. On January 22, 2002, the Defendants filed a Motion for Judgment on the Pleadings and Dismissal of the Complaint. On April 5, 2002, this Motion was denied with respect to Leviton's claim of patent infringement and granted in part directing Leviton to file an Amended Complaint within twenty

(20) days with regard to its trade dress claims. On April 22, 2002, Leviton filed its First Amended Complaint. The First Amended Complaint, as well as the earlier Complaint in this action, asserts a cause of action against the Defendants pursuant to 35 U.S.C. §271 for patent infringement in that the Defendants have been and are infringing one or more claims of Leviton's '894 Patent. Leviton is the sole owner of all right, title and interest in the '894 Patent, including the right to sue for past infringement thereof and seeks further relief under 35 U.S.C. §§283-284. On May 28, 2002, the Defendants filed their Joint Answer and Counterclaim to the First Amended Complaint, along with a Motion to Disqualify Paul J. Sutton and the firm of Greenberg Traurig based upon many of the same issues that were denied by the court in the first motion to dismiss. On August 29, 2002, a hearing was held before Judge Andre M. Davis and the motion to disqualify was summarily denied from the bench.

By Court Order dated April 24, 2003, the deadline for dispositive motions is July 21, 2003. All submissions regarding summary judgment motions whether motions, oppositions or replies were stayed on April 24, 2003, until July 21, 2003. Also on July 21, 2003, any motion or opposition already filed as of April 17, 2003, may be supplemented or amended as necessary. Leviton therefore files the instant motion for summary judgment of validity and enforceability. This Honorable Court, during the Court conference on April 17, 2003, also explained the briefing schedule and the rights of each party to make the usual cross-motions.

**B.**    **Background of the '894 Patent**

The '894 Patent issued on June 17, 1986, from United States Patent Application Serial No. 06/716,991 (the "'991 Application") filed on April 1, 1985.[1] The '894 Patent issued, to

---

[1]    Leviton owns by assignment from the inventors the entire right, title and interest in and to the '894 Patent. A copy of the two-page recorded assignment of the invention and application resulting in the '894 Patent, dated September 19, 1985, and recorded at the U.S. Patent and Trademark Office ("PTO") on September 27, 1985, at Reel 4459, Frame 822, accompanies this

Leviton, as assignee, on June 17, 1986, without rejection of any of the claims by the Examiner. The original claims of the '991 application were allowed by the PTO without any Office Action by what is known as a "First Action Allowance," wherein the claims are allowed in the exact form as filed. As such, there was no "prosecution" of the claims, so that no limitation on the scope of the '894 Patent claims need by considered under the doctrine of prosecution history estoppel.

It is noted that in its opening text, the '894 Patent includes a statement expressly incorporating by reference "the entire content and subject matter" of an earlier patent as follows:

> The present application is a continuation-in-part of applicants' both pending United States patent applications Ser. Nos. 431,982 now **U.S. Pat. No. 4,518,945**, filed Sept. 30, 1982 and entitled "REMOTE CONTROL SYSTEM" and Ser. No. 558,262 filed Dec. 5, 1983 and entitled "SHOCK HAZARD PROTECTION SYSTEM", and **incorporates by reference as if fully set forth herein the entire content and subject matter thereof** and of any and all of their respective "parent" patent applications to which they are co-pending. (Col. 1, lines. 6-16), attached as Exhibit D). (Emphasis added.)

The '894 Patent goes on to state that because of a "common thread that runs through these developments," the "author" filed the application in the format used, which "will also serve to aid the Examiner in considering, collectively, the prior art of record in all applications." That is cited as the reason for referring to the "present invention" as a second preferred embodiment. (See the '894 Patent, Col. 1, lines 20-30, attached hereto as Exhibit D). However, the patent

---

memorandum and is attached as Exhibit A. The original copy of the assignment is believed to be lost. A copy of the file from the United States Patent and Trademark Office Patent Application Information Retrieval ("PAIR") web site at "http://pair.uspto.gov/gci-binlfinallpairsearch.pl" accompanies this motion as Exhibit B, and identifies the official file content and history of the '894 Patent. A true copy of the official PTO microfiche copy of the underlying '991 application (Serial No. 0676991) which resulted in the '894 Patent is attached hereto as Exhibit C.

makes it very clear that it is the "object of the …present invention [is] to provide a dedicated ground fault circuit interrupting system…."  (*Id* at lines 52-54).

The '894 Patent is a continuation-in-part of United States Patent No. 4,518,945 (the "'945 Patent"), which in turn is a continuation of United States Patent Application Serial No. 207,534 (the "'534 application"), which was issued on November 17, 1980 as U.S. Patent No. 4,386,338 (the "'338 Patent").  The earlier two patents have substantially identical disclosures and are both directed to automatic on-off-on type switches, capable of continually cycling between the two positions in response to successive electrical signals.  (Copies are attached as Exhibits E-F).

