UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

------------------------------------X
LEVITON MANUFACTURING CO., INC.,     :

        Plaintiff,                   :

                                                               Civil Action No. 01 CV 3855 AMD
    v.                               :

UNIVERSAL SECURITY INSTRUMENTS,      :
INC., *et al.*,
                                         :

        Defendants.
                                         :
------------------------------------X

## DECLARATION OF MR. STEVE CAMPOLO IN SUPPORT OF LEVITON'S MOTION FOR VALIDITY

I, Steve Campolo, declare in accordance with 19 C.F.R. §§ 210.4 and 210.12(a), under penalty of perjury, that the following statements are true:

1.    I am Vice President – Engineering, Personnel Protection Products for Complainant Leviton Manufacturing Co., Inc. ("Leviton"), and I am personally familiar with the facts set forth herein or I am basing my stated information and belief upon the business files maintained by Leviton in the ordinary course of its business.

2.    I submit this Declaration in support of what I am informed will be a motion for summary judgment by Leviton with respect to the validity of U.S. Patent No. 4,595,894 ("'894").

3.    I am informed that the defendants in this case have raised certain allegations that the claims of U.S. Patent No. 4,595,894 (the "'894 Patent"), issued to Leviton, are invalid as being anticipated or made obvious by certain prior art references. I hereby expressly incorporate by reference, as if repeated in full herein, the entire subject

1

matter of my Expert Report of Steve Campolo, Infringement of Doyle/Rivera U.S. Patent No. 4,595,894 by UNIVERSAL SECURITY INSTRUMENTS, INC., and U.S.I. ELECTRIC, INC. .dated March 7, 2003, attached hereto as Exhibit A..

4. My first comments are directed to certain prior art patents that I am informed have been cited by the defendants to support their conclusion that the '894 patent is anticipated or obvious.

5. I particularly refer to the following patents: U.S. Patents Nos. 4,001,652; 4,010,431; 4,010,432; 4,209,762; 4,263,637; 4,386,338; and 3,813,579. I cannot agree that any of these patents anticipate or make obvious the '894 Patent.

6. I have been told that in order for a patent to be invalid under 35 U.S.C. 102 **all** the elements of the claims of that patent must be contained within one (1) prior art reference. I have carefully examined the disclosures of the above referenced patents, and for reasons I will explain below, I do not find any basis for an anticipation of the claims.

7. In my comparison of this prior art to the claims of the '894 Patent, there are some general similarities. However, there is no basis to reach a conclusion that these prior art patents anticipate the GFCI as claimed in the '894 Claims. The teachings in the six patents fail to provide the details of the claimed GFCI which would be necessary to anticipate the '894 Patent.

8. Although the '652 Patent to Klein does utilize an integral mounting plate, the differences are significant. First, the '894 Patent claims require that the strap have a "magnetic" function, i.e. it "define[s] a path of the magnetic field generated by said coil

2

means." This is **not** what the Klein Patent teaches. Actually, Klein teaches that the "mounting plate is securely affixed to the receptacle housing and also serves to connect the ground stab connectors in common." Col. 3, l. 32-34. Further, the "mounting plate serves to complete a ground circuit path between connectors 35 and two-wire metallic jacketed cable via the outlet box." Col. 3, l. 38-40. This is not the function that the '894 Patent claims require. In fact, the '652 Patent disclosure contains a separate inverted U-shaped magnetic frame in which the solenoid is mounted. Col. 4, l. 6-7. It should be clear that the strap means of the '894 Patent serves both these functions because the combination of the '894 permits the strap to be located adjacent to the coil, such that it defines a magnetic path that influences the plunger means. The '652 simply does not disclose this element. Therefore, it can not **serve the same magnetic function** as the strap in the '894 patent. Whether or not it serves the electrical function, is not relevant to the '894 claims. I also note that the drawings and text of this '652 Patent to Klein et al is substantially the same as the Klein patent cited on the first page of the '894 Patent, i.e., U.S. Patent No. 4,010,432.

9.     Similarly, the '338 Patent does not anticipate nor render obvious the '894 claims. Although the '338 Patent discloses a strap means that is similar in structure and function to the strap means disclosed in the '894 Patent, the '338 Patent does not disclose a circuit breaking GFCI, as claimed in the '894 Patent. Further, the '338 Patent does not and cannot operate in the same way and does not include the "said movable means including first and second movable members" element required by the claims of the '894 Patent. Col. 6, l. 66-67. The '894 Patent specification and drawings clearly disclose the structure corresponding to the "movable means' including defining the "second movable

3

means" as a latching member illustrated at 430. The '894 Patent describes this second movable member stating, "the banger [first movable member] is thus to likewise move, with the result that rear banger dogs 362 "bang" or hit against latching member portions 470." Col. 5, l. 60-64, thus freeing the biased contact member 462 to swing away from the fixed electrical contact 468. The switch in the '338 Patent (and the '945 Patent) has contacts that are biased together, and thus must be forced apart by rotation of the cam 132 (see col. 9, lines 23-40). Thus, the '338 Patent does not anticipate the claims of the '894 Patent. Additionally, one of ordinary skill in the art would not look to the specification of the '338, a patent directed to a "Remote Control System", to define the structure relating to an invention directed to a Ground Fault Circuit Interrupting System.

