UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

------------------------------------------------------- X
---                                                     :
LEVITON MANUFACTURING CO., INC.,                        :
        Plaintiff,                                      :
    v.                                                :
UNIVERSAL SECURITY INSTRUMENTS,                         :  Civil Action No. 01 CV 3855 AMD
INC., et al.,                                           :
        Defendants.                                     :
------------------------------------------------------- X
---

**DECLARATION OF MR. STEVE CAMPOLO IN SUPPORT OF LEVITON'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT**

    I, Steve Campolo, declare in accordance with 19 C.F.R. §§ 210.4 and 210.12(a), under penalty of perjury, that the following statements are true:

    1.    I am Vice President – Engineering, Personnel Protection Products for Complainant Leviton Manufacturing Co., Inc. ("Leviton"), and I am personally familiar with the facts set forth herein or I am basing my stated information and belief upon the business files maintained by Leviton in the ordinary course of its business. I have previously filed an Expert Report in this matter, entitled :

"EXPERT REPORT AND DISCLOSURE OF STEVE CAMPOLO Re INFRINGEMENT Re DOYLE/RIVERA U.S. PATENT NO. 4,595,894 By UNIVERSAL SECURITY INSTRUMENTS, INC. And U.S.I. ELECTRIC, INC."

    2.    I am an electrical engineer with more than 25 years of both practical and theoretical experience in electronics, electro-mechanics, personnel protection devices, Underwriters Laboratories procedures, laboratory testing, and design.

6. My understanding of the claims of the '894 Patent, is that they are directed to a ground fault circuit interrupter ("GFCI"), as I explained in my Expert Report. The '894 patent specification and drawings clearly disclose the structure corresponding to the "movable means' including defining the "second movable means" as a latching member illustrated at 430. The '894 Patent describes this second movable member stating, "the banger [first movable member] is thus likely to move, with the result that rear banger dogs 362 "bang" or hit against latching member portions 470." Col. 5, l. 60-64, thus freeing the biased contact member 462 to swing away from the fixed electrical contact 468. The GFCI's are designed so that sending a further signal, to cause the plunger to move again, could not possibly cause the contacts to close and reactivate the circuit.

7. The "Remote Control Switch" as disclosed in the '338 Patent (and the '945 Patent) has contacts that are biased together, and thus must be forced apart by rotation of the cam 132 (see col. 9, lines 23-40 . The switch is designed so that another electrical signal, activating the coil and causing the plunger to move into the coil, will cause the cam to rotate in the opposite direction, removing the cam surfaces 162,164 from forcing apart the electrical contacts, thereby permitting the spring-loaded contacts to swing back together, and to reclose the circuit. Thus, the Switch of the '338 Patent operates differently from the operation permitted for the GFCI of the '894 Patent.

8. Based upon my knowledge of the requirements by the authorized product safety agencies, which would also be understood by an electrical engineer in the GFCI or safety product field, a GFCI may not be capable of being automatically closed, so that the circuit

3. I make this Declaration to confirm the information and opinions I set forth in my prior Expert Report in this case, and in response to what I am informed is a motion for Summary Judgment of invalidity of U.S. Patent No. 4595894 (the "'894 Patent"), based upon asserted double patenting with respect to U.S. Patent No. 4,386,338 (the "'338 Patent").

4. I am informed that the pending summary judgment motion is based upon an assertion that the product defined by the claims of the '338 Patent, particularly Claim 1, is the same as the product defined by the '894 Patent claims, particularly Claim 1. While it is true that the '338 Patent discloses a strap means that is similar in structure and function to the strap means disclosed in the '894 Patent, the '338 Patent does not disclose a circuit breaking GFCI, as claimed in the '894 Patent. Specifically, the remote control switch defined by Claim 1 of the '338 Patent does not operate in the same way and does not include the "said movable means including first and second movable members" elements as defined by the claims of the '894 Patent.

5. I am further informed that the defendants are making their assertions because the specification of the '338 Patent (which is identical to that of the '945 Patent) is incorporated by reference into the '894 Patent. Therefore, the defendants assert, when defining the aforesaid claim elements you look not only to the drawings and description of the '894 Patent, but also to the drawings and description of the '338 (and '945) Patents. I am further informed that they assert that these claim elements, as recited above, include not only the banger 354, banger dogs 360,362, and latching members 426,428, as shown in the drawings of the '894 Patent, but also include the kicker leg 120, and cam 132, with its associated 'cam surfaces 162,164, of the '945 ('338) Patent. I disagree.

becomes operational, without manual intervention. Clearly, the Switch of the '338 Patent is not only capable of being, but is intended to be, automatically closed upon receipt of a further electrical or electronic signal, the exact opposite of what is required for GFCI's. Furthermore, the '338 Patent recognizes that it is not a GFCI. It states, for example, at Col. 4, beginning at line that the "basic switching arrangement described below may be utilized not only in conjunction with remote control wireless switching systems, but also *in conjunction with circuit breaking mechanisms and systems, such as of the ground fault circuit interrupting type.*"(Emphasis added.) If it can be used *in conjunction with* something else, clearly it is not the same as that something else. Thus, one of ordinary skill in the art would not look to the specification of the '338 Patent, a patent directed to a "Remote Control System", to define the structure relating to an invention directed to a Ground Fault Circuit Interrupting System. Accordingly, the system from the '338 patent, evein if incorporated into the specification of the'894 Patent, would not meet the function required for a GFCI.

 I declare, under penalty of perjury of the laws of the United States that the foregoing is true and correct to the best of my knowledge, information and belief.

 Dated at Little Neck, Queens, New York, : April 14, 2003

_____
Steve Campolo