**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | | |
|---|---|---|
| PLAINTIFF MANUFACTURING, INC. | ) | |
| | ) | |
| (Plaintiff) | ) | |
| | ) | |
| v. | ) | 01CV3855 AMD |
| | ) | |
| UNIVERSAL SECURITY INSTRUMENTS, INC. | ) | |
| USI ELECTRIC, INC. | ) | |
| | ) | |
| (Defendants) | ) | |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT OF VALIDITY AND ENFORCEABILITY FOR THE '894 PATENT
AND DEFENDANTS' <u>CROSS-MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY</u>**

Defendants, Universal Security Instruments, Inc. and USI Electric, Inc. (hereafter

collectively referred to as "USI"), through their attorneys, hereby oppose Plaintiff's motion

for summary judgment of validity and enforceability and cross-move for summary

judgment for invalidity.  In support of its opposition and cross-motion, Defendants submit

the attached memorandum.

Respectfully submitted,

UNIVERSAL SECURITY INSTRUMENTS INC.
USI ELECTRIC, INC.


By:_____
Maurice U. Cahn, Esq.
Frederick N. Samuels, Esq.
William E. Bradley, Esq.
CAHN & SAMUELS, LLP
2000 P Street, NW, Suite 200
Washington, D.C.  20036
(202) 331-8777 (Phone)
(202) 331-3838 (FAX)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | | |
|---|---|---|
| PLAINTIFF MANUFACTURING, INC. | ) | |
| | ) | |
| (Plaintiff) | ) | |
| | ) | |
| v. | ) | 01CV3855 AMD |
| | ) | |
| UNIVERSAL SECURITY INSTRUMENTS, INC. | ) | |
| USI ELECTRIC, INC. | ) | |
| | ) | |
| (Defendants) | ) | |


**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT OF VALIDITY AND ENFORCEABILITY FOR THE '894 PATENT
AND DEFENDANTS' <u>CROSS-MOTION FOR SUMMARY JUDGMENT OF
INVALIDITY</u>**

## <u>Table of Contents</u>

ARGUMENT ......................................................................................................... 2

I.    THERE IS NO GENUINE ISSUE OF FACT THAT THE CLAIMS OF THE '894 PATENT ARE INVALID FOR DOUBLE PATENTING IN VIEW OF THE '338 PATENT AND AS BEING ANTICIPATED BY THE '338 PATENT ............................................. 2

    A.    The Relationships of the Patents ....................................................... 2

    B.    Incorporation-by-Reference ............................................................ 4

    C.    The '894 Patent is Invalid Due to Obviousness-Type Double Patenting ........... 5

    D.    The '894 Patent is Invalid Due to Anticipation ..................................... 7

II.    THE '894 PATENT IS INVALID FOR INDEFINITENESS ..................................... 8

III.    AT A MINIMUM, THERE REMAINS TRIABLE ISSUES OF FACT AS TO THE INVALIDITY OF THE '894 PATENT IN VIEW OF THE PRIOR ART UNDER 35 U.S.C. §103 ......................................................................................... 9

    A.    Legal Standards ......................................................................... 9

    B.    The Scope and Content of the '637, the '652, the '431, and the '338 Patents are Proper under the Graham Inquiry .................................................... 10

    C.    The '894 Patent Is Invalid Based on the '637, the '652, and the '431 Patents, Either Alone or in Combination with the '338 Patent ................................. 12

    D.    Leviton Has Not Fulfilled Its Burden to Show Objective Evidence of Secondary Considerations and Even If So, They Are Not Controlling Due to Strong Showing of Primary Considerations ........................................................................ 19

IV.    AT A MINIMUM, THERE REMAINS TRIABLE ISSUES OF FACT AS TO WHETHER THE '894 PATENT IS INVALID DUE TO AN ON-SALE BAR ................ 21

V.    THE '894 PATENT IS UNENFORCEABLE DUE TO INEQUITABLE CONDUCT 22

VI.    THE '894 IS UNENFORCEABLE DUE TO PATENT MISUSE ....................... 24

CONCLUSION .................................................................................................. 25

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

PLAINTIFF MANUFACTURING, INC.    )
                                      )
       (Plaintiff)              )
                                        )
         v.                  )       01CV3855 AMD
                                          )
UNIVERSAL SECURITY INSTRUMENTS, INC.)
                                        )
USI ELECTRIC, INC.               )
                                        )
       (Defendants)         )

**MEMORANDUM IN SUPPORT OF DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF VALIDITY AND
ENFORCEABILITY FOR THE '894 PATENT AND DEFENDANTS' CROSS-
MOTION FOR SUMMARY JUDGMENT OF INVALIDITY**

Defendants, Universal Security Instruments, Inc. and USI Electric, Inc. (hereafter

collectively referred to as "USI"), through their attorneys, submit this memorandum in

support of their opposition to Plaintiff's motion for summary judgment of validity and

enforceability and in support of their cross-motion for summary judgment for invalidity

and unenforceability.

