## Page 53

1 leaves no doubt as to what the error is, what the mistake is?
2     MR. MANAK: Because, Your Honor, you must read the
3 claim in light of the specification.
4     THE COURT: Okay. I keep waiting for you to take me
5 to the specification.
6     MR. MANAK: That's where we are going, Your Honor.
7     THE COURT: Okay. Let's go to the specification.
8     MR. MANAK: Going back to the '894 patent, Your Honor,
9 we again go to column 3. We read this into the record earlier,
10 so I can paraphrase it now, Your Honor, or I can read it again
11 into the record.
12     THE COURT: Are you at the same line, line 17?
13     MR. MANAK: Right. Line 17, Your Honor, as well as --
14     THE COURT: Anything other than line 17 in the
15 specification?
16     MR. MANAK: Yes, Your Honor. The '894 patent
17 specification incorporates by reference U.S. --
18     THE COURT: Well, let's finish with the specification
19 of '894. We have line 17 through line 21; right?
20     MR. MANAK: Through line 25, Your Honor.
21     THE COURT: Through line 25?
22     MR. MANAK: Well, we would also refer Your Honor to
23 the drawings. One must read the specification in connection
24 with the drawings.
25     THE COURT: Of course.

Sharon Cook, Official Court Reporter, U.S. District Court

## Page 55

1     MR. MANAK: Lines 17 through 25.
2     THE COURT: All right.
3     MR. MANAK: Also, further down in that same column,
4 column 3, about line 45, beginning with the words:
5         Upon energization of coil assembly 346
6     THE COURT: Through what line?
7     MR. MANAK: Through line 51.
8     THE COURT: Okay. Through the end of that paragraph.
9 Anything else?
10     (Pause in the proceeding.)
11     THE COURT: Let me just say that it was not my
12 intention to handicap the plaintiff's presentation. If Mr.
13 Sutton wants to make this legal argument, I am happy to have
14 Mr. Sutton make the legal argument. I thought I was clear.
15     What I am not prepared to have a lawyer do in any case
16 is to be both a witness and a lawyer. It seems to me that
17 the -- you are doing great as far as I am concerned, and you
18 can do it any way you want, but to the extent that Mr. Sutton
19 has this more at hand, if you want to turn it over to him, I am
20 happy to have you do that.
21     MR. SUTTON: Your Honor, I feel that by the statements
22 you have made on the record, with all due respect, you have
23 placed us at a terrible disadvantage because I am not a witness
24 in this case at this point. I may or may not become a witness.
25 I certainly don't intend to become a witness, and I certainly

Sharon Cook, Official Court Reporter, U.S. District Court

## Page 54

1     MR. MANAK: If I may finish, Your Honor.
2     THE COURT: Of course. Tell me where in the
3 specification -- it would help me if you just tell me where in
4 the specification, first of all, the language you are relying
5 on is located so that I can highlight it. Column 3, line 17
6 through -- you say line 25?
7     MR. MANAK: Yes.
8     THE COURT: Okay.
9     MR. MANAK: The language there refers to the coil
10 assembly and windings --
11     THE COURT: Right, and so on.
12     MR. MANAK: And that refers to an electromagnetic
13 coil.
14     THE COURT: Right. So, then you want to take me to
15 the drawings?
16     MR. MANAK: It's not a great leap of faith, Your
17 Honor, to read the coil assembly --
18     THE COURT: Wait, Mr. Manak. All I am asking for
19 before I hear your argument is that you just identify for us
20 exactly what columns and what lines you are relying on, and
21 what drawings you are relying on, just so that I have it in
22 front of me.
23     MR. MANAK: Okay. The portion of the patent which we
24 just referred to in column 3. Also, --
25     THE COURT: Lines 17 through 25?

