UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

---------------------------------------------------------------X
LEVITON MANUFACTURING CO., INC.,          :

      Plaintiff,          :

  v.                                      :   Civil Action No. 01 CV 3855 AMD

UNIVERSAL SECURITY INSTRUMENTS,
INC., *et al.*,                           :

      Defendants.        :

---------------------------------------------------------------X

**PLAINTIFF LEVITON MANUFACTURING CO., INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR NON-LIABILITY FOR PATENT INFRINGEMENT FOR ACTIONS TAKEN PRIOR TO DECEMBER 11, 2001 AND IN SUPPORT OF CROSS-MOTION THAT THE CLAIMS OF THE '894 PATENT WERE NOT INDEFINITE PRIOR TO DECEMBER 11, 2001**

The Plaintiff, Leviton Manufacturing Company, Inc. ("Leviton"), by its undersigned counsel, respectfully submits this Opposition to Defendants' Motion for Summary Judgment for Non-Liability for Patent Infringement for Actions Taken Prior to December 11, 2001. Specifically, Leviton submits that Defendants are not entitled to summary judgment as the Defendants' for the third time now raises arguments regarding the Certificates of Correction which this Court has previously ruled on, concluding the issue was frivolous. Further, Defendants ignore the holding of a sister court in the Central District of California (referring to that Court's opinion as being the result of plaintiff's "attempts, successful in California, to obfuscat the difference" between the written description and the claims, of a patent. In fact, the entire argument before the California Court was based upon that difference. A careful reading of the "ORDER DENYING MOTION FOR SUMMARY JUDGMENT" by the California

\\vit\8/7/03\.

Court, makes clear why Summary judgment in favor of the defendants herein is also inappropriate, but rather should be granted in favor of the Plaintiff.

## PRELIMINARY STATEMENT

This is a patent infringement action brought by Leviton involving Leviton's '894 Patent, entitled "Ground Fault Circuit Interrupting System." Commercial products incorporating the technology of the '894 Patent, as sold by Leviton for the residential construction and home repair industry, have been enormously successful and constitute a large portion of all electrical safety switches sold in the market. The Defendants, recognizing the paramount success of Leviton's Ground Fault Circuit Interrupter ("GFCI") products, have sought to profit from that success by willfully copying Leviton's GFCI Products, and then infringing the '894 Patent through the sale of their infringing copied GFCI switch products ("accused infringing products") in the United States.

The '894 Patent relates to a GFCI system that interrupts a ground fault, *i.e.*, an electrical circuit created when someone touches an electrical outlet. Leviton's GFCI patented system thus, avoids injury or serious shock in the event of an electrical fault. The '894 Patent does this *via* novel electromechanical and mechanical components which, in response to a signal, interrupt the electrical circuit by physically separating electrically conducting contacts. The GFCI of the '894 Patent is also small enough to fit within a standard electrical outlet or receptacle box at a lower cost, with fewer component parts compared to systems previously marketed. For these reasons, the Defendants (and many others) have chosen to copy and willfully infringe the GFCI of the '894 Patent by selling copies of Levition's patented GFCI switch products.

STATEMENT OF FACTS

A.     **The Procedural Status Of This Action**

This action was commenced in the United States District Court for the District of Maryland, by the filing on December 13, 2001 of the Summons and Complaint. An earlier Complaint had been filed directed to the present defendants, but was withdrawn voluntarily by the plaintiff, in accordance with Rule 41(a)(1)(i), without prejudice. It is clear that the defendants cannot reach any conclusion, as to law or fact by virtue of the voluntary dismissal of the earlier Complaint. The situation is "as if the action never had been filed.", FEDERAL PRACTICE & PROCEDURE, FEDERAL RULES OF CIVIL PROCEDURE, Wright and Miller, updated to 2003, Chapter 7,.Sec. 2367, and cases cited therein.

