IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LEVITON MANUFACTURING CO., INC.   )
                                  )
       (Plaintiff)                )
  v.                              )   01CV3855 AMD
                                  )
UNIVERSAL SECURITY INSTRUMENTS,   )
INC. et al                        )
                                  )
       (Defendants)               )

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ON COUNT TWO (TRADE DRESS)**

In opposing Defendants' Motion to Dismiss Count Two, Plaintiff did not take issue with any of the 32 Undisputed Material Facts recited by Defendants at pages 2-9 of Defendants' Memorandum. Leviton reiterates that the alleged GFCI trade dress comprises the overall but still undefined appearance of its ground fault circuit product line. Nevertheless, Leviton accuses Defendants of having "slavishly copied" the still undefined trade dress.

For its opposition Leviton argues that 1) outdated Fourth Circuit presumption/burden shifting precedence, at least in the context of product configuration, 2) large sales, and 3) Defendants' efforts to match various colors of GFCI sold by Leviton, prevent this Court from granting summary judgment.

Analytically, Leviton's position is wrong. The facts of record before this Court dictate the propriety of summary judgment dismissing Count Two in this case.

It is Leviton's burden to establish non-functionality of the asserted trade dress. To do so required that Leviton identify what constitutes the trade dress. Here Leviton still has not defined what its trade dress is and thus, cannot as a matter of fact and law establish the non-functionality thereof. Notwithstanding the existence of a utility patent, Leviton confirmed functionality of its GFCI dimensions and structure, admitting 1) to the pure functionality of the GFCI structure: "small enough to fit within a standard electrical outlet or receptacle box at a lower cost with fewer component parts..." (See Paragraph 2 of the Campolo Declaration attached to Plaintiff's Opposition) and 2) that all Leviton GFCI's

> have substantially the same outer appearance, and the same operating mechanism that **comes within the scope of the claims of the '894 patent**.

(See Paragraph 5 of the Campolo Declaration attached to Plaintiff's Opposition) (emphasis added)

### Leviton's Reliance on *M. Kramer Mfg. Co.* Is Misplaced

Disregarding intervening Supreme Court precedent concerning trademark protection for color and product configuration, Leviton relies on Defendants' color matching of its GFCI's to shift the burden of proving the absence of secondary meaning to Defendants. For the proposition, that it did not need to establish secondary meaning in its GFCI configuration because Defendants sought to copy the colors of Leviton's GFCIs, Leviton cites to *M. Kramer Mfg. Co. v. Andrews*, 783 F.2d 421, 228 U.S.P.Q. (BNA) 705 (4th Cir. 1986). Doctrinally, to be generous, Leviton's argument is flawed. In short, Leviton contends that because USI "copied" Leviton's GFCI colors, therefore USI "slavishly" copied its configuration trade dress, and, thus, drawing on *M. Kramer*,

2

Leviton need not establish secondary meaning in the product configuration trade dress. Consequently, the burden has now shifted to the accused imitator, USI, to disprove secondary meaning.

*M. Kramer* is inapposite to the present case for two basic reasons. Factually, it concerned copyright and trade dress infringement of a video game and game consol where the court found the existence of trade dress is "the artwork on the glass panel upon which the video graphics are displayed, and the name "Hi-Lo Double Up Joker Poker." It is not a product configuration case such as the one now before this Court.

Even more significantly, legally, Leviton ignores Supreme Court precedence.[1] A claimant cannot shift the burden to establish/disestablish secondary meaning of a product configuration or color to an accused infringer. *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 162, 115 S.Ct. 1300 (1995) (colors are never inherently distinctive, 514 U.S. at 162); *Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 120 S. Ct. 1339 (2000) (product configurations are never inherently distinctive, 529 U.S. at 212-3); and *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 121 S. Ct. 1255 (2001) (product configurations are presumptively functional, 532 U.S. at 29-30).

### Vast Sales Alone Do Not Establish Secondary Meaning

Stripped of its veneer, Leviton's "millions of dollars" argument distills to the following. If a product is a commercial success, it is entitled to trade dress protection regardless of patents/ functionality. The "millions of dollars" theory has been repeatedly

---

[1] *Windsor Theatre Co. v. Walbrook Amusement Co.*, 94 F. Supp. 388 (D. Md. 1950) As that case was affirmed by the Court of Appeals of this Fourth Circuit, it is obvious that as a precedent it should be followed in the instant cases, unless it has been in effect overruled in some subsequent case by the Supreme Court. *Id* at 395

3

rejected by courts where the claimant does not show a nexus. Indeed, just last year, Plaintiff's counsel unsuccessfully advanced the very same argument in a real trademark case. *J & J Snack Foods Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 65 U.S.P.Q.2d (BNA) 1897 (D.N.J. 2002)

> ...the record remains void of any evidence that connects this $2 million of sold products to J & J in the minds of consumers. As a result, this Court finds that no material issue of fact exists as to the secondary meaning of the "BREAK & BAKE" mark. Therefore, this Court finds that Plaintiff's "Break & Bake" mark is not protectable because it is a descriptive mark that has no secondary meaning.

