IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| LEVITON MANUFACTURING, INC. | ) |
| (Plaintiff) | ) |
| v. | ) 01CV3855 AMD |
| UNIVERSAL SECURITY INSTRUMENTS, INC. | ) |
| and | ) |
| USI ELECTRIC, INC. | ) |
| (Defendants) | ) |

**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION AND CROSS-MOTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF THE '894 PATENT FOR DOUBLE PATENTING**

Defendants' Universal Security Instruments, Inc. and USI Electric, Inc., (collectively "USI") by and through their undersigned counsel, submit this reply to briefly address a few points raised in Plaintiff Leviton Manufacturing, Inc.'s opposition and cross-motion.

**INTRODUCTION**

The continuing metamorphosis of Plaintiff's "incorporation-by-reference" theory is remarkable. First, Plaintiff argued that the incorporation by reference in its entirety of the '945 patent clearly showed that there was one solitary invention comprising related embodiments. This theory was used to argue that the claims of the '945 patent could be used to cure the fact that the patent-in-suit's independent claim was missing language and indefinite under the 35 U.S.C. § 112 because the missing language was in the claims of the '945 patent.

Once faced with a double patenting challenge in view of the broad claim language, Plaintiff amended its incorporation theory to read out the cam of the '945 patent. According to Plaintiff, the different preambles required that the '894 patent be limited to devices which could **only** interrupt electrical conductors. After discovering this "only" theory was in direct conflict with the plain and unmistakable language of the '894 patent itself, Plaintiff amended its theory to offer that one of ordinary skill in the art would not consider the moveable cam means of the '945 (or more specifically, the '338 patent) in interpreting the phrase "moveable means" because the '338 embodiment is not suitable for use as a GFCI.

After it was pointed out that the '338 patent teaches that it may be used as a GFCI, Plaintiff offered an analogy to interference practice to state that terms must be construed according to the patent from which they arise and that the "incorporation-by-reference in its entirety" language only serves to incorporate what is necessary to support the embodiment added to the '894 patent. As set forth in Defendants' moving papers, this theory is wholly unsupported by any applicable authority and in direct conflict with the MPEP rules and the word "entirety." Now, in its opposition, Plaintiff's latest position is that the Court is not bound by the MPEP rules regarding incorporation by reference.

Clearly, the fluidity of Plaintiff's "incorporation-by-reference" theory represents nothing more than a string of *post hoc* attempts to use extrinsic evidence to contradict the plain and unambiguous language of the patents and the inescapable conclusion that the '894 patent is invalid for obviousness-type double patenting.

## REPLY

### I. THE '894 PATENT IS NOT LIMITED TO DEVICES WHICH "ONLY" INTERRUPT ELECTRICAL CONNECTION

Nowhere in the '894 patent claims does the word "only" appear. The preamble to the claims in the '894 patent recite a "switching apparatus for selectively interrupting an electrical connection between input and output conductors, and the like." Both of Plaintiff's experts opine in their reports that the '894 patent claims are limited to a switching apparatus which **only** selectively interrupts electrical connections, thereby excluding a structure which is capable of selectively interrupting or connecting electrical connections. This "only" theory was a blatant effort to read the cam means out of the scope of the claim's plain language. However, the plain and unmistakable language of the '894 patent itself shows the frivolity of Plaintiff's and its experts' position. With reference to the ABSTRACT of the '894 patent, there is no conceivable way to argue that '894 patent's banger mechanism would be interpreted by one of ordinary skill in the art to be a structure which "only" interrupt circuits:

> A switching system for interrupting an electrical circuit is described. This switch includes a number of preferred and other embodiments which have this as their goal, but which represents a number of distinctive and novel approaches to solving switching problems in the prior art. By way of example only, these approaches include provision of . . . *a "banger" type arrangement which enables alternate making and breaking of a circuit* . . . .

