solely in terms of a method of its making coupled with its function and there is no described or art-recognized correlation or relationship between the structure of the invention and its function. A biomolecule sequence described only by a functional characteristic, without any known or disclosed correlation between that function and the structure of the sequence, normally is not a sufficient identifying characteristic for written description purposes, even when accompanied by a method of obtaining the claimed sequence. For example, even though a genetic code table would correlate a known amino acid sequence with a genus of coding nucleic acids, the same table cannot predict the native, naturally occurring nucleic acid sequence of a naturally occurring mRNA or its corresponding cDNA. Cf. *In re Bell*, 991 F.2d 781, 26 USPQ2d 1529 (Fed. Cir. 1993), and *In re Deuel*, 51 F.3d 1552, 34 USPQ2d 1210 (Fed. Cir. 1995) (holding that a process could not render the product of that process obvious under 35 U.S.C. 103). The Federal Circuit has pointed out that under United States law, a description that does not render a claimed invention obvious cannot sufficiently describe the invention for the purposes of the written description requirement of 35 U.S.C. 112. *Eli Lilly*, 119 F.3d at 1567, 43 USPQ2d at 1405. Compare *Fonar Corp. v. General Electric Co.*, 107 F.3d 1543, 1549, 41 USPQ2d 1801, 1805 (Fed. Cir. 1997) ("As a general rule, where software constitutes part of a best mode of carrying out an invention, description of such a best mode is satisfied by a disclosure of the functions of the software. This is because, normally, writing code for such software is within the skill of the art, not requiring undue experimentation, once its functions have been disclosed. * * * Thus, flow charts or source code listings are not a requirement for adequately disclosing the functions of software.").

A lack of adequate written description issue also arises if the knowledge and level of skill in the art would not permit one skilled in the art to immediately envisage the product claimed from the disclosed process. See, e.g., *Fujikawa v. Wattanasin*, 93 F.3d 1559, 1571, 39 USPQ2d 1895, 1905 (Fed. Cir. 1996) (a "laundry list" disclosure of every possible moiety does not constitute a written description of every species in a genus because it would not "reasonably lead" those skilled in the art to any particular species); *In re Ruschig*, 379 F.2d 990, 995, 154 USPQ 118, 123 (CCPA 1967) ("*If* n-propylamine had been used in making the compound instead of n-butylamine, the compound of claim 13 would have resulted. Appellants submit to us, as they did to the board, an imaginary specific example patterned on specific example 6 by which the above butyl compound is made so that we can see what a simple change would have resulted in a specific supporting disclosure being present in the present specification. The trouble is that there is no such disclosure, easy though it is to imagine it.") (emphasis in original); *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1328, 56 USPQ2d 1481, 1487 (Fed. Cir. 2000) ("the specification does not clearly disclose to the skilled artisan that the inventors ... considered the ratio... to be part of their invention .... There is therefore no force to Purdue's argument that the written description requirement was satisfied because the disclosure revealed a broad invention from which the [later-filed] claims carved out a patentable portion").

### B. New or Amended Claims

The proscription against the introduction of new matter in a patent application (35 U.S.C. 132 and 251) serves to prevent an applicant from adding information that goes beyond the subject matter originally filed. See *In re Rasmussen*, 650 F.2d 1212, 1214, 211 USPQ 323, 326 (CCPA 1981). See MPEP § 2163.06 through § 2163.07 for a more detailed discussion of the written description requirement and its relationship to new matter. The claims as filed in the original specification are part of the disclosure and, therefore, if an application as originally filed contains a claim disclosing material not found in the remainder of the specification, the applicant may amend the specification to include the claimed subject matter. *In re Benno*, 768 F.2d 1340, 226 USPQ 683 (Fed. Cir. 1985). Thus, the written description requirement prevents an applicant from claiming subject matter that was not adequately described in the specification as filed. New or amended claims which introduce elements or limitations which are not supported by the as-filed disclosure violate the written description requirement. See, e.g., *In re Lukach*, 442 F.2d 967, 169 USPQ 795 (CCPA 1971) (subgenus range was not supported by generic disclosure and specific example within the subgenus range); *In re Smith*, 458 F.2d 1389, 1395, 173 USPQ 679, 683 (CCPA

1972) (a subgenus is not necessarily described by a genus encompassing it and a species upon which it reads).

