UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

------------------------------------------------------------ X
LEVITON MANUFACTURING CO., INC.          :
                                                              :
          Plaintiff,                                    :
                                                              :
          v.                                            :   Civil Action No. 01 CV 3855 AMD
                                                              :
UNIVERSAL SECURITY INSTRUMENTS,          :
INC., *et al.*,                                               :
                                                              :
          Defendants.                                   :
------------------------------------------------------------ X

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF
<u>INFRINGEMENT OF THE '894 PATENT</u>**

      Plaintiff Leviton Manufacturing Co., Inc. ("Leviton"), by and through their undersigned counsel, pursuant to Rule 56 of the Federal Rules of Civil Procedure, and for its reply to the Opposition to Leviton's Memorandum in Support of its Motion for Summary Judgment ("Opposition") filed by Defendants Universal Security Instruments, Inc., and USI Electric, Inc. (collectively, "Defendants") state as follows.

**INTRODUCTION**

      Through their Opposition papers, Defendants cry foul in a transparent attempt to sanitize their infringing conduct, and to distract this Court from finding an absence of any genuine issue of material fact relating to Defendants' infringement of United States Patent No. 4,595,894 (the "'894 Patent"). Despite their well-crafted papers, the undisputable evidence demonstrates that the copies of Leviton's GFCIs manufactured by Yatai for Defendants' use, distribution, marketing, offer for sale and sale (the "Accused Products"), infringe the asserted claims of the '894 Patent, entitling Leviton to judgment

as a matter of law. Indeed, as set forth in Leviton's Memorandum in Support of its Motion for Summary Judgment, each and every element of the asserted claims of the '894 Patent is present in the Accused Products. This is an indisputable fact, as demonstrated by all of the evidence presently and properly before this Court, and none of Defendants' smoke and mirror tactics can change that.

## ARGUMENT

I. **Defendants' Purportedly "new GFCI design" is Not Considered by Motion in October 2002.**

The present Motion is directed to those items manufactured by Yatai that Defendants admit have what Defendants refer to as a "banger and/or banger dog structures." To the extent that Defendants purportedly now sell GFCIs that have a wholly different construction, then of course, there could be no infringement of any such purported later versions.[1] The question of when or whether the infringing GFCIs were discontinued will be a matter for damages, which this Court has put off for a subsequent trial.

II. **Leviton is Entitled to Summary Judgment of Infringement as a Matter of Law.**

The parties agree that "[i]nfringement is a factual inquiry" *Baxter Healthcare Corp. v. Spectramed, Inc.*, 49 F.3d 1575, 1582 (Fed. Cir. 1995). Further, that determination of infringement is a two-step analysis: first, correctly construing "the scope of the claims," and second, comparing such claims "to the Accused Device." *Kahn v. General Motors Corp.*, 135 F.3d 1472, 1476 (Fed. Cir. 1998). Moreover, the parties do

---

[1] Contrary to Defendants' assertions in their Opposition, Defendants did not provide Leviton with copies of these alleged later versions of the GFCIs in November, 2002. Rather, as shown by the accompanying correspondence, Defendants provided copies of their purportedly new design during January of this year, without any mention that these devices were different from the earlier versions of the Accused Products. (Exh. A).

not dispute that the claims of the '894 Patent refer to the relevant elements in means plus function format. And, that where claim elements, such as in Claim 1 of the '894 Patent, are expressed in "means plus function" format, the claim "must be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof," that meet the cited function or functions. *Chiuminatta Concrete Concepts Inc. v. Cardinal Indus., Inc.* 145 F.3d 1303, 1307-08 (Fed.Cir. 1998). Thus, literal infringement is found when an element in an accused product performs the same function and has either the identical or a substantially similar structure. *Serrano v. Telular Corp.*, 111 F.3d 1578, 1582 (Fed. Cir. 1997) (granting summary judgment of infringement to patentee).

