

**BLANK ROME** LLP
COUNSELORS AT LAW

*Phone:*   *(410) 659-3960*
*Fax:*     *(410) 986-2707*
*Email:*   *ohly@blankrome.com*

January 17, 2003

**By Facsimile & First Class Mail**

Maurice U. Cahn, Esq.
Frederick N. Samuels, Esq.
Cahn & Samuels, LLP
Headquarters Building
2000 P Street, N.W.
Suite 200
Washington, DC 20036

    Re:   *Leviton Manufacturing Co., Inc. v. Universal Security Instruments, Inc., et al.*
            In the United States District Court for the District of Maryland
            Case No.: AMD-01-CV-3855

Gentlemen:

    This letter acknowledges delivery yesterday of 31 samples of GFCI receptacles sold by your clients in the United States. Copies of the front and rear covers of the boxes in which these samples were delivered are appended to this letter, and constitute an inventory of what I received.

    When I visited your offices last night at approximately 5:30 p.m., I was also shown two other samples which bore USI's model numbers 6201 and 6205. One of these was a GFCI receptacle white in color and the other ivory. I was told that these were the "last two" of their kind and that, as a result, I could not take samples of them with me, for any purpose.

    Yesterday, in addition, I was told by Mr. Samuels that USI had shipped additional samples of its products to your offices by means of some express service and that those samples were, as of late yesterday, still at Dulles Airport pending delivery to your offices. I told Mr. Samuels that I would call your offices today to arrange for delivery of those additional samples by messenger.

    I have informed you that each of the 31 samples that were physically delivered to me yesterday may be disassembled and internally inspected by technical experts Leviton may employ for that purpose. It is my understanding that the two samples which were shown to me in your offices yesterday were not delivered to me because these were the "last two" of their kind and that, as a result, arrangements still need to be made to allow Leviton's inspection of the



**BLANK ROME LLP**
COUNSELORS AT LAW

Maurice U. Cahn, Esq.
Frederick N. Samuels, Esq.
January 17, 2003
Page 2

internal components and workings of those products. I will call you in a good faith effort to determine arrangements for such disassembly.

At the time of my visit to your offices yesterday afternoon, I was also furnished with a copy of a letter dated January 15, 2003, labeled "By Hand Delivery During Document Inspection." It should be clear, first, that I was shown no documents on January 15, 2003, as suggested by the title of your letter.

Your letter reiterates "USI's objection to Leviton's demand that it be provided a set of GFCI's for destructive evaluation." It adds that you have been "ready to provide inspection (non-destructive) of the accused USI GFCI models" beginning on or about January 9. It adds that I "declined [your] offered to provide [me] with a room for inspection by [me] or [my] expert at [your] offices," and that I had "insisted that it is Leviton's right to take possession and take apart the GFCIs." It concludes with the suggestion of your "hope that Leviton had conducted an investigation and evaluated USI's GFCIs before filing this suit."

It is Leviton's right, under the Federal Rules, not only to "inspect" the package in which the accused products may be contained, but also to disassemble and perform tests on those products. Rule 34 clearly provides, on its face, that a party may require another "to produce and permit the party making the request ... to ... test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) ...," that is, materials that are relevant to the claims or defenses of any party or reasonably calculated to lead to the discovery of admissible evidence.

The insinuation in your letter that Leviton did not conduct an investigation of USI's accused products is completely without basis. Leviton conducted an appropriate inquiry and determined that your client's infringed the patents in suit. The additional samples which you have now reluctantly and belatedly produced are further evidence of such infringement, by a substantially larger number of products.

On January 9, you wrote me another letter that suggested that you had "planned to e-mail and fax [your] opposition [to Leviton's Motion to Compel Discovery] but do [sic] to the sensitivity of some of the content of [your] Opposition, [you] could not, in good faith, violate the exiting [sic] [Protective] Order." This assertion was allegedly made because, at the time of your letter, I had not yet formally executed a document adhering to the Protective Order entered in the case. January 9 was the date on which you previously stated that you would produce samples for inspection. The assertion made in your letter is specious. You could have easily produced the samples at a much earlier time directly to New York counsel for Leviton, who had clearly signed the Protective Order many months ago. Your reliance upon my failure to sign a document



Maurice U. Cahn, Esq.
Frederick N. Samuels, Esq.
January 17, 2003
Page 3

evidencing my adherence to the Protective Order was simply a pretext for your delay in production. That it was a pretext is demonstrated by the fact that, even now, you have not yet acquired from your own client samples of *all* the products that it has sold, and whose production has been demanded in Leviton's Request for Production of Documents and Things.

On January 14, you sent another letter in which you suggested that "Leviton had withdrawn its previous offer to produce [its] documents in Baltimore at [my] offices …" So that your misconstruction of my remarks is made clear for any future record that may be used in the case, I never "offered" to produce documents in Baltimore. I "offered" to have copies of all of the documents that Leviton would produce, comprising some 10 boxes of materials, made and delivered to you in Washington, D.C. You asked whether the documents would be produced in accordance with the numbered requests set forth in your Request for Production. I told that the documents would be produced, as permitted by Rule 34, "as they are kept in the usual course of its business." You said that you were not interested in receiving all such document and that you wished to review the originals, so that you could be more selective in your choice of what should be copied. I then stated that I would *determine whether* Leviton would agree to send *all* of the *original* documents that Leviton has now produced in discovery, from its headquarters in Long Island to my offices in Baltimore, for your inspection and review. After that inquiry, I learned that, as might be expected, Leviton did *not* wish to release its *original* documents from its headquarters. We so informed you and promptly arranged for you to visit Leviton's headquarters for the purpose of inspecting the documents and selecting from among them those that you wish to have copied. I understand that, while I was at your offices in Washington, D.C., yesterday, you visited Leviton's Long Island, N.Y. headquarters and reviewed the documents that Leviton produced. Copies of the documents you selected will be delivered to you as promptly as practicable.

Please do not continue to partially quote or misquote me.

Thank you.

Very truly yours,

D. Christopher Ohly

DCO:mgs
Enclosures
cc:   Barry Magidoff, Esq.
      Joseph Lee, Esq.