UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

------------------------------------------------------------ x
LEVITON MANUFACTURING CO., INC.,          :

         Plaintiff,                                :

   v.                                                       :
                                                    Civil Action No. 01 CV 3855 AMD
UNIVERSAL SECURITY INSTRUMENTS,      :
INC., *et al.*,
                                                :

        Defendants.                         :
                                                :
------------------------------------------------------------ x

**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT OF VALIDITY AND ENFORCEABILITY AND
IN OPPOSITION TO DEFENDANTS' CROSS-MOTION
<u>FOR SUMMARY JUDGMENT OF INVALIDITY</u>**

      Plaintiff Leviton Manufacturing Co., Inc. ("Leviton") by their counsel submit this memorandum in reply to defendants' opposition to the plaintiff's summary judgment motion and in opposition to defendants' cross-motion for summary judgment for invalidity and unenforceability. It will be shown below that the defendants' motion should be denied and plaintiff's motion granted as defendants have failed to show any admissible evidence that will permit a reasonable jury to find in its favor.

      Defendants have continued to attempt to paint the plaintiff in a bad light so as to distract the court from the substantive merits of the plaintiff's case. Such unsupported allegations should be ignored and, as shown, are purely gratuitous and unsupportable. Plaintiff's '894 Patent has not been shown to be invalid and there is no basis to support any allegation of unenforceability. There is no factual dispute with respect to the issue of double patenting and, as a matter of law, the claims of the '894 Patent are not anticipated by or made obvious in view of the claims or the disclosure of the '338 Patent.

### A. As A Matter Of Law, Defendants Have Not Met Their Burden Of Proving Invalidity Or Nonenforceability By Clear And Convincing Evidence

Respondents, after having copied complainant's patented, commercially highly successful, product, almost exactly, now allege that the '894 Patent which covers that successful commercial product, is invalid for anticipation and/or obviousness and in addition is unenforceable due to 'inequitable conduct'. As a patent is presumed valid under 35 U.S.C. § 282, the one attacking validity has the burden of proving invalidity by clear and convincing evidence. *See e.g. American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360, 220 USPQ 763, 770 (Fed. Cir. 1984), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed. 2d 41 (1984).

1. **The Defendants Have Failed To Show Invalidity Due To Double Patenting Or Anticipation By The '338 Patent**

First, the defendants attempt to make the point that the Examiner of the '894 Patent was not informed of the existence of U.S. Patent No. 4,386,338 (the "'338 Patent") during prosecution of the application for the '894 Patent before the U.S Patent Office (USPTO). However, defendants admit that the '338 Patent is the immediate parent of U.S. Patent No. 4,518,945 (the "'945 Patent") and the '945 Patent and its "respective 'parent' patent applications" are not only expressly recited, but are also incorporated by reference, in the opening paragraph of the specification of the '894 Patent. In addition, in the next paragraph, commencing on line 20 of column 1 of the '894 Patent, it is specifically explained that the reason for the incorporation by reference is "to aid the examiner in considering, collectively, the prior art of record in all applications." This includes not only the applications for the '945 and '338

Patents, but also application serial No. 558262 (the "'262 application"), which has gone abandoned.

More specifically, the requisite intent is expressly shown to be non-existent by the unrebuttable intrinsic evidence of the specification itself. *See e.g. American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1367-8, 220 USPQ 763 (Fed. Cir. 1984), *cert. denied,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed. 2d 41 (1984); *see also ATD Corp. v Lydall Inc.,* 159 F.3d 534, 547, 48 USPQ2d 1321, 1330-1331 (Fed. Cir. 1998). Accordingly, contrary to the allegation by the defendants, there is no basis for asserting that the examiner at the USPTO did not have his attention drawn specifically to the '338 Patent as well as to all of the references cited against its application, as well as against the '262 application, and its cited references. This was confirmed in the Expert Report of Jerome W. Massie (hereinafter the "Massie Report"), on pages 7 to 8 and at page 17. There is no conflicting evidence on that point.

    a.    **There Is No Basis For Referring To The Incorporated Material From The Prior Patents And Applications When Construing The Claims Of The '894 Patent**

