UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

---

LEVITON MANUFACTURING CO., INC.,

        Plaintiff,

v.

UNIVERSAL SECURITY INSTRUMENTS, INC., *et al.*,

        Defendants.

Civil Action No. 01 CV 3855 AMD

---

## DECLARATION OF PAUL J. SUTTON IN OPPOSITION TO DEFENDANTS' MOTION FOR ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE ENTERED AGAINST PLAINTIFF AND ITS COUNSEL FOR VIOLATING THE PROTECTIVE ORDER AND IN SUPPORT OF PLAINTIFF'S REQUEST FOR ATTORNEYS FEES

I, PAUL J. SUTTON, state and declare as follows:

1. I am lead trial counsel for Plaintiff Leviton Manufacturing Co., Inc.("Leviton") in the above-captioned patent infringement litigation against Defendants.

2. I have been engaged in the practice of intellectual property law for some 40 years, and am currently Chairman of the National Patent Practice of the law firm of Greenberg Traurig, LLP, counsel for Leviton.

3. I have received and read a copy of Defendants' pending Motion For Order To Show Cause Why Sanctions Should Not Be Entered Against Plaintiff And Its Counsel For Violating The Protective Order.

4. As explained below, Defendants' accusations that a violation of the protective order has taken place are untrue. Neither I nor any member of my firm

has violated any of the terms or provisions of the Protective Order in this action; and I most strenuously deny the allegations in Defendants' Motion, in particular those set forth at pages 6-8 of the Motion.

    5. Moreover, after reading Defendants' Motion, I telephoned counsel for Defendants and conveyed the facts which are set forth below in an effort to convince Defendants to withdraw the Motion. Further, I wished to avoid the time and expense of having to put in Leviton's response to the Motion, as well as a potentially embarrassing situation for Defendants' counsel when the true facts were brought to light. I therefore requested that counsel for Defendants withdraw this Motion, so that the resources of the Court and the parties would not be wasted. Opposing counsel have refused to do so, thereby making this Declaration necessary.

    6. Since I have represented Plaintiff Leviton in connection with its intellectual property matters for more than 30 years, it is I who regularly communicates with Leviton's management with regard to IP and litigation matters. Were there to have been any communication of confidential information of the Defendants to Leviton in violation of the Protective Order (I repeat here that there has never been any), it would have been a communication by myself and no other member of my firm.

    7. Although I am aware that his deposition has been taken and have spoken about the deposition generally with my co-shareholder Joseph M. Manak, I did not take or attend the oral deposition of Defendants' Harvey Grossblatt pursuant to Rule 30(b)(6), Fed. R. Civ. P. Nor did I read or review the transcript of Mr. Grossblatt's deposition or the deposition exhibits.

    8. I have not read, and no one has ever communicated to me, directly or indirectly, the details of the deposition testimony of Mr. Grossblatt concerning the sales of GFCIs by Defendants in Canada or by Defendants' Canadian customers.

*The True Facts Concerning The Identitiy of USI's Canadian Customer*

9. Defendants' Motion is premised on the assertion that "Mr. Grossblatt's testimony is the only known source of the identity of USI's Canadian Customer and the fact that it imported USI's GFCI's before the design change." (Motion at p. 7). This is incorrect. The source of this information is as follows.

10. I received a telephone call from an officer of the Canadian corporate affiliate of Leviton, Mr. Gabriel Massabni, informing me for the first time that infringing ground fault circuit interrupters ("GFCIs") were commercially available, and thus publicly available, in Canada.

11. Mr. Massabni, after independently obtaining samples of the infringing GFCIs and learning the identity of their sources and the parties selling them, requested my advice, whereupon I recommended that the Canadian Leviton affiliate retain Canadian counsel for advice, since the activities complained of involved a Canadian patent and were occurring within the territorial limits of Canada.

12. At no time did I ever convey to the Canadian Leviton affiliate the identity of any parties who I was informed were purchasing infringing GFCIs from the U.S.A. for resale in Canada. In fact, I did not know the identity of any such parties. To the contrary, it was the Canadian Leviton affiliate who advised me of the names of Canadian-based infringers, *which were publicly available and known as a result of the infringing GFCIs being commercially and publicly available in Canada*.

13. It is my understanding and belief that Canadian counsel is currently handling and representing this Canadian affiliate in connection with the enforcement of Canadian patent rights against infringers in Canada.

3

*Response To Collateral Statements In Defendants'*
*Motion Against Leviton And Its Counsel*

14. In response to some of the gratuitous statements in Defendants' Motion (*e.g.*, "Leviton and its attorneys began releasing a series of press releases in an effort to scare away or otherwise hinder USI's potential customers", Motion at page 4), I feel compelled to advise the Court of recent events which, I believe, have bearing upon the impetus for the instant Motion.

15. Recently, after learning that Defendants were selling not only infringing GFCIs, but those which are defective and pose a shock or electrocution hazard to the public, I telephoned opposing counsel, Mr. Cahn, and informed him and his associate by telephone and by follow-up email of this alarming information. I requested that he and his firm promptly alert Defendants of these defects and suggested that Defendants consider a recall of the defective GFCIs, which are actually supposed to prevent death from shock and/or electrocution, not cause it.

16. Indeed, Defendants' aforesaid sales of defective GFCIs are the subject of the annexed copy of an August 26, 2003 Underwriters Laboratory ("U.L"). Release entitled: ***"UL Warns of Potential Electric Shock Hazard with Ground Gault Circuit Interrupter (GFCI)"***(Exhibit A hereto). Defendants are expressly named in this U.L. Release, in which the public and the trade is alerted to the fact that Defendants' defective GFCIs not only (a) have failed to meet Underwriters Laboratories' ("U.L.") standards, but also (b) present a fire hazard. It is also my understanding that the United States Consumer Product Safety Commission is considering a recall of these GFCIs.

17. Although we cannot know the true motives for the instant Motion, I cannot help but be left with the impression that my alerting opposing counsel to the hazards presented by these defective GFCIs has elevated their animosity to

myself and my firm to an even higher level than the unacceptable levels that existed beforehand.

18. I find the conduct of Defendants' counsel to be particularly offensive, being that this is the second time opposing counsel has alleged in Motions to this Honorable Court violations of the Protective Order by my firm. Opposing counsel withdrew the first Motion at the last hearing before the Court, after first forcing my firm to expend resources answering same. However, as a courtesy, I refrained at that time from pursuing attorneys' fees incurred as a result of Defendants' meritless first Motion.

19. That said, under the present circumstances, especially given my having provided opposing counsel with an opportunity to withdraw the instant Motion after conveying to counsel the foregoing facts, an award of Leviton's attorneys' fees and costs in connection with Leviton's having to oppose this Motion is not only appropriate, but is important if this unnecessary Motion practice is to be dissuaded. Such fees and costs are most respectfully requested.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 4th day of September, 2003 at New York, New York.

By_____
Paul J. Sutton