Hearing                                                          Page 1
July 29, 2002


IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION


_____
                               )
LEVITON MANUFACTURING CO., INC. )
                               )
        Plaintiff              )
                               )
    v.                         )    Civil Docket No. AMD-01-3855
                               )
UNIVERSAL SECURITY INSTRUMENTS, )
INC., et al.                   )
                               )
        Defendants             )
_____)


                                    Baltimore, Maryland
                                    July 29, 2002
                                    9:25 AM to 10:01 AM


The above-entitled matter came on for a hearing before
The Honorable Andre M. Davis


A P P E A R A N C E S

On Behalf of the Plaintiff:
John C. Dougherty, Esquire
Paul J. Sutton, Esquire
Joseph M. Manak, Esquire
William G. Todd, Esquire

On Behalf of the Defendants:
Maurice U. Cahn, Esquire
Frederick N. Samuels, Esquire
William E. Bradley, Esquire


Sharon Cook, Official Court Reporter, U.S. District Court

1                    <u>PROCEEDING HELD JULY 29, 2002</u>

2              THE COURT:  Good morning.

3              COUNSEL:  Good morning, Your Honor.

4              THE COURT:  We are on the record in <u>Leviton</u>

5    <u>Manufacturing Company, Inc. v. Universal Instruments, Inc.</u>,

6    Case Number AMD-01-3855.

7                    Counsel, I think this is going to be very, very short.

8                    I thought the whole issue of the Certificates of

9    Correction and all of that was just totally out of this case.

10   If I understand the motion for recusal, which is what we are

11   here about, the motion for recusal or for the disqualification

12   of Mr. Sutton, that has to do with an argument about the

13   Certificate of Correction.  But none of that is in the case.

14   It's out of the case entirely.

15                   Now, maybe I misunderstand the grounds of the motion,

16   or maybe I misunderstood my earlier ruling, or maybe you did,

17   so I thought we could clarify it pretty quickly by a brief

18   hearing.

19              Mr. Cahn, do you want to address this?

20              MR. CAHN:  Yes, Your Honor, if I may.

21              THE COURT:  Do I have it right that the defendants

22   have moved for an Order of Disqualification of Mr. Sutton

23   because Mr. Sutton was primarily responsible for the

24   prosecution of the patents at issue?

25              MR. CAHN:  Well, yes, that is part of it, Your Honor.

1    Both under Rule 3.7 and 1.7 in connection with the

2    enforceability of the patent and the Certificate of Correction.

3              THE COURT:  Well, do you believe the Certificate of

4    Correction issue is still a part of this case?

5              MR. CAHN:  Oh, very much so, Your Honor.

6              THE COURT:  How?

7              MR. CAHN:  All right.  There are a couple of points.

8    First of all, in reference to the first Certificate of

9    Correction, --

10             THE COURT:  Well, the -- go ahead.

11             MR. CAHN:  Bear with me.

12             In 1988, when that issued, that was issued

13   defectively, Your Honor, for all intents and purposes.  That

14   was a defective Certificate of Correction.

15             THE COURT:  Let me interrupt you, if I may, please.

16             We had a long hearing on the motion to dismiss.

17             MR. CAHN:  Under 12(b), Your Honor, that is correct.

18             THE COURT:  And we went on and on for a couple of

19   hours, and my recollection is that after about 90 minutes or

20   so, it was finally brought to my attention that the ancestor

21   patents to the patents in suit simply obviated any concern

22   whatsoever over whether the Certificates of Correction effected

23   a substantive change to the claims or whether, in the language

24   of the Federal Circuit's cases, these were simply corrections

25   of typographical or insubstantial errors.

1          I mean, I thought I made that ruling as clearly and

2    unequivocally as I could.  In my mind, once I made that ruling,

3    the Certificates of Correction and the propriety of the

4    Certificates of Correction, none of that stuff is in this case.

5    None of that stuff is in this case.  I regard the claims to

6    read as they read after the Second Certificate of Correction.

7          I don't understand how we get back into the question

8    of the First Certificate of Correction and the Second

9    Certificate of Correction.

10          First of all, what defense is that relevant to in this

11    case?

12          MR. CAHN:  There are two defenses, Your Honor.

13          THE COURT:  What are they?

14          MR. CAHN:  First of all, by statute, 35 U.S.C. 287,

15    and by the Federal --

16          THE COURT:  What is the substance of that?

17          MR. CAHN:  That is the patent statute that allows

18    damages to be collected only for a six-year period prior to the

19    filing of the suit.

20          Secondly, in reference to the --

21          THE COURT:  I'm sorry.  How is that relevant to -- I

22    mean, the suit was filed when the suit was filed.

23          MR. CAHN:  There were two suits filed, Your Honor, and

24    I think is a fact that is very important.

25          THE COURT:  Do you mean the prior dismissal without

1    prejudice?

2              MR. CAHN:  That is correct, Your Honor.

3              THE COURT:  What does that have to do with anything?

4              MR. CAHN:  The reason for the dismissal without

5    prejudice, as argued, as admitted by the defendants in their

6    papers, for example, this (indicating) is --

7              THE COURT:  Mr. Cahn, I'm sorry.

8              What is the second issue, the second defense?

9              MR. CAHN:  Your Honor, the second PTO mistake was not

10   discovered by us until 2001 during the litigation of --

11             THE COURT:  I'm sorry to interrupt you again.

12             Maybe you didn't understand my question.  I thought

13   you said there were two defenses.

14             MR. CAHN:  That is correct, Your Honor.

15             THE COURT:  The first has to do with the look-back

16   period for damages and all of that?

17             MR. CAHN:  The limitation on damages.

18             THE COURT:  Okay.  What is the second?

19             MR. CAHN:  The second is inequitable conduct before

20   the United States Patent and Trademark Office in connection

21   with the Second Certificate of Correction, Your Honor.  It did

22   not comport with procedures required by the United States

23   Patent and Trademark Office in its submission.

24             THE COURT:  Since when is a failure to comply with

25   procedural requisites by itself remotely sufficient to rise to

1    the level of inequitable conduct?

2           MR. CAHN:  Your Honor, failure to abide by the rules

3    of practice before the United States Patent and Trademark

4    Office itself is the crux of inequitable conduct.  If an

5    attorney misleads the Office, does not comport with his full

6    duty of candor, or the attorney or the patentee does not

7    comport with their duty of candor, their affirmative duty of

8    candor, then they have engaged potentially in inequitable

9    conduct.

10          And, quite frankly speaking, Your Honor, in connection

11   with the dismissal, I am taken aback by the dismissal of the

12   Certificate of Correction issue in this case because it is a

13   critical issue.  That motion was disposed of under Rule 12(b).

14   We have not had the opportunity to -- we were within the four

15   corners of the pleadings.