**C.    Description Of The Invention Of The "'894 Patent**

The invention in the '894 Patent is a GFCI system, that is a switch that "interrupts" a circuit when there is an electrical fault.  It is a one-way switch, in that it only opens, or interrupts, the circuit automatically.  It cannot then automatically close the circuit when receiving a further electrical signal.  In addition, the '894 GFCI fits within a standard wall receptacle box.  The GFCI is held in place in the receptacle box by a "mounting strap 326" *i.e.*, "strap means," formed of a magnetic steel sheet material, "as in the case of strap 22" (which is described in the '945 Patent).  The GFCI switch is operated by a "solenoid" formed of a "coil" and a "plunger."  The coil is placed adjacent to a portion of the strap.  The proximity of the coil and strap is such that a path of the magnetic field generated by the coil is defined by the portion of the strap adjacent to the coil.  The plunger slides along the central axis (inside) the coil. When the coil is energized, a magnetic field is generated which causes the movement, *i.e.*, influences the position, of the plunger.  The magnetic field causes the plunger to move into the center of the coil.

Movement of the plunger, in response to the magnetic field, in turn moves a "first movable member," which, in turn, moves a "second movable member," which causes separation of the electrical connection, thus interrupting the electrical connection and the ground fault

preventing injury. As defined in the claims, and as described in the specification, the claimed GFCI cannot automatically reclose the electrical connection by responding to a further change in current flow, but requires manual assistance.

(See also the Campolo Expert Report, page 6, and the accompanying Campolo Declaration, paragraph 9, and the April 14, 2003, Declaration at paragraphs 6-8, attached hereto as Exhibit G.)

The '945 and '338 patents are both directed to two-way switches which can be triggered to automatically open, and subsequently triggered again, to automatically reclose an electrical connection, in response to an electrical signal. The disclosures of those two earlier patents are identical, including the drawings. The basis for claiming that the '894 Patent is a "continuation-in-part" of the '945 Patent, is that both claimed devices are activated by a solenoid, that includes the same type of electromagnetic coil adjacent to a strap means, so that the adjacent portion of the strap means will "define a path of the magnetic field," generated when the coil is energized.

The '894 Patent is only a partial continuation of the '945 Patent because of the major difference in the <u>function</u> of the '894 Patent GFCI as compared to the '945 Patent (and '338 Patent) switch. The '894 GFCI only opens a circuit, and cannot provide a subsequent automatic reclosing of the circuit by merely re-energizing the coil. This is clear from a review of the two different mechanical switching systems. In the '894 system, the plunger serially moves two members, first, the "banger" 356, which in turn moves the latch member 430, which permits separation of the two pairs of outwardly biased contacts 466 and 468, which interrupts the circuit. If the plunger were to continue to reciprocate, *i.e.* if the coil were re-energized, the two contacts 466 and 468 could not be brought back together, which are biased away from each other. In the '894 GFCI, that requires manual intervention, *i.e.*, pressing a button. In the '338

(or '945) switch, the plunger operates to move a kicker 104 which turns a rotating cam, that rocks back and forth between two positions each time the coil is energized. The sequence of action of the '338 cam switch is shown in the sequence of Figs. 7 through 11 of the '338 Patent, and described in the '338 ('945) specification, at col. 7, line 65 through col. 9, line 68. This sequence explains how the cam means rotates to push the contacts apart, from a closed to an open position (against its inwardly biased spring) and then the cam rotates back to a position permitting the contacts to move together, as the coil is successively energized, de-energized and energized again.

The contacts in the '338 and '945 Patents are biased toward each other so that the cam actually pushes them apart against the spring bias action. In the '894 Patent, where the bias is outward, towards separating the two contacts, the movement of the plunger merely removes a latch that holds the two contacts together, thus permitting them to spring apart, under the influence of the biasing spring. This significant difference is defined by the claims, which are directed to the actual structure described in the specification in accordance with 35 U.S.C. § 112, ¶ 6. *See e.g.*, *Ishida Co., Ltd. v. Taylor*, 221 F.3d 1310, 1316 (Fed. Cir. 2000). Thus, the Remote Control Switch of the '338 and '945 Patents operates in a completely different manner from the "movable means" of the '894 Patent. The claims of all three of these patents are "means plus function" type of claims, and thus the structure of each claimed device, which is not described in so many words in the claims, must be defined by what is described in the specification and drawings as providing for each of the listed functions. *Id.*

The commercial GFCI products sold by Leviton are substantially the same product as is shown in the drawings of the '894 Patent. One insubstantial difference is that the strap means in the commercial Leviton product does not include the short tab 344 located below one end of the

coil, as shown in Figs. 3 and 10 of the '894 Patent. The GFCI products being sold by the Defendants are identical copies of the Leviton commercial products, including the use of the strap means that have the same single long tab. The Defendants apparently believe that the design of the Leviton products, *i.e.*, the claimed invention in the '894 Patent, is especially effective. After all, copying is the sincerest form of flattery. Defendants have admitted to substantial sales of their GFCI products. (*See* Defendants' Second Supplemental Responses to Leviton's First Set of Interrogatories, No. 1, attached hereto as Exhibit H, which refers to certain documents produced by defendants, *i.e.*, USI 1900-1915 and USI 5199 and USI 5200-01.