10.   The '894 patent utilizes a dual purpose strap, which appeared in the prior art only in those patents co-pending with the '894 Patent, i.e. the '338 Patent and U.S. Pat. No. 4,518,945 ("'945 Patent") of Doyle, the latter two having identical disclosures. The invention defined in the claims of the '894 Patent is directed to a specific combination, as is shown in the specification and drawings, which enables the entire package to be readily placed within a traditional wall receptacle holder, and which provides an effective and robust ground fault circuit interrupter switch. It is the entire combination, the way the individual elements are combined, and juxtaposed, all of which is set out in the claims (which define "plunger means", "electromagnetic coil means", and "movable means ... for influencing a separation of said input and output contacts ... including first and second movable members ....") that makes these claims unobvious and not anticipated.

I am informed by counsel to Leviton that when a part of a claimed combination is described as "means" for carrying out a defined function, the "means" must be defined in

4

the manner of the description set out in the rest of the patent specification. It is clear to me that it is the ingenious and unobvious way in which the inventors of the '894 Patent combined the various ordinary mechanical and electromechanical elements that made the claimed invention so successful. Many fine competent engineers had attempted to design commercially viable GFCIs and failed. They failed primarily because their designs were not sufficiently compact and effective in use.

12.     There is no basis for showing that one of ordinary skill in the art would have been motivated to combine the mounting strap of the '338 patent with any one of the other references discussed or listed above. I have reviewed each of the above patents and I have seen no teaching or suggestion that would lead to the combination claimed in the '894 Patent. Indeed, my understanding of the devices shown in the other specified patent references is that the strap could not obviously be inserted into the combination of elements shown in these other patents. I do not find the other elements shown in the '894 Patent as part of the claimed invention to be present in the other cited references, to be combined with the particular strap shown in the '338 Patent ( which by the way is identical to the strap in the '945 Patent). In none of the cited references do I find the particular combination of a circuit interrupter switch, wherein the contacts are biased so as to separate when a latching member is removed, where the latch is moved by the particular "movable means" shown in the '894 Patent. In fact, the commercial embodiment of this product was so unique and commercially successful that General Electric Co. ("GE"), the assignee of the '652 Patent to Klein (one of the patents relied upon by Defendants), commissioned Leviton to manufacture a product embodying the '894 technology for sale under the GE name.

5

13. I am informed that part of the obviousness analysis involves a consideration of 'secondary consideration' such as commercial success or copying....Leviton has provided evidence of such considerations by showing photographs of the Defendants' GFCIs, which show that they are almost exact copies of Leviton's commercial embodiment of the '894 Patent. I know this because I supervised the photographing and inspection of said GFCIs. I attach these for convenience as Ex. B.

14. U.S. Patent No. 4,010,432 to Klein et al (the "'432 Patent"), assigned to the General Electric Company has drawings and text that describe substantially the same device as is shown and described in the '652 Patent, also assigned to General Electric Company. I also noted from my comparison of the '432 Patent with the several other patents cited by Defendants, that none of them, alone or together, suggest the particular combination of the magnetic strap and release mechanism shown in the '894 Patent Moreover, all of these other patents are relevant only to the extent that they attempt to describe a GFCI that has the potential to fit within a standard wall receptacle.

15. I note that U.S. Patent No. 4,209,762 ("'762") issued to Samborski et al., and U.S. Patent No. 3,813,579 ("'579") issued to Doyle et al., disclose elements of the claimed invention similar to what is disclosed in other prior art references that were before the examiner. I have also been informed that such similar prior art references are merely cumulative. The disclosure of the '762 Patent teaches a mechanical latch that does not resemble the unique latching members of the '894 Patent. The latch member disclosed in the '762 is very different in structure from that of the '894. Therefore, the '762 is cumulative of the many latch mechanisms cited to the examiner and does not represent a "material prior art reference." Similarly, the '579 Patent to Doyle does not

disclose any element not already disclosed by U.S. Patent No. 4,518,945 ("'945") and U.S. Patent No. 4,386,338 ("'338") to Doyle, references that were before the examiner. The '579 Patent discloses a magnetic supporting framework surrounding the coil. The '945 and '338 Patents disclose a magnetizable strap. Certainly, the '945 Patent is more relevant prior art as to this element that the '579, rendering the '579 cumulative or irrelevant.

    I declare, under penalty of perjury of the laws of the United States that the foregoing is true and correct to the best of my knowledge, information and belief.

    Dated at Little Neck, Queens, New York, : July 18, 2003

_____
Steve Campello