For the reasons set forth in Defendants' co-pending motions for summary

judgment of invalidity of the '894 patent on the grounds of obviousness-type double

patenting and on grounds of indefiniteness, Plaintiff's motion should be denied and

summary judgment granted in Defendants' favor.  Further, Plaintiff's motion for

summary judgment should be denied as to both validity and enforceability because, at

the very least, Plaintiff has failed to meet its burden of proving there are no disputed

facts pertaining to each of the other grounds of invalidity raised herein (anticipation,

obviousness, and on-sale bar), as well as unenforceability (inequitable conduct).[1]

Finally, Defendants submit that the recent discovery of the existence of catalogs in

Plaintiff's possession, which Plaintiff failed to produce during discovery despite repeated

requests, and which are the subject of a pending motion to compel, may very well

conclusively establish that Plaintiff's GFCIs embodying the technology of the '894 patent

were not only on-sale more than one year prior to the filing date of the '894 patent

(thereby invalidating the patent under 35 U.S.C. §102(b)), but also that Plaintiff's

counsel knew of these sales activities, failed to disclose them to the U.S. Patent &

Trademark Office with an intent to deceive, initiated a campaign of litigations to rid the

marketplace of small competitors despite knowledge of these sales, and took measures

during discovery to hide the existence of these catalogs.

## ARGUMENT

## I. THERE IS NO GENUINE ISSUE OF FACT THAT THE CLAIMS OF THE '894 PATENT ARE INVALID FOR DOUBLE PATENTING IN VIEW OF THE '338 PATENT AND AS BEING ANTICIPATED BY THE '338 PATENT

### A. The Relationships of the Patents

The application for U.S. Patent No. 4,595,894 ("the `894 patent") was filed on

April 1, 1985, and the patent issued on June 17, 1986. The '894 patent expired on June

17, 2003. The `894 patent is described as a "[c]ontinuation-in-part of Ser. No. 558,262,

Dec. 5, 1983, and a continuation-in-part of Ser. No. 431,982, Sep. 30, 1982, Pat. No.

4,518,945," in the "Related U.S. Application Data" on the front page of the `894 patent.

In the "Continuation-in-Part Application" section (Column 1, lines 6-16) of the

`894 patent, the contents of the patent are further described as follows:

---

[1] Plaintiff has not moved for summary judgment as to the patent misuse defense.  Accordingly, the defense remains in this case for trial.

The present application is a continuation-in-part of applicants' both pending
United States patent applications Ser. Nos. 431,982 now U.S. Pat. No. No.
4,518,945, filed Sept. 30, 1982 and entitled "REMOTE CONTROL SYSTEM" and
Ser. No. 558,262 filed Dec. 5, 1983 and entitled "SHOCK HAZARD
PROTECTION SYSTEM", and incorporates by reference as if fully set forth
herein the entire contents and subject matter thereof and of any and all of their
respective "parent" patent applications to which they are co-pending.

The application for U.S. Pat. No. 4,518,945 ("the `945 patent"), in turn, is a

continuation application of U.S. Pat. No. 4,386,338 ("the `338 patent"). Both the `945

and the `338 patent contain the same specification and drawings. The only differences

between these two patents are the claims. The claims in the `945 patent are narrower in

scope than those of the `338 patent.

The `338 patent is not listed or mentioned anywhere in the `894 patent. The

application for the `338 patent was filed on November 17, 1980 and the patent issued

on May 31, 1983, which is more than 12 months prior to the filing date of the `894

patent, i.e., April 1, 1985.  In addition, Plaintiffs admitted that the '338 patent was prior

art in the ITC proceeding.  *See* ITC Order No. 11 at 14 (Investigation No. 337-TA-

478)("It is undisputed that the '338 patent can be cited against the '894 patent as prior

art.").  (Exhibit 1).

Prosecution counsel of the '894 patent could have claimed priority back to the

'338 patent during the pendency of the application, but intentionally chose not to do so.

In order to receive the benefit of the filing date of an earlier U.S. Patent or application

under 35 U.S.C. § 120, the later filed application must "be amended to contain a specific

reference to the earlier filed application;" and if it is not so amended, that will be deemed

"a waiver of any benefit under this section [§120]."  35 U.S.C. § 120.  By "specific

reference to the earlier filed application," the rules require that the specification "contain

3

or be amended to contain in the first sentence of the specification following the title a reference to each such prior application, identifying it by application number (consisting of the series code and serial number) . . . and indicating the relationship of the applications." 37 C.F.R. § 1.78. A perusal of the '894 patent clearly shows that the '338 patent is not specifically referenced. Accordingly, any claim of priority to the '338 patent's filing date has been forfeited, and the '338 patent is prior art to the '894 patent. *See* M.P.E.P. 201.11 starting at the paragraph bridging page 200-68 to 69 (Exhibit 2).

### B. Incorporation-by-Reference

It is undisputed that Plaintiff has incorporated the '945 patent in its entirety into the '894 patent. The information incorporated is as much a part of the application as filed as if the text was repeated in the application. *See* M.P.E.P. 2163.07(b) (Exhibit 3). Indeed, Plaintiff relied on its incorporation by reference of the '945 patent to support its improper certificate of correction filing. Now, realizing the patent-defeating consequences of its incorporation by reference, Plaintiff advances a legally erroneous interpretation of the doctrine of incorporation by reference that is also at odds with its own earlier interpretation of the doctrine.

The Patent & Trademark Office permits an application to avoid repeating information contained in other documents by incorporating *the contents of other documents or parts thereof* by reference to the documents in the text of the application. *See* M.P.E.P. 2163.07(b) (Exhibit 3). Here, Plaintiff elected to incorporate the entirety of the '945 patent into the '894 specification. This position is consistent with Plaintiff's earlier statements made in this and other litigations to enforce the '894 patent, emphasizing the broad nature of the "incorporation by reference" in the '894 patent.

4

Indeed, it was the linchpin to Plaintiff's entire argument during the 12(b)(6) hearing in this action.  *See* April 4, 2002 Hearing Transcripts at 53:2 to 61:24.  (Exhibit 4).