Sharon Cook, Official Court Reporter, U.S. District Court

## Page 56

1 was not going to be here to resurrect a file history that was
2 lost recently and may be found by the Patent Office.
3     When a Patent Office loses files, they often find
4 them. As a matter of fact, Your Honor, my second Certificate
5 of Correction request was lost by the Patent Office for a month
6 or two and then found so that they could issue it.
7     But, Your Honor, I think for me to pick up the ball
8 now and run with this presentation would be -- all I would ask,
9 Your Honor, is that we be able to submit to Your Honor
10 additional papers, both sides, to present to Your Honor what we
11 are trying to express here. We have been handicapped in our
12 presentation, but I think we can then, in a cogent way, spell
13 out and give you references line by line as to exactly what it
14 is that we are relying on and what the differences are between
15 _Superior_ and our case.
16     THE COURT: Well, you just said a whole lot. First of
17 all, you said I handicapped you in your presentation. So, you
18 are saying that exactly what I didn't intend to do is exactly
19 what I have done.
20     MR. SUTTON: I don't mean to suggest in any way that
21 you meant to do that. It's just that by my being here today
22 and being prepared to make a presentation, and Mr. Manak was
23 accompanied me, to assist me, and he is doing a great job,
24 but --
25     THE COURT: I thought he was.

Sharon Cook, Official Court Reporter, U.S. District Court

1    MR. SUTTON: If we are struggling to get for you
2 language and it's taking us a little longer than it would
3 otherwise, I would just ask your indulgence, Your Honor.
4    THE COURT: Sure. Okay.
5    MR. MANAK: Maybe Mr. Sutton could pick out a few
6 things in the specification that we could point to Your Honor,
7 or we could do that in a supplemental paper if you like.
8    THE COURT: See, that is what I thought we were going
9 to be talking about here today. I suppose it was somewhere in
10 your PowerPoint presentation, and -- look, I didn't intend to
11 handicap your presentation. But as I mentioned about an hour
12 and a half ago, you know, we don't operate on this protocol
13 where the judge comes out and sits and asks no questions for
14 two hours and is the quiet receptor. You know, I don't come
15 out here as an empty vessel. I actually read the papers. I
16 actually read the cases. I actually try to prepare for the
17 hearing.
18    So, I come out with the expectation that it is going
19 to be a give and take and that my particular questions, whether
20 they are stupid and wrong-headed or whether they are brilliant
21 and insightful, that my questions will actually be a focus of
22 counsel's presentation and answers.
23    I honestly thought it was very obvious that <u>Superior</u>
24 <u>Fireplace</u> is the key authority here. I came out prepared to
25 spend a lot of time talking about <u>Superior Fireplace</u>. With all

1 Continuation-In-Part Application, the -- I will wait until Your
2 Honor is there.
3    THE COURT: Yes. Okay.
4    MR. MANAK: The specification states that it is:
5       ... a continuation-in-part of applicants' both
6       pending United States patent applications Ser.
7       Nos. 431,981 now U.S. Pat. No. 4,518,945, ...
8    And going down in that paragraph, Your Honor, it says:
9       ... and incorporates by reference as if fully
10      set forth herein the entire contents and subject
11      matter thereof and of any and all of their
12      respective "parent" patent applications ...
13   So, in that passage, Your Honor, the '894
14 specification is incorporating by reference, which is also
15 common to do in patent drafting, another patent document,
16 namely the 4,518,945 patent.
17   Now, Your Honor may have a copy of that patent in
18 front of you.
19   THE COURT: I do.
20   MR. MANAK: If you would be so kind as to turn to
21 column 10.
22   THE COURT: Okay. I'm there.
23   MR. MANAK: In particular, Claim 1.
24   THE COURT: Okay.
25   MR. MANAK: A review of that claim, Your Honor, we