On January 22, 2002, the Defendants filed a Motion for Judgment on the Pleadings and Dismissal of the Complaint, raising many of the same arguments as here, concerning the Certificates of Correction. On April 5, 2002, this Motion was denied with respect to Leviton's claim of patent infringement and granted in part directing Leviton to file an Amended Complaint within twenty (20) days with regard to its trade dress claims. On April 22, 2002, Leviton filed its First Amended Complaint. The First Amended Complaint, as well as the earlier Complaint in this action, asserts a cause of action against the Defendants pursuant to 35 U.S.C. §271 for patent infringement in that the Defendants have been and are infringing one or more claims of Leviton's '894 Patent. Leviton is the sole owner of all right, title and interest in the '894 Patent, including the right to sue for past infringement thereof and seeks further relief under 35 U.S.C. §§283-284. On May 28, 2002, the Defendants filed their Joint Answer and Counterclaim to the First Amended Complaint, along with a Motion to Disqualify Paul J. Sutton and the firm of Greenberg Traurig based upon many of the same issues that were denied

by the court in the first motion to dismiss and raised again here. On July 29, 2002, a hearing was held before Judge Andre M. Davis and the motion to disqualify was summarily denied from the bench.

During argument on April 17, 2003, this Court again clarified its prior rulings with regard to the Certificates of Correction stating:

> I don't want to hear anymore argument about that, and I don't want these fancy lawyer games because they are ridiculous….

(Hearing Transcript at page 21, line 3 to line 6, attached hereto as Ex. A).

By Court Order dated April 24, 2003, a deadline was set for dispositive motions on July 21, 2003. All submissions regarding summary judgment motions whether motions, oppositions or replies, were stayed on April 24, 2003, until July 21, 2003. On July 21, 2003, Defendants filed the instant motion for partial summary judgment. This Opposition and Cross-Motion follows.

**B.     Background of the '894 Patent**

The '894 Patent issued on June 17, 1986, from United States Patent Application Serial No. 06/716,991 (the "'991 Application") filed on April 1, 1985.[1] The '894 Patent was issued, to Leviton, as assignee, on June 17, 1986, without rejection of any of the claims by the Examiner. The original claims of the '991 application were allowed by the PTO without any Office Action by what is known as a "First Action Allowance," wherein the claims are allowed in the exact form as filed. As such, there was no "prosecution" of the claims, so that no

---

1 Leviton owns by assignment from the inventors the entire right, title and interest in and to the '894 Patent. A copy of two-page recorded assignment of the invention and application resulting in the '894 Patent, dated September 19, 1985, and recorded at the U.S. Patent and Trademark Office ("PTO") on September 27, 1985, at Reel 4459, Frame 822, accompanies this memorandum and is attached as Exhibit B. The original copy of the assignment is believed to be lost. A copy of the file from the United States Patent and Trademark Office Patent Application Information Retrieval ("PAIR") web site at http://pair.uspto.gov/gci-binlfinallpairsearch.pl" accompanies this motion as Exhibit C, and identifies the official file content and history of the '894 Patent. A true copy of the official PTO microfiche copy of the underlying '991 application (Serial No. 0676991) which resulted in the '894 Patent is attached hereto as Exhibit D.

limitation on the scope of the '894 Patent claims need be considered under the doctrine of prosecution history estoppel, and there was no substantial 'file history' to review.

It is noted that in its opening text, the '894 Patent includes a statement expressly incorporating by reference "the entire content and subject matter" of an earlier patent as follows:

> The present application is a continuation-in-part of applicants' both pending United States patent applications Ser. Nos. 431,982 now **U.S. Pat. No. 4,518,945**, filed September 30, 1982 and entitled "REMOTE CONTROL SYSTEM" and Ser. No. 558,262 filed December 5, 1983 and entitled "SHOCK HAZARD PROTECTION SYSTEM", and **incorporates by reference as if fully set forth herein the entire content and subject matter thereof** and of any and all of their respective "parent" patent applications to which they are co-pending. (Col. 1, lines. 6-16), attached hereto as Ex. E). (Emphasis added).

The '894 Patent goes on to state that because of a "common thread that runs through these developments," the "author" filed the application in the format used, which "will also serve to aid the Examiner in considering, collectively, the prior art of record in all applications." That is cited as the reason for referring to the "present invention" as a second preferred embodiment. (See Ex. E, '894 Patent, Col. 1, lines 20-30). However, the patent makes it very clear that the "object of the…present invention [is] to provide a dedicated ground fault circuit interrupting system…" (*Id.* at lines 52-54).