*Id*, 220 F. Supp.2d at 381

A number of other decisions provide guidance for rejecting Leviton's naked "millions of dollars" theory:

> As proof of secondary meaning, Neutrik points to its sales volume of $2 million in 1999, its advertising budget of $500,000 in the past ten years, and an article appearing in Gig magazine. While evidence of sales volume and advertising are factors in finding secondary meaning, they are alone insufficient without some additional showing of consumer recognition, such as surveys or affidavits from consumers. This is particularly important here, where the sockets appear to be standard audio equipment gadgets with no outwardly distinctive features. There is no evidence on this record that consumers purchase Neutrik's sockets because they recognize them to be manufactured by Neutrik, rather than for the simple reason that they work with Neutrik's plug.

*Neutrik AG v. Switchcraft, Inc.*, 2001 U.S. Dist. LEXIS 3180, *9 (S.D.N.Y. Mar. 22, 2001) (internal citations omitted), aff'd 31 Fed. Appx. 718, 2002 U.S. App. LEXIS 4432 (Fed. Cir. 2002).

Like Neutrick, other than conclusory assertions, Leviton produced no evidence of consumer association with an alleged GFCI configuration tradedress. However, significant distinctions exist between the Neutrick case and the case at bar. First, Neutrick had identified what it believed to be its trade dress. Leviton still has not done

4

so. Secondly, Neutrik produced evidence of an advertising budget, in contrast to Leviton who has produced no such evidence.

**Fair Competition Sanctions Wiring Device Color Matching**

Leviton and Defendants sell GFCIs in a line of colors including ivory, white, almond, gray, and brown which conform to common electrical wiring device (switch plate, outlet, GFCI, etc.). If Leviton is trying to suggest that these colors act as a source identifier because it has sold millions of different units, then simply put, its position is contrary to law.

Defendants, through, Mr. Grossblatt, have explained the need for color matching of common wiring devices such as GFCIs.

```
11    Q   Why did USI want to exactly match the
12  color of Leviton's GFCIs?
13    A   As I mentioned earlier, we wanted to match
14  the colors -- we picked out colors that we thought
15  were the most popular colors, some of Leviton, some
16  of them could be Pass & Seymour, and we wanted the
17  factory to make the colors to be the same shading,
18  and we sent them samples to have them do that.
19    Q   Why is that, why did you want them to be
20  the same shading?
21    A   Those are the colors that sell at retail.
22  White, ivory are the most popular colors.

1     Q   But why have the exact same color match as
2   Leviton's GFCIs? How would that impact on the
3   business of USI?
4     A   You want to have a color that's accepted
5   in the marketplace. All the competitors -- I'm
6   sure if you put up most everybody's white, they'd be
7   very close if not exact to each other. I mean why
8   reinvent the wheel?
```

Transcript pg 239 ln 11- pg 240 ln 8 (Exhibit 1 attached hereto)

```
21    Q   When you said put the two next to each
```

5

```
22  other, what are the two you're referring to?
 1    A    Leviton, Pass & Seymour. People put two
 2  almond colors next to each other, they should look
 3  similar. Same way if you put whites or ivories or
 4  any other color.
```

Transcript pg 339 ln 21- pg 340 ln 4

Color is not and cannot be inherently distinctive in a trademark context. *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 162, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995). A color which is employed by others in the industry acts not as an indicator of source but as mere ornamentation. *See, e.g., Van Brode Milling Co., Inc. v. Cox Air Gauge System, Inc.*, 279 F.2d 313, 319, 125 U.S.P.Q. (BNA) 510, 514 (9th Cir. 1960) (red for automotive accessories).

The present situation, color matching existing competing products, resonates with common sense as recognized in other cases. For aesthetic reasons, farmers preferred replacement front end loaders for tractors color matched in "John Deere" green to match their tractors. *Deere & Co. v. Farmhand, Inc.,* 560 F. Supp. 85, 1982 U.S. Dist. LEXIS 17413, 217 U.S.P.Q. (BNA) 252 (S.D. Iowa 1982). That court equated that replicating an existing color for fungible parts (front end loaders) was just like selecting a lighting fixture to match the architecture of the building on which it was mounted. To put it another way, it is commonsense that if the colors did not match, the GFCI's would not be as aesthetically equivalent or fungible in the marketplace.

### In The Absence of the '894 Patent File History, Plaintiff Cannot Prove Non-Functionality of the GFCI Configuration

Still another facet of the ongoing problems in this case stemming from the lost patent file history, is that '894 patent file history is probative of functionality. Just a few

6

weeks ago, in refusing to issue a preliminary injunction in a trademark infringement case, citing to *Traffix,* another court addressed the need for examination of a utility patent prosecution history "to see if the feature in question is shown as a useful part of the invention." *ASICS Corp. v. Target Corp.,* 2003 U.S. Dist. LEXIS 13515, *16 (D. Minn. Aug. 4, 2003). As is well known to the Court in this case, the file history of the '894 patent is missing, thus depriving USI, this Court, and the public at large from confirming that the GFCI configuration depicted and described in the now expired '894 patent is, indeed, functional.

## Conclusion

For the reasons stated above in this Reply, Defendants' Motion for Partial Summary Judgment on the Trade Dress Count, and the absence of any genuine dispute of material fact, Defendants respectfully request the Court grant the requested Summary Judgment and dismiss, with prejudice, Count 2.

Respectfully submitted,

UNIVERSAL SECURITY INSTRUMENTS INC.
USI ELECTRIC, INC.

By: _____
Maurice U. Cahn, Esq.
William E. Bradley, Esq.
CAHN & SAMUELS, LLP
2000 P Street, NW, Suite 200
Washington, D.C. 20036
(202) 331-877