'894 Patent at ABSTRACT (emphasis added). The Federal Circuit notes that the Abstract of a patent may be an insightful tool for interpreting claim language. *See SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337, 1342 (Fed. Cir. 2001). Clearly, the speciousness of Plaintiff's "only interrupts" theory

has been unmasked for what it is, a shameless *post hoc* attempt to use extrinsic evidence to rewrite a patent.[1]

## II. THE '894 PATENT IS NOT LIMITED TO GFCI DEVICES

The '894 patent claim language merely requires that a device "selectively interrupt an electrical connection." As long as a device does so, it meets the language of the preamble, even if the preamble is deemed to be a limitation of the claim.[2] Plaintiff again attempts to use extrinsic evidence to limit the plain and unmistakable language of the specification and claims to argue that the '894 patent claims are directed to GFCIs.

As set forth below, the '338 patent teaches that the invention is capable of use as a GFCI. In any event, even if the '338 patent device could not be used as a GFCI, there is nothing in the language of the <u>claims</u> of the '894 patent (which define the invention) that limits the claims to ground fault circuit interrupters. They merely require devices that "selectively interrupt an electrical connection." There is no dispute that the device described in the '338 patent "selectively interrupts an electrical connection." Indeed, the device of the '338 patent specifically claims a cam means for separating electrical contacts.[3] Therefore, even if the preamble were to be considered a limitation of the claim, there can be no dispute that the device of the '338 patent meets this limitation.

---

[1] See *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1585 (Fed. Cir. 1996)("[R]egardless of how those skilled in the art would interpret a term in other situations, where those of ordinary skill, on a reading of the patent documents, would conclude that the documents preclude the term being given the meaning propounded by the expert witnesses, we must give it the meaning indicated by the patentee in the patent claim, specification and file history.").

[2] The preamble in this case is clearly not a limitation to the claims. The preamble does not provide antecedent basis for any of the claims terms, express a novel use to overcome prior art, and is not "necessary to give life, meaning, and vitality to the claim." See *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999). The preamble merely recites an intended purpose of the invention, see '894 Patent at ABSTRACT, and is thus not a limitation.

[3] Claim 1 of the '338 patent do not set forth a limitation of connecting, or automatically reconnecting, the contacts, only the separating the contacts is set forth in the claim body.

4

> A patentee may choose not to carry forward a particular embodiment from a parent patent to a CIP because that embodiment does not satisfy a limitation that was added in the CIP. That choice, however, does not mean that the scope of the CIP is limited to the preferred embodiment that was carried forward.

*Cordis Corp. v. Medtronic Ave., Inc.*, 02-1457/58/81/82, (Fed. Cir. August 12, 2003)(Exhibit 1).

A basic principle of patent law and claim interpretation is that a device which adds a feature not recited in the claim does not escape infringement. "It is irrelevant whether an element has capabilities in addition to that stated in the claim. When the claimed function is performed in the accused system, by the same or equivalent structure, infringement of that claim element is established." *Vulcan Engineering Co. v. FATA Aluminum Inc.*, 61 USPQ2d 1545, 1550 (Fed. Cir. 2002). The same is true in interpreting claim language for purposes of validity. The fact that a device may also "automatically reconnect" an electrical connection does not take it out of the scope of a claim which covers devices that "selectively interrupt an electrical connection."

### III.   THE '338 PATENT IS CAPABLE OF USE AS A GFCI

Indeed, there can be no dispute that the devices of the '338 patent can, among other things, be used as ground fault circuit interrupters as recited in the language of the '338 patent itself. Therefore, one must conclude, based on the language of Leviton's own patents, that a device which "reconnects" an electrical connection can also be used as a ground fault circuit interrupter. The Abstracts of both the '338 patent and the '894 patent have respective "arrangement[s] which enable[ ] alternate making and breaking of a circuit."

Plaintiff's latest attempt to rewrite the patent appears in the newest Declaration of Steve Campolo. According to Plaintiff, the recitation in the '338 patent that the device

5

was capable for use *in conjunction* with either remote control systems or ground fault circuit interrupting devices means that the device is something other than a GFCI. By that logic, the device would be something other than a remote control system also. The title of the patent is "Remote Control System" so clearly that is not what the phrase indicates.