While there is no *in haec verba* requirement, newly added claim limitations must be supported in the specification through express, implicit, or inherent disclosure. An amendment to correct an obvious error does not constitute new matter where one skilled in the art would not only recognize the existence of the error in the specification, but also recognize the appropriate correction. *In re Oda*, 443 F.2d 1200, 170 USPQ 268 (CCPA 1971). With respect to the correction of sequencing errors in applications disclosing nucleic acid and/or amino acid sequences, it is well known that sequencing errors are a common problem in molecular biology. See, e.g., Peter Richterich, Estimation of Errors in 'Raw' DNA Sequences: A Validation Study, 8 *Genome Research* 251-59 (1998). If an application as filed includes sequence information and references a deposit of the sequenced material made in accordance with the requirements of 37 CFR 1.801 *et seq.*, amendment may be permissible. Deposits made after the application filing date cannot be relied upon to support additions to or correction of information in the application as filed. Corrections of minor errors in the sequence may be possible based on the argument that one of skill in the art would have resequenced the deposited material and would have immediately recognized the minor error. Deposits made after the filing date can only be relied upon to provide support for the correction of sequence information if applicant submits a statement in compliance with 37 CFR 1.804 stating that the biological material which is deposited is a biological material specifically defined in the application as filed.

Under certain circumstances, omission of a limitation can raise an issue regarding whether the inventor had possession of a broader, more generic invention. See, e.g., >*PIN/NIP, Inc. v. Platte Chem. Co.*, 304 F.3d 1235, 1248, 64 USPQ2d 1344, 1353 (Fed. Cir. 2002) (Claim for a method of inhibiting sprout growth on tubers by treating them with spaced, sequential application of two chemicals was held invalid for lack of adequate written description where the specification indicated that invention was a method of applying a "composition," or mixture, of the two chemicals.);< *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473,

45 USPQ2d 1498 (Fed. Cir. 1998) (claims to a sectional sofa comprising, inter alia, a console and a control means were held invalid for failing to satisfy the written description requirement where the claims were broadened by removing the location of the control means); *Johnson Worldwide Associates v. Zebco Corp.*, 175 F.3d 985, 993, 50 USPQ2d 1607, 1613 (Fed. Cir. 1999) (In *Gentry Gallery*, the "court's determination that the patent disclosure did not support a broad meaning for the disputed claim terms was premised on clear statements in the written description that described the location of a claim element-- the 'control means' --as 'the only possible location' and that variations were 'outside the stated purpose of the invention.' *Gentry Gallery*, 134 F.3d at 1479, 45 USPQ2d at 1503. *Gentry Gallery*, then, considers the situation where the patent's disclosure makes crystal clear that a particular (i.e., narrow) understanding of a claim term is an 'essential element of [the inventor's] invention.'"); *Tronzo v. Biomet*, 156 F.3d at 1158-59, 47 USPQ2d at 1833 (Fed. Cir. 1998) (claims to generic cup shape were not entitled to filing date of parent application which disclosed "conical cup" in view of the disclosure of the parent application stating the advantages and importance of the conical shape.). A claim that omits an element which applicant describes as an essential or critical feature of the invention originally disclosed does not comply with the written description requirement. See *Gentry Gallery*, 134 F.3d at 1480, 45 USPQ2d at 1503; *In re Sus*, 306 F.2d 494, 504, 134 USPQ 301, 309 (CCPA 1962) ("[O]ne skilled in this art would not be taught by the written description of the invention in the specification that any 'aryl or substituted aryl radical' would be suitable for the purposes of the invention but rather that only certain aryl radicals and certain specifically substituted aryl radicals [i.e., aryl azides] would be suitable for such purposes.") (emphasis in original). A claim which omits matter disclosed to be essential to the invention as described in the specification or in other statements of record may also be subject to rejection under 35 U.S.C. 112, para. 1, as not enabling, or under 35 U.S.C. 112, para. 2. See *In re Mayhew*, 527 F.2d 1229, 188 USPQ 356 (CCPA 1976); *In re Venezia*, 530 F.2d 956, 189 USPQ 149 (CCPA 1976); and *In re Collier*, 397 F.2d 1003, 158 USPQ 266 (CCPA 1968). See also MPEP § 2172.01.