Defendants' argument of non-infringement is based solely upon a purported difference between the structure of the strap depicted in the drawings of the '894 Patent and the strap in the Accused Devices. Specifically, Defendants claim the strap depicted in the '894 Patent is a planar element (i.e. extending substantially in a single plane), having two punched-out tabs at each end of the coil. Desperately seeking to distinguish the Accused Products from the claimed invention, Defendants make much of the fact that the claim language requires that the strap means must have a plurality of "portions". Specifically, Defendants state that the only two "portions" are the tabs 342 and 344, extending from strap 326 to form the path for the magnetic field, while ignoring the central portion of strap 326 between these two tabs.

Coil 346 is referred to in the '894 Patent as the "electromagnet coil means" and strap 326 is referred to as the "strap means." The strap means are defined in the specification and the claims as having two functions -- namely, "for mounting the

switching apparatus upon a selected surface" ('894 Patent col. 6, lines 58-59), and as "including portions . . . which define a path of the magnetic field generated by said coil means to influence the position of said plunger means." ('894 Patent col. 6, lines 58-63, Exhibit B).

As specifically depicted by Figure 3 of the '894 Patent (Exh. B), strap 326 has a large tab 342 at its upper end that contacts the top of coil 346 and extends substantially outward towards the central axis of coil 346, and a second very small tab 344, which does not contact the bottom end of coil 346 and extends less than one quarter of the diameter of coil 346. In addition, the circumferential surface of coil 346 is contacted by the portion of strap 326 between tabs 342 and 344.

Like the strap of the '894 Patent, the Accused Products' strap has a large tab, which possesses the same dimensions, configuration, orientation and location of tab 342. Defendants' tab portion, like tab 342, contacts the top of the Accused Products' coil. In addition, like the '894 Patent's strap, the Accused Products' strap has a longitudinal portion that runs immediately adjacent to and along the outer circumferential surface of the Accused Products' coil.

Defendants' argument completely disregards the longitudinal <u>portion</u> of the strap extending below the large tab and that is in contact with the coil, in the Accused Products, which are identically sized, shaped, orientated and positioned with respect to the coil. Rather, Defendants rely on their decision to copy Leviton's commercial embodiment of the invention claimed by the '894 Patent, which does not include minor tab 344 for reasons that do not affect the device's function or efficiency, and identify this inconsequential difference as critical. Indeed, a comparison of the '894 Patent claims and

drawings with the Accused Products demonstrates that, *inter alia*, the straps of both the '894 Patent and the Accused Device rely on nearly identical structures to accomplish the same functions. *See Serrano*, 111 F.3d at 1582. Defendants' argument regarding "plural portions", which equates "portions" with "tabs" is simply semantics specifically designed to create the impression of a meaningful distinction where none exists. As such, Leviton is entitled to a determination of infringement.

### III. Defendants Should Be Prohibited From Introducing the Expert Submission of Mr. Gene Haynes as a Matter of Law.

Recognizing the weakness in their primary argument, Defendants next contend that without the second tab there can be no "conduit." However, there is no evidentiary, technical or legal basis for that statement in this case.

As support for this position, Defendants improperly introduce their interpretation of written expert statements made by Mr. Gene Haynes, submitted in a prior ITC proceeding involving a different defendant. However, in a clear violation of the Court's scheduling Order, Defendants never produced Mr. Haynes' report during discovery. Nor had they ever identified Mr. Haynes as an expert at any time prior to their discussion of his purported testimony in their Opposition papers. Indeed, Defendants' offering of Mr. Haynes' testimony is a completely contrary to the express representation made in open court by Mr. Cahn, Defendants' counsel, during the hearing of April 17, 2003; there, Mr. Cahn specifically represented on the record that "[w]e do not plan on putting on a technical expert, . . . [t]hat is why [Leviton] . . . didn't get a technical-expert report." (Exh. C, p.39, lines 16-18, attached hereto). Moreover, Mr. Cahn explained that Defendants "did not provide an expert report for a technical-expert because [Defendants] . . . were not planning on putting one on," indicating that they intended to rely on

invalidity arguments and using the testimony of Leviton's 30(b)(6) witnesses' purported testimony. *Id.* at p. 39, line 16-p. 40, line 15. Defendants' eleventh hour offering is well after the expiration of the deadline set for the identification of expert witnesses and the disclosure of expert reports in this Court's April 23, 2003 Rule 16 Revised Case Management Order (Exh. D).