The defendants attempt to stretch the language of the '894 Patent claims to encompass the structures of the '945/'338 Patents. However, their citation to the Manual Of Patent Examining Procedure (the "MPEP") in support, is misleadingly incomplete. When determining the meaning of a claim and whether it is to be construed in accordance with 35 U.S.C. § 112, ¶ 6, the MPEP is very explicit with regard to what must be done. In their Opposition, the defendants refer to MPEP § 2163.07(b) with respect to the effect of incorporation by reference. However, defendants fail to point out that with respect to the impact of incorporation by reference, "on the determination of whether applicant has complied with the requirements of 35 U.S.C. 112, ¶ 2, when 35 U.S.C. 112, ¶ 6 is invoked", §2163.07(b) cross-references to MPEP § 2181, specifically

that portion of § 2181 set forth at page 2100-218 (attached hereto as Exhibit A). That section of the MPEP makes very clear the error in the defendants' argument. Section 2181 points out that

> "office personnel must review the description in the specification, <u>without relying on any material from the incorporated document</u>, and apply the "one skilled in the art" analysis to determine whether one skilled in the art could identify the corresponding structure (or material or acts) for performing the recited function to satisfy the definiteness requirements of 35 U.S.C. 112, ¶ 2."(Emphasis added)

The MPEP goes on to state that "if one skilled in the art would be able to identify the structure, material or acts from the description in the specification for performing the required function, then the requirements of 35 U.S.C. 112, ¶ 2 are satisfied." *Id.* However,

> "if one skilled in the art would <u>not</u> be able to identify the structure . . . from description in the specification for performing the recited function, then applicant will be required to amend the specification to include the material incorporated by reference and to clearly link or associate the structure . . . to the function recited in the claim. Applicant should not be required to insert a subject matter described in the entire reference document into the specification."

Accordingly, in the present case, the published patent shows that the examiner did not insert, into this '894 Patent specification, any of the disclosure of the flip-flop cam switch of the '945 Patent that the defendants insist support their construction of the scope of the claims of the '894 Patent. Clearly, if the examiner believed that the '894 Patent claims were broad enough to cover not only the ground fault circuit interrupter mechanism of the '894 specification, but also the flip-flop cam switch of the '945 specification, then it would have been required that the examiner take that additional disclosure and insert it directly into the specification of the '894 Patent (MPEP §2181)

As the Examiner is presumed to have done his duty, according to the rules (see *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360, 220 USPQ 763, 770 (Fed. Cir. 1984), *cert. denied,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed. 2d 41 (1984); *see also Fromson v. Advance Offset Plate, Inc.,* 755 F2d 1549, 1558, 225 USPQ 26 (Fed. Cir. 1985)) the fact that this

was not done raises a strong presumption that the examiner believed that the '894 Patent claims do not encompass the flip-flop cam switch, which is only disclosed in the '945/'338 Patent specification. As explained earlier, and as admitted by the defendants, the disclosure of the '338 Patent is identical to that of the '945 Patent. Accordingly, there is no basis in law or fact to support the defendants' construction of the '894 Patent claims as including the flip-flop cam switch, and thus the assertion of double patenting must fail. It is respectfully submitted that the court should find that as a matter of law, the '894 Patent claims are not invalid for either double patenting or anticipation by the '338 Patent.

The defendants further seek to support their unjustified assertion of double patenting by raising some type of 'estoppel' arising from plaintiff's arguments relating to defending the obtaining of the second Certificate of Correction (the "Second Certificate"). None of the arguments raised in the opposition to defendants' motion with respect to indefiniteness, related to the mechanical switch elements in the '945 Patent specification. The argument by the plaintiff has been consistent and a reference to pages 59-60 of the April 4, 2002 hearing transcript, which provides more specific details of the arguments raised by plaintiff, makes clear that the mechanical switching components of the '945 Patent were not considered, but only the coil and plunger of the solenoid switch. Accordingly, contrary to the arguments by the defendants, there has been no inconsistency in the plaintiff's theory or in any specific arguments that were made.

As the MPEP sections cited above only strengthen the basis for the arguments consistently having been made on this point, that the examiner of the claims of the '894 Patent, during prosecution of the application, as shown by the intrinsic evidence of the file, clearly understood that the claims he allowed did not encompass the flip-flop cam switch of the '945 Patent. Accordingly, the construction of the '894 Patent claims should be as defined by the

plaintiff in its primary memorandum with respect to infringement filed with this Court on July 21, 2003, so that there can be no double patenting.

b.    **There Is No Anticipation of the Claims of the '894 Patent.**

Defendants have failed to meet their burden under 35 U.S.C. § 282, of proving invalidity by clear and convincing evidence, whether as being anticipated or as being obvious. *See e.g. American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1360, 220 USPQ 763, 770 (Fed. Cir. 1984), *cert. denied,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed. 2d 41 (1984).