16          We did not present expert testimony or any evidence

17   outside of the four corners of the pleadings to demonstrate

18   that that Second Certificate of Correction issued improperly in

19   the first instance pursuant to the papers filed by Greenberg

20   Traurig and Mr. Sutton, number one.

21          And, number two, that Second Certificate of Correction

22   by plaintiff's own conduct establishes the fact that the

23   Certificate of Correction is not an immaterial aspect to this

24   case.

25          This case is going to turn, Your Honor, in large

1    measure, on the propriety of the Certificates of Correction in

2    the first instance, the lost file history, and Mr. Sutton's

3    conduct before the United States Patent and Trademark Office,

4    let alone the conduct of these various litigations that they

5    are involved with.

6         That's the best I can say right now.  It is not a

7    matter that can be disposed of.  And Mr. Sutton will be called

8    as a witness, and Greenberg Traurig will be called.

9         THE COURT:  I guarantee you they will not be, Mr.

10   Cahn.  I guarantee it.

11        Excuse me.  Let me hear from plaintiffs for a moment,

12   please.

13        MR. MANAK:  Yes, Your Honor.  Joe Manak for the

14   plaintiff.

15        THE COURT:  I think we are on different planets this

16   morning.

17        MR. MANAK:  Yes, we are.  We are spinning out of orbit

18   here, Your Honor.

19        I would like to address one thing that Mr. Cahn

20   mentioned or alluded to in his remarks, and it is the focus of

21   their reply brief in support of the motion to dismiss.  I mean

22   the motion to disqualify; I'm sorry.

23        Throughout the defendants' reply papers, they state

24   that the Southwest case, which was also cited in the briefs on

25   the motion to dismiss, the defendants say that the Southwest

1   case makes it quite clear that a Certificate of Correction only

2   allows a patent holder to seek prospective relief, and that the

3   only damages available, if any, are from the date the Second

4   Certificate of Correction issued.  That is in pages three to

5   four of their reply brief.

6          They make a number of similar statements at page 6.

7   They say:

8                Plaintiff Leviton is foreclosed from seeking

9                damages prior to the Certificate of Correction.

10         At page 11 of defendants' reply brief, they say:

11               Leviton cannot sue an alleged infringer for

12               activities that occurred before the issuance of

13               the Second Certificate of Correction.

14         Again, citing Southwest Software.

15         That is a complete misreading and mischaracterization

16  of the Southwest decision, Your Honor.  The Southwest case at

17  the trial level, Your Honor, the Southwest jury found

18  infringement of Claim 1 of that patent.  The defendant JMOLed,

19  and that was denied.  The Federal Circuit found no error in the

20  denial of the JMOL.

21         What the Federal Circuit did in that case, Your Honor,

22  is it vacated the judgment of infringement because the

23  Certificate of Correction in that case was applied for after

24  the lawsuit was filed, and the Court said that the Certificate

25  of Correction was not effective for purposes of the lawsuit.

1          However, the Federal Circuit vacated the judgment and

2    remanded the case back to the District Court, and told the

3    District Court if you find the patent valid without that

4    Certificate of Correction, the judgment of infringement will be

5    reinstated and the plaintiff will be entitled to its damage

6    award reinstated.

7          That can be found, Your Honor, at 226 F.3d.  Jump to

8    page 1299.  I'll quote:

9                    The Southwest Court held that if Claim 1 of the

10                   257 patent were found on remand to the District

11                   Court to be valid in the absence of the text

12                   added to the patent by the Certificate of

13                   Correction, then Southwest will be entitled to

14                   have the judgment of infringement of Claim 1 and

15                   the resulting award of damages reinstated.

16         So, from that case, Your Honor, if Your Honor were to

17    find that the patent in this case is valid on the basis of the

18    First Certificate of Correction, as Judge Pregerson did in the

19    California case, then Leviton will be allowed to seek damages

20    for infringement prior to the issuance of the Second

21    Certificate of Correction.

22         Mr. Cahn's representations to this Court regarding the

23    Southwest case are inappropriate and flat wrong.  The whole

24    reply brief is wrong.  It's a misreading and a

25    mischaracterization of the Southwest case, and it was

1   unnecessary for us to have to respond to it.

2           THE COURT:  Thank you.

3           MR. MANAK:  Just one other question.

4           Mr. Cahn alluded to a number of improprieties in

5   connection with the Second Certificate of Correction that my

6   law firm, Greenberg Traurig, and my law partner, Mr. Sutton,

7   allegedly committed.  But he never said anything.  He never

8   tells the Court, and he has never told us what we did wrong.

9   He doesn't say it in his papers.  He hasn't said it in his

10  brief presentation.  He doesn't identify anything we did wrong

11  in pursuing that Second Certificate of Correction.

12          THE COURT:  He also didn't raise the issue when he

13  filed the motion to dismiss months ago.

14          MR. MANAK:  Throughout the moving papers in this case,

15  Your Honor, there are nothing but insinuations and accusations

16  launched against Mr. Sutton and my law firm, and none of it is

17  backed up.  There is not one shred of evidence supporting any

18  of their allegations.

19          THE COURT:  And, to the contrary, there is affirmative

20  evidence arising from the ancestor patents that seems to me

21  irrefutably to show that this was some kind of silly mistake by

22  the PTO.

23          MR. MANAK:  That's correct, Your Honor.

24          THE COURT:  I don't understand why we are still

25  talking about this.

1       MR. MANAK:  I don't understand why we are, Your Honor,

2   and I don't understand why we had to respond to this motion.  I

3   don't believe this motion was brought, Your Honor, in good

4   faith.

5       THE COURT:  Well, I don't think that that is an

6   irresponsible observation at all.

7       Mr. Cahn, I am having real difficulty here perceiving

8   a scintilla of merit.  I am just a thick-headed District Court

9   Judge, and I am going to listen to you explain to me the -- I

10  mean, this whole question about disqualification was raised by

11  the Court.  With all respect, sir, you didn't even pick it up.

12  It was staring you right in the face, most respectfully.  When

13  you filed your motion to dismiss, these briefs were filed on

14  the Certificate of Correction, to correct the Certificate of

15  Correction.  It was obvious that Mr. Sutton was the person who

16  prosecuted not just the patents in suit, but the earlier

17  patents.

18      You now point out yourself that this firm has been

19  representing the plaintiff here for years.  There have been

20  prior lawsuits.  All of that was available to you.

21      In the course of the hearing on the motion to dismiss,

22  I raised the question about whether it was appropriate for Mr.

23  Sutton to do his Power Point presentation.  We go through that

24  whole thing, and then you leave the hearing, and you folks find

25  my Opinion in the ABS case from a few years ago, and now all of

1    a sudden, we have this major ethical dilemma, this conundrum.