## ARGUMENT

### A.. <u>Summary Judgment Is Appropriate At This Time</u>

Summary judgment is appropriate in cases when, as here, there is "no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986); *Barmag Barner Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984). The determination sought by the moving party shall be rendered if the pleadings and any depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. *See DeMartini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1322 (Fed. Cir. 2001); *Becton Dickinson and Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 795 (Fed. Cir. 1990). The evidence is to be viewed in a light most favorable to the nonmovant, and all reasonable inferences must be drawn in favor of the nonmovant. *Avia Group International, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1560 (Fed. Cir. 1988).

The moving party has the burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 247-48 (1986); *Bristol-Myers Squibb Company v. Ben Venue Laboratories, Inc.*, 246 F.3d 1368, 1374 (Fed. Cir. 2001).  If the movant meets its initial burden, the burden of coming forward shifts to the party opposing the motion.  *Vivid Technologies, Inc. v. American Science & Engineering, Inc.*, 200 F.3d 795, 806 (Fed Cir. 1999).  The opposing party does not have to establish that it is entitled to judgment in its favor, but must either show that the movant has not established entitlement to judgment as a matter of law, or that there are material issues of fact which require resolution at trial.  *Id.*, 200 F.3d at 806-07.

Summary judgment is to avoid a clearly unnecessary trial, "it is not designed to substitute lawyers' advocacy for evidence, or affidavits for examination before the fact-finder, when there is a genuine issue for trial."  *Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1265 (Fed. Cir. 1991). The trier of fact should "assure itself that there is not a reasonable version of the facts, on the summary judgment record, whereby the nonmovant could prevail, recognizing that the purpose of summary judgment is not to deprive a litigant of a fair hearing, but to avoid an unnecessary trial."  *EMI Group North America, Inc. v. Intel Corp.*, 157 F.3d 887, 891 (Fed. Cir. 1998).

## B.    Defendants' Allegations That The '894 Patent Is Invalid And Unforceable Are Baseless

Defendants, after having copied Leviton's patented, highly commercially successful product, now allege that the '894 Patent which covers that successful commercial product, is invalid for reasons of anticipation and/or obviousness, and in addition is unenforceable due to "inequitable conduct."  (*See* Defendants Second and Third Supplemental Responses to Leviton's First Set of Interrogatories, Responses Nos. 7 and 8, attached hereto as Exhibits I-J).  However, pursuant to 35 U.S.C. § 282, a patent is presumed valid, and the one attacking validity has the burden of proving invalidity by clear and convincing evidence. *See e.g. American Hoist &*

*Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984), *cert. denied*, 469 U.S. 821 (1984).

**C.**    **There Is No Anticipation of the Claims of the '894 Patent**

For a patent to be anticipated under 35 U.S.C. § 102, a single prior art reference must disclose every limitation of each claim of the patent in suit. *See e.g. Lindemann Maschinenfabrik GMBH v. American Hoist and Derrick Co.*, 730 F.2d 1452, 1458 (Fed. Cir. 1984); *Great Northern Corp. v. Davis Core & Pad Co.*, 782 F.2d 159, 165 (Fed. Cir. 1986); *Kalman v. Kimberly-Clark Corp.*, 713 F.2d 760, 771 (Fed. Cir. 1983), *cert. denied*, 465 U.S. 1026, (1984); *In re Donohue*, 776 F.2d 531, 534 (Fed. Cir. 1995). Anticipation requires identity of the claimed invention in a single disclosure in the prior art, *i.e.* a claimed process, including each step thereof, must have been described or embodied, either expressly or inherently, in a single prior art reference. *See Scripps Clinic & Research Foundation v. Genentech Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991); *see also Standard Havens Products, Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1369 (Fed. Cir. 1991).

Defendants have listed six (6) references in their responses to Plaintiff's Interrogatory No. 7 as anticipating the claims of the '894 Patent. None of them meet every limitation of the claims of the '894 Patent, as properly construed in the accompanying motion for summary judgment of infringement filed contemporaneously by Plaintiff Leviton. The six prior art citations relied upon by Respondents are: United States Patent Nos. 3,813,579 (the "'579 Patent"); 3,864,649 (the "'649 Patent"); 4,263,637 (the "'637 Patent"); 4,010,432 (the "'432 Patent"); 4,001,647 (the "647 Patent"); and 4,001,652 (the "'652 Patent") (*See* Exhibit J, attached hereto). A careful review of the six prior art references, as explained by Steve Campolo in his July 18, 2003 Declaration (the "July Campolo Declaration"), makes it very clear that none

of these references, individually, disclose all of the limitations of any of the claims of the '894

Patent. (*See* Exhibit K, attached hereto).