Now, recognizing the clear double patenting problem presented by its choice to incorporate the entirety '945 patent by reference, Plaintiff now argues that something less than the entirety of the '945 patent was incorporated by reference.  Specifically, Plaintiff argues that the phrase "entire contents and subject matter" cited in the '894 patent was meant to incorporate "only in the context of supporting the embodiment which is actually disclosed in the original text of [the '894] patent."  Plaintiff's Br. at 21.

Plaintiff's interpretation of the "incoporation by reference" language to mean incorporating only the text of the '945 patent that can support the embodiment actually disclosed in the '894 patent is fundamentally flawed because that interpretation is in direct conflict with the plain language of the '894 patent and with Patent & Trademark Office policy.

Moreover, the latest incarnation of Plaintiff's "incorporation by reference" theory is analytically unsound.  Under Plaintiff's theory, no one other than Plaintiff could possibly recognize which parts of the text from the '945 patent are to be incorporated into the '894 patent.  Accordingly, the public would have no way of knowing the scope and content of the '894 patent until subject to suit by Plaintiff whereby Plaintiff would explain its theories.  Such a practice eviscerates the public notice function of patens and simply cannot be accepted.

## C.  The '894 Patent is Invalid Due to Obviousness-Type Double Patenting

Defendants' have moved for summary judgment of invalidity of the '894 patent for double patenting.  Rather than repeat herein the contents of its memorandum,

Defendants respectfully invite the Court's attention to its previously filed papers and the following brief comments.

To reach Plaintiff's tortured claim construction, one would have to completely rewrite the cannons of construction for means-plus-function limitations, preambles and incorporation by reference.  Briefly, the fatal flaw in Plaintiff's attempt to read out the movable means of the '945 patent is that 35 U.S.C. § 112, sixth paragraph, does not allow a court to read limitations (structures or functions) into or out of the claims:

> The statute does not permit limitation of a means-plus-function claim by adopting a function different from that explicitly recited in the claim.  Nor does the statute permit incorporation of structure from the written description beyond that necessary to perform the claimed function.  In this case, the district court erred both by incorporating structure beyond that necessary to perform the claimed functions and by incorporating unrecited functional limitations into the claims.

*Micro Chemical, Inc. v. Great Plains Chemical Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999).  Plaintiff asks the Court to read the word "only" into the function of "influencing a separation of said input and output contacts" recited in claim 1.  An error in identification of the function can improperly alter the identification of structure in the specification corresponding to that function.  *Id.*  Once the Court properly identifies the function, and turns to the specification for structure which performs the function, clearly, both the movable cam means of the '945 patent and the banger mechanism of the '894 patent.  Indeed, the '338 patent <u>claimed</u> a "movable cam means . . . for influencing a separation of said input and output contacts."

Plaintiff's arguments regarding the preamble as a limitation are similarly flawed.  There is no basis for reading the word "only" into the preamble, or "automatically" into the preamble of the '338 patent.  The preamble is nothing more than a statement of the intended purpose of the device that is being claimed.  Plaintiff is simply trying to rewrite

6

the claim by arguing that the '894 patent claims a GFCI and the '945 patent does not. Both patents claim a "switching apparatus."  Plaintiff is using the preamble to make a post hoc justification to narrow the claims.  It is incumbent upon prosecution counsel "[i]n recognition of the hazards of claim presentation and interpretation . . . to present claims of varying scope or stated in a variety of ways."  *Karsten Mfg. Corp. v. Cleveland Golf Co.*, 242 F.3d 1376, 1384 (Fed. Cir. 2001).  The claims can not be rewritten by the court to avoid invalidity.  *Id.*  The axiom that "claims should be read in a way that avoids ensnaring prior art if it is possible to do so" does not apply if "the only claim construction that is consistent with the claims language and the written description renders the claim invalid . . . ."  *Apple Computer v. Articulate Sys. Inc.*, 234 F.3d 14, 24 (Fed. Cir. 2000).

In view of the foregoing and Defendant's summary judgment motion, Defendants submit that summary judgment of invalidity for obviousness type double patenting is proper.

### D.  The '894 Patent is Invalid Due to Anticipation

"Anticipation under 35 U.S.C. § 102 requires the disclosure in a single piece of prior art of each and every limitation of a claimed invention." *Electro Med. Sys. S.A. v. Cooper Life Sciences*, 34 F.3d 1048, 1052 (Fed. Cir. 1994). *See also Verdegaal Bros. v. Union Oil Co. of California*, 814 F.2d 628,631 (Fed. Cir. 1987)("[a] claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference"). Also, "[a] generic claim cannot be allowed to an applicant if the prior art discloses a species falling within the claimed genus."  *In re Slayter*, 276 F.2d 408, 411 (CCPA 1960).  *See also In re Gosteli*, 872 F.2d 1008 (Fed. Cir. 1989). The species in this situation will anticipate the genus.

Anticipation requires a two-step analysis. The first step of an anticipation is claim construction. *Helifix Limited v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000). The second step in an anticipation analysis involves a comparison of the construed claim to the prior art. *Id.* The words of a claim must be given their plain meaning unless applicant has provided a clear definition in the specification. *In re Zletz*, 893 F.2d 319, 321 (Fed. Cir. 1989). However, if claim elements are expressed in "means plus function" format, the scope of the element includes the structures disclosed in the specification for performing the recited function plus equivalents to those structures. *See, e.g., In re Donaldson*, 16 F.3d 1189 (Fed. Cir. 1994). If the Court finds that the '945 patent is fully incorporated by reference, the conclusion that the '894 patent is anticipated by the '338 patent is inescapable. The '338 patent would represent a species of a later filed genus patent. In such a situation, a finding of anticipation is automatic.