1 respect, I came out and saw that the first slide was the
2 history and prosecution of the patent, or something. I don't
3 want to go back to the beginning of time. I want to deal with
4 the case law that it seems to me is controlling here.
5    But I certainly didn't mean to insult Mr. Sutton.
6 That was certainly not my intention.
7    MR. MANAK: And you did not, Your Honor. Let me just
8 say that by no means was he insulted. I guess we were just
9 explaining to Your Honor that we are shuffling a little paper
10 over here to get to some of the specification and point you to
11 it.
12   THE COURT: I don't understand why this was not
13 developed in your papers. Maybe it was, and I missed it. But
14 it seemed to me perfectly obvious that what I was going to have
15 to do is what we are I guess trying to do now. I want you to
16 point in the specification to the language and the diagrams
17 that make it compelling to conclude that surely these seven
18 words would have been inserted there, not just by the John
19 Nashes of the world, but by every sophomore engineering student
20 at any university around the country.
21   MR. MANAK: Can we go to that precise point, Your
22 Honor?
23   THE COURT: Go ahead.
24   MR. MANAK: If we look at the '894 patent in column 1,
25 Your Honor, at about line 6, underneath the heading

1 submit, would show some similarities to the claim and some
2 identical language to the claim at issue in the '894 patent.
3 In particular, Your Honor, the --
4    THE COURT: It's exactly the same language, isn't it?
5    MR. MANAK: Yes, it's exactly the same language.
6    Now, we submit, Your Honor, one of ordinary skill in
7 the art, whether he or she rises to the level of John Nash or
8 not, would read column 1, lines 6 through 16, of the '894
9 patent and know that the '945 patent is incorporated by
10 reference fully.
11   He or she would then go to Claim 1 of the '945 patent,
12 Your Honor, and see the identical language that is missing from
13 the original Claim 1 of the '894 patent. In particular, if you
14 look at Claim 1 of the '945 patent at about line 17, --
15   THE COURT: I'm there.
16   MR. MANAK: You're a lot faster than I am, Your Honor.
17      ... between first and second positions;
18      electromagnet coil means disposed with said
19      housing ...
20   That is, Your Honor, precisely the very same language
21 that is missing from the original Claim 1 of the '894 patent.
22   THE COURT: Can I ask you a question?
23   MR. MANAK: Of course.
24   THE COURT: Why didn't you say that in your
25 memorandum?

Page 61

1   MR. MANAK:  I believe we did refer to that, but --
2   THE COURT:  You referred to the fact that it was
3 incorporated.  But why didn't you point out that the precise
4 language that was omitted in the '894 patent appeared in
5 virtually precisely the same place in the '945 patent?
6   MR. MANAK:  I need to check the -- another attorney
7 wrote this brief, Your Honor.
8   THE COURT:  Oh, that's not fair.
9   MR. MANAK:  I know.  I am not saying the dog ate my
10 homework, Your Honor.  I'm just saying that I need to look
11 through the brief to see if we did in fact do that.
12   THE COURT:  All right.
13   MR. MANAK:  I'm not sure.
14   THE COURT:  I try to prepare.  I tried to read your
15 memorandum.  But I confess, I don't go through and read every
16 patent in a patent case.  I don't think Judge Pregerson relied
17 on that either.
18   MR. MANAK:  If we have omitted that point, -- we
19 submit, Your Honor, it is a significant point.  If we have
20 omitted that from our opposition papers, we apologize.
21   THE COURT:  I think it is very significant, and I am
22 ready to hear from the defendants on it.
23   MR. MANAK:  May I just --
24   THE COURT:  Let me give you a rest.
25   MR. MANAK:  Okay, Your Honor.

Sharon Cook, Official Court Reporter, U.S. District Court

Page 62

1   THE COURT:  Let me hear from Mr. Cahn.
2   Mr. Cahn, why doesn't that take care of it in light of
3 the analysis of Superior Fireplace?
4   MR. CAHN:  Your Honor, I believe this entire
5 discussion was premised on tying the nature of the error to a
6 type one error.  Is that correct?
7   THE COURT:  No, no.  Let me review.
8   Plaintiff says it's a type one error.  I think it's a
9 type three error.  But I don't think that matters.  The point
10 here is that Superior Fireplace says -- well, first, let me do
11 it this way.  We agree, do we not, that it is a typographical
12 mistake or error?
13   MR. CAHN:  There is an error, Your Honor.  How it came
14 about and who is responsible, I can't tell you whether it was
15 typographical or what, but I will say that there is an error.
16 There is an omission and some sort of clerical error.
17   THE COURT:  The Federal Circuit says, at page 1369:
18       The phrase "clerical or typographical nature" is
19       not explicitly defined in Section 255... A
20       standard dictionary defines "clerical" as
21       relating to an office clerk or office work, and
22       defines "typographical" as relating to the
23       setting of type, printing with type, or the
24       arrangement of matter printed from type.
25   Now, I don't want to beat you over the head with it,