The "common thread" that runs through all of the related cases is the use of a solenoid comprising an outer electromagnet coil and a movable plunger, made of magnetic material, acting along the central axis of the coil. When the coil is energized by an electric signal, the plunger moves, and thereby activates one or the other types of switching systems described in the related cases. The '894 Patent is a continuation-in-part of United States Patent No. 4,518,945 (the "'945 Patent"), which in turn is a continuation of United States Patent

Application Serial No. 207,534 (the "'534 application"), which was issued on November 17, 1980 as U.S. Patent No. 4,386,338 (the "'338 Patent"). The earlier two patents have substantially identical disclosures and are both directed to automatic on-off type switches, capable of continually cycling between the two positions in response to successive electrical signals. (Copies are attached as Ex.s F and G). The '894 patent is directed to a GFCI switch, in which the solenoid is only capable of automatically opening the contacts, but cannot automatically close them. The operation of the solenoid, however, is the same in all cases.

**C.    The Certificates of Correction**

Shortly after issuance of the '894 Patent Leviton became aware of a clerical or typographical error in the '894 Patent, by which a few words had been omitted from Claim 1, describing the solenoid coil and plunger, and thereafter filed for a first Certificate of Correction, which was issued on July 12, 1988 (the "1988 Certificate", Ex. H).

In any event, the error in Claim 1 of the originally issued patent was facially obvious to anyone experienced in the field of the invention who read the '894 Patent, and the 1988 Certificate was granted by the USPTO under 35 U.S.C. §254, without a fee being paid by the patentee, following a presumptively proper procedure. The printed copy of the 1988 Certificate mistakenly placed the missing words into line 3 of Claim 2 instead of into Claim 1. Claim 1 of the '945 Patent, however, which was incorporated by reference in the '894 Patent, did include the missing words. On December 11, 2001, the USPTO corrected this error by issuing a second Certificate of Correction (the "2001 Certificate", Ex. I). The 2001 Certificate states on its face that it "supersedes" the 1988 Certificate.[2]

---

[2] It is worth noting that the Defendants concede the propriety of the Second Certificate of Correction in their Brief at page 7, footnote 2.

**ARGUMENT**

A. **Summary Judgment Is Appropriate At This Time**

Summary judgment is appropriate in cases where there is "no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-49 (1986); *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.,* 731 F.2d 831, 835 (Fed. Cir. 1984). The determination sought by the moving party shall be rendered if the pleadings and any depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. *See DeMarini Sports, Inc. v. Worth, Inc.,* 239 F.3d 1314, 1322 (Fed. Cir. 2001); *Becton Dickinson and Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 795 (Fed. Cir. 1990). The evidence is to be viewed in a light most favorable to the nonmovant, and all reasonable inferences must be drawn in favor of the nonmovant. *Avia Group International, Inc. v. L.A. Gear California, Inc.,* 853 F.2d 1557, 1560 (Fed. Cir. 1988).

The moving party has the burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986); *Bristol-Myers Squibb Company v. Ben Venue Laboratories, Inc.,* 246 F.3d 1368, 1374 (Fed. Cir. 2001). If the movant meets its initial burden, the burden of coming forward shifts to the party opposing the motion. *Vivid Technologies, Inc. v. American Science & Engineering, Inc.,* 200 F.3d 795, 806 (Fed. Cir. 1999). The opposing party does not have to establish that it is entitled to judgment in its favor, but must either show that the movant has not established entitlement to judgment as a matter of law, or that there are material issues of fact which require resolution at trial. *Id.,* 200 F.3d at 806-07.

Summary judgment is to avoid an unnecessary trial, and "it is not designed to substitute lawyers' advocacy for evidence, or affidavits for examination before the fact-finder, when there is a genuine issue for trial." *Continental Can Co. USA, Inc. v. Monsanto Co.,* 948 F.2d 1264, 1265 (Fed. Cir. 1991). The trier of fact should "assure itself that there is no reasonable version of the facts, on the summary judgment record, whereby the nonmovant could prevail, recognizing that the purpose of summary judgment is not to deprive a litigant of a fair hearing, but to avoid an unnecessary trial." *EMI Group North America, Inc. v. Intel Corp.,* 157 F.3d 887, 891 (Fed. Cir. 1998).