If the patent is read further, it becomes clear that the phrase *in conjunction with* identifies the specific electronic circuitry used with the device to dictate if the device will be used as a remote control system or a GFCI, not the electromechanical elements set forth in the specification and claims:

> Before referring in more detail to the drawings of the present specification, it is important here to emphasize the universality of the switch receptacle system being described here. By that, what is meant is that the basic switching arrangement described below may be utilized not only in conjunction with remote control wireless switching systems, but also in conjunction with circuit breaking mechanisms and systems, such as of the ground fault circuit interrupting type.
>
> * * *
>
> At the risk of stressing the universality of system 10, the present invention contemplates housing portion 16 enclosing the electronics circuitry adapting the switch receptacle of this system to the particular purpose and function desired. For example, in the embodiment of the invention that will be described in this specification, electronic components compatible with a remote control system described in U.S. Pat. Nos. 4,200,862 granted on Apr. 29, 1980 and 4,189,713 granted on Feb. 19, 1980 are housed and mounted within the enclosure defined by the inner surfaces of housing portion 14 and the inner confine surfaces of housing portion 16.

'338 Patent at Col. 4, ln 4-12 and ln 61 to Col. 4, ln 4. The patent clearly teaches that the device can be adapted for use as a ground fault circuit interrupter if its features are

6

used in conjunction with GFCI circuitry.[4] Plaintiff's attempt to use extrinsic evidence to rewrite the patent to excludes its teaching of use as a GFCI is improper.

## IV.  INCORPORATION-BY-REFERENCE IN ITS ENTIRETY IS UNQUALIFIED

A patent application may incorporate by reference the contents of another document. "The information incorporated is as much a part of the application as filed as if the text was repeated in the application, and should be treated as part of the text of the application as filed." Manual of Examining Procedure ("MPEP") §2163.07(b)(Exhibit 2); see also Ex parte Maziere, 27 USPQ2d 1705, 1706-07 (Bd. Pat. App. & Int'f 1993)(Exhibit 3). When a document is "incorporated by reference" into a host document, such as a patent, the referenced document becomes effectively part of the host document as if it were explicitly contained therein. Advanced Display Sys., Inc. v. Kent State Univ., 212 F.3d 1272, 1282 (Fed. Cir. 2000). Both "essential material" and "nonessential material" may be incorporated by reference. MPEP §608.01(p)(Exhibit 4). Plaintiff's numerous attempts, under various theories, to limit what material is incorporated by reference into the '894 patent from the '945 patent are all equally unsupportable.

## V.  THE '338 AND '894 PATENT USE THE SAME LANGUAGE FOR THE SAME FUNCTIONS IN THE SPECIFICATION AND CLAIMS

There is no dispute that the cam means structure of the '338 patent performs the function recited in the '894 patent. Specifically, the function recited in the '894 patent is "influencing a separation of said input and output contacts." The cam means structure performs the same function; in fact, in the claims of the '338 patent, the cam means

---

[4] The patents are not directed to circuitry used in conjunction with the devices: "No claim is being made within the present application for any possible novel circuitry or electrical means, but rather this application is directed to the novel electromechanical and mechanical means by which, in response to a signal, the circuit is interrupted by a physical separating of electrically conducting contacts." '894 Patent at Col. 1, ln 44-50.

7

also performs the function of "influencing a separation of said input and output contacts." At no time has Leviton argued, nor could it, that the cam means does not "influence a separation of said input and output contacts." The '338 patent specifically claims a means for "influencing a separation of said input and output contacts."

Therefore, whatever differences there may be between the cam means structure in the '338 patent and the banger/latch of the '894 patent are irrelevant. The cam means structure is <u>incorporated by reference</u> into the '894 patent and is part of the patent. It is a disclosed structure that performs the recited function of the '894 patent and therefore must be considered within the scope of the movable means limitation of the '894 patent as a matter of law. A claim may not be construed to exclude a structure disclosed in the specification as a valid structure within the scope of the claim. *Serrano v. Telular Corp.*, 111 F.3d 1578, 1583, 42 USPQ2d 1538, 1541-42 (Fed. Cir. 1997); *Data Line Corp. v. Micro Technologies, Inc.*, 813 F.2d 1196, 1202, 1 USPQ2d 2052, 2055 (Fed. Cir. 1987).