The fundamental factual inquiry is whether the specification conveys with reasonable clarity to those skilled in the art that, as of the filing date sought, applicant was in possession of the invention as now claimed. See, e.g., *Vas-Cath, Inc.*, 935 F.2d at 1563-64, 19 USPQ2d at 1117.

## II. METHODOLOGY FOR DETERMINING ADEQUACY OF WRITTEN DESCRIPTION

### A. Read and Analyze the Specification for Compliance with 35 U.S.C. 112, para. 1

Office personnel should adhere to the following procedures when reviewing patent applications for compliance with the written description requirement of 35 U.S.C. 112, para. 1. The examiner has the initial burden, after a thorough reading and evaluation of the content of the application, of presenting evidence or reasons why a person skilled in the art would not recognize that the written description of the invention provides support for the claims. There is a strong presumption that an adequate written description of the claimed invention is present in the specification as filed, *Wertheim*, 541 F.2d at 262, 191 USPQ at 96; however, with respect to newly added or amended claims, applicant should show support in the original disclosure for the new or amended claims. See MPEP § 714.02 and § 2163.06 ("Applicant should * * * specifically point out the support for any amendments made to the disclosure."); and MPEP § 2163.04 ("If applicant amends the claims and points out where and/or how the originally filed disclosure supports the amendment(s), and the examiner finds that the disclosure does not reasonably convey that the inventor had possession of the subject matter of the amendment at the time of the filing of the application, the examiner has the initial burden of presenting evidence or reasoning to explain why persons skilled in the art would not recognize in the disclosure a description of the invention defined by the claims."). Consequently, rejection of an original claim for lack of written description should be rare. The inquiry into whether the description requirement is met is a question of fact that must be determined on a case-by-case basis. See *In re Smith*, 458 F.2d 1389, 1395, 173 USPQ 679, 683 (CCPA 1972) ("Precisely how close [to the claimed invention] the description must come to comply with Sec. 112 must be left to case-by-case development."); *In re Wertheim*, 541 F.2d at 262, 191 USPQ at 96 (inquiry is primarily factual and depends on the nature of the invention and the amount of knowledge imparted to those skilled in the art by the disclosure).

### 1. For Each Claim, Determine What the Claim as a Whole Covers

Claim construction is an essential part of the examination process. Each claim must be separately analyzed and given its broadest reasonable interpretation in light of and consistent with the written description. See, e.g., *In re Morris*, 127 F.3d 1048, 1053-54, 44 USPQ2d 1023, 1027 (Fed. Cir. 1997). The entire claim must be considered, including the preamble language and the transitional phrase. "Preamble language" is that language in a claim appearing before the transitional phase, e.g., before "comprising," "consisting essentially of," or "consisting of." The transitional term "comprising" (and other comparable terms, e.g., "containing," and "including") is "open-ended" -it covers the expressly recited subject matter, alone or in combination with unrecited subject matter. See, e.g., *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501, 42 USPQ2d 1608, 1613 (Fed. Cir. 1997) (" 'Comprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim."); *Ex parte Davis*, 80 USPQ 448, 450 (Bd. App. 1948) ("comprising" leaves the "claim open for the inclusion of unspecified ingredients even in major amounts"). See also MPEP § 2111.03. "By using the term 'consisting essentially of,' the drafter signals that the invention necessarily includes the listed ingredients and is open to unlisted ingredients that do not materially affect the basic and novel properties of the invention. A 'consisting essentially of' claim occupies a middle ground between closed claims that are written in a 'consisting of' format and fully open claims that are drafted in a 'comprising' format." *PPG Industries v. Guardian Industries*, 156 F.3d 1351, 1354, 48 USPQ2d 1351, 1353-54 (Fed. Cir. 1998). For the purposes of searching for and applying prior art under 35 U.S.C. 102 and 103, absent a clear indication in the specification or claims of what the basic and novel characteristics actually are, "consisting essentially of" will be construed as equivalent to "comprising." See,