It is well-accepted that the public and the parties have a strong interest in the expeditious and complete resolution of litigation. To that end, parties are required to comply with the Federal Rules of Civil Procedure and with the Court's Revised Case Management Order. Courts manage their docket and ensure the most timely and efficient resolution of the matters before it by setting deadlines. *See Keener v. United States*, 1818 FRD 639, 642 (D.MT. 1998) (district court precluding expert witness from testifying in connection with an untimely filed supplemental report for failure to comply with the court's disclosure requirements).

> Rule 26 is mandatory in requiring that a party
>
> (A) …."shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703 or 705 of the Federal Rules of Evidence. ….
> (B) …."this disclosure shall, with respect to a witness who is … to provide expert testimony in the case … be accompanied by a written report prepared and signed by the witness. ….
> "(C) These disclosures shall be made at the times and in the serquence directed by the court. Rule 26 (a)(2) **Fed. R. Civ. Pr.**

When a party violates Rule 26 plus a Rule 16(f) scheduling order, by failing to timely submit an expert report, preclusion is justified. *Astrazeneca AB, et al. v. Mutual Pharm. Co., Inc.*, ---- F.Supp. 2d ---, 2003 WL 21982065 (E.D. Pa. Aug. 21, 2003) *citing, Stein v. Foamex Intern., Inc.*, No. Civ.A. 00-2356, 2001 WL 936566, at *6 (E.D. Pa. Aug. 15, 2001) (precluding affidavit filed by plaintiff as attachment to its opposition to

motion for summary judgment, where plaintiff had neglected to supplement expert opinions formally, through amended or supplemented expert report, in that plaintiff "would have the Court allow him to file preliminary expert reports and then freely supplement them with information and opinions that should have been disclosed in the initial report. Allowing otherwise would effectively circumvent the requirement for the disclosure of a timely and complete expert report).

It is quite clear, that these rules apply equally in the summary judgment context as at trial. "Rule 26 disclosures may serve just as valid a purpose in the summary judgment context as at trial, in that these disclosures may well assist the court in determining how much weight to afford the expert's opinion." *Silverman v. Innovation Luggage, Inc.*, 2002 WL 31175226 (S.D.N.Y. 2002), *citing Giladi v. Strauch*, No. 94 Civ. 3976, 2001 EWL 388052 at *5 (S.D.N.Y. 2001) ("[T]he Advisory Committee Notes to Rule 26(a)(2)(B) explain that the purpose of the reports is to avoid the exposure of sketchy and vague expert information, as was the practice under the former rule." Q*uoting Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996)).

The time for designating an expert witness and/or introducing expert testimony has long passed in this case. This Court's April 23, 2003 Rule 16 Revised Case Management Order specifically mandates that "[t]he deadline for all fact and expert discovery, including expert designations and depositions on liability is <u>June 20, 2003</u>." (Exh. D). Now, unable to refute or even contradict Leviton's technical expert witness, Mr. Steve Campolo, Defendants scramble in a desperate attempt to circumvent the Federal Rules of Civil Procedure governing expert disclosure.

Defendants' end-run must fail. In addition to the tardiness of Defendants' offering, Defendants have not established, or even suggested, that Mr. Haynes was "[u]navailab[le] as a witness" at any point during these proceedings, let alone prior to the Court's deadline for submitting expert testimony.