The defendants have failed to show any evidence to support their assertion that the '894 Patent is invalid due to anticipation, when the claims are properly construed, as shown above. Summary judgment of no anticipation is clearly justified. The defendants first argue that the '338 Patent is anticipatory based upon their erroneous construction that the '894 Patent claims encompass a flip-flop cam switch. As shown above, that is an incorrect construction, based upon an incorrect assumption, and the claims in fact do not encompass such an embodiment.

No single reference of their cited prior art anticipate under 35 U.S.C. § 102, as each fails to disclose every limitation of each claim of the patent in suit, as properly construed. *See e.g. Lindemann Maschinenfabrik GMBH v. American Hoist and Derrick Co.,* 730 F.2d 1452, 1458, 221 USPQ 481, 485 (Fed. Cir. 1984); *Great Northern Corp. v. Davis Core & Pad Co.,* 782 F.2d 159, 165, 228 USPQ 356, 358 (Fed. Cir. 1986); *Kalman v. Kimberly-Clark Corp.,* 713 F.2d 760, 771, 218 USPQ 781, 789 (Fed. Cir. 1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984); *In re Donohue,* 776 F.2d 531, 534, 226 U.S.P.Q. 619, 621 (Fed. Cir. 1995), thus failing to meet the requirement that anticipation requires identity of the claimed invention in a single disclosure in the prior art. *See Scripps Clinic & Research Foundation v. Genentech Inc.,* 927 F. 2d 1565, 1576, 18 U.S.P.Q. 2d 1001, 1010 (Fed. Cir. 1991); *see also Standard Havens*

*Products, Inc. v. Gencor Indus., Inc.,* 953 F. 2d 1360, 1369, 21 U.S.P.Q. 2d 1321, 1328 (Fed. Cir. 1991).

None of the several references defendants have cited meets, in a single reference, each and every limitation of the claims of the '894 Patent. The only references that defendants argue in their Opposition anticipate the '894 Patent are the '338 Patent and United States Patent No. 4,263,637 (the "'637 Patent"). The '338 Patent does not disclose a circuit-opening GFCI switch. A careful review of the '637 Patent, although it is generally directed to GFCI apparatus, makes very clear that it does not disclose all of the limitations of any of the properly construed claims of the '894 Patent.

When comparing the prior art to a claim for purposes of determining whether the claims are invalid, the claim must be construed in the same manner as it is construed for purposes of determining infringement *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("claims must be interpreted and given the same meaning for purposes of both validity and infringement analyses"); *Smithkline Diagnostics, Inc. v. Helena Lab. Corp.,* 859 F.2d 878, 882 (Fed. Cir. 1989). Accordingly, the claims of the '894 Patent have been construed in the accompanying motion for summary judgment on the issue of infringement, and as further confirmed above, as encompassing the GFCI device described in the drawings of the '894 Patent and elements that are the functional equivalent of those elements *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,* 145 F.3d 1303, 1308 (Fed. Cir. 1998). "[P]roper application of § 112 paragraph 6 generally reads the claim element to embrace distinct and alternative described structures for performing the claimed function. Specifically, the "[d]isclosed structure includes that which is described in a patent specification, including any

alternative structures identified." *Ishida Co., Ltd. v. Taylor*, 221 F.3d 1310, 1316 (Fed. Cir. 2000) *citing Serrano v. Telular Corp.*, 111 F.3d 1578, 1583 (Fed. Cir. 1997).

Accordingly, the switching mechanism which is covered by the '894 claims is the switch mechanism shown in the drawings. When considered from this vantage of proper claim construction, it is clear that none of the cited art argued by the defendants either anticipate, *i.e.*, show the identical elements as required to meet the limitations of the claims of the '894 Patent, nor do they render obvious, either individually or in combination, the claimed invention.