2         I mean, come one.  Really, where is the merit in this?

3    I still don't understand why and how this is anything like

4    inequitable conduct.  A mistake was made, it was corrected, the

5    records have been lost.  What are you getting at?

6         MR. CAHN:  Your Honor, if I may address three points?

7         THE COURT:  Go ahead.

8         MR. CAHN:  Number one, the complaint requests damages.

9         THE COURT:  Right.

10        This is the last time I'm going to interrupt you.  I

11   promise.

12        MR. CAHN:  Okay.

13        THE COURT:  I don't want to talk about damages.  We

14   haven't even had discovery in this case yet.  Look, I don't

15   want to talk about damages.

16        MR. CAHN:  But, Your Honor, that is --

17        THE COURT:  If you think you are going to need to

18   depose Mr. Sutton on damages, then I will reserve on that.  I

19   will give you that much.  But let's not talk about damages in a

20   case in which we are barely at issue.  I mean, you folks can't

21   even agree on a case management order.  My goodness.  I mean,

22   really.

23        Let's get on with this.  Let's not talk about damages.

24   I don't care if damages are $8 million or $23 million or

25   $800,000.  We will get to that bridge when the time comes to

1    cross it.  We don't have to deal with that now.  I want to get

2    this case off the dime.  I want to get it moving.  I want there

3    to be discovery.

4            So, listen, please, don't talk to me about damages.  I

5    am not going to disqualify Mr. Sutton because of some ephemeral

6    issue relating to the accrual of damages in this case.  I can

7    deal with that when the time comes.  All right?

8            MR. CAHN:  Your Honor, under --

9            THE COURT:  Yes.  Go ahead.  I am not going to

10   interrupt you anymore.

11           MR. CAHN:  Under Superior Fireplace, the case issuing

12   from the Federal Circuit subsequent to Southwest Software and

13   intermediate to the arguments before Judge Pregerson and the

14   issuance of his opinion on November 1, 2001, the Federal

15   Circuit -- I am just going to read it because it's much easier:

16                   Thus, a Certificate of Correction is valid only

17                   for acts occurring after the Certificate of

18                   Correction issues.  Because Southwest requires a

19                   Certificate of Correction be treated as valid

20                   only for acts occurring after the Certificate

21                   issues, the public's reliance on the public

22                   record is protected regardless of whether the

23                   mistake is evident in the original prosecution

24                   history.

25           That clause restricts Leviton to collecting or to

1    arguing relief.  Any monetary relief only post-12-11-2001, the

2    date the Certificate of Correction issued.  That is <u>Superior</u>

3    <u>Fireplace</u>, not <u>Southwest Software</u> that Mr. Manak was talking

4    about.

5         I don't believe that we have mischaracterized

6    <u>Southwest Software</u> inasmuch as I have just quoted from <u>Superior</u>

7    <u>Fireplace</u>, which is the controlling authority.  By the

8    controlling authority, the issuance of the Second Certificate

9    of Correction, and the fact that the Second Certificate of

10   Correction exists at all, does in fact play a significant role

11   in this case, both in the public notice aspect and in the

12   conduct of Leviton in bringing this case, Your Honor.

13        So, that is the points that we -- I'm finished.

14        THE COURT:  Okay.  The defendants' motion to

15   disqualify Paul J. Sutton, Esquire, and the law firm of

16   Greenberg Traurig, LLP is denied.

17        I think the record will reflect that in the earlier

18   hearing and in connection with the earlier matters, I literally

19   struggled to come to grips with some rather obtuse legal

20   principles.  And I have struggled to try to make sense of this

21   present motion in the light of the Court's earlier rulings and

22   the earlier proceedings.  And I'm afraid I failed.

23        I don't say this lightly, and I am not considering

24   sanctions or anything like that, but it strikes me as just

25   absolutely frivolous.

1              MR. CAHN:  Your Honor, --

2              THE COURT:  I thought you said you were finished.

3              MR. CAHN:  I wanted to make the observation that we

4    couldn't have filed because they weren't counsel.  They weren't

5    admitted pro hoc vice until that hearing.  We couldn't have

6    filed anything.

7              THE COURT:  All right.  I guess that's fair.

8              Really, I have studied the papers, and I have tried to

9    make sense of it, and I can't.  Perhaps as the case goes

10   forward, the fog will clear, and I will see what the defendant

11   is getting at, and I'll have a better grip on what an

12   appropriate resolution should look like.  But, for the life of

13   me, I don't get it.  I don't get it.  I can't imagine why Mr.

14   Sutton's testimony would be remotely relevant to any issue in

15   this case.  It is just absolutely beyond me.

16             So, for that reason, as well as several others that I

17   won't bother to mention, the motion is denied.

18             If somewhere down the line the defendant can make a

19   more substantial showing that the Court needs to exercise its

20   supervisory authority over the integrity of the process, of

21   course, I will revisit the issue.

22             MR. CAHN:  Thank you, Your Honor.

23             THE COURT:  By which I mean I will at least take a

24   look at whatever you want to bring to the Court's attention.

25   But, right now, it is just absolutely beyond me.  It is

1    absolutely beyond me.  As far as I am concerned, as I

2    understand this case, the whole question of Certificate of

3    Correction is out of the case.  If I am wrong about that, you

4    will make it clear to me.  But it's out of the case.  It is out

5    of the case.

6         So, I will enter an order denying the motion for

7    disqualification.

8         Now, while you are here, let's talk about your

9    differences over the case management order.  Are there still

10   differences?

11        MR. DOUGHERTY:  There are, Your Honor.

12        THE COURT:  There are?

13        What is the problem, Mr. Dougherty?

14        MR. DOUGHERTY:  I don't know what the problem is, Your

15   Honor.

16        THE COURT:  Is it just a matter of you want more time

17   and they want less, or you want less time and they want more?

18        MR. DOUGHERTY:  We want less time.  I have spoken to

19   Mr. Cahn, and I think there is an honest disagreement about the

20   schedule.

21        THE COURT:  Sure.

22        MR. DOUGHERTY:  In part, --

23        THE COURT:  It doesn't seem to be very substantial.

24        MR. DOUGHERTY:  Well, it's a couple of months.  But

25   part of it has to do with Mr. Cahn wanting to take discovery of

1  all of these issues.

2          THE COURT:  Oh.  Okay.  Well, that is no longer a

3  problem.

4          MR. DOUGHERTY:  Well, respectfully, Your Honor, I told

5  Mr. Cahn when we had that discussion that I didn't think any of

6  that was necessary, but he is going to do the case whatever way

7  he wants.  I think he -- I will let him speak for himself, but

8  I think he built into his schedule time for all of that.

9          THE COURT:  I see.  He built in inequitable conduct

10  committed by Mr. Sutton as part of the schedule.