For example, the '652 Patent does not anticipate the Leviton invention. Specifically, the

'652 Patent has no strap means positioned as to "define a path of the magnetic field generated by

said coil means …." In addition, the switch mechanism is different from that of the '894 claim,

and is substantially the same as the Klein patent cited by the Examiner. In order to avoid

unnecessary repetition, plaintiff refers to the Campolo Declaration dated 7/18/03, which

discusses in detail the failure of each of the other references to anticipate the claimed invention.

As the Campolo Declaration explains, "none of the prior art cited by the Defendants

contain each element of the claims of the '894 Patent. Defendants therefore cannot satisfy their

burden of proving anticipation by clear and convincing evidence, and this lack of evidence

results in a situation where there is no genuine issue of fact. The Defendants simply do not

identify any prior art that anticipates the '894 Patent and fail to present any Expert Report that

could be considered by the Court on this issue. Summary judgment is therefore appropriate on

the issue of anticipation.

**D.    Defendants Allegations That The '894 Patent Is Invalid For Obviousness Are
Similarly Flawed**

**1.    Nature Of The Claimed Invention**

The present invention is directed to a novel combination of mechanical and

electromechanical elements, as defined in the claims of the '894 Patent, and as described above

and as construed in Leviton's companion Motion For Summary Judgment Of Infringement. It is

"a general rule that combination claims can consist of combinations of old elements as well as

new elements." *Clearstream Wastewater Sys. v. Hydro-Action, Inc.*, 206 F.3d 1440 (Fed. Cir.

2000). The notion … that combination claims can be declared invalid merely upon finding

similar elements in separate prior patents would necessarily destroy virtually all patents and cannot be the law under the statute, §103." *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1575 (Fed. Cir. 1987).

### 2.    Proper Basis For A Finding Of Obviousness

A claimed invention is unpatentable due to obviousness if the differences between it and the prior art "are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. § 103(a). In order to determine obviousness as a legal matter, four factual inquiries must be made: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) secondary considerations of nonobviousness, which include commercial success, long-felt but unresolved need, failure of others, copying, and unexpected results. *Graham v. John Deere Co.,* 383 U.S. 1, 17-18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966); *Miles Labs., Inc. v. Shandon, Inc.*, 997 F.2d 870, 877 (Fed. Cir. 1993).

### a.    The Scope Of The '894 Patent When Compared To The Relevant Prior Art Does Not Indicate That The '894 Patent Was Obvious To One Of Ordinary Skill In the Art

The relevant inquiry for determining the scope and content of the prior art is whether there is a reason, suggestion, or motivation in the prior art or elsewhere that would have led one of ordinary skill in the art to combine the references. *See, e.g., In re Rouffet*, 149 F.3d 1350, 1359 (Fed. Cir. 1998) ("[T]he Board must identify specifically ... the reasons one of ordinary skill in the art would have been motivated to select the references and to combine them to render the claimed invention obvious.") We do not "pick and choose among the individual elements of assorted prior art references to recreate the claimed invention," but rather, we look for "some teaching or suggestion in the references to support their use in the particular claimed combination." *Symbol Technologies, Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1576 (Fed. Cir. 1991)

*citing Smithkline Diagnostics, Inc. v. Helena Laboratories Corp.*, 859 F.2d 878, 887 (Fed. Cir. 1988); *see also In re Dembiczak*, 175 F.3d at 999. Case law makes clear that the best defense against the subtle but powerful attraction of a hindsight-based obviousness analysis is rigorous application of the requirement for a showing of the teaching or motivation to combine prior art references. Determining whether there is a suggestion or motivation to modify a prior art reference is one aspect of determining the scope and content of the prior art, a fact question subsidiary to the ultimate conclusion of obviousness. *SIBIA Neurosciences, Inc. v. Cadus Pharma Corp.*, 225 F.3d 1349, 1356 (Fed. Cir. 2000).

Defendants have listed nine (9) prior art references they contend render the claims of the '894 Patent obvious. None of these references, however, suggest or teach one of ordinary skill in the art, that the references should be combined to produce the advances characterized by the '894 technology. Defendants misinterpret and misapply the obviousness inquiry. To establish obviousness, it is insufficient that the separate elements of the invention existed in the prior art, absent some teaching or suggestion, in the prior art, to combine the elements. *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed. Cir. 1997); s*ee also Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F. 3d 1573, 1579 (Fed. Cir. 1997) (noting that the "absence of such a suggestion to combine is dispositive in an obviousness determination").

Leviton submits that one of ordinary skill in the art, having all of the cited references before him, would not be led to make the invention claimed in the '894 Patent. It is necessary to "show reasons that the skilled artisan, confronted with the same problems as the inventor and with no knowledge of the claimed invention, would select the elements from the cited prior art references for combination in the manner claimed." *In re Dennis Rouffet*, 149 F.3d 1350,1357

(Fed. Cir. 1998). Conclusory assertions without factual support are insufficient, *Advanced Cardiovascular Systems v Scimed Life Systems*, 101 F. Supp.2d 1257, 1259-1260.