## II. THE '894 PATENT IS INVALID FOR INDEFINITENESS

As fully set forth in Defendants' pending motion for summary judgment of invalidity of the '894 patent for indefiniteness, there is no genuine issue of fact as to the invalidity of the '894 patent. It is undisputed that claim 1 of the '894 patent is unintelligible without resort to the second certificate of correction. Further, as detailed in Defendants' pending motion, the second certificate of correction was improperly issued. Accordingly, claim 1 and dependent claims 2-4 are all unintelligible and thereby invalid for indefiniteness under 35 U.S.C. § 112, second paragraph. Summary judgment of invalidity is proper on this record.

### III. AT A MINIMUM, THERE REMAINS TRIABLE ISSUES OF FACT AS TO THE INVALIDITY OF THE '894 PATENT IN VIEW OF THE PRIOR ART UNDER 35 U.S.C. §103

#### A. Legal Standards

Obviousness is ultimately a legal question, based on "underlying determination of fact." *Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881 (Fed. Cir. 1998). "These underlying factual determinations include: (1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; and (4) the extent of any proffered objective indicia of nonobviousness." *Id.* (*citing Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)). To be entitled to summary determination, Leviton must prove that no undisputed facts exist. However, at the very least, there are genuine issues of material fact relating to three out of four of the Graham factors, i.e., the scope and content of the prior art, the differences between the claimed invention and the prior art, and the extent of any proffered objective indicia of nonobviousness, which preclude Leviton's summary determination of obviousness.[2]

To establish a prima facie case of obviousness, three basic criteria must be met. First, there must be some suggestion or motivation, either in the references themselves or in the knowledge generally available to one of ordinary skill in the art, to modify the reference or to combine reference teachings. *See In re Linter*, 458 F.2d 1013, 1016 (CCPA 1972) ("In determining the propriety of the Patent Office case for obviousness in the first instance, it is necessary to ascertain whether or not the reference teachings would appear to be sufficient for one of ordinary skill in the relevant art having the

---

[2] Plaintiff has identified a person of ordinary skill in the art as a 'junior engineer' or an engineer having one year of experience. For the purposes of its Opposition, Defendant accepts Plaintiff's definition of the person of skill in the art.

reference before him to make the proposed substitution, combination, or other modification").  *See also In re Fine*, 837 F.2d 1071 (Fed. Cir. 1988); *In re Jones*, 958 F.2d 347 (Fed. Cir. 1994). Second, there must be a reasonable expectation of success. *See, e.g., In re Merck & Co. Inc.*, 800 F.2d 1091, 1097 (Fed. Cir. 1986). However, obviousness does not require absolute predictability.  *In re Lamberti*, 545 F.2d 747, 750 (CCPA 1976).  Finally, the prior art reference (or references when combine) must teach or suggest all of the claim limitations.  *See In re Wilson*, 424 F.2d 1382, 1385 (CCPA 1970) ("[a]ll words in the claim must be considered in judging the patentability of that claim against the prior art).

For the reasons set forth below, the '894 patent is invalid due to anticipation and/or obviousness. The prior art cited for the purpose includes Draper et al. (U.S. Patent No. 4,263,637) ("the '637 patent") (attached as Exhibit 5), Klein et al. (U.S. Patent No. 4,001,652) ("the '652 patent") (attached as Exhibit 6) and Virani et al. (U.S. Patent No. 4,010,431) ("the '431 patent") (attached as Exhibit 7).  These prior art references, either alone, or in combination with the '338 patent render the claims of the '894 patent invalid.

### B. The Scope and Content of the `637, the '652, the `431, and the `338 Patents are Proper under the Graham Inquiry

#### 1.  Scope of the Pertinent Prior Art

The Federal Circuit, in determining whether a reference is within the appropriate scope of the art, has adopted a "two-step test": (1) whether the prior art reference is "within the field of the inventor's endeavor"; and (2) whether the reference is "reasonably pertinent to the particular problem with which the inventor was involved." *See In re DeminsId*, 796 F.2d 436,441-442, 230 USPQ 313, 15 (Fed. Cir. 1986), quoting

*In re Wood*, 599 F.2d 1032, 1036, 202 USPQ 171, 174 (CCPA 1979). *See also In re Oetiker*, 977 F.2d 1443, 1446, 24 USPQ2d 1443, 1445 (Fed. Cir. 1992) ("In order to rely on a reference as a basis for rejection of an applicant's invention, the reference must either be in the field of applicant's endeavor or, if not, then be reasonably pertinent to the particular problem with which the inventor was concerned."); *Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 620, 225 USPQ 634, 638 (Fed. Cir. 1985) ("To ascertain the scope of the prior art, a court examines "the field of the inventor's endeavor."); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1535, 218 USPQ 871, 876 (Fed. Cir. 1983).

The '637 patent teaches an electric receptacle having a ground fault circuit interrupting mechanism. The receptacle contains at least electronic and mechanical components to detect a ground fault and grounded neutral condition on the load side of the receptacle, plus a coil and trip mechanism to open the receptacle circuit on occurrence of a ground fault or grounded neutral condition. *See* Abstract of the '637 patent. (Exhibit 5). The '652 patent teaches an electrical receptacle assembly affording ground fault protection. The receptacle contains at least electronics/magnetics module and operating mechanism, such as a pivotal, movable contact carrying arm, a latch, a reset button and a trip solenoid. *See* Abstract of the `652 patent. (Exhibit 6). The '431 patent teaches an electric receptacle with ground fault protection. The receptacle components include at least a contact arm, which is movable between open and closed positions of the contacts and is operatively connected to a latch member releasingly holding the arm in the contact closed position. *See* Abstract of the `431 patent. (Exhibit

7).  The '338 patent, as discussed above, contains all of the elements described in the claims of the '894 patent.