Sharon Cook, Official Court Reporter, U.S. District Court

Page 63

1 but isn't this clearly a clerical or typographical error?
2   MR. CAHN:  Maybe in the office of the attorney or in
3 the Patent Office.
4   THE COURT:  I don't care where.
5   MR. CAHN:  Yes.
6   THE COURT:  We are assuming that this is a 255 error
7 and not a 254 error.  But I don't think it matters, frankly.
8 The point is it is a typographical error.
9   MR. CAHN:  Yes, Your Honor.
10   THE COURT:  Clearly, Mr. Sutton didn't submit this
11 application intending for this language to be deleted from
12 Claim 1; right?
13   MR. CAHN:  Well, the error may have initiated at that
14 stage.  We don't know.
15   THE COURT:  Whether it initiated with Mr. Sutton, with
16 Mr. Sutton's secretary, with Mr. Sutton's law clerk, with Mr.
17 Sutton's partner, whoever it was, it is a typographical
18 mistake.
19   MR. CAHN:  I have never known a patent attorney who
20 knowingly submitted a facially invalid claim to the Patent
21 Office, so yes.
22   THE COURT:  Exactly.  So, it's a typographical error.
23 It's a type three error.
24   As I understand it, Superior Fireplace says you can
25 look at the intrinsic evidence, the patent, the drawings, the

Sharon Cook, Official Court Reporter, U.S. District Court

Page 64

1 specification, and the file wrapper to determine whether or not
2 the Certificate of Correction was correctly issued.
3   What we have here is a patent that incorporates by
4 reference the prior application and patent which contains in
5 Claim 1 the very language at the very location that the missing
6 language has been deleted from the patent in suit.
7   So, why isn't it perfectly clear that this was the
8 type of error that the Patent Office could correctly correct
9 through the issuance of a Certificate of Correction?
10   MR. CAHN:  I would submit, Your Honor, that in the
11 presentation of the materials to the Patent Office, there was
12 no reference to the specific language in Claim 1 of the related
13 patent.
14   THE COURT:  Why does it have to be a specific
15 reference to the specific language?
16   MR. CAHN:  There would have to be some showing that
17 there is a basis for making the change.
18   THE COURT:  I'm not with you.  Are you referring now
19 to -- well, what are you referring to?
20   MR. CAHN:  The submission of the language -- the
21 Certificate of Correction issued because Mr. Sutton filed the
22 document with the Patent Office saying, take this language and
23 insert it here.  Quote, this language.  Put it at this
24 particular location.  He didn't say that this language could be
25 found in some related patent or some connected patent.

Sharon Cook, Official Court Reporter, U.S. District Court

1             THE COURT:  Why does he have to say that?
2             MR. CAHN:  Well, Your Honor, again, going back to the
3 public-notice function, in the event that the public is
4 required to sift through collateral documents, and they are
5 collateral documents, and try to --
6             THE COURT:  What do you mean collateral documents?
7             They are not collateral documents.  The incorporation
8 of this continuation-in-part makes it a part of this
9 application.
10            MR. CAHN:  The specification, the description is what
11 you typically consider as being incorporated in part, not
12 claims.  Again, I have never seen a situation where somebody
13 tries to incorporate by reference the specific language of a
14 claim from another patent into the claim of --
15            THE COURT:  No, no.  They are not trying to
16 incorporate the specific language.  As the '894 was
17 submitted -- I think we have to infer that, as submitted, the
18 language was there.  The language was there.
19            MR. CAHN:  Your Honor, we don't know in the first
20 instance.  In the second instance, I would like to look at
21 the -- if I may have a moment to look at the timing of the two
22 patents.
23            THE COURT:  Sure.
24            (Pause in the proceeding.)
25            THE COURT:  The '945 issued May 1985 on an application