In the present case, the issues are ones of law, as it is submitted that all of the material facts are either admitted, unrebutted or matters of public record. Specifically, the texts of the '894 Patent and of each of its parent or grandparent applications are of public record at the USPTO. The language of the two Certificates of Correction in the '894 Patent are also of public record, as is the language of the original application, as filed, for the '894 Patent. The understanding of one of ordinary skill in the art is of record, and not rebutted.

> 1. **The Information In The 1988 Certificate Combined With The '894 Specification And The Referenced Patents Make Claim 1 Of The '894 Patent 'Definite' To Meet The Requirements Of 35 U.S.C. §112**

A patent issued by the USPTO is presumptively valid. *See* 35 U.S.C. § 282. As such, anyone attempting to demonstrate the invalidity of a patent must do so by clear and convincing evidence. *See Kaufman Co. v. Lantech, Inc.,* 807 F.2d 970, 973-974 (Fed. Cir. 1986). The burden of proof by clear and convincing evidence also applies to the validity of certificates of correction. *See Superior Fireplace Co. v. The Majestic Products Co.,* 270 F.3d 1358, 1367 (Fed. Cir. 2001) ("we find that clear and convincing standard apposite to the certificates correcting the language of a claim"). Defendants' conclusory assertions that the 2001

Certificate is invalid are unavailing. *Id.* Defendants present **no** evidence in support of their assertion that the Certificates of Correction were improperly granted, other than argument.

The principal issue of this motion for partial summary judgment is apparently notwithstanding the validity of the 2001 Certificate, it cannot be effective with respect to actions occurring prior to its issuance date, i.e., December 11, 2001. It is submitted that, as a matter of law, Claim 1 of the '894 Patent was definite under §112, and therefore valid, prior to December 11, 2001, taking into account the entire specification and files of the USPTO, including especially the 1988 Certificate, the claims of the '945 Patent, and the '894 specification.

The issue raised by the Certificates of Correction to the '894 Patent concern text missing from Claim 1, namely, "second positions; electromagnet coil means disposed within." This text "was present in original Claim 1 as filed." (Ex. K, p. 16; and Ex. J, Massie Decl. 10, p.7). The printed version of the First Certificate of Correction, issued July 12, 1988, incorrectly placed this language in Claim 2. (*See* Ex. H). The Second Certificate of Correction, issued December 11, 2001, correctly placed this language in Claim 1, and expressly supersedes the First Certificate of Correction. (*See* Ex. I).

Even though Claim 1 of the application as filed in the '991 Application was precisely correct (Ex. J, Massie Decl. 10), the '894 Patent issued without the aforementioned text, italicized below:

> 1.  Switching apparatus for selectively interrupting an electrical connection between input and output conductors, or the like, comprising, in combination: a housing; magnetizable plunger means disposed within a portion of said housing for movement between first and second positions; electromagnet coil means disposed within said housing for moving said plunger means when energized from the first position to the second position. . . .

(Ex. E, Col. 6, lines 49-56; and Ex. J, Massie Decl. 11).

As this Court previously recognized at the April 4, 2002 hearing, the '894 Patent in suit expressly, in the body of the specification, "incorporates by reference as if fully set forth" in the '894 Patent, US Patent 4,518, 945 ("'945 patent"). (Ex. R, Tr. page 58, line 24 to page 60, line 21; page 64, lines 3 to 9; Ex. 1, Col. 1, lines 6 to 16). This Court further recognized that the missing text is found in Claim 1 of the '945 Patent, (which, in pertinent part, is substantially identical to Claim 1 of the '894 Patent), in precisely the same place as the second Certificate of Correction places it. That is, Claim 1 of the '945 reads:

> 1. Switching apparatus for selectively completing or interrupting an electrical connection between input and output conductors, or the like, comprising, in combination: a housing; magnetizable armature disposed within a portion of said housing and being movable between first and second positions; electromagnet coil means disposed within said housing for moving said armature when energized from the first position to the second position. . . .