In a last ditch effort to resurrect the validity of the '894 patent, Plaintiff argues that "when a claim is being construed in accordance with 35 U.S.C. § 112, ¶6, the scope of the claim must be limited so as to exclude any equivalent structures which are disclosed in the prior art." Opp. Br. at 15. This statement is in direct contradiction with numerous Federal Circuit decisions. *E.g., Toro Co. v. White Consolidated Industries, Inc.*, 53 USPQ2d 1065, 1068 (Fed. Cir. 1999) (scope of means plus function element includes structures in prior art reference disclosed in patent); *Clearstream Wastewater Systems v. Hydro-Active Inc.*, 206 F.3d 1440, 1446 (Fed. Cir. 2000) ("[I]t was error for district court to conclude that the means limitations for an aerating system could only cover

new elements of the preferred embodiment."); see also *Rhine v. Casio, Inc.* 183 F.3d 1342, 1345 (Fed. Cir. 1999)("Where "the only claim construction that is consistent with the claims language and the written description renders the claim invalid, then the axiom [that claims should be construed to preserve their validity] does not apply and the claim is simply invalid.").

The Abstract of the '338 patent describes one of the features of the invention as:

"a novel flip-flop cam arrangement which enables alternate making and breaking of a circuit"

The Abstract of the '894 patent describes one of the features of the invention as:

**"a 'banger' type arrangement which enables alternate making and breaking of a circuit"**

Claim 1 of the '338 patent includes the limitation of:

**"movable cam means responsive to movement of said armature for influencing a separation of said input and output contacts"**

Claim 1 of the '894 patent includes the limitation of:

**"movable means responsive to movement of said plunger for influencing a separation of said input and output contacts"**

Clearly, both patents teach that the disclosed devices are capable of "alternate making and breaking of a circuit." Equally as clear, both patents disclose and claim a "movable means responsive to movement of said plunger for influencing a separation of said input and output contacts." Plaintiff's countless attempts to use extrinsic evidence to constrict the '894 patent to a device which only breaks a circuit must fail. The term "movable means" is broader, and inclusive of both a "movable cam means" and a "banger type arrangement" as set forth in the '894 patent. Both of these structures are found in the '894 patent's specification by virtue of the incorporation by reference of the

9

'945 patent, and both structures perform the claimed function. This Court should reject Plaintiff's attempts to use extrinsic evidence to limit the scope of the '894 patent to the purpose of the invention set forth in the preamble and the second preferred embodiment:

> Finally, the district court improperly relied on extrinsic evidence in the form of a declaration by Cisco's expert to support its construction of claim 1. Resort to extrinsic evidence is appropriate only when an ambiguity remains after consulting the intrinsic evidence of record. . . . Moreover, the district court did not use the extrinsic evidence to assist in defining a claim limitation, but rather used it to limit claim scope based on the purpose of the invention, which is impermissible. See Comark, 156 F.3d at 1187, 48 USPQ2d at 1005 (rejecting defendant's attempt to limit claim term to its functional purpose as disclosed in the preferred embodiment).

Storage Technology v. Cisco Technology, Inc., 329 F.823, 832 (Fed. Cir. 2003).

Accordingly, in view of the foregoing, the intrinsic evidence conclusively establishes that the '894 patent is invalid for double patenting in view of the prior patenting of the narrower '338 patent.

## CONCLUSION

In view of the foregoing, Defendants' respectfully request that their motion for summary judgment on the issue of invalidity of the '894 patent for double patenting be granted.

Respectfully submitted,

UNIVERSAL SECURITY INSTRUMENTS INC.
USI ELECTRIC, INC.

By: _____
Maurice U. Cahn, Esq.
William E. Bradley, Esq.
CAHN & SAMUELS, LLP
2000 P Street, NW, Suite 200
Washington, D.C. 20036
(202) 331-8777 (Phone)
(202) 331-3838 (FAX)