Moreover, Defendants' Opposition disregards the fact that ITC proceedings maintain significantly different standards for reviewing patent infringement and invalidity issues. *See Texas Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1569-1570 (Fed. Cir. 1996) (District courts "can attribute whatever persuasive value to the prior ITC decision that it considers justified. And [the Federal Circuit], on appeal, must be free to thoroughly review the district court's decision."). *And see Fuji Photo Film Co., Ltd. v. Jazz Photo Corp., Inc.*, 173 F. Supp. 2d 268, 274 (D.N.J. 2001) (Explaining that while ITC findings and opinions may "serve a persuasive value, they do not receive any differential treatment nor do they have a preclusive effect on any finding or opinions rendered by this Court."). As such, while this Court is permitted to consider ITC factual findings, the Federal Circuit and sister courts have specifically imparting such findings with a preclusive effect.

Moreover, Mr. Haynes does not support the assertion that the only two portions that define the magnetic path are the tabs, or that the portion extending longitudinally along the circumferential surface of the coil was not part of the path provided by the strap.

### IV. The ITC's Earlier Denial of Leviton's Motion for Summary Judgment is of No Incidence.

Building upon their version of Mr. Haynes' purported prior ITC testimony, Defendants next improperly attempt to introduce the ITC's denial of Leviton's Motion

for Summary Judgment in an earlier proceeding involving a different defendant's infringement of the '894 Patent. However, conspicuously missing from their discussion of this prior ITC ruling, is any mention of the fact that such proceeding was not brought under the United States Patent Laws, but rather the United States Tariff Act.

Defendants' suggestion that this finding must have any effect on the present Motion (be it *res judicata*, collateral estoppel or otherwise) is entirely inappropriate and should as a matter of law be ignored by this Court, as the Federal Circuit has long held that ITC decisions concerning patent infringement or validity cannot have claim-preclusive effect in district courts. *See Texas Instruments, Inc. v. Cyprus Semiconductor Corp.*, 90 F.3d 1558, 1569 (Fed. Cir. 1996); *Bio-Technology General Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1563-64 (Fed. Cir. 1996); *see also, Texas Instruments Inc. v. United States Int'l Trade Comm'n*, 851 F.2d 342, 344, 7 USPQ 2d 1509, 1510 (Fed. Cir. 1988) (stating that ITC determinations regarding patent issues should be given no collateral estoppel effect); *Corning Glass Works v. United States Int'l Trade Comm'n*, 799 F.2d 1559, 1570 n.12, 230 USPQ 822, 830 n.12 (Fed. Cir. 1986) (stating that the legislative history of the Trade Reform Act supports the position that ITC decisions have no preclusive effect in district courts).

It is undisputed that jurisdiction of the district court in patent matters and the ITC in trade matters is exclusive and not overlapping. *See In re: Convertible Rowing Exerciser Patent Litigation*, 721 F. Supp. 596, 597 (D. Del. 1989) (District Court denied the defendants' Motion for summary judgment of invalidity based on an earlier ITC determination that had been affirmed by the Federal Circuit). Indeed, the Federal Circuit reviews district court decisions under Section 1338 with regard to patent validity,

enforceability and infringement issues, and ITC determinations as to unfair trade practices under Section 337. Further, while it is well-accepted that the ITC must, out of necessity, make determinations of validity, enforceability and infringement in the course of exercising its jurisdiction over trade matters, the district courts maintain exclusive original jurisdiction under 28 U.S.C. § 1338 over the same patent issues. *See Convertible Rowing*, 721 F. Supp. at 600-02. In fact, the district court in *Convertible Rowing*, relying upon the legislative history, specifically concluded that the questions considered in ITC determinations differed "in both form and substance" from those reviewed in district court actions. 721 F. Supp. at 602 (district court reasoned that "[i]n order to preserve the jurisdictional structure intended by Congress in patent matters, this Court must deny preclusive effect to the ITC determination.").