The '637 Patent raised by the defendants, is no more relevant to the claimed invention than are any of the other patents either cited by the examiner (especially U.S. Patent No. 4,010,432), or previously considered in this litigation. The '637 Patent discloses a solenoid switching coil having a moveable plunger within a housing. However, the switching mechanism that is shown is wholly different. It does not include the "banger dog and latch" system. Furthermore, the strap, whether it is made of magnetizable material; *i.e.*, steel, or some non-magnetizable material, clearly is not in the same <u>immediately adjacent</u> position, as is shown in the '894 Patent. Contrary to the arguments by the defendants, the '894 Patent does not merely require that the strap be in "proximity" to the solenoid electromagnet coil; rather, as is shown in Figure 3 of the '894 Patent, the electromagnet coil 346 must be immediately adjacent. At least two "portions" of the strap are in contact with the coil 346: a first portion of the strap 326 extending along and immediately adjacent to the full length of the outer circumference of the coil, and the second portion of the strap is the tab 342, which is also immediately adjacent to the coil but extends across the top of the coil.

The strap in the '637 Patent has a completely different shape and location from the essentially planar strap (except for several small tabs) extending adjacent and parallel to the front

face of the ''894 Patent switch housing. The '637 strap makes four (4) right angle bends along its principal length, and extends along three sides of the housing, but not the front face. As a result, the coil is not immediately adjacent to any portion of the strap, being located in a central portion of the housing closer to the front face, as shown by a combination of Figs.2,4 and 6.

As part of their burden in proving invalidity by anticipation, the defendants must make a detailed showing as to the manner in which a single reference in the prior art meets every one of the limitations of the patent claim. *See Scripps Clinic & Research Foundation v. Genentech Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991); *see also Standard Havens Products, Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1369 (Fed. Cir. 1991). It is wholly contrary to established precedent of the Federal Circuit to argue that it would be obvious to replace the mounting strap 152 of the '637 Patent with the strap 22 of the '338 Patent "because the change is minor." *See ATD Corp. v Lydall Inc.*, 159 F.3d 534, 546, 48 USPQ2d 1321 (Fed. Cir. 1998).

The above argument was with respect to claim 1 of '894. However, as the remaining three claims are all dependent upon claim 1, failure to meet every limitation of claim 1 will by its very nature fail to anticipate the dependent claims which include all of the same limitations plus additional limitations. *See Hartness International, Inc., v. Simplimatic Engineering Co.*, 819 F2d 1100, 1107, 2 USPQ2d 1826 (Fed. Cir. 1987).

2.   **The Defendants Have Failed To Show Invalidity Due To**
     **By The '338 Patent Obviousness Over**

As part of their burden in proving invalidity, the defendants must make a detailed showing as to how each of the primary references can be combined with other prior art to make obvious the combination of every one of the limitations in the claims. *Symbol Technologies, Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1576 (Fed. Cir. 1991); *see also In re Dembiczak*, 175 F.3d 994, 999, 50 USPQ 2d at 1617. ("Case law makes clear that the best defense against the subtle but

powerful attraction of a hindsight-based obviousness analysis is rigorous application of the requirement for a showing of the teaching or motivation to combine prior art references"). It is wholly contrary to established precedent of the Federal Circuit to argue that it would be obvious to replace the mounting strap 152 of the '637 Patent with the strap 22 of the '338 Patent "because the change is minor." *See ATD Corp. v Lydall Inc.*, 159 F.3d 534, 546, 48 USPQ2d 1321 (Fed. Cir. 1998). As described above, the shape of the strap in the '637 Patent is wholly unlike the shape of the '894 Patent strap. Further, combining the disclosures of the two patents will not result in the claimed invention. If the '945 Patent strap is substituted into the '637 Patent device, the coil will not be in the correct location to be immediately adjacent to the flat strap.

The defendants next refer to the teachings of the '652 Patent to invalidate these claims. The '652 Patent is by the inventor Klein, who was also the inventor of the 4,001,647 Patent (the "'647 Patent") earlier cited by defendants, as well as the Klein patent cited by the examiner in the '894 Patent prosecution; *i.e.*, 4,010,432 (the "'432 Patent"). In such a case, the defendants also have to overcome the presumption of proper action by an examiner in carrying out his duty when reviewing prior art during patent prosecution (who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents. *American Hoist & Derrick Company, supra*, 725 F.2d at 1360; *see also Fromson, v .Advance Offset Plate, Inc.*, 755 F.2d 1549 (Fed. Cir. 1985).