11          Is that right, Mr. Cahn?

12          MR. CAHN:  Your Honor, I think that that was an issue,

13  and --

14          THE COURT:  Okay.  Do you understand now that that is

15  not an issue?

16          MR. CAHN:  Well, Your Honor, with all respect, it will

17  continue to be an issue until there is a ruling on the

18  substance.

19          THE COURT:  No, no.  You have it wrong.  It is not an

20  issue until you discover some independent evidence to bring the

21  issue back into the case.  The issue is out of the case.  I

22  wasn't clear the last time, so I want to be as clear as I can

23  be this time.  The issue is out of the case.

24          Now, if you get something over the transom or you

25  stumble off the subway one morning and there is something

1    sitting there on the platform that is of great benefit, then

2    maybe you can bring the issue back into the case.  But the

3    issue is out of the case.

4              MR. CAHN:  All right, Your Honor.

5              THE COURT:  All right.

6              MR. DOUGHERTY:  We thought it was out of the case as

7    well, Your Honor.  A considerable amount of effort went into

8    opposing those allegations, and --

9              THE COURT:  I can see that.

10              MR. DOUGHERTY:  -- an application for fees.  We had

11    lots and lots of people having to respond to these allegations,

12    and we thought they were settled in the first hearing.

13              THE COURT:  I certainly thought they were out of the

14    case.

15              So, shall I now allow you to -- frankly, you can use

16    this courtroom because I don't have any other proceedings

17    scheduled this morning -- to work out the final details of your

18    proposed -- I don't think there is a lot of disagreement among

19    you, and now I understand that what was driving the

20    disagreement about the timing apparently was this issue about

21    whether or not Mr. Sutton was going to be deposed and all of

22    this.  Again, that is out of the case, so it seems to me you

23    can split the difference.  We have already lost some time, of

24    course, so it may be that we are sort of back to the timeline

25    that the defendants wanted in the first place, given that we

1    lost a number of weeks.

2            MR. DOUGHERTY:  We will get with Mr. Cahn and see if

3    we can get something to Your Honor.

4            THE COURT:  All right.  Would you do that, Mr. Cahn?

5            MR. CAHN:  That would be fine, Your Honor.

6            THE COURT:  Just submit something.  I mean, the dates

7    seem perfectly reasonable to me.  Plaintiff wanted dispositive

8    motions in January, defendant wanted them in May.  It seems to

9    me you can agree on March 2003 and then work back from there.

10   Late March.  Okay?

11           MR. DOUGHERTY:  Your Honor, not to prolong things, --

12           THE COURT:  No, no.  Go ahead.

13           MR. DOUGHERTY:  As to the motion for disqualification,

14   would the Court entertain an application for fees in opposing

15   that motion?

16           THE COURT:  Well, --

17           MR. MANAK:  Your Honor, if I may speak to that

18   briefly.  A considerable amount of time and effort was spent to

19   rebut all of Mr. Cahn's wild accusations against my law firm

20   and Mr. Sutton, none of which had any basis.  A considerable

21   amount of time went into distinguishing their characterization

22   of the case law.

23           THE COURT:  I'll tell you what.  Don't file a petition

24   presently.  Segregate your records.  Maintain the integrity of

25   your time records, and we will see how the case goes.  I

1  understand that this is probably not the best way to do it, but

2  it seems to me that what I want to do, in fairness to Mr.

3  Cahn, -- if I were to entertain a petition for fees right now,

4  I'd grant it.  And I don't want to do that to Mr. Cahn or to

5  the defendants.  I want the benefit of the reflective process

6  informed by actual discovery in the case.  I want the defenses

7  to come into clearer focus.  So, what I am saying is I am not

8  denying it.

9        MR. MANAK:  Yes, Your Honor.

10       THE COURT:  I am saying you should not file it until

11  you file your dispositive motion.

12       MR. MANAK:  Thank you.

13       THE COURT:  If any.

14       MR. MANAK:  Yes, Your Honor.

15       THE COURT:  Or your response to any dispositive motion

16  that may be filed by the defendants.

17       MR. MANAK:  Yes, Your Honor.

18       THE COURT:  So, in effect, let's hold the issue.  I

19  mean, really, I think it looks frivolous to me.

20       MR. MANAK:  Yes.

21       THE COURT:  But I'm not prepared now to go off into

22  this satellite litigation at this point in the case over Mr.

23  Cahn's good faith and have him now have to go out and spend 100

24  hours or -- well, you see what I am getting at.

25       MR. MANAK:  Very good, Your Honor.

1        THE COURT:  So, I am not saying no.  I invite you to

2   file it, if you choose, as a part of any dispositive motion

3   that the plaintiff files or as a part of any response to a

4   dispositive motion that the defendants may file in this case.

5        MR. MANAK:  Very good, Your Honor.

6        THE COURT:  Okay.

7        MR. MANAK:  I just want to raise one point related to

8   that.

9        THE COURT:  Certainly.

10       MR. MANAK:  There are, I believe, certain defenses

11  raised by the defendants in this case.  I think they have

12  raised an inequitable conduct defense, but I don't think they

13  have sufficiently pled it.  We are going to confer with them on

14  the removal of that defense from the pleadings.  If they refuse

15  to do so, we may be forced to bring a motion to strike.  Could

16  we bring the motion at that time, Your Honor?

17       THE COURT:  Well, again, I would urge you not to bring

18  a motion to strike because you have answered --

19       MR. MANAK:  We have replied.

20       THE COURT:  There is no counterclaim; right?

21       MR. MANAK:  There is a counterclaim, Your Honor.

22       THE COURT:  There is a counterclaim.  And you have

23  answered the counterclaim?

24       MR. MANAK:  We have.  But we think it should also be

25  dismissed.

1    THE COURT:  Let's hold all -- it seems to me to make

2    the most sense to hold all of that until the dispositive

3    motions stage.  And in keeping with what I said a moment ago,

4    let's wait for discovery to see what crystallizes, because it

5    may be some inequitable conduct relating to the prosecution of

6    the patent.  Obviously, that may well be in the case.  I

7    understand you are saying they have not even alleged enough

8    facts to support that defense.

9    MR. MANAK:  Yes.  Well, there was no prosecution of

10   this application, as we point out in our opposition papers.  It

11   was a first-action allowance.

12   THE COURT:  That's right.  Okay.

13   MR. MANAK:  Which should have been apparent to the

14   other side when they brought this motion, this frivolous

15   motion.

16   THE COURT:  All right.

17   MR. DOUGHERTY:  Your Honor, looking forward on

18   discovery, --

19   THE COURT:  I think the defendants have a lot of

20   explaining to do.  I'll leave it at that.

21   MR. MANAK:  Okay.

22   MR. DOUGHERTY:  Looking forward to the discovery on

23   the matter, we appreciate getting the case to the merits of

24   their infringement.  How do you suggest that we proceed if the

25   first notice of deposition we get is for Mr. Sutton?