  **b.**  **One of Ordinary Skill in the Art**

  The determination of the level of ordinary skill in the art is an integral part of the *Graham* analysis. *See Custom Accessories*, 807 F. 2d. at 962. ("Without [a determination of the level of ordinary skill in the art], a district court cannot properly assess obviousness because the critical question is whether a claimed invention would have been obvious at the time it was made to one with ordinary skill in the art.") Factors that may be considered in determining the ordinary level of skill in the art include: (1) the types of problems encountered in the art; (2) the prior art solutions to those problems; (3) the rapidity with which innovations are made; (4) the sophistication of the technology; and (5) the educational level of active workers in the field. *Id.* at 962 *citing Envtl. Designs, Ltd. v. Union Oil Co.,* 713 F;2d 693, 697 (Fed. Cir. 1983)). Leviton submits that in the present case, that the person skilled in the art is a "junior engineer" (*See* Campolo Expert Report, attached as Exhibit L to the July Campolo Declaration filed concurrently herewith) or an engineer having one year of experience. This is not contradicted by any facts in evidence, as again, the defendants have failed to submit any expert testimony that may rebut Campolo's testimony.

  **3.**  **The '894 Patent Can Easily Be Distinguished From The Relevant Prior Art, Individually Or In Combination**

  The nine prior art citations Defendants rely upon include U.S. Patent Nos. 3,864,649; 4,001,647; 4,001,652; 4,002,951; 4,010,431; 4,010,432; 4,209,762; 4,263,637; and 3,813,579 (*See* Exhibit M, attached hereto). As discussed above with respect to the issue of anticipation, none of these references disclose all of the elements required by the limitations of the claims of the '894 Patent. In fact, no combination of the cited prior art references teach or suggest the

claimed combination of the '894 Patent.  As Mr. Campolo points out in his Declaration

(submitted herewith), the only references disclosing the bi-functional strap are the '338 and '945

patents.  He also points out in his Declaration that:

> "the strap [of the '338 Patent] could not obviously be inserted into
> the  combination of elements shown in the other patents. I do not
> find the other element shown in the elements shown in the '894
> Patent as part of the claimed invention to be present in the other
> cited references, to be combined with the particular strap shown in
> the '338 Patent."  (*See* Campolo Dec., para. 12)

Although Mr. Campolo did not specifically consider the '647 Patent, the drawing figures

and specification descriptions of the disconnect apparatus are substantially identical to those of

the '652 Patent, to the same inventors, at least as regards the relevant circuit disconnecting

elements.  Similarly, the '649 Patent is identical to its parent application, the '579 Patent of

which it is a division.  Similarly, although Mr. Campolo did not specifically consider the '951

Patent, it was cited by defendants with respect to only one limitation of claim 1 of '894, *i.e.* to

"define a path for the magnetic field …."  The '951 Patent refers to a "supporting framework"

for the solenoid made of "a good magnetic material."  That "framework" is not identified in the

drawings, but is supposed to be a part of the solenoid 128, clearly the generally U-shaped

member pointed to from the numeral "128".  Clearly this disclosure is similar to that of the

earlier Doyle patent, U.S. No. 3,813,579, which also discloses a magnetic framework around the

solenoid.  There is no suggestion in the '951 Patent to so juxtapose the strap and the coil.

Moreover, the '951 patent is even further removed from the claimed invention, as the core 128b

of the solenoid coil in the '951 Patent is not movable, but merely attracts a swinging armature

114 when the coil is activated, (See col. 5, lines 2-8).

Defendants bear a heavy burden to make this showing of obviousness and their complete

failure to show how to make any combination from the parts of the prior art, highlights the

reason why summary judgment is proper as to the issue of obviousness.  As explained above, in the remote controlled switch disclosed in the '338/'945 Patents specification, the electrical contacts are spring biased so as to spring <u>together</u> when released, and are pushed apart by a rotating cam. The '894 invention uses a latch mechanism that holds together electrical contacts that are spring biased to spring <u>apart</u> when released. The layout of the different mechanisms is such that there is no basis for substituting a mechanism for releasing outwardly biased electrical contacts for a mechanism for forcing apart other inwardly biased contacts. The evidence is missing to raise any issue of fact that would preclude summary judgment on this issue.

a.     **The Secondary Considerations Of Non Obviousness Support The Complete Lack Of A Factual Issue For The Determination Of Non-Obviousness Of Leviton's Invention**

Secondary considerations of nonobviousness are often said to include commercial success, long-felt but unresolved need, failure of others, copying and unexpected results. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18, 86 S. Ct. 684, 15 L.Ed.2d 545, (1966). The consideration of the so-called Graham factors is especially important where the invention is less technologically complex, as is the case here. *See In re Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999), *abrogated on other grounds* by *In re Gartside*, 203 F.3d 1305 (Fed. Cir. 2000). In such a case, the danger increases that "the very ease with which the invention can be understood may prompt one to fall victim to the insidious effect of a hindsight syndrome wherein that which only the inventor taught is used against its teacher." *Id*. "[E]vidence of secondary considerations may often be the most probative and cogent evidence in the record. It may often establish that an invention appearing to have been obvious in light of the prior art was not. It is to be considered as part of all the evidence, not just when the decision maker remains in doubt after reviewing the art." *Stratoflex, Inc., v. Aeroquip Corp.*, 713 F.2d, at 1538.