Thus, the '637, the '652, the `431 and the '338 patents are proper prior art references "within the field of the inventor's endeavor" (i.e., switching apparatus having ground fault protection) and "reasonably pertinent to the particular problem with which the inventor was involved" (i.e., affording ground fault protection).

### 2.  Content of the Pertinent Prior Art

"Before answering Graham's 'content' inquiry, it must be known whether a patent or a publication is in the prior art under 35 U.S.C. § 102." *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1568, 1 USPQ2d 1593, 1597 (Fed. Cir.), cert. denied, 481 U.S. 1052 (1987).  Here, the status of the '652, '431, and '637 as prior art is unchallenged.  The '338 patent was admitted to be prior art in the ITC proceeding.  *See* Exhibit 1.

### C.  The `894 Patent Is Invalid Based on the '637, the '652, and the `431 Patents, Either Alone or in Combination with the '338 Patent

The similarities between the prior art and the claims of the '894 patent are set forth below:

### 1.  The '894 Patent Is Anticipated and/or Invalid over the '637 Patent, Either Alone or, in Combination with the '338 Patent

The '637 Patent discloses an electrical receptacle having a GFCI apparatus, which is a "switching apparatus for selectively interrupting an electrical connection between input and output conductors."  *See, e.g.*, the Abstract.  It is clear from Fig. 12 that the '637 Patent discloses a housing. Figs. 4, 6, and 7 show a plunger 133.  As described, e.g., at Col. 8, lines 15-25, the plunger moves between first and second positions when a trip coil 51 is energized.  The plunger, thus, must be magnetizable (for

the energization of the trip coil to cause it to move).  Trip coil 51 corresponds to the claimed electromagnet coil means.  Input and output contacts are shown in several of the drawings, for example, Figs. 5 and 6 (103a, 1036,104a, 104b), and are shown and described (*see*, *e.g.*, Col. 6, lines 42 ff.) as being electrically connected to input and output conductors. The '637 patent contains a number of components that are corresponding to the claimed movable means.  For example, the first movable member comprising the claimed movable means may be interpreted as being latch release plate 132, and the second movable member may be interpreted as being projecting member 107; however, there are numerous other ways of interpreting the components of the `637 patent as disclosing the movable means. *See*, *e.g.*, Col. 8, lines 15-25.

The `637 patent also discloses a mounting strap 152 or 154 (referenced as both in Col. 10 and 11), shown, for example, in Fig. 3, which is for mounting the apparatus. As shown in Fig. 3 and described in Col. 10, mounting strap 152 extends around the rear side (i.e., inside the wall, if the apparatus is mounted in a wall) of the apparatus. It is not, however, specifically disclosed that a portion of mounting strap 152 defines a path of a magnetic field generated by trip coil 51 to influence the position of plunger 133.

However, according to Plaintiff, it is "elementary physics" that if a magnetically conductive material, like steel, is placed in proximity to a magnetic field, the magnetic field will follow a path through the magnetically conductive material, rather than through the air.  According to Plaintiff's expert, this is due to the fact that the magnetically conductive material has a higher magnetic permeability than the air, which necessarily influences the position of the plunger.

Plaintiff asserts that the '637 patent does not use a magnetic strap means to define the magnetic path. However, it is well-known that mounting straps for electrical receptacles are, and were at the time the invention was made, typically manufactured of sheet steel, a magnetically conductive material. Exhibit 8 (Haynes Dec. at ¶ 39). Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was made to construct mounting strap 152 out of sheet metal.

It is noted that trip coil 51 is in proximity to the rear portion of the apparatus and, thus, to the rear portion 154 of mounting strap 152. This is evident from a juxtaposition of Figs. 2 and 6, noting that screw 38 is shown at the rear of the apparatus in Fig. 2 and that trip coil 51 is shown mounted in close proximity to screw 38 in Fig. 6. Therefore, trip coil 51 is in close proximity to the rear portion 154 of mounting strap 152. Therefore, since it would be obvious to construct mounting strap 152 of a magnetically conductive material, then it would have been obvious based on Plaintiff's position that a portion of mounting strap 152 would define a path of the magnetic field generated by trip coil 51.

Even if the '637 patent did not contain a magnetic strap, such a strap is taught in the '338 patent. The '338 patent teaches, as admitted by Leviton, a switch apparatus, wherein

> the switch is activated by a "solenoid" formed of a "coil" and a "plunger" that slides within the central axis of the coil. When the coil is energized, a magnetic field is generated which causes movement, i.e., influences the position of the plunger to move into the center of the coil. The coil is located adjacent to a portion of the magnetic strap means, such that a path of the magnetic field generated by the coil is defined by the portion of the strap means adjacent to the coil.

Leviton Br. at 5. In fact, Leviton conceded that the magnetic strap means of the `338 patent is the same as that of the '894 patent. Leviton Br. at 5.

Thus, one of ordinary skill in the art, in view of the magnetic strap described in the '338 patent, knowing that the '338 patent discloses a switching device that can be used as a GFCI, would be motivated to replace mounting strap 152 of the '637 patent with the strap of the '338 patent to take advantage of the special property of the strap, i.e., to define a path of the magnetic field generated by the coil, as indicated in the '338 patent. This combination would have reasonable expectation of success because the change is minor, i.e., the mounting strap 152 of the '637 patent and the strap in the '338 patent are similarly constructed and functionally similar except for the better magnetization of the strap means of the '338 patent. Thus, the combined teachings of the '637 and the '338 patents would clearly render claim 1 of the '894 patent obvious.