1 filed in 1982.
2             MR. CAHN:  All right.
3             THE COURT:  And the '894 issued June 1986 on an
4 application filed in April 1985.
5             MR. CAHN:  Before the claims of this earlier patent
6 actually issued, Your Honor.
7             THE COURT:  But the application had been pending for
8 three years.
9             MR. CAHN:  The claims are constantly subject to
10 amendment, Your Honor.
11            THE COURT:  Of course.
12            MR. CAHN:  So, where and when that particular language
13 arose, when it was introduced, is something that one would not
14 expect to look for, in any event, in the context of
15 incorporation by reference.
16            Number two, I would like to point out that in view of
17 the exercise that we, ourselves, are going through in this very
18 courtroom, --
19            THE COURT:  Which, in all respect, I now believe was
20 totally unnecessary.  I guess I have to bear some of the blame
21 myself.  I suppose I am supposed to read all of the patents
22 that are submitted to me.  But if this had been pointed out in
23 the plaintiff's memorandum, --
24            MR. MANAK:  May I address that, Your Honor?
25            THE COURT:  Did I miss it?

1             MR. MANAK:  Yes, Your Honor.
2             THE COURT:  Where did I miss it?
3             MR. MANAK:  I made a mistake, Your Honor, and Mr.
4 Dougherty has pointed out the error of my ways.
5             Your Honor, in our opposition brief at page 3, --
6 well, it starts on page 2, under Background, there is a
7 sentence which reads:
8             The '894 patent was a continuation-in-part of
9             U.S. Patent Number 4,518,945.  The '945 patent,
10            Exhibit B, has been incorporated by reference.
11            THE COURT:  Yes.
12            MR. MANAK:  And then, if Your Honor reads down on page
13 3, in the second full paragraph, the third line down:
14            The 1988 Certificate mistakenly placed the
15            missing words into Claim 2 instead of Claim 1.
16            THE COURT:  Yes.
17            MR. MANAK:  And the next sentence is:
18            Claim 1 of the '945 patent, however, which was
19            incorporated by reference in the '894 patent,
20            did include the missing words.
21            THE COURT:  And I am supposed to know what all of that
22 meant.
23            MR. MANAK:  We should have been more explicit, Your
24 Honor.
25            THE COURT:  By the way, the -- I wasn't going to bring

1 this up, but, frankly, since we are all doing mea culpas here,
2 you cite on that same page, page 3, as Exhibit B -- well, you
3 actually assign Exhibit B to two different exhibits.  When I
4 read line 4 on page 3, which was issued on July 12, 1988, (the
5 1988 Certificate, Exhibit B), I turned to Exhibit B, and I saw
6 the '945 patent.  Do you see that?
7             MR. MANAK:  Yes, Your Honor.
8             THE COURT:  Does your copy have the same mistake?
9             MR. MANAK:  It's a mistake, Your Honor.
10            MR. DOUGHERTY:  It's a typographical error.
11            THE COURT:  It's a clerical mistake.
12            My point is -- look, nobody is perfect, not even John
13 Nash.  My point is that you are absolutely right, it's there.
14 I mean, it's there.  I like to consider myself a careful judge,
15 and I suppose, as I say, if I had actually sat down and read
16 through the entire two patents, it would have hit me that, in
17 fact, precisely the seven words that were missing from the '894
18 appeared in the '945.
19            MR. MANAK:  That is correct, Your Honor.  And we
20 should have made that more explicit.
21            THE COURT:  I really wish you had.
22            MR. MANAK:  We apologize for that, Your Honor.
23            THE COURT:  Let me give Mr. Cahn a chance to finish
24 this up.
25            MR. CAHN:  I think this underscores exactly the