(Ex. F, Col. 10, lines 13-20; Ex. K, Tr. page 64, lines 3-9, page 68, lines 11-18, ).[3]

After going through the analysis of the corrected language and the pertinent specifications of the '894 and its incorporated '945 Patent, this Court concluded "that no responsible person at the USPTO . . . reviewing the two patents together and the specifications, -- even granting that the file wrapper had been lost, no responsible official at the USPTO would refuse to issue the Certificate of Correction in 1988. Wouldn't dare." (Ex. K, Tr. page 72, lines 18-22) (emphasis added).

The Second Certificate of Correction corrected the '894 Patent, not the First Certificate of Correction, and expressly "supercedes" the 1988 Certificate. (Ex. K; page 73, lines 12-17, page 74, lines 2-6). Contrary to Mr. Cahn's arguments to the Court on April 4. (Ex. K, Tr. 14),

---

[3] Further, it was pointed out at the hearing that the text of uncorrected Claim 1, and the specification and drawings of the '894 Patent, clearly indicate support for the placement of the missing text in Claim 1. (Ex. K, Tr. 32, line 14 to page 33, line 5, page 33, line 21 to page 34, line 10; page 34, line 21 to page 36, line 3; Ex. 1, Col. 3, lines 17 to 25 and 45 to 51; Fig. 3, no. 346 (coil), no. 348 (plunger), Figs. 4 and 5, no. 346 (coil – top view), Fig. 6, plunger 348 in first position relative to coil 346, Fig. 7, plunger in second position relative to coil 346). *See also* '894 Patent, Col. 5, lines 46 to 57, which describes the movement of the plunger when it is drawn from the first to the second position by the energizing of the magnetic coil.

there is more than ample precedent for requesting a second Certificate of Correction to a patent, and the procedure employed by Leviton to request a Second Certificate of Correction to clear up the obvious USPTO mistake in the First Certificate was entirely appropriate and supported by ample precedent.

This Court's previous analysis of the correction issues are consistent with the analysis made by Judge Pregerson of the United States District Court for the Central District of California. Judge Pregerson found, on the basis of the First Certificate of Correction alone (the Second Certificate had not yet issued) that the claims of the '894 Patent are not invalid as being indefinite, and "remain intelligible" and that the "errors are simply not substantial enough to convert the claim into gobbledygook" or gibberish. (Ex. L, pages 9-10). Indeed, Judge Pregersen held that "[t]he Court finds that the claims of the '894 Patent . . . are sufficiently definite to meet the statutory standard [35 U.S.C. § 112] of definiteness as the printed patent currently exists, including the erroneous first Certificate of Correction." (Ex. L, pages 12-14). It is submitted. Although the defendants argue that the plaintiff fooled the California Court, i.e., "[P]laintiff's attempts, apparently successful in California, to obfuscate the difference should not go unnoticed by this court." Plaintiff believes that the decision of the California court was very well reasoned. Clearly, plaintiff, and the California court, agree with the defendants that the "written description and the claims are separate statutory requirements and serve different purposes." Indeed, that was the basis for plaintiff's arguments in California, and apparently the reasoning of Judge Pregerson in reaching his conclusion. (See Ex. L).

Moreover, certain facts on the correction issue are either undisputed or unrebutted. First, Defendants agree that the error in Claim 1 is a typographical or clerical error. (Ex. K, Tr. page 62, line 7 to page 63, line 9). Second, Claim 1 as originally filed was exactly correct.

(Ex. J, p. 16; Massie Decl. 10, 11).  Third, the Second Certificate of Correction placed the missing text where it belonged in Claim 1.  (Compare Ex. I with Ex. K, p. 16; see also Ex. J, Massie Decl. at ¶11).  ("This is confirmed by my review of Claim 1 in the '894 Patent which is missing the phrase inserted by the Certificate of Correction and which is present in the originally filed Claim 1").  Fourth, Defendants have pointed to no other place in uncorrected Claim 1 where the missing text should be placed.  Fifth, Defendants present no evidence that would contradict Judge Pregersen's reading of the First Certificate of Correction as being correct in placing the missing text in dependent Claim 2 or that the claims of the '894 Patent are indefinite.  There is absolutely no dispute as to what the missing text is, where it goes, and that it was right where it should be in original Claim 1.  Sixth, Defendants have failed to present any evidence that a competent patent attorney would not counsel his client that Claim 1 would be infringed, even if Claim 1 hadn't been corrected by the 2001 Certificate.