Despite these long-standing and well-grounded principles, Defendants, relying on an ITC order denying Leviton's Motion for Summary Judgment in connection with a different defendant's infringement of the '894 Patent, argue that "the absence of Tab No. 344 or its equivalent as described and claimed in the '894 Patent in the strap of the Yatai GFCIs at minimum precludes a finding of infringement." Opposition at 11. Defendants' extrapolation suggests that the ITC "found that there was at least a genuine issue of material fact with respect to the absence of a structure equivalent to Tab No. 344." *Id.* at 10. As corroboration for this purported finding, Defendants refer in the abstract to a legal opinion, generated by unidentified counsel to certain unidentified defendants in an unidentified and unrelated action. *Id.* at 11. Despite admitting that they have never

rightfully possessed or reviewed this opinion, Defendants shamelessly suggest that it supports their argument.[2]

Like Defendants' attempted end-run around Rules 16 and 26 of the Federal Rules of Civil Procedure, their present attempt to create the impression of an issue of fact by introducing the ITC order must fail. The ITC's denial of Leviton's Summary Judgment must not preclude Leviton's present claim, as Administrative Judge Harris' unappealed ITC determination was made pursuant to Section 337 and not Section 1338.

V.   **Mr. Campolo's Expert Testimony is Based Upon Sufficient Facts and Data and is the Product Of a Proper Application of Reliable Principles and Methods to the Facts of This Case.**

It is a well-established principle of evidence that in "circumstances where the answer is one requiring evidence from a professional and that evidence is received, not contradicted and no reason appears to doubt the credibility of the witness or the accuracy or inherent probability of the opinion, the fact should be deemed established." *Franklin Supply Co. v. Tolman*, 454 F.2d 1059, 1071 (9th Cir. 1971), *citing Int'l Shoe Co. v. Federal Trade Comm.*, 280 US 291, 299, 50 S.CT. 89, 74 L.Ed. 431 (1929); *Ariasi v. Orient Insur. Co.*, 50 F.2d 548, 551 (9th Cir. 1931) (same). Thus, while the trier of fact may not be bound to accept expert opinion, even if it is uncontradicted *Minn. Mining & Mfg. Co. v. Berwick Indus., Inc.*, 532 F.2d 330, 333, 190 USPQ 209, 211 (3d Cir. 1976), an expert's opinion "may not be arbitrarily disregarded." *State of Ridgely v. United*

---

[2] Slinging still more mud into the wind, Defendants allege that they have been deprived by Plaintiff of, *inter alia*, a purported opinion of counsel vindicating their clients of infringement. Defendants' assertion is disingenuous. Plaintiff has produced all documents from prior proceedings that were relevant and not subject to a protective order. Plaintiff has advised Defendants that the opinion to which they likely refer was the subject of a protective order and received pursuant to settlement discussions and thus cannot be produced by Plaintiff without permission from the appropriate party. Neither Plaintiff nor Defendants have ever received such permission.

*States*, 180 Ct.Cl.1220, 1967 WL 8887, *7 (Ct.Cl. 1967), *citing Cullers v. Commissioner*, 237 F.2d 611, 616 (8th Cir. 1956).

Defendants do not question Mr. Campolo's education, experience or ability to provide expert testimony. Rather, Defendants, having failed to introduce even a scintilla of expert testimony or documentary evidence refuting Mr. Campolo's well-grounded testimony or in support of Defendants' curious claim construction, rely on the cobbling together of unorthodox and unsupported quasi-technical attorney arguments in an effort to refute Mr. Campolo's expert testimony.

Defendants' counsel have never been offered up to, or accepted by, this Court as expert witnesses (technical or otherwise). Moreover, Defendants have not presented any expert testimony that refutes, compromises or even calls Mr. Campolo's testimony into question. Shy of this Court's finding that Mr. Campolo or his testimony is unqualified, incorrect or inaccurate, this Court should as a matter of law disregard Defendants' wayward arguments and credit Mr. Campolo's uncontradicted expert testimony.

### VI. Defendants' Misguided Attempt to Draw a Negative Inference from The Missing Patent File Must Be Rejected as Matter of Law.