Defendants admit that the '652 Patent system utilizes a separate U-shaped frame around the coil, to exploit the magnetic field effect. Attempting to substitute the strap means of the '338 Patent for the U-shaped frame would clearly be impossible from a wholly mechanical point of view, as pointed out by Steven Campolo in his Declaration (pp. 3-4, Exh. 12 to the principal brief). Even if a substitution of the magnetic strap could be made, it would <u>not</u> be immediately

adjacent to the coil, and the mechanical system of the '652 Patent does not include a banger and latch means operating the cut-off switch, as in the mechanical system of the '894 Patent. Accordingly, neither alone nor in combination with the '338/'945 Patent is the claimed invention of '894 made obvious.

The defendant indefensibly tries to use the structure of the '652 Patent to construe the means plus function language of the '894 claim. It is well settled that when construing a claim, the structure shown in the same patent is what determines that construction, not what may be shown in any other patents in the prior art. *See Wang Lab., Inc. v. America Online, Inc.*, 197 F.3d 1377, 1383 (Fed. Cir. 1999). Again, failure to anticipate or render obvious the independent claim 1 similarly effects without further argument all of the dependent claims 2 through 4.

Defendants also cite the '431 Patent alone and in combination with the '338 Patent. Again, there is no disclosure of a strap means positioned immediately adjacent to the solenoid coil, and the mechanism of the switch is wholly different. The coil is towards the bottom of the switch housing, whereas the strap, whether or not it is made of a magnetic material, is at the upper portion of the housing. The switch mechanism is wholly different from that of the '894 claim, not including the "banger and dog" latching system. The defendants again make the general statement that there are parts in the '431 mechanism that could be the first and second movable members. The claim when properly construed defines that these "movable members" are the members shown in the '894 drawings or their substantial equivalents. There is no showing how the latching system in the '431 Patent could be the equivalent of the system in the '894 Patent.

Even if it is assumed for the purposes of argument that there is any basis for combining the disclosure of the '431 Patent with the disclosure of the '338 or '945 Patent to obtain a device

in which the strap means is immediately adjacent to the coil so as to assist in the effect of the magnetic field (which as shown above is not true), that would still not be sufficient to meet the '894 claims. The defendants have completely failed to show the equivalence of the '431 switch mechanism to the '894 switch mechanism.

The defendants also refer improperly to the inadmissible Haynes declaration, which is the statement of an expert who is not properly in this case, and whose opinion has not been properly validated as admissible in this case. (See the full argument in the accompanying Reply Brief in Support of the Motion for Summary Judgment of Infringement).

### b. There Are No Factual Issues As To The Secondary Considerations Cited By Leviton

The secondary considerations, copying and commercial success, cited by Leviton are not rebutted or even denied by defendants. Defendants only make a legal argument that they are "only a factor to be weighed in determining whether the claims of the '894 Patent are valid." And that this "weighing" may only be done by a fact-finder. That however is a wholly inaccurate statement of the law. The fact-finder should determine any factual issues of whether there is commercial success, or whether there was copying, especially where witness credibility is at issue. Neither is involved here. There is commercial success as shown by the fact that Leviton is a major factor in the market with its patented product. Similarly, the defendants own witnesses have testified to the copying. Federal Circuit precedent is very clear that the question of obviousness is a legal determination, and to the extent there is no factual dispute as to the existence of the secondary considerations, the court may reach the determination of whether the invention is not obvious over the prior art. *See Miles Laboratories, Inc. v. Shandon Inc.*, 997 F2d 870, 877, 27 USPQ 2d 1123 (Fed. Cir. 1993). There is no basis for defendants statement that plaintiff has the 'burden of establishing the existence of secondary considerations." This is one

of the several factors to be considered when determining unobviousness, and must be considered simultaneously with the other issues involved in determining unobviousness. *See Ruiz v. A. B. Chance Company,* 234 F3d 654, 667, 57 USPQ2d 1161 (Fed. Cir. 2000); *see also Stratoflex, Inc., v. Aeroquip Corporation,* 713 F2d 1530, 1538, 218 USPQ 871 (Fed. Cir. 1983).