1            THE COURT:  It is not going to be for Mr. Sutton.

2     Again, there shall be no discovery taken from the law firm or

3     from Mr. Sutton.

4            MR. DOUGHERTY:  Very good.

5            THE COURT:  Was that clear?

6            MR. DOUGHERTY:  It's clear to me, Your Honor.  Thank

7     you.

8            THE COURT:  I hope it's clear now.

9            Okay.  Anything else?

10           MR. MANAK:  No thank you, Your Honor.  We're done.

11           THE COURT:  Thank you all.  It's always a pleasure.

12           The Court will enter a brief order.

13           We are in recess.

14           (The proceeding was then concluded.)

15

16

17

18

19

20

21

22

23

24

25

### INDEX
### Hearing
### July 29, 2002

|  | Page Numbers |
|---|---|
| Commencement of Hearing | 2 |
| Colloquy | 2 |
| Mr. Cahn | 2 -- 7 |
| Mr. Manak | 7 -- 11 |
| Mr. Cahn | 12 -- 15 |
| Mr. Dougherty | 16 -- 17 |
| Mr. Cahn | 17 -- 18 |
| Mr. Dougherty | 18 -- 19 |
| Mr. Manak | 19 -- 22 |
| Mr. Dougherty | 22 -- 23 |
| Conclusion of Hearing | 23 |

C E R T I F I C A T I O N

I, Sharon Cook, hereby certify that I was the Official Court Reporter present during the foregoing proceeding and that this verbatim transcript is true and accurate.  The proceeding was taken by me in machine shorthand, and this verbatim transcript was subsequently prepared by me utilizing the XSCRIBE Computer-Aided Transcription system.

_____
Sharon Cook
Official Court Reporter
7522 United States Courthouse
101 West Lombard Street
Baltimore, Maryland      21201

Telephone No.:  (410) 837-2343

**Look-See Concordance Report**

- - -

UNIQUE WORDS: **650**
TOTAL OCCURRENCES: **1,652**
NOISE WORDS: **385**
TOTAL WORDS IN FILE: **4,584**

- - -

SINGLE FILE CONCORDANCE

- - -

CASE SENSITIVE

- - -

NOISE WORD LIST(S): **NOISE.NOI**

- - -

INCLUDES ALL TEXT OCCURRENCES

- - -

DATES **ON**

- - -

INCLUDES PURE NUMBERS

- - -

POSSESSIVE FORMS **ON**

- - -

MAXIMUM TRACKED OCCURRENCE THRESHOLD: **50**

NUMBER OF WORDS SURPASSING OCCURRENCE THRESHOLD: **3**

LIST OF THRESHOLD WORDS:

- - -

case [55]
COURT [69]
Honor [54]

— DATES —

January [1]
*19:8*
JULY 29, 2002 [1]
*2:1*
March [1]
*19:10*
March, 2003 [1]
*19:9*
May [1]
*19:8*
November 1, 2001 [1]

---

*13:14*

— $ —

$23 [1]
*12:24*
$8 [1]
*12:24*
$800,000 [1]
*12:25*

— 1 —

1 [4]
*8:18; 9:9, 14; 13:14*
1.7 [1]
*3:1*
100 [1]
*20:23*
11 [1]
*8:10*
12 [2]
*3:17; 6:13*
1299 [1]
*9:8*
1988 [1]
*3:12*

— 2 —

2001 [2]
*5:10; 13:14*
2002 [1]
*2:1*
2003 [1]
*19:9*
226 [1]
*9:7*
257 [1]
*9:10*
287 [1]
*4:14*
29 [1]
*2:1*

— 3 —

3.7 [1]
*3:1*
35 [1]
*4:14*

— 6 —

6 [1]
*8:6*

— 9 —

90 [1]
*3:19*

— A —

aback [1]

---

*6:11*
abide [1]
*6:2*
ABS [1]
*11:25*
absence [1]
*9:11*
absolutely [4]
*14:25; 15:15, 25; 16:1*
accrual [1]
*13:6*
accusations [2]
*10:15; 19:19*
activities [1]
*8:12*
acts [2]
*13:17, 20*
actual [1]
*20:6*
added [1]
*9:12*
address [3]
*2:19; 7:19; 12:6*
admitted [2]
*5:5; 15:5*
affirmative [2]
*6:7; 10:19*
afraid [1]
*14:22*
agree [2]
*12:21; 19:9*
allegations [3]
*10:18; 18:8, 11*
alleged [2]
*8:11; 22:7*
allegedly [1]
*10:7*
allow [1]
*18:15*
allowance [1]
*22:11*
allowed [1]
*9:19*
allows [2]
*4:17; 8:2*
alluded [2]
*7:20; 10:4*
alone [1]
*7:4*
AMD-01-3855 [1]
*2:6*
amount [3]
*18:7; 19:18, 21*
ancestor [2]
*3:20; 10:20*
answered [2]
*21:18, 23*

---

anymore [1]
*13:10*
apparent [1]
*22:13*
apparently [1]
*18:20*
application [3]
*18:10; 19:14; 22:10*
applied [1]
*8:23*
appreciate [1]
*22:23*
appropriate [2]
*11:22; 15:12*
argued [1]
*5:5*
arguing [1]
*14:1*
argument [1]
*2:12*
arguments [1]
*13:13*
arising [1]
*10:20*
aspect [2]
*6:23; 14:11*
attention [2]
*3:20; 15:24*
attorney [2]
*6:5, 6*
authority [3]
*14:7, 8; 15:20*
available [2]
*8:3; 11:20*
award [2]
*9:6, 15*

— B —

backed [1]
*10:17*
barely [1]
*12:20*
basis [2]
*9:17; 19:20*
Bear [1]
*3:11*
believe [4]
*3:3; 11:3; 14:5; 21:10*
benefit [2]
*18:1; 20:5*
bother [1]
*15:17*
bridge [1]
*12:25*
brief [7]
*2:17; 7:21; 8:5, 10; 9:24; 10:10; 23:12*