Copying is an indicium of nonobviousness, and is to be given proper weight. *Windsurfing International, Inc. v. AMF, Inc.*, 782 F.2d 995, 1000 (Fed.Cir.) *cert. denied,* 477 U.S. 905, 106 S.Ct. 3275, 91 L.Ed.2d 565 (1986) ("the district court correctly noted that copying the claimed invention, rather than one within the public domain, is indicative of non-obviousness"). A comparison of the accused products to Leviton GFCIs are included as Exhibits 14 and 15 to the Campolo Expert Report submitted as Exhibit 2 to the Campolo Declaration. As can easily be seen, the similarities of the products are striking. To explain this striking similarity, Defendants offer no evidence of independent development. Clearly, the conclusion must be that Defendants have copied Leviton's GFCI products and are profiting from Leviton's property.  Indeed, correspondence between Defendants and their supplier shows a slavish intent to copy (See e.g. Exhibits N-O, attached hereto)

The Federal Circuit has commented on an infringer/copier who claims that the patented invention was so obvious from the prior art, stating

> As was once so well said, of an infringer and the invention appropriated:  It gives the tribute of its praise to the prior art; it gives the [invention] the tribute of its imitation, as others  have done.

*Panduit Corporation v. Dennison Manufacturing Co.,* 774 F.2d 1082 (Fed. Cir. 1985).  Citing *Diamond Rubber Co. v. Consolidated Rubber Tire Co.,* 220 U.S. 428, 441 (1911).

The secondary considerations here are persuasive. Defendants have copied Leviton's invention almost 15 years after it issued, after it had enjoyed tremendous commercial success. Here, the commercial embodiment of the '894 Patent, introduced after 1986, has resulted in Leviton's becoming a major player in this market.

Summary judgment of nonobviousness is further supported, and confirmed by the secondary considerations mandated by the Supreme Court.

**4.    Defendants Fail To Show That The Claims Of The '894 Patent Are To The Same Or Obviously <u>Similar</u> <u>Invention As In The Claims Of The '338 And '945 Patents</u>**

Defendants having copied Leviton's patented commercial successful, and not being able to show that it was previously known or obvious from the prior art, attempt to misconstrue the claims of the '894 Patent so as to force them to encompass the wholly dissimilar flip-flop cam switch inventions claimed in the '338 and '945 Patents.  This issue is purely a question of law, to be determined by the Court, *i.e.*, the determination of the scope and meaning of a patent claim.  In this case, the court is asked to determine the scope of the claims of the patent in suit, the '894 Patent, as well as the scope of the claims of the '338 Patent, or the '945 patent.  In all cases, that is a matter of law for the court.  *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (in banc), *aff'd*, 116 S. Ct. 1384 (1996).

First, it must be noted that all claims are to be construed as they would be understood by one skilled in the art in the context of the specification of that patent.  Second, if possible, the claim should be construed so as to find it valid, in order to conform to the statutory presumption of validity of an issued patent.  The law mandates that a patent is presumed valid[2] and its language and disclosures must determine the meaning of its claim terms.  *Modine Manufacturing Co. v. U.S. International Trade Commission*, 75 F.3d 1545, 1556 (Fed. Cir. 1996) ("[w]hen claims are amenable to more than one construction, they should when reasonably possible be interpreted so as to preserve their validity").

The person skilled in the art is the one through whose eyes the claims are construed.  Such person is deemed to read the words used in the patent documents with an understanding of

---

[2]    Issued patents are presumed valid.  35 U.S.C. § 282.  The presumption of validity applies independently to each claim of the patent, *id.*, and can be overcome only by clear and convincing evidence of invalidity.  *Massey v. Del Lab, Inc.*, 118 F.3d 1568, 1573 (Fed. Cir. 1997).

their meaning in the field, and to have knowledge of any special meaning and usage in the field." *Hoechst Celanese Corp. v. B.P. Chems. Ltd.*, 78 F. 3d 1575, 1578 (Fed. Cir. 1996). Thus, the court must determine how a person of experience in the field of this invention would, upon reading the patent documents, understand the words used to define the invention." *Toro v. White Cons Indus., Inc.*, 199 F.3d 1295, 1299 (Fed. Cir. 1999). The objective and contemporaneous record provided by the intrinsic evidence is the most reliable guide to help the court determine which of the possible meanings of the terms in question was intended by the inventor to particularly point out and distinctly claim the invention. *See Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250, 48 USPQ 2d 1117, 1122 (Fed. Cir. 1998). It is necessary to review the claims of both the '338/'945 patents and of the '894 patent-in-suit in the context of their respective specifications and in light of the knowledge of one skilled in the art, in order to obtain a true construction of the claims.