Regarding claim 2 of the '894 patent, one may notice from Fig. 4 of the '637 patent that when the trip coil 51 is energized, as described at Col. 8, lines 15-25, plunger 133 becomes "operatively connected" to latch release plate 132. Alternatively, the '637 patent can be combined with the '337 patent (which provides the magnetic strap means) to render claim 2 of the '894 patent obvious. Hence, for the reasons discussed above, claim 2 is also obvious over the '637 patent or over the combined teachings of the '637 and the '338 patent.

Regarding claim 3 of the '894 patent, the '637 patent shows plunger 133 having an elongated portion extending into trip coil 51, *see e.g.*, Fig. 7. Alternatively, the '637 patent can be combined with the '338 patent (which provides the magnetic strap means) to render claim 2 of the '894 patent obvious. Therefore, for the reasons stated above, claim 3 is also obvious over the '637 patent or over the combined teachings of the '637 and the '338 patents.

15

Claim 4 of the '894 patent depends from claim 1, which is also obvious over the '637 patent. The '637 patent teaches all of the claimed subject matter except for the claimed spring means for returning the plunger to its first position following energization of the electromagnetic coil. However, such spring means were well-known at the time the invention was made, as evidenced, for example, by the '338 patent. *See, e.g.*, Col. 6, lines 60-66, Col. 8, lines 61-68 to Col. 9, line 1-5, as well as Fig. 4, which a spring 112. Therefore, for the reasons stated above, claim 4 is also obvious over the '637 patent or over the combined teachings of the '637 and the '338 patents.

### 2. The Combined Teachings of the '652 and the `338 Patents Render Obvious the '894 Patent

The '652 patent discloses all of the subject matter claimed in claim 1 of the '894 patent except the strap means. In particular, the '652 patent discloses a housing, noting Fig. 1, reference numerals 20, 22. It further discloses a magnetizable plunger means 56b, movable between first and second positions, shown and described, for example, in Fig. 3 and at col. 5, lines 40 ff. Also shown and described is an electromagnet coil means 56 that, when energized, moves plunger 56b; this is shown and described, for example, in Figs. 3 and 4 and at cot. 5, lines 40 ff. The claimed input and output contacts are indicated by reference numerals 84 and 97, as shown in Figs. 3-6. The claimed movable means are disclosed, for example, in the form of latch 96a (first movable member) and contact arm 70 (second movable member). The '652 patent further discloses a mounting plate 32, as shown, e.g., in Figs. 1-3, for mounting the apparatus to a desired surface. The '652 patent also teaches the use of a U-shaped magnetic frame 58 in which the solenoid coil 56 is mounted; *see, e.g.*, Fig. 3 and Col. 4, lines 5-18, which inherently defines a path of a magnetic field generated by coil 56.

16

However, the '652 patent does not explicitly disclose or teach that a portion of a mounting strap defines a path of a magnetic field generated by the coil means.

As indicated above, Leviton conceded that the magnetic strap means of the '338 patent is the same as that of the '894 patent. Leviton Br. at 5. Since the magnetic strap means of the '338 patent is encompassed by the "strap means" limitation of the '894 patent, one of ordinary skill in the art, in view of the magnetic strap described in the '338 patent and the advantage of the strap for defining a path of the magnetic field, would be motivated to replace the U-shaped magnetic frame 58 with the magnetic strap of the '338 patent and have a reasonable expectation of success, particularly since the change is minor. Thus, the combined teachings of the '652 and the '338 patents would render claim 1 of the '894 patent obvious.

Regarding claim 2 of the '894 patent, as shown in Figs. 4 and 6 and described at col. 5, lines 40, the '652 patent discloses that plunger 566 is movable with first movable member (latch) 96a and is "operatively connected" to latch 96a during tripping operation. Therefore, the combined teachings of the '652 and the '338 patents would render claim 2 of the '894 patent obvious.

Regarding claim 3 of the '894 patent, it is shown that plunger 56b, in e.g., Figs. 3 and 4 of the '652 patent, has an elongated portion extending into the coil 56. Therefore, claim 3 is obvious over the combined teachings of the '652 and the '338 patents.

Regarding claim 4 of the '894 Patent, the spring means is disclosed in the '338 patent. *See, e.g.*, spring 112 as described in col. 6, lines 60-66, col. 8, lines 61-68 to col. 9, line 1-5, as well as Fig. 4. Therefore, for the reasons stated above, claim 4 is also obvious over the combined teachings of the '652 and the '338 patents.

### 3. The `894 Patent Is Obvious over the '431 Patent, Either Alone or in Combination with the `338 Patent

The '431 patent discloses all of the subject matter claimed in claims 1-3 of the '894 patent, except for the strap means. In particular, the '431 patent discloses a housing 65, as described at Col. 3, lines 49-55. Electromagnet coil means 147 and magnetizable plunger means 149 are shown in Fig. 5 and described, for example, at col. 5, lines 63-68. Input and output contacts are shown in Figs. 6-9 as indicated by reference numerals 47, 49, 51, and 53. The '431 patent further discloses a mounting plate 67, noting Figs. 1-3 and col. 3, lines 47-56, which is used to attach the apparatus to a selected surface (e.g., a wall). Mounting plate 67, as shown in Fig. 3, covers the entire apparatus, and it is clear from Col. 4, lines 35-38 and Figs. 3 and 5, taken together, that the coil 147 is located in close proximity to mounting plate 67. The '431 patent further discloses structures corresponding to the claimed movable means, for example, latch plate 139 (first movable member) and contact arm 41 (second movable member). What is not explicitly disclosed is that mounting plate 67 is made of a magnetically conductive material and, therefore, defines a path of a magnetic field generated by coil 147.