**Claims Missing Words Are Not Per Se Indefinite,
Where The Claim Is Definite In Accordance With 35 U.S.C. §112, Para. 2.**

Defendants rely upon *Allen Engineering Corp. v Bartell Indus*. 299 F.3d 1336 (Fed. Cir. 2002), to support their position that a claim with missing limitations, as printed, cannot be "definite".  The defendants cited the following language in *Allen*:

> Claim 23 is an example of a failure to meet the second of the requirements set forth in *Solomon*. This claim ends in the middle of a limitation: "coupled to said gearbox means by rigid". '220 patent, col. 21, ll. 43-44. Since it is impossible to discern the scope of such a truncated limitation, claim 23 is indefinite and thus invalid under 35 U.S.C. §112, paragraph 2.
> *Id*, 299 F. 3d at 1348-9.

*Allen* was decided by the Federal Circuit after the decision by Judge Pregerson, in the companion California action.  However, it is submitted that *Allen* would not have changed the decision by Judge Pregerson.  Thus, It is submitted that it is not a logical conclusion, from the

above-quoted language in *Allen*, to draw defendants very general conclusion that "If a claim is missing language, then the claim is invalid on its face, and that is the end of the inquiry." In its argument, Defendants are mixing the positions taken by the *Allen* panel with respect to the two different 'requirements for a valid claim, mandated by Sec. 112:.

> We have explained that the second paragraph of §112 contains two requirements: "first, [the claim] must set forth what 'the applicant regards as his invention,' and second, it must do so with sufficient particularity and distinctness, i.e., the claim must be sufficiently 'definite.'" Solomon v. Kimberly-Clark Corp., 216 F.3d 1372, 1377, 55 USPQ2d 1279, 1282(Fed. Cir. 2000). In determining whether the claim is sufficiently definite, we must analyze whether "one skilled in the art would understand the bounds of the claim when read in light of the specification." Personalized Media Communications, LLC v. Int'l Trade Comm'n, 161 F.3d 696, 705, 48 USPQ2d 1880, 1888(Fed. Cir. 1998). Claim 23 is an example of a failure to meet the second of the requirements set forth in *Solomon*.

It is submitted that unlike the situation in *Allen*, one skilled in the art, as recognized by Judge Pregerson, would both understand from the claim what the "patentee regarded as his invention", as described in the specification (the "first requirement" of Sec. 112, second paragraph, as well as the scope, or "bounds", of the invention being claimed (the "second requirement"), *Allen, supra,* 299 F.3d, at pages 1348-1349. In a decision subsequent to *Allen*, the Federal Circuit did recognize that "[t]he standard of indefiniteness is somewhat high; a claim is not indefinite merely because its scope is not ascertainable from the face of the claims", *Amgen, Inc. v Hoechst Marion Roussel, Inc.* 2003 WL 41993, 2003 U.S. App. LEXIS 118, at *35.

As the Delaware District court, in *Isco International, Inc. v Conductus, Inc.,* 2003 WL 276250, at *7 (D. Del., Feb. 10, 2003) stated: "The claim is sufficiently definite if 'one skilled in the art would understand the bounds of the claim when read in light of the specification.'", citing to *Allen, supra,* and *Amgen, supra.* In *Isco*, a "typographical" error resulted in the

insertion of the word "planar" into the claim where it did not belong. After the action was brought, a Certificate of Correction was obtained by the patentee, which the court considered as confirming that it was a typographical error.

Here, the error was made by the USPTO. (Massie Decl. 11). It is also clear from the USPTO finance records (RAM) that the USPTO did not charge any fee for issuing either of the two Certificates of Correction, in 1988 and again in 2001. A fee is required if an error is introduced by an applicant but not if it is a USPTO error. (Massie Decl. 9.) Thus, this Court was absolutely correct in recognizing that the First Certificate of Correction was properly issued: "no responsible official at the USPTO would refuse to issue the Certificate of Correction in 1988. Wouldn't dare." (Ex. K, Tr. page 72, lines 18-22).