Leviton does not deny that the file history has been lost by the PTO, or that Leviton's counsels' files relating to the prosecution of the '894 Patent were destroyed accidentally after a fire more than five years ago, and well before Leviton learned of Defendants' infringing conduct. Nor is Leviton attempting to benefit from the absence of the file wrapper, as a review of the same would only bolster Leviton's argument by obviating those of Defendants. Indeed, the USPTO's records demonstrate that Defendants' assertion that there was any type of material in the file wrapper that could change this construction is baseless.

Unsupported by law or fact, Defendants' final argument may be its most frivolous. Defendants do not deny that support for Plaintiff's proposed interpretation and application of each and every element of the asserted claims is found within the four corners of the '894 Patent. Nor, are Defendants able to point to a single piece of evidence (written or oral) that any of the claims at issue or any element therein, are the subject of any limiting remarks entered by Leviton or the patent examiner during the prosecution of the '894 Patent.

Rather, brandishing the fact that the '894 Patent's file wrapper no longer exists as a supposed "smoking gun," Defendants choose hearsay, happenstance and speculation, over hard facts supported by reliable and verifiable evidence to perfect their argument that this Court should draw a negative evidentiary inference against Leviton. Adding insult to injury, Defendants, unable to otherwise disprove their infringement of the '894 Patent, attempt to raise the specter of an issue of genuine fact by suggesting that the USPTO's PAIR/PALM systems cannot be trusted, and that despite Leviton's voluminous production, all of which lacks any evidence supporting or even suggesting Defendants' arguments, this Court should defy reason by disregarding the obvious, and punishing Leviton.

Leviton does not dispute that under the "spoliation of evidence rule, an adverse inference may be drawn against a party who destroys relevant evidence." *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155 (4th Cir. 1995). Notwithstanding and even though application of this rule could prove critical to a party's recovery on a claim, "it is not an affirmative defense but a rule of evidence, to be administered at the discretion of the trial court." *Id.* at 156. Thus, while a court has "broad discretion to permit a jury to

draw adverse inferences from a party's failure to present evidence, the loss of evidence, or the destruction of evidence . . . [a] party's failure to produce evidence can, of course, be explained satisfactorily." *Id.* at 156. Moreover, claim construction is not a matter to be determined by the jury. Rather, claim construction must be determined by a court. *Markman v. Westview Inst.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).

Courts have discretion to pursue a wider range of responses built for the purposes of leveling the evidentiary playing field and for the purposes of sanctioning improper conduct only "when a proponent's intentional conduct contributes to the loss or destruction of evidence." *Id.*, *citing Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir. 1988) (additional citations omitted). Further, "[a]n adverse inference about a party's consciousness of the weakness of his case, however, cannot be drawn merely from his negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction." *Vodusek*, 71 F.3d at 156, *citing Nationwide Check Corp. v. Forest Hills Dist., Inc.*, 692 F.2d 214, 217-18 (1st Cir. 1982); *see also Slattery v. United States*, 46 Fed.Cl. 402, 404-05 (Fed. Cl. 2000) (bad faith is an indispensable element of the spoliation doctrine, but may be inferred from the totality of the circumstances). Here, Leviton's relevant records were destroyed well before learning of Defendants' infringing conduct and contemplating the present litigation.

Defendants acknowledge in their Opposition that the USPTO is subject to an intricate and well-developed procedure and protocol for replacing lost files. Opposition at 16. As codified at 37 CFR § 1.251, "[i]n the event that the [Patent] Office cannot

locate the file of an application, patent or other patent-related proceedings, after a reasonable search, the Office will notify the applicant or patentee and set a time period within which the applicant or patentee must comply with the notice in accordance with one of paragraphs (a)(1), (a)(2) or (a)(3) of this section. An applicant's failure "to comply with one of paragraphs (a)(1), (a)(2) or (a)(3) of this section within the time period set in the notice . . . result[s] in abandonment of the application." 37 CFR § 1.251(b).