3. **Defendants Arguments Regarding Inequitable Conduct Are Insufficient In Law Or Fact To Avoid Summary Dismissal**

In arguing against this motion for summary judgment on the issue of 'inequitable conduct', Defendants rely on a combination of 'what if' and supposition based upon nonexistent lapses by Leviton in providing requested discovery. Defendants complain that Leviton has engaged in dilatory discovery and not produced certain discovery from sister litigations which Defendants assert is relevant to the instant lawsuit. However, the true record shows that it was the defendants who were dilatory, and that they failed to follow up in a timely way with discovery relating to a purported on-sale bar.

Defendants refer again to the "lost file history" as somehow raising an inference regarding such mythical 'on sale' activity. First, the defendants present no evidentiary basis for asserting such on-sale bar. Second, reviewing the actual record to see what the actions of the two parties were in regard to the complained of discovery.

Defendants misstate and avoid the full record evidence. As long ago as November 18, 2002, in Plaintiff Leviton's Responses to Defendants' First Request for Production of Documents (1-27) by General Objection No. 12, Leviton objected to producing documents subject to confidentiality agreements with third parties, notifying Defendants that authorization was required from those third parties (*See* Exhibit B, attached hereto). This includes the

documents in the ITC proceedings referred to by defendants as well as in the litigation against Preferred Industries, in the Southern District of Florida.

At a subsequent document inspection by Defendants' counsel at Leviton's facility in New York, on January 16, 2003, counsel for Leviton again apprised counsel for the Defendants that the Defendants needed to obtain those releases before Leviton could produce documents subject to third party confidentiality orders. Defendants apparently did nothing until a subsequent motion hearing before this Court. At that hearing, on April 17, 2003, after five months of inaction by the Defendants with regard to obtaining releases, the following colloquy occurred:

> **MR. MANAK:** But to protect ourselves, we have to get a release from the parties. We have asked Mr. Cahn to contact Gary Hnath, who is the ITC lawyer on the other side, and I think it is the lawyer for Orbit in the California case. And I think we were told by Mr. Cahn that he didn't want to do that.
>
> **MR. CAHN:** That is correct, Your Honor.
>
> * * * *
>
> **THE COURT:** Well, you are going to have to do the work. [Addressing Mr. Cahn.]
>
> Have you provided Mr. Cahn with the name, address, telephone, fax, and e-mail addresses for each of the lawyers as to whom you need a release or agreement to release those documents? Have they been provided to Mr. Cahn, the name, address, phone, fax, and e-mail? [Addressing Mr. Lee.]
>
> **MR. LEE:** No, Your Honor. We can do that, though.
>
> **THE COURT:** All right. Do that within the next 48 hours. [Addressing Mr. Lee.]
>
> * * * *
>
> Now, as far as the ITC business, if you want to wait and see if the ITC lifts some confidentiality shield, you can do that, but **you are only going to get 60 days to complete the additional discovery that we all are agreeing is appropriate. So, I wouldn't wait if I were you.** I would go ahead and contact those lawyers and get the releases and show them the confidentiality order in this case and

> tell them that anything you get from Leviton will be covered by the protective order in this case, and they don't have anything to worry about, and let's get on with it? Okay? [Addressing Mr. Cahn.]
>
> **MR. CAHN:** Thank you, Your Honor.

(April 17, 2003 Hearing Transcript at page 79, line 12 to page 81, line 19, attached hereto as Exhibit C).

The very next day, counsel for Leviton provided a list of the names and addresses of defendants' (or respondent's) counsel in such sister litigation, as directed by the Court (*See* Exhibit D, attached hereto). Counsel for Defendants apparently did not send out requests for the releases, until April 28, 2003. (*See* Exhibit E) Not until May 30, 2003 did the Defendants forward, to plaintiff's counsel, executed releases for the sister litigation, i.e., from the ITC respondents, Brite USA and Preferred Industries (*See* Exhibit F, attached hereto). On June 4, 2003, three business days later, counsel for Leviton responded:

> Please call me at your earliest convenience to inform me when you can travel to New York. Given the sensitivity of the documents, Leviton does not wish to send originals by courier to Washington, DC or Baltimore, Maryland.

(Letter dated June 4, 2003 from Joseph G. Lee, Esq. to William E. Bradley, Esq., attached as Exhibit G).