**briefly** [1]
  *19:18*
**briefs** [2]
  *7:24; 11:13*
**bringing** [1]
  *14:12*
**built** [2]
  *17:8, 9*

––––––––– – C – –––––––––

**CAHN** [30]
  *2:20, 25; 3:5, 7, 11,
  17; 4:12, 14, 17, 23;
  5:2, 4, 9, 14, 17, 19;
  6:2; 12:6, 8, 12, 16;
  13:8, 11; 15:1, 3, 22;
  17:12, 16; 18:4; 19:5*
**Cahn** [14]
  *2:19; 5:7; 7:10, 19;
  10:4; 11:7; 16:19,
  25; 17:5, 11; 19:2, 4;
  20:3, 4*
**Cahn's** [3]
  *9:22; 19:19; 20:23*
**California** [1]
  *9:19*
**candor** [3]
  *6:6, 7, 8*
**care** [1]
  *12:24*
**Case** [1]
  *2:5*
**cases** [1]
  *3:24*
**ce** [1]
  *14:7*
**Certificate** [35]
  *2:13; 3:2, 3, 8, 14;
  4:6, 8, 9; 5:21; 6:12,
  18, 21, 23; 8:1, 4, 9,
  13, 23, 24; 9:4, 12,
  18, 21; 10:5, 11;
  11:14; 13:16, 17, 19,
  20; 14:2, 8, 9; 16:2*
**Certificates** [5]
  *2:8; 3:22; 4:3, 4; 7:1*
**change** [1]
  *3:23*
**characterization** [1]
  *19:21*
**choose** [1]
  *21:2*
**Circuit** [5]
  *8:19, 21; 9:1; 13:12,
  15*
**Circuit's** [1]
  *3:24*
**cited** [1]

**7:24**
**citing** [1]
  *8:14*
**Claim** [3]
  *8:18; 9:9, 14*
**claims** [2]
  *3:23; 4:5*
**clarify** [1]
  *2:17*
**clause** [1]
  *13:25*
**clear** [8]
  *8:1; 15:10; 16:4;
  17:22; 23:5, 6, 8*
**clearer** [1]
  *20:7*
**collected** [1]
  *4:18*
**collecting** [1]
  *13:25*
**committed** [2]
  *10:7; 17:10*
**Company** [1]
  *2:5*
**complaint** [1]
  *12:8*
**complete** [1]
  *8:15*
**comply** [1]
  *5:24*
**comport** [3]
  *5:22; 6:5, 7*
**concern** [1]
  *3:21*
**concerned** [1]
  *16:1*
**concluded** [1]
  *23:14*
**conduct** [12]
  *5:19; 6:1, 4, 9, 22;
  7:3, 4; 12:4; 14:12;
  17:9; 21:12; 22:5*
**confer** [1]
  *21:13*
**connection** [5]
  *3:1; 5:20; 6:10; 10:5;
  14:18*
**considerable** [3]
  *18:7; 19:18, 20*
**considering** [1]
  *14:23*
**continue** [1]
  *17:17*
**contrary** [1]
  *10:19*
**controlling** [2]
  *14:7*
**conundrum** [1]

**12:1**
**corners** [2]
  *6:15, 17*
**corrected** [1]
  *12:4*
**Correction** [39]
  *2:9, 13; 3:2, 4, 9, 14,
  22; 4:3, 4, 6, 8, 9;
  5:21; 6:12, 18, 21,
  23; 7:1; 8:1, 4, 9, 13,
  23, 25; 9:4, 13, 18,
  21; 10:5, 11; 11:14,
  15; 13:16, 18, 19;
  14:2, 9, 10; 16:3*
**corrections** [1]
  *3:24*
**COUNSEL** [1]
  *2:3*
**Counsel** [1]
  *2:7*
**counsel** [1]
  *15:4*
**counterclaim** [4]
  *21:20, 21, 22, 23*
**couple** [3]
  *3:7, 18; 16:24*
**course** [3]
  *11:21; 15:21; 18:24*
**Court** [12]
  *8:24; 9:2, 3, 9, 11,
  22; 10:8; 11:8, 11;
  15:19; 19:14; 23:12*
**Court's** [2]
  *14:21; 15:24*
**courtroom** [1]
  *18:16*
**critical** [1]
  *6:13*
**cross** [1]
  *13:1*
**crux** [1]
  *6:4*
**crystallizes** [1]
  *22:4*

––––––––– – D – –––––––––

**damage** [1]
  *9:5*
**damages** [16]
  *4:18; 5:16, 17; 8:3,
  9; 9:15, 19; 12:8, 13,
  15, 18, 19, 23, 24;
  13:4, 6*
**date** [2]
  *8:3; 14:2*
**dates** [1]
  *19:6*
**deal** [2]

**13:1, 7**
**decision** [1]
  *8:16*
**defective** [1]
  *3:14*
**defectively** [1]
  *3:13*
**defendant** [4]
  *8:18; 15:10, 18; 19:8*
**defendants** [12]
  *2:21; 5:5; 7:23, 25;
  8:10; 14:14; 18:25;
  20:5, 16; 21:4, 11;
  22:19*
**defense** [5]
  *4:10; 5:8; 21:12, 14;
  22:8*
**defenses** [4]
  *4:12; 5:13; 20:6;
  21:10*
**demonstrate** [1]
  *6:17*
**denial** [1]
  *8:20*
**denied** [3]
  *8:19; 14:16; 15:17*
**denying** [2]
  *16:6; 20:8*
**depose** [1]
  *12:18*
**deposed** [1]
  *18:21*
**deposition** [1]
  *22:25*
**details** [1]
  *18:17*
**difference** [1]
  *18:23*
**differences** [2]
  *16:9, 10*
**difficulty** [1]
  *11:7*
**dilemma** [1]
  *12:1*
**dime** [1]
  *13:2*
**disagreement** [3]
  *16:19; 18:18, 20*
**discover** [1]
  *17:20*
**discovered** [1]
  *5:10*
**discovery** [8]
  *12:14; 13:3; 16:25;
  20:6; 22:4, 18, 22;
  23:2*
**discussion** [1]
  *17:5*