There are four claims in the '338 patent, only Claim 1 being an independent claim. When construing Claim 1 of the '338 Patent,[3] the reference in the 'preamble' to "Switching apparatus for selectively completing or interrupting an electrical connection between input and output conductors," clearly refers to the "flip-flop cam arrangement" described in the 'SUMMARY' of that specification (Col. 1, line 67, of the '338 Patent), which permits remotely controlled, continuing cycles of interrupting and completing of a circuit, in response to successive electrical signals. The remaining dependant claims also are directed to the device shown in the drawings and described in the specification, as having the cycling flip-flop cam system.

The '945 patent is a 'continuation' of the '338 Patent and therefore has the same disclosure and drawings. The preambles to the independent claims in this patent are

---

[3]          Claim 1 is set forth in Exhibit F hereto.

substantially identical, ie., "[s]witching apparatus for selectively completing or interrupting an electrical connection between input and output conductors ...", and clearly all of these claims are directed to the same generic invention as is discussed above, with respect to the '338 Patent (which is why the PTO required a terminal disclaimer in the '945 Patent). In both of these patents, the claims define a Remote Control Switch, which is cyclically operated by a "flip-flop cam" arrangement, which can be cyclically and continually rotated from an interrupted circuit position to a completed circuit position and back again, in response to successive electrical signals.

The understanding of one skilled in the art as to the meaning of the terms in the claims of the '338/'945 Patents, and in the '894 Patent, is also supported by the "Declaration Of Mr. Steve Campolo In Support Of Leviton's Opposition ...", dated April 14, 2003 and previously filed in this action on April 14, 2003. For ease of reference, a copy of this Declaration is attached hereto as Exhibit P. As Mr. Campolo makes clear, a person of ordinary skill in the art would understand that a switch that could be used in a GFCI may not be capable of being automatically switched to a closed circuit position from an open circuit position, by subsequent electrical signals and without manual intercession. Therefore, the person skilled in the art would understand that the switches of the '338/'945 Patents could not be useful in the GFCI invention of the '894 Patent, and the structure that would meet the necessary function of a GFCI, to only interrupt a circuit (as required by the '894 Patent claims) is not met by any structure disclosed in the specification of the '338/'945 Patents or defined by the claims of those patents. Accordingly, the claims of the '894 Patent and the claims of the '338/'945 Patents are mutually exclusive, as being directed to different inventions.

The preamble to Claim 1 of the '894 Patent defines a switch which only "interrupts" a circuit. The "effect preamble language should be given can be resolved only on review of the entirety of the patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim." *Corning Glass Works, v Sumitomo Electric U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989). To read the claim in light of the specification indiscriminately to cover all types of switches, including both the GFCI type, which only interrupts the circuit, and on/off flip-flop type switches, that can signal both on and off remotely, would be divorced from reality. The invention is restricted to those switches that are circuit interrupters, only. *Id.*

The full rationale for this construction of the claims of the '894 Patent is set forth more fully in the accompanying Motion for summary judgment of infringement. Reference is made thereto to avoid unnecessary repetition. It is clear that the claims of the '894 Patent are directed solely to a GFCI.

Although the "entire content and subject matter" of the '945 Patent and the '262 application are incorporated by reference in the present patent, together with "any and all of their respective "parent" patent applications (which includes the '338 Patent), it is clear that such earlier specifications are incorporated only in the context of supporting the embodiment which is actually disclosed in the original text of this patent. (col. 1, lines 20-68). Just as in an interference count, the interpretation of a term "must be taken from the application in which the counts originated" *Kropa v Robie*, 187 F. 2d 150, 88 U.S.P.Q. 478 (CCPA, 1951), in this case the meaning of the means plus function claim language must be taken from the description in the '894 Patent itself, which contains the only description of an embodiment that meets the limitation of only providing for "interrupting an electrical connection," in the context of a GFCI.

As Mr. Massie makes clear in his Declaration of April 14, 2003, filed previously in this case and attached herewith, as Exhibit Q, the Examiner had the '945 and '338 Patents before him when he allowed the '894 claims. He would not have allowed a claim in the '894 application that would have encompassed a switch capable of both, interrupting and completing a circuit.

Accordingly, as a matter of law, the claims of the '894 Patent cannot encompass the claims of the '945 and '338 patents, and thus this motion for summary judgment that there can be no double patenting should be granted.

### 5. Allegations of Inequitable Conduct Based On Immaterial References Misses The Mark

Defendants having copied Leviton's patented and commercially successful GFCI product, now assert that whether or not the patent is invalid it should be considered unenforceable because of alleged inequitable conduct in obtaining the patent in suit. The Federal Circuit has recognized that "[t]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague." Burlington Industries Inc. v Dayco Corp., 849 F.2d 1418,1422 (Fed. Cir. 1988). Clearly, there is also no basis for such an allegation in the present case.