It is well-known that mounting plates and mounting straps for electrical receptacles are, and were at the time the invention was made, typically manufactured of sheet steel, a magnetically conductive material. Exhibit 8 (Haynes Dec at ¶ 52). Therefore, it would have been obvious to one of ordinary skill in the art at the time the invention was made to construct mounting plate 67 out of sheet metal in order to follow standard operating procedures.

18

Alternatively, since the magnetic strap means of the '338 patent is the same as that of the '894 patent, (Leviton Br. at 5), one of ordinary skill in the art, in view of the magnetic strap described in the '338 patent and the advantage of the strap for defining a path of the magnetic field, would be motivated to replace mounting plate 67 with the magnetic strap of the '338 patent and have a reasonable expectation of success. Exhibit 8 (Haynes Dec. at ¶ 46).  Thus, the combined teachings of the '431 and the '338 patents would render claims 1-3 of the '894 patent obvious.

As discussed above, claim 4 of the '894 patent depends on Claim 1, which is anticipated and/or obvious over either the '431 patent or the combination of the '431 patent and the '338 patent. The '431 patent teaches all of the claimed subject matter except for the claimed spring means for returning the plunger to its first position following energization of the electromagnetic coil. However, such spring means were well-known at the time the invention was made.  Exhibit 8 (Haynes Dec. at ¶ 47).  For example, the '338 patent discloses a spring means.  *See, e.g.*, spring 112 as described in Col. 6, lines 60-66, Col. 8, lines 61-68 to Col. 9, line 1-5, as well as Fig. 4.  It would have been obvious to one of ordinary skill in the art at the time the invention was made to include such spring means as an obvious design choice that provides simplicity of design and low cost.

### D. Leviton Has Not Fulfilled Its Burden to Show Objective Evidence of Secondary Considerations and Even If So, They Are Not Controlling Due to Strong Showing of Primary Considerations

In *Graham v. John Deere*, 383 U.S. at 17, the U.S. Supreme Court, after describing the factors to be considered for determination of obviousness, further stated that "[s]uch secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc. might be utilized to give light to the circumstances

surrounding the origin of the subject matter sought to be patented." Secondary considerations, nevertheless, are truly "secondary." They are relevant only when the issue of patentability is in doubt or to tip the scales. *See*, *e.g.*, *Anderson's-Black Rock. Inc. v. Pavement Salvage Co.*, 396 U.S. 57, 61, 163 USPQ 673 (1969); *Ryko Manufacturing Co. v. Nu-Star. Inc.*, 950 F.2d at 719,21 USPQ2d at 1058 (Fed. Cir. 1991) ("[S]econdary considerations did not carry sufficient weight to override a determination of obviousness based on primary considerations."); *Newell Companies v. Kenney Mfg. Co.*, 864 F.2d 757, 768, 9 USPQ2d 1417, 1426 (Fed. Cir. 1989) ("[A]lthough [factors of secondary considerations] must be considered, they do not control the obviousness conclusion."), cert. denied, 493 U.S. 814 (1989); *Custom Accessories Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 960, 1 USPQ2d 1196, 1199 (Fed. Cir. 1986) ("[T]he absence of objective evidence does not preclude a holding of non-obviousness because such evidence is not a requirement for patentability").

Plaintiff has the burden of proof of establishing the existence of secondary considerations in support of the validity of its patent. While Plaintiff alleges that such secondary considerations include commercial success, long felt but unresolved need, failure of others, and copying, it provides evidence only of copying and commercial success.  This evidence is only a factor to be weighed in determining whether the claims of the '894 patent are valid.  This is precisely the type of weighing which may not be performed on a motion for summary judgment and properly the duty of a fact-finder.

## IV. AT A MINIMUM, THERE REMAINS TRIABLE ISSUES OF FACT AS TO WHETHER THE '894 PATENT IS INVALID DUE TO AN ON-SALE BAR

Pursuant to 35 U.S.C. §102(b), a patent is invalid if "the invention was ... in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. §I02(b).

Defendants have recently uncovered evidence that the '894 patent may be invalid in view of sales of Leviton's GFCIs embodying the '894 technology more than one year prior to the April 1, 1985 filing date of the patent. However, as predicted, and for the reasons outlined in Defendants' July 17, 2003 letter to chambers, Defendants have been unable to fully gather all of the available evidence. Plaintiff's deceptive and dilatory conduct during discovery, has greatly prejudiced Defendants' ability to prepare its dispositive motions and oppositions. Notably, to this day, Plaintiff has still not provided copies of certain of the documents identified for production after Defendants' document inspection in New York on June 19, 2003. The probable motive for Plaintiff's continuing refusal to produce certain documents was uncovered during a review of papers filed by the Respondents in the ITC action involving the '894 patent. The ITC papers were produced by Plaintiff less than a week before the due date for dispositive motions. However, it is noteworthy that the unredacted deposition transcript of Steve Campolo from the ITC proceeding has not yet been produced. It is that deposition transcript as well as Plaintiff's yet to be produced catalogs that are believed to contain information highly probative to the on-sale bar issue.