Third, Defendants argue that the Certificates of Correction broadened Claim 1 of the '894 Patent, but have to date refused and failed to provide any evidence to support their charge that the claim was broadened. As was discussed extensively at the April 4 hearing, this case is distinguished from *Superior, supra*, in that the correction does not broaden Claim 1. (Ex. K, Tr. page 25, line 15 to page 26, line 21). The correction to Claim 1 added a phrase which was there in the Claim as filed. Thus, the scope of the claim did not change as the claim did in *Superior* ("REAR WALLS" TO "REAR WALL").

It is quite clear that when construing a claim, or determining whether it is definite, the result varies greatly depending upon the facts of the case. The parties both agree that the situation in *Southwest Software, supra*, where necessary disclosure (over 300 pages of it) was omitted, (involving the sufficiency of disclosure, rather than the definiteness of a claim) is very different from the *Isco* case, where one extra word was incorrectly inserted into a claim, or from *Lemelson v General Mills, Inc.*, 968 F.2d 1202, 1203 (Fed. Cir. 1992), where one word

was omitted, or from the present situation, where a phrase consisting of seven (7) words was omitted as a result of a typographical error.   It is further seen from the several cases discussed, that depending upon the nature of the disclosure, and of the error involved in the claim, the courts do find not find claims having typographical errors to be *per se* indefinite , even before a Certificate of Correction issues.

It is clear that courts are not supposed to "rewrite" claims, in order to render tham valid, however, the claims as printed in an issued patent, even if they contain a typographical error and thus would not have passed muster before an Examiner at the USPTO, can still meet the statutory requirements set by 35 U.S.C. Sec. 112.  The courts may also not foreclose that possibility, which is the clear intention of the defendants as set forth in their arguments.  In *Allen*, the court found that "it is impossible to discern the scope of such a truncated limitation", *supra*.  That may very well have been the case in *Allen*, and depends upon the information submitted by the parties.  However, it is submitted that in the present case, the scope of each limitation is readily determinable, either from the remaining language of the claim or from the disclosure of the specification.

The specific facts of this case also make more reasonable that one skilled in the art would find the pre-2001 certificate claims to be definite and to define the invention described in the specification. The claims have "means" limitations at their relevant portions, i.e., "coil means" "plunger means" and "movable means". These all <u>require</u> reference to the specifications in order to construe them. This is explained more fully in the companion memorandum responding to the defendants motion asserting double-patenting.

## **CONCLUSION**

For all of the above reasons, Leviton respectfully submits that based upon the foregoing this Court must deny Defendants' Motion for Summary Judgment.

Dated:   August 7, 2003                              Respectfully submitted,


                                                       _____/s/_____
                                                       D. Christopher Ohly, Esq.
                                                       BLANK ROME COMISKY & McCAULEY, LLP
                                                       250 West Pratt Street
                                                       Suite 1100
                                                       Baltimore, MD 21201
                                                       Telephone:  (410) 659-1400
                                                       Facsimile:  (401) 659-1414

                                                       Paul J. Sutton
                                                       Joseph M. Manak
                                                       Barry G. Magidoff
                                                       Joseph G. Lee
                                                       GREENBERG TRAURIG, LLP
                                                       885 Third Avenue
                                                       New York, NY  10022
                                                       Telephone:  (212) 801-2100
                                                       Facsimile:  (212) 688-2449

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been hand delivered to Maurice U. Cahn and Frederick N. Samuels, Cahn & Samuels, LLP, Headquarters Building, 2000 P Street, N.W., Suite 200, Washington, DC 20036 on this 7th day of August, 2003.

                                                    D. Christopher Ohly, Esq.
BLANK ROME COMISKY & McCAULEY, LLP
250 West Pratt Street
Suite 1100
Baltimore, MD 21201
Telephone: (410) 659-1400
Facsimile: (401) 659-1414

Attorneys for Plaintiff,
*Leviton Manufacturing Co., Inc.*