It is no surprise that Defendants' argument lacks any evidence, suggestion or indication that Leviton received the Office's requisite notification, as Defendants never made such an inquiry. Rather, opting to maintain their disingenuous posture, Defendants rely on conjecture in an effort to create the illusion of an issue of fact where none exists. Indeed, nothing could be further from the truth, as Leviton first learned of the USPTO's inability to locate the patent file long after counsel's files were accidentally destroyed. Further, had Leviton received such notification, which it did not, Leviton would have continued to meet its obligations to the United States as a patentee, and, as required by § 1.251(a)(3), provided "a statement [that] the applicant or patentee does not possess any record of the correspondence between the Office and the applicant or patentee for such application, patent, or other proceeding." 37 C.F.R. § 1.251(a)(3).

Since Leviton's attorneys' relevant records were accidentally destroyed after a fire ravaged their offices long before learning of any of Defendants' infringing acts, there is no basis for Defendants' argument. Neither the Federal Rules of Evidence, the United States Code of Federal Regulations or the relevant legal precedent require or even suggest burdening a party in Leviton's position with such a negative inference. Rather,

"[w]hen a proponent cannot produce original evidence of a fact because of loss or destruction of evidence, the Court may permit proof by secondary evidence." *Vodusek* 71 F.3d at 156, *citing Fed. R. Evid.* 1004(1). Since the loss or destruction was of no fault of Leviton, this Court's reliance upon reliable and verifiable secondary evidence (the USPTO's PAIR/PALM systems) under the present circumstances is perfectly acceptable.

The PAIR/PALM systems are reliable and verifiable as these databases are regularly maintained by the USPTO. Further, the information that Leviton has downloaded from those systems and offered as evidence to this Court is relevant, as that is the exact information necessary to establish that there was in fact, a first action allowance.

Defendants' attempted attack on the reliability of the PAIR/PALM systems, through mentioning Jerome W. Massie's deposition testimony that it was "possible" that the examiner may have "issued reasons for allowance" in connection with his notification of the same on behalf of the USPTO, is of no consequence, regardless of whether it is considered in the vacuum of Defendants' argument or in view of the entirety of his testimony. Leviton has offered a strong showing that there was no office action between the filing of the application and the issuing of the patent and that the claims were allowed as originally filed. A mere possibility is not sufficient to override the meaning of the claims and the specification, as well as what is shown in the cited prior art. *See, e.g. Bailey v. County of Georgetown*, 94 F.3d 152, 157 (4th Cir. 1996) (holding that a court should submit an issue to the jury "only when that issue is supported by substantial evidence which shows a probability and not a mere possibility of proof."); *Spectronics Corp. v. H.B. Fuller Co.*, 940 F.2d 631, 636 (Fed. Cir. 1991) (controversy rendered moot

for declaratory judgment purposes, rejecting arguments based on potential for reissuing patent, because " [t]here is no guarantee that the reissue will eventually issue."). Particularly since there is no basis for the examiner to have made Defendants' unsupported and extraordinary assertion that a pair of depending tabs would be absolutely essential to patentability.

## CONCLUSION

For all the above reasons, Leviton respectfully requests that this Court grant it Motion for Summary Judgment in all respects.

Dated: August 26, 2003

>Respectfully submitted,
>
>_____/s/_____
>D. Christopher Ohly, Esq.
>BLANK ROME COMISKY
>& McCAULEY, LLP
>250 West Pratt Street
>Suite 210
>Baltimore, MD 21201
>Telephone: (410) 659-1400
>Facsimile: (410) 659-1414
>
>Paul J. Sutton
>Joseph M. Manak
>Barry G. Magidoff
>Joseph G. Lee
>GREENBERG TRAURIG, LLP
>883 Third Avenue
>21st Floor
>New York, NY 10022
>Telephone: (212) 801-2100
>Facsimile: (212) 688-2449
>
>Attorneys for Leviton,
>LEVITON MANUFACTURING CO., INC.

Of counsel:

Barry Schindler
Todd S. Sharinn