Leviton's promptness was even noted by Counsel for Defendants in an e-mail dated June 5, 2003 by Mr. Bradley: "Thanks for your prompt response. We will be at your offices on June 12, around 10:00 a.m." (*See* Exhibit H, attached hereto). However, counsel for Defendants cancelled inspection on June 12, 2003 and allowing another week to pass, did not inspect until June 19, 2003 (*See* Exhibit H, attached hereto). Not until June 23, 2003, did Counsel for the Defendants identify by letter the documents to be copied. (*See* Exhibit I, attached hereto).

Apparently, further delay occurred due to difficulty with payment by defendants of the copy service after the documents were delivered to the copiers by the plaintiff. From the

foregoing, it is readily apparent that the Defendants, through their own nonfeasance, caused the delays in discovery with regard to the production of confidential documents from the sister litigations.[1]

Mr. Campolo has testified in this litigation. Defendants apparently were not satisfied with what he said here, so are reaching for 'redacted testimony' in the ITC proceeding involving the same '894 Patent. In his testimony, Mr. Campolo unequivocally stated as follows, when questioned by Defendants' counsel, Mr. Bradley:

" And do you know if these items [GFCI's within the '894 Patent] were on

" 18 sale in 1984?

"19    A.    As far as I know, they were not. "'

(Transcript of Campolo deposition, dated February 6, 2003, page 82, lines 17-19.)

Mr. Campolo's testimony is unequivocally that to his knowledge there were no sales of the '894 type of GFCI's prior to 1985. In order to avoid that clear testimony, defendants now attempt to bring in a transcript from a proceeding before the ITC, but without any specific reference to testimony. The "allegations" in the brief in the ITC proceedings cannot be evidence before this Court.

The argument with respect to double patenting under the '338 Patent and the Examiner's having considered the '338 and '262 applications as part of his obligations under the USPTO rules has been disposed of above. Similarly, as explained more fully above, all references in the prior parent applications were explicitly brought to the Examiner's attention in the second paragraph of the '894 specification itself. Finally, the references cited in the '262 application

---

[1] Apparently certain documents have either been misplaced and/or lost by the Defendants or the copy service. Plaintiff Leviton will provide copies of the same to Defendants on August 27, 2003 by overnight courier and stipulates that Defendants be afforded one week to supplement its pleadings, if necessary. Further, Leviton will supplement catalogs, if in fact any others are uncovered.

\\ny2-srv01\MAGIDOFFB\710319v04\8/26/03\41912.020700          16

were apparently not sufficiently material to be cited by the defendants in their papers seeking to invalidate the '894 Patent.

4. **There Is Absolutely No Basis For Even A Prima Facie Finding Of Patent Misuse**

Patent misuse is an issue which on its face, as presented by defendants, is based upon the same issues discussed above, and therefore should be dismissed for the same reasons. Defendants completely ignore the finding of the U.S. District Court of the Central District of California that the claims as presented prior to the issuing of the second Certificate of Correction were <u>not</u> prima facie invalid as being indefinite under 35 U.S.C. § 112. Accordingly, as a matter of law, plaintiff did not act unreasonably in pursuing this action after the Second Certificate, or in bringing the earlier action prior to the issuing of the Second Certificate. The Court should dismiss this defense.

## CONCLUSION

For the foregoing reasons, this court should summarily determine that there is no basis to invalidate the claims of the '894 patent. Furthermore, this court should summarily rule that the claims are not unenforceable for reasons of inequitable conduct or patent misuse.

Dated:  August 26, 2003

                                  Respectfully submitted,

                                  _____/s/_____
                                  D. Christopher Ohly, Esq.
                                  BLANK ROME COMISKY
                                  & McCAULEY, LLP
                                  250 West Pratt Street
                                  Suite 210
                                  Baltimore, MD  21201
                                  Telephone:(410) 659-1400
                                  Facsimile:(410) 659-1414

                                  Paul J. Sutton
                                  Joseph M. Manak
                                  Barry G. Magidoff
                                  Joseph G. Lee
                                  GREENBERG TRAURIG, LLP
                                  883 Third Avenue
                                  21st Floor
                                  New York, NY  10022
                                  Telephone:(212) 801-2100
                                  Facsimile:(212) 688-2449

                                  Attorneys for Leviton,
                                  LEVITON MANUFACTURING CO., INC.