**dismiss** [6]
*3:16; 7:21, 25;
10:13; 11:13, 21*

**dismissal** [4]
*4:25; 5:4; 6:11*

**dismissed** [1]
*21:25*

**disposed** [2]
*6:13; 7:7*

**dispositive** [6]
*19:7; 20:11, 15;
21:2, 4; 22:2*

**Disqualification** [1]
*2:22*

**disqualification** [4]
*2:11; 11:10; 16:7;
19:13*

**disqualify** [3]
*7:22; 13:5; 14:15*

**distinguishing** [1]
*19:21*

**District** [4]
*9:2, 3, 10; 11:8*

**doesn't** [3]
*10:9, 10; 16:23*

**DOUGHERTY** [15]
*16:11, 14, 18, 22, 24;
17:4; 18:6, 10; 19:2,
11, 13; 22:17, 22;
23:4, 6*

**Dougherty** [1]
*16:13*

**driving** [1]
*18:19*

**duty** [3]
*6:6, 7*

**– E –**

**easier** [1]
*13:15*

**effect** [1]
*20:18*

**effected** [1]
*3:22*

**effective** [1]
*8:25*

**effort** [2]
*18:7; 19:18*

**enforceability** [1]
*3:2*

**engaged** [1]
*6:8*

**enter** [2]
*16:6; 23:12*

**entertain** [2]
*19:14; 20:3*

**entitled** [2]
*9:5, 13*

**ephemeral** [1]
*13:5*

**error** [1]
*8:19*

**errors** [1]
*3:25*

**Esquire** [1]
*14:15*

**establishes** [1]
*6:22*

**ethical** [1]
*12:1*

**evidence** [4]
*6:16; 10:17, 20;
17:20*

**evident** [1]
*13:23*

**example** [1]
*5:6*

**Excuse** [1]
*7:11*

**exercise** [1]
*15:19*

**exists** [1]
*14:10*

**expert** [1]
*6:16*

**explain** [1]
*11:9*

**explaining** [1]
*22:20*

**– F –**

**F.3d** [1]
*9:7*

**face** [1]
*11:12*

**fact** [4]
*4:24; 6:22; 14:9, 10*

**facts** [1]
*22:8*

**failed** [1]
*14:22*

**failure** [2]
*5:24; 6:2*

**fair** [1]
*15:7*

**fairness** [1]
*20:2*

**faith** [2]
*11:4; 20:23*

**Federal** [7]
*3:24; 4:15; 8:19, 21;
9:1; 13:12, 14*

**fees** [3]
*18:10; 19:14; 20:3*

**Fi** [1]
*14:2*

**file** [6]
*7:2; 19:23; 20:10,
11; 21:2, 4*

**filed** [11]
*4:22, 23; 6:19; 8:24;
10:13; 11:13; 15:4,
6; 20:16*

**files** [1]
*21:3*

**filing** [1]
*4:19*

**final** [1]
*18:17*

**find** [3]
*9:3, 17; 11:24*

**fine** [1]
*19:5*

**finished** [2]
*14:13; 15:2*

**Firepla** [1]
*14:6*

**Fireplace** [1]
*13:11*

**firm** [6]
*10:6, 16; 11:18;
14:15; 19:19; 23:2*

**First** [5]
*3:8; 4:8, 10, 14; 9:18*

**first** [7]
*3:8; 5:15; 6:19; 7:2;
18:12, 25; 22:25*

**first-action** [1]
*22:11*

**flat** [1]
*9:23*

**focus** [2]
*7:20; 20:7*

**fog** [1]
*15:10*

**folks** [2]
*11:24; 12:20*

**forced** [1]
*21:15*

**foreclosed** [1]
*8:8*

**forward** [3]
*15:10; 22:17, 22*

**found** [4]
*8:17, 19; 9:7, 10*

**four** [3]
*6:14, 17; 8:5*

**frankly** [2]
*6:10; 18:15*

**frivolous** [3]
*14:25; 20:19; 22:14*

**full** [1]
*6:5*

**– G –**

**give** [1]
*12:19*

**given** [1]
*18:25*

**goes** [2]
*15:9; 19:25*

**goodness** [1]
*12:21*

**grant** [1]
*20:4*

**great** [1]
*18:1*

**Greenberg** [4]
*6:19; 7:8; 10:6;
14:16*

**grip** [1]
*15:11*

**grips** [1]
*14:19*

**grounds** [1]
*2:15*

**guarantee** [2]
*7:9, 10*

**guess** [1]
*15:7*

**– H –**

**hasn't** [1]
*10:9*

**haven't** [1]
*12:14*

**hear** [1]
*7:11*

**hearing** [7]
*2:18; 3:16; 11:21,
24; 14:18; 15:5;
18:12*

**HELD** [1]
*2:1*

**held** [1]
*9:9*

**history** [2]
*7:2; 13:24*

**hoc** [1]
*15:5*

**hold** [3]
*20:18; 22:1, 2*

**holder** [1]
*8:2*

**honest** [1]
*16:19*

**hope** [1]
*23:8*

**hours** [2]
*3:19; 20:24*

**– I –**

**I'd** [1]
20:4

**identify** [1]
10:10

**imagine** [1]
15:13

**immaterial** [1]
6:23

**important** [1]
4:24

**improperly** [1]
6:18

**improprieties** [1]
10:4

**inappropriate** [1]
9:23

**inasmuch** [1]
14:6

**Inc** [2]
2:5

**independent** [1]
17:20

**indicating** [1]
5:6

**inequitable** [8]
5:19; 6:1, 4, 8; 12:4;
17:9; 21:12; 22:5

**informed** [1]
20:6

**infringement** [6]
8:18, 22; 9:4, 14, 20;
22:24

**infringer** [1]
8:11

**ing** [1]
2:5

**insinuations** [1]
10:15

**instance** [2]
6:19; 7:2

**Instruments** [1]
2:5

**insubstantial** [1]
3:25

**integrity** [2]
15:20; 19:24

**intents** [1]
3:13

**intermediate** [1]
13:13

**interrupt** [4]
3:15; 5:11; 12:10;
13:10

**invite** [1]
21:1

**involved** [1]
7:5

**irrefutably** [1]

10:21

**irresponsible** [1]
11:6

**issuance** [4]
8:12; 9:20; 13:14;
14:8

**issue** [22]
2:8, 24; 3:4; 5:8;
6:12, 13; 10:12;
12:20; 13:6; 15:14,
21; 17:12, 15, 17, 20,
21, 23; 18:2, 3, 20;
20:18

**issued** [5]
3:12; 6:18; 8:4; 14:2

**issues** [3]
13:18, 21; 17:1

**issuing** [1]
13:11

– J –

**January** [1]
19:8

**JMOL** [1]
8:20

**JMOLed** [1]
8:18

**Joe** [1]
7:13

**Judge** [3]
9:18; 11:9; 13:13

**judgment** [4]
8:22; 9:1, 4, 14

**JULY** [1]
2:1

**Jump** [1]
9:7

**jury** [1]
8:17

– K –

**keeping** [1]
22:3

– L –

**language** [1]
3:23

**large** [1]
6:25

**last** [2]
12:10; 17:22

**Late** [1]
19:10

**launched** [1]
10:16

**law** [7]
10:6, 16; 14:15;
19:19, 22; 23:2

**lawsuit** [2]
8:24, 25

**lawsuits** [1]
11:20

**leave** [2]
11:24; 22:20

**legal** [1]
14:19

**Let's** [3]
12:23; 22:1

**let's** [4]
12:19; 16:8; 20:18;
22:4

**level** [2]
6:1; 8:17

**Leviton** [6]
2:4; 8:8, 11; 9:19;
13:25; 14:12

**life** [1]
15:12

**light** [1]
14:21

**lightly** [1]
14:23

**limitation** [1]
5:17

**line** [1]
15:18

**listen** [2]
11:9; 13:4

**literally** [1]
14:18

**litigation** [2]
5:10; 20:22

**litigations** [1]
7:4

**LLP** [1]
14:16

**look-back** [1]
5:15

**looks** [1]
20:19

**lost** [4]
7:2; 12:5; 18:23;
19:1

**lot** [2]
18:18; 22:19

**lots** [2]
18:11

– M –

**Maintain** [1]
19:24

**major** [1]
12:1

**management** [2]
12:21; 16:9

**MANAK** [23]

7:13, 17; 10:3, 14,
23; 11:1; 19:17;
20:9, 12, 14, 17, 20,
25; 21:5, 7, 10, 19,
21, 24; 22:9, 13, 21;
23:10