To prove the defense of inequitable conduct, a defendant must show that the patentee withheld material information from the patent examiner or submitted false material information, with the intent to deceive or mislead the examiner into allowing the patent. *Upjohn Co. v. Nova Pharm. Corp.*, 225 F.3d 1306, 1312 (Fed. Cir. 2000) (citing *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 872 (Fed. Cir. 1988). Both materiality and intent to deceive are independent elements, each of which must be proven by clear and convincing evidence. *See Kingsdown*, 863 F.2d at 872; *see also Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 552 (Fed. Cir. 1990). Information is material "where there is a substantial likelihood that a

reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." *Upjohn*, 225 F.3d at 1312 (quoting 37 C.F.R. § 1.56 [1988] [amended 1992, 2000]); *see also Molins PLC v. Textron, Inc.*, 48 F. 3d 1172, 1179 (Fed. Cir. 1995). A reference, however, need not be disclosed to the examiner if it is merely cumulative of, nor more material than, other references already before the examiner. *ATD Corp. v Lydall Inc.*, 159 F.3d 534, 547, 48 USPQ2d 1321, 1330-133 1 (Fed. Cir. 1998); *Upjohn*, 225 F. 3d at 1312; *Baxter Intern. Inc. v. McGaw Inc.*, 149 F.3d at 1321, 1328 (Fed. Cir. 1998). In assessing intent, the court should consider any "evidence indicative of good faith." *Kingsdown*, 863 F. 2d at 876. Finally, and importantly, the intent to deceive cannot be inferred "solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent*." Hebert v. Lisle Corp.*, 99 F. 3d 1109, 1116 (Fed. Cir. 1996).

It is recognized that the determination of inequitable conduct requires "findings based on all the evidence." However, a motion for summary judgment may be granted when, drawing all reasonable factual inferences in favor of the non-movant, the evidence is such that the non-movant cannot prevail." *ATD Corp. v Lydall Inc.*, *supra*, 159 F.3d at 547 USPQ 2d at 1330; *see also, Abbot Laboratories v. Torpharm, Inc.* 300 F.3d 1367, 1379 (Fed. Cir 2002). It is shown below that is the case in the present situation. The defendants have never presented any evidence of intentional witholding of prior art, and therefore cannot succeed.

Defendants argue, *inter alia*, that the '894 Patent is unenforceable because Leviton or its agents failed to identify the existence of prior art to the PTO during prosecution of the '894 Patent, specifically the grandparent patent, the '338 Patent. Defendants apparently allege that the '338 Patent was material to the claims of the '894 Patent, insofar as the claims of '338 and '894 patents overlap and render the claims of the '894 Patent invalid due to obviousness type double

patenting." *Id.* This is clearly not true. First, as shown above, there can be no double patenting between the claims of the '338 Patent and of the '894 Patent.  Moreover, the Examiner did have the '338 Patent before him, as it is expressly incorporated by reference as a "parent" of the '945 Patent, (col. 1, line 14-15, of the '894 Patent). In addition, Mr. Massie makes very clear in his Expert Report filed herewith (Exhibit  Q), that it was a strict requirement for an examiner to review each successive parent application, and especially where, as here, the immediate parent included a terminal disclaimer based upon an earlier parent, i.e., the '338 Patent (See Massie Expert Report). Accordingly, there can be no issue of fact: the '338 Patent was clearly made known to the examiners of the '894 Patent. In this case, obviously there can be no inequitable conduct.

The  party  with  the  burden  of  proof  of  inequitable  conduct  must  meet  the  clear  and convincing standard. As the Defendants have not offered evidence or legal argument to support this assertion, even drawing all factual inferences in their favor, this standard could not be met at trial,  as  to  either  materiality  of  the  cited  references , or  intent  to  deceive  or  mislead.  It  is respectfully submitted that a grant of summary judgment of no inequitable conduct based on the lack of evidence provided by Defendants is proper and should be granted.

To the extent that Defendants come forward with new arguments in their submissions to the Court, plaintiff Leviton must reserve its right to submit additional evidence and arguments in the future, as well as the bringing of cross-motions where proper.

# CONCLUSION

For all of the above reasons, Leviton respectfully requests that this Court (1) grant its motion for summary judgment of no invalidity and enforcability, in all respects.

Dated: July 21, 2003                          Respectfully submitted,


                                   _____/s/_____
                                   D Christopher Ohly, Esq.
                                   BLANK ROME COMISKY & McCAULEY, LLP
                                   25 West Pratt Street
                                   Suite 1100
                                   Baltimore, MD 21201
                                   Telephone: (410) 659-1400
                                   Facsimile: (401) 659-1414


                                   Paul J. Sutton
                                   Joseph M. Manak
                                   Barry G. Magidoff
                                   Joseph G. Lee
                                   GREENBERG TRAURIG, LLP
                                   885 Third Avenue
                                   New York, New York 10022
                                   Telephone:  (212) 801-2100
                                   Facsimile:   (212) 688-2449


                                   Attorneys for Plaintiff,
                                   LEVITON MANUFACTURING CO., INC.