Indeed Mr. Campolo's deposition testimony formed the basis of allegations of invalidity due to the on-sale bar in the ITC proceeding. *See* pages 35-36 of Respondent's Memorandum in Opposition to Complainant's Motion for Summary

Determination of Validity and Enforceability for the '894 Patent and In Support of Respondents' Cross-Motion for Summary Determination that the '894 Patent is Invalid and Unenforceable attached hereto as Exhibit 9.

Thus, there remains an issue of fact as to the on-sale bar and summary judgment on this issue is unwarranted at this time.

## V.  THE '894 PATENT IS UNENFORCEABLE DUE TO INEQUITABLE CONDUCT

There is no evidence that the '338 patent was properly before the Examiner. There is nothing on the face of the '338 patent to indicate that it was properly before Examiner.

The '338 patent is clearly a very material reference to the prosecution of the '894 patent.  The Federal Circuit has held "that under the 'reasonable examiner' standard of materiality, '[an] application was highly material to the prosecution of [an application, where] it could have conceivably served as the basis of a double patenting rejection.'" *Dayco v. Total Containment,* 329 F.3d 1358, 1365 (Fed. Cir. 2003).

Given the highly material nature of the '338 patent, the showing of intent is minimized.  *See, e.g., FMC Corp. v. Manitowoc Co.,* 835 F.2d 1411 (Fed. Cir. 1987)(finding that the degree of intent to mislead necessary to trigger culpability varies in proportion to the materiality of the information).  Further, given that prosecution counsel clearly knew of the '338 patent, its non-disclosure to the PTO raises an inference of intent to deceive.  "No single factor or combination of factors can be said always to *require* an inference of intent to mislead; yet a patentee facing a high level of materiality and clear proof that it knew or should have known of that materiality, can expect to find it difficult to establish 'subjective good faith' sufficient to prevent the drawing of an inference of intent to mislead."  *Id.* at 1416 (emphasis in original).  Upon

22

examination of prosecution counsel, the jury could very well find the witness not credible and conclude that inequitable conduct was committed.

In addition, it is also noted that the two prior art references cited by another Examiner in the '262 application, which was incorporated by reference in and priority claimed from by the '894 patent, do not appear on the face of the '894 patent, and thus, presumably were not considered by the Examiner or disclosed by prosecution counsel. The '262 application with similar claim subject matter was under a rejection by another Examiner which was never responded to and the application went abandoned. "When prosecuting claims before the Patent Office, a patent applicant is, at least implicitly, asserting that those claims are patentable. A prior rejection of a substantially similar claim refutes, or is inconsistent with the position that those claims are patentable. An adverse decision by another examiner, therefore, meets the materiality standard under the amended Rule 56." *Dayco*, 329 F.3d at 1368. Again, it is clear that prosecution counsel knew of the rejection and these references, and accordingly, upon examination of prosecution counsel, the jury could vary well conclude that inequitable conduct was committed.

Finally, as discussed above, there is a genuine issue relating to a potential on-sale bar and the invalidity of the '894 patent. On-sale activity near or before the critical date is highly material. Plaintiff's own expert agrees that there is a duty to disclose any potential barring sales activity. It is believed that Mr. Campolo's deposition testimony in the ITC proceeding as well as Leviton's catalogs from the early 1980's will show that Leviton sold GFCIs that read on the claims in the '894 patent more than one year before

the filing date of the '894 patent.[3]  More specifically there is an issue of fact whether the sales occurred, if potential barring sales were investigated, and what if any information was disclosed to the PTO.  *Brasseler U.S.A. v. Stryker Sales Corp.*, 267 F.3d 1370 (Fed. Cir. 2001)(affirming a case exceptional under §285 for inequitable conduct for prosecution counsel's failure to investigate potential on-sale bar activity).  Due to the lost file history at the PTO and the destruction of prosecution counsel's file, an inference should be drawn that information about the GFCI sales that occurred prior to the filing date of the '894 patent was disclosed to the PTO.  Given the high materiality of a potential on-sale bar, a reasonable jury could infer intent to mislead the PTO, and therefore find that inequitable conduct was committed.

## VI.    THE '894 IS UNENFORCEABLE DUE TO PATENT MISUSE

Plaintiff has not moved for summary judgment on the issue of patent misuse or addressed the numerous allegations raised in Defendants' interrogatory responses regarding its defense of misuse.  *See* Defendants' Responses to Plaintiff's First Set of Interrogatory Responses, response to Inter. No. 14.  (Exhibit 10).  Therefore it would be improper to dispose of this issue on summary judgment.

---

[3] Such materials are not attached to this Opposition because they have yet to be produced by Plaintiff despite being properly requested during discovery by Defendants.  The requested material includes an unredacted copy of Mr. Campolo's deposition from the ITC proceeding in late June 2003 and the Leviton catalogs from prior to 1993, which are subject to a Motion to Compel that has been served on Leviton pursuant to Local Rule 104.

**CONCLUSION**

In view of the foregoing, Defendants' respectfully request that Plaintiff's motion for summary judgment of validity and enforceability be denied, and Defendants' cross-motion for summary judgment of invalidity and unenforceability be granted.

Respectfully submitted,

UNIVERSAL SECURITY INSTRUMENTS INC.
USI ELECTRIC, INC.

By:_____/s/_____
Maurice U. Cahn, Esq.
Frederick N. Samuels, Esq.
William E. Bradley, Esq.
CAHN & SAMUELS, LLP
2000 P Street, NW, Suite 200
Washington, D.C.  20036
(202) 331-8777 (Phone)
(202) 331-3838 (FAX)