**Manak** [2]
7:13; 14:3

**Manufactur** [1]
2:4

**March** [2]
19:9, 10

**matter** [3]
7:7; 16:16; 22:23

**matters** [1]
14:18

**May** [1]
19:8

**mean** [11]
4:1, 22, 25; 7:21;
11:10; 12:2, 20, 21;
15:23; 19:6; 20:19

**measure** [1]
7:1

**mention** [1]
15:17

**mentioned** [1]
7:20

**merit** [2]
11:8; 12:2

**merits** [1]
22:23

**million** [2]
12:24

**mind** [1]
4:2

**minutes** [1]
3:19

**mischaracterization**
[2]
8:15; 9:25

**mischaracterized** [1]
14:5

**misleads** [1]
6:5

**misreading** [2]
8:15; 9:24

**mistake** [4]
5:9; 10:21; 12:4;
13:23

**misunderstand** [1]
2:15

**misunderstood** [1]
2:16

**moment** [2]
7:11; 22:3

**monetary** [1]
14:1

**months** [2]
*10:13; 16:24*
**morning** [5]
*2:2, 3; 7:16; 17:25;*
*18:17*
**motion** [28]
*2:10, 11, 15; 3:16;*
*6:13; 7:21, 22, 25;*
*10:13; 11:2, 3, 13,*
*21; 14:14, 21; 15:17;*
*16:6; 19:13, 15;*
*20:11, 15; 21:2, 4,*
*15, 16, 18; 22:14, 15*
**motions** [2]
*19:8; 22:3*
**moved** [1]
*2:22*
**moving** [2]
*10:14; 13:2*

**– N –**

**needs** [1]
*15:19*
**notice** [2]
*14:11; 22:25*
**November** [1]
*13:14*
**Number** [2]
*2:5; 12:8*
**number** [5]
*6:20, 21; 8:6; 10:4;*
*19:1*

**– O –**

**observation** [2]
*11:6; 15:3*
**obtuse** [1]
*14:19*
**obviated** [1]
*3:21*
**obvious** [1]
*11:15*
**Obviously** [1]
*22:6*
**occurred** [1]
*8:12*
**occurring** [2]
*13:17, 20*
**Office** [5]
*5:20, 23; 6:4, 5; 7:3*
**Oh** [2]
*3:5; 17:2*
**Okay** [10]
*5:18; 12:12; 14:14;*
*17:2, 14; 19:10;*
*21:6; 22:12, 21; 23:9*
**Opinion** [1]
*11:25*

**opinion** [1]
*13:14*
**opportunity** [1]
*6:14*
**opposing** [2]
*18:8; 19:14*
**opposition** [1]
*22:10*
**orbit** [1]
*7:17*
**Order** [1]
*2:22*
**order** [4]
*12:21; 16:6, 9; 23:12*
**original** [1]
*13:23*
**outside** [1]
*6:17*

**– P –**

**page** [3]
*8:6, 10; 9:8*
**pages** [1]
*8:4*
**papers** [7]
*5:6; 6:19; 7:23; 10:9,*
*14; 15:8; 22:10*
**part** [7]
*2:25; 3:4; 16:22, 25;*
*17:10; 21:2, 3*
**partner** [1]
*10:6*
**Patent** [4]
*5:20, 23; 6:3; 7:3*
**patent** [9]
*3:2; 4:17; 8:2, 18;*
*9:3, 10, 12, 17; 22:6*
**patentee** [1]
*6:6*
**patents** [6]
*2:24; 3:21; 10:20;*
*11:16, 17*
**Paul** [1]
*14:15*
**people** [1]
*18:11*
**perceiving** [1]
*11:7*
**perfectly** [1]
*19:7*
**period** [2]
*4:18; 5:16*
**person** [1]
*11:15*
**petition** [2]
*19:23; 20:3*
**pick** [1]
*11:11*

**place** [1]
*18:25*
**Plaintiff** [2]
*8:8; 19:7*
**plaintiff** [4]
*7:14; 9:5; 11:19;*
*21:3*
**plaintiff's** [1]
*6:22*
**plaintiffs** [1]
*7:11*
**planets** [1]
*7:15*
**platform** [1]
*18:1*
**play** [1]
*14:10*
**pleadings** [3]
*6:15, 17; 21:14*
**please** [3]
*3:15; 7:12; 13:4*
**pleasure** [1]
*23:11*
**pled** [1]
*21:13*
**Point** [1]
*11:23*
**point** [4]
*11:18; 20:22; 21:7;*
*22:10*
**points** [3]
*3:7; 12:6; 14:13*
**post-12-11-2001** [1]
*14:1*
**potentially** [1]
*6:8*
**Power** [1]
*11:23*
**practice** [1]
*6:3*
**Pregerson** [2]
*9:18; 13:13*
**prejudice** [2]
*5:1, 5*
**prepared** [1]
*20:21*
**present** [2]
*6:16; 14:21*
**presentation** [2]
*10:10; 11:23*
**presently** [1]
*19:24*
**pretty** [1]
*2:17*
**primarily** [1]
*2:23*
**principles** [1]
*14:20*

**prior** [5]
*4:18, 25; 8:9; 9:20;*
*11:20*
**pro** [1]
*15:5*
**problem** [3]
*16:13, 14; 17:3*
**procedural** [1]
*5:25*
**procedures** [1]
*5:22*
**proceed** [1]
*22:24*
**PROCEEDING** [1]
*2:1*
**proceeding** [1]
*23:14*
**proceedings** [2]
*14:22; 18:16*
**process** [2]
*15:20; 20:5*
**prolong** [1]
*19:11*
**promise** [1]
*12:11*
**proposed** [1]
*18:18*
**propriety** [2]
*4:3; 7:1*
**prosecuted** [1]
*11:16*
**prosecution** [4]
*2:24; 13:23; 22:5, 9*
**prospective** [1]
*8:2*
**protected** [1]
*13:22*
**PTO** [2]
*5:9; 10:22*
**public** [2]
*13:21; 14:11*
**public's** [1]
*13:21*
**purposes** [2]
*3:13; 8:25*
**pursuant** [1]
*6:19*
**pursuing** [1]
*10:11*

**– Q –**

**question** [6]
*4:7; 5:12; 10:3;*
*11:10, 22; 16:2*
**quickly** [1]
*2:17*
**quote** [1]
*9:8*