00001

1

2
                    IN THE UNITED STATES DISTRICT COURT
3                      FOR THE DISTRICT OF MARYLAND
                            NORTHERN DIVISION
4

5
                                    )
6  LEVITON MANUFACTURING CO., INC. )
                                    )
7        Plaintiff        )
                                    )
8    v.                   ) Civil Docket No. AMD 01-3855
                                    )
9  UNIVERSAL SECURITY INSTRUMENTS, )
   INC., et al.               )
10                            )
        Defendants          )
11                            )

12

13                        Baltimore, Maryland
                          April 17, 2003
14                          10:30 AM to

15

16    The above-entitled matter came on for a hearing before
            The Honorable Andre M. Davis
17

18            A P P E A R A N C E S
19
            On Behalf of the Plaintiff:
20          Joseph M. Manak, Esquire
            Joseph G. Lee, Esquire
21          Roberta Daghir, Esquire

22          On Behalf of the Defendants:
            Maurice U. Cahn, Esquire
23          Frederick N. Samuels, Esquire
            William E. Bradley, Esquire

24

25

00011
1  become expensive for his client.  I submit, Your Honor, that if

2  the litigation has become expensive for him and his client, it

3  is largely Mr. Cahn's and his client's own doing.

4        Your Honor may recall we initially had a motion to

5  dismiss this case several months back, which was denied after

6  oral hearing.  We were then faced with a motion to disqualify

7  myself, my law firm, and my law partner, Paul Sutton, on the

8  grounds of some alleged malpractice claim.  There was in that

9  motion a number of accusations of misconduct against our firm

10  and Mr. Sutton, and we had to defend against that.  It was very

11  expensive for us to defend against that, to prepare the briefs

12  responding to those wild accusations.  And I believe, if Your

13  Honor went back and looked at the transcript, the Court

14  indicated that that motion was frivolous.

15        With respect to our first motion to compel, Mr. Cahn

16  mentioned Interrogatory Number 3.  Let me give Your Honor one

17  example why we made our first motion to compel.  Our

18  Interrogatory Number 3 asked the defendants to state when they

19  first became aware of the patent-in-suit and identify all

20  persons having knowledge concerning such awareness.  That is,

21  the defendants' awareness of the patent-in-suit.

22        Let me read you defendants' initial response to that

23  interrogatory.  As the persons aware of the patent-in-suit on

24  behalf of the defendants, they identified myself, Mr. Sutton,

25  and John Dougherty of the Piper, Marbury firm, our former local

00012

1 counsel. That, on its face, Your Honor, is a ridiculous

2 response to an interrogatory. I don't represent the

3 defendants, neither does Mr. Sutton, and neither does John

4 Dougherty. We were asking them quite clearly to identify the

5 persons in the defendants' organization who became aware of the

6 patents-in-suit, and they identified me in their interrogatory

7 response. We asked them to please amend that, and they refused

8 to do that in the first instance, and we moved to compel. That

9 is one example of that.

10      Also in connection with our first motion to compel,

11 largely what we are seeking is financial documents,

12 particularly backup documents which support the defendants'

13 claims that they never made a profit on GFCIs.

14      Defendants have produced a summary document, which

15 they called their burden document, allocating certain overhead.

16 It's a few pages. It's handwritten, I believe by Mr.

17 Grossblatt, in which overhead is apportioned to the sales of

18 GFCIs. We have no backup documentation supporting that

19 summary.

20      Why is that relevant?

21      One of the Georgia Pacific factors in determining a

22 reasonable royalty is the profits that the alleged infringer

23 has made on the sale of the allegedly-infringing product.

24 That's one of the factors the Court looks to in determining a

25 reasonable royalty.

00018

1        I will stop there, Your Honor.

2        THE COURT:  All right.

3        MR. CAHN:  Your Honor, in terms of -- I would like to

4  address the second motion to compel issue.  That matter is not

5  ripe at all.  We have not had an opportunity to reply to it

6  substantively.  It was served, as you can tell from the docket,

7  properly yesterday with the appropriate certifications.

8        Secondly, in terms of the profit, testing the profit

9  issue, what has been provided to Leviton are documents that

10  satisfy all the SEC requirements.  Those are the documents we

11  have.  We do not have the type of documentation they are

12  looking for.  It has been attested to by Mr. Grossblatt.

13        In terms of the cost documents, the difference between

14  the gross and the net profit, they have all the import

15  documents.  They have all the factor documents.  They have all

16  the freight documents.  All of this was produced.  Every

17  shipment.  They have everything.  They have the numbers

18  relating to the sales of the GFCIs to the customers.

19        We also think that the issue of the patent-in-suit

20  again raises its head.  Mr. Manak read a very partial response

21  to the interrogatory.  The explanation given in that

22  interrogatory is, if the patent-in-suit constitutes the patent

23  as it stood as of December 11, 2001.  This case was filed

24  December 13, 2001.  There were no documents.  The only --

25        THE COURT:  I'm sorry.  Say that again.

**Hearing Transcript 4/17/03**                                      **Page 18**

00019

1       MR. CAHN:  If the patent-in-suit constituted the

2   patent as corrected as of December 11, 2001, the date of the

3   second Certificate of Correction, and the patent -- this suit

4   was filed on December 13, 2001.  That was a two-day window.  We

5   didn't issue any opinions.  The only people who knew about that

6   stuff was plaintiff's counsel.  We didn't know about it until

7   it was served.

8       THE COURT:  Okay.  Say that one more time.  Start at

9   the beginning.

10      MR. CAHN:  All right.  Interrogatory Number 3 asked

11  for identification of all persons who knew of the patent or who

12  were aware of the patent-in-suit.  The patent-in-suit -- in the

13  event that you take Superior Fireplace and the Southwest Softwa

14  re cases, the patent-in-suit is the patent as it stood December

15  11, 2001.  December 11, 2001.

16      Two days later, this suit was filed.  In that two-day

17  period, we didn't know anything about the patent-in-suit.  We

18  just knew that they knew.  And that is why they were

19  identified.  It turns on what the Leviton Patent is.  What is

20  the patent-in-suit?

21      This goes back to the Certificate of Correction issue

22  which --

23      THE COURT:  After the three- or four-hour hearing that

24  we had at the commencement of the case, you don't understand my

25  ruling to amount to a determination that the corrected patent

**Hearing Transcript 4/17/03**                                    **Page 19**

00020

1 after the second Certificate of Correction is the

2 patent-in-suit?  You don't understand my ruling?

3        MR. CAHN:  That is exactly our understanding, Your

4 Honor.  That is exactly what our understanding is.

5        THE COURT:  Okay.  Maybe I misunderstood what you

6 said.  There is only one patent.

7        MR. CAHN:  Right.

8        THE COURT:  And that is the patent-in-suit.

9        MR. CAHN:  That is correct, Your Honor.

10        THE COURT:  And my question to you is:  You do not

11 understand me to have ruled that the corrected patent is the

12 patent that has been out there the whole time?

13        MR. CAHN:  No, Your Honor, I don't understand.

14        THE COURT:  You don't understand me to have ruled

15 that?

16        MR. CAHN:  No.

17        THE COURT:  That is what I ruled.

18        MR. CAHN:  Well, Your Honor, --

19        THE COURT:  That is what I ruled.  Okay?

20        MR. CAHN:  Okay.

21        THE COURT:  If I did not make it clear, then that's my

22 fault.  That is my fault.

23        The patent-in-suit is the patent as it appears as

24 corrected, but that is the patent that has been a part of this

25 property since 1982 or 1983 or 1984, whenever the patent was

00021

1  issued.

2        Now, you can take that to the Federal Circuit, but I

3  don't want to hear anymore argument about that.  I don't want

4  to hear anymore argument about that, and I don't want these

5  fancy lawyer games because they are ridiculous.  They are

6  ridiculous.  I may be wrong.  I may be absolutely wrong.  All

7  right?  I have been wrong before, and I will be wrong in the

8  future.  I work hard at not being wrong, but I will be wrong.

9  But this is pretty ridiculous.  This is absurd.  It is absurd.

10        You don't have to respond to that, and my little rant

11  is not coming off your five minutes, but let's be clear.  Let's

12  be very clear.  We are not playing that game in this case.  All

13  the time we spent playing that game has ended.  We are not

14  playing that game.

15        MR. CAHN:  Your Honor, if I may.  That answer --

16        THE COURT:  No.  You may not respond.  You may not

17  respond to that clarification of my ruling.

18        Go ahead and use the balance of your five minutes.

19        MR. CAHN:  That answer was supplemented, and they were

20  given the information.  They mentioned trying to take the

21  deposition of the former chairman of our company, no longer

22  affiliated with the company, Mr. Kovens.  Mr. Kovens was the

23  person who first became aware.  And that was provided in a

24  supplemental interrogatory answer.

25        THE COURT:  After the deadline for discovery?

00022

1    MR. CAHN:  No.

2    THE COURT:  When?

3    MR. CAHN:  Hold on.

4    (Pause in the proceeding.)

5    MR. CAHN:  December 4, 2002.

6    THE COURT:  When was his deposition noted?

7    MR. CAHN:  We received a Notice of Deposition on April

8 3rd or 4th.

9    THE COURT:  Was he subpoenaed or --

10    MR. CAHN:  We don't know.

11    THE COURT:  In other words, -- well, do you have

12 control over Mr. Kovens or not?

13    MR. CAHN:  No.

14    MR. MANAK:  He was subpoenaed, Your Honor.

15    MR. CAHN:  Okay.  All we received was a copy of the

16 Notice of Deposition.

17    THE COURT:  Did you provide his current business or

18 home address and all of that back in December or November or

19 whenever it was?

20    MR. CAHN:  Yes.  He was on the witness list, the

21 initial disclosures.

22    THE COURT:  And when did you supplement that?

23    MR. CAHN:  December 4th.

24    THE COURT:  December 4th.

25    MR. CAHN:  Would you like me to read the answer to

**Hearing Transcript 4/17/03**                                    **Page 22**

00023

1 you?

2      THE COURT:  No, I don't think you have to read the

3 answer.  I am just trying to get the time line straight.

4      Your first answer was what?  October 15th?

5      MR. CAHN:  Yes.

6      THE COURT:  And the demand for supplementation was

7 what?  October 29th or somewhere like that?

8      MR. CAHN:  That's correct, Your Honor.

9      THE COURT:  So, it took more than a month for the

10 defendants to put your heads together and decide, well,

11 identifying plaintiff's counsel would not be enough, we need to

12 give them somebody else?  Is that how it worked, or how did it

13 work?  I am just trying to figure out the --

14      MR. CAHN:  We invited them to inspect the documents

15 that had been sorted and sitting, waiting for them to come down

16 and inspect them.  They finally sent a --

17      THE COURT:  I'm sorry.  I don't understand.

18      MR. CAHN:  -- a copier service.

19      THE COURT:  I don't understand how that is responsive.

20      You supplemented your interrogatory response on

21 December 4th, or whatever it was, by identifying Mr. Kovens.

22 What does that have to do with them coming down to inspect

23 documents?

24      MR. CAHN:  Because the letter that they sent

25 complained about all of these different issues, in discovery,

**Hearing Transcript 4/17/03**                                    **Page 23**

00024

1  we said, come down and get the documents, it is going to answer

2  your questions. And they did. At Thanksgiving. Around

3  Thanksgiving, they sent a courier.

4       THE COURT: Okay. And then what happened?

5       MR. CAHN: Then we supplemented.

6       THE COURT: I still don't understand. What is the

7  relationship between them picking up the documents and you

8  supplementing? It just doesn't make sense. Please, give me

9  something that makes sense.

10      MR. CAHN: Excuse me, Your Honor.

11      THE COURT: Sure. Go ahead.

12      (Pause in the proceeding.)

13      THE COURT: In other words, do you understand my

14 question? What is the relationship between plaintiff examining

15 the documents and your decision on December 4th or 5th to

16 provide a supplemental interrogatory answer?

17      MR. CAHN: We had asked them to look at the documents

18 because we believed that most of the issues that they were

19 raising would disappear at that point. We supplemented

20 accordingly.

21      THE COURT: You keep saying that. You keep saying

22 that.

23      You gave an interrogatory answer identifying

24 plaintiff's counsel as the people who became aware of the

25 patent-in-suit.

00025

1      Plaintiff writes back and says, you're nuts. This is,

2 at best, a non sequitur, but, really, it is something from

3 outer space.

4      So, you respond by saying, come look at the documents.

5      They come look at the documents, and they didn't find

6 Mr. Dougherty's name in the documents.

7      What is it that they found in the documents, or that

8 you thought they found in the documents, or that you pointed

9 out to them in the documents that then, on December 4th, the

10 lawyers for the defendants got together and said, okay, now we

11 need to supplement this interrogatory and identify our former

12 CEO, or whoever Mr. Kovens was, as a person who is responsive

13 to this interrogatory?

14      That is not a hard question.

15      MR. CAHN: The original communications identifying --

16      THE COURT: Original communications between?

17      MR. CAHN: The original communications between the

18 manufacturer and Mr. Kovens were produced. In other words, Mr.

19 Kovens wrote to them and said, hey, I hear there is a lawsuit,

20 what is going on?

21      THE COURT: Okay.

22      MR. CAHN: They write back saying, there is a lawsuit,

23 but don't worry about it.

24      He writes back and says, wait a minute, what is going

25 on?

**Hearing Transcript 4/17/03**                    **Page 25**

00026

1    THE COURT: Okay.

2    MR. CAHN: So, they got all that. They got the --

3    THE COURT: I am not talking about what they got. I

4  am talking about why you supplemented by identifying Mr. Kovens

5  on December 4th or 5th. I understand they got plenty, or maybe

6  they got nothing. We'll see. But I am trying to understand

7  what it was that caused the defendant to supplement the

8  interrogatory answer on December 4th or 5th.

9    MR. CAHN: Once they responded to our letter going

10  back to them saying, look, our impression of the

11  patent-in-suit, and here is the patent-in-suit issue again, was

12  that it was the corrected patent-in-suit. Fine. We will

13  supplement now. We will give you the information.

14    THE COURT: What was the date of that communication?

15    MR. CAHN: That was November, I don't know, probably

16  the 6th or the 8th somewhere.

17    THE COURT: Was that the response to the October 29th

18  or 30th objection?

19    MR. CAHN: Yes.

20    THE COURT: What was the date again, November the

21  what?

22    (Pause in the proceeding.)

23    MR. CAHN: Their letter is dated October 28th.

24    THE COURT: Okay. And your response was?

25    MR. CAHN: Our response was --

00027

1      (Pause in the proceeding.)

2      MR. MANAK:  Your Honor, the --

3      THE COURT:  Please don't interrupt.

4      MR. MANAK:  Okay.

5      MR. CAHN:  November 6th.

6      THE COURT:  But you didn't file a supplemental answer

7  until a month later.

8      MR. CAHN:  Well, we didn't serve them with a

9  supplemental answer, that is correct, Your Honor.

10      THE COURT:  And why is that?

11      MR. CAHN:  Holidays, you know.

12      THE COURT:  Holidays?  The month of November is a

13  holiday?  I really don't understand.  If they wrote to you on

14  the 28th of October saying, you have given an absurd

15  interpretation of our interrogatory referring to the

16  patent-in-suit as only the patent as it read after the second

17  Certificate of Correction, and we think you know better, or

18  whatever it is they said, and then you, within a week or so,

19  realized or were persuaded, I don't know what it was, -- by the

20  way, why were you persuaded simply by their letter?

21      MR. CAHN:  We were trying to cooperate and cut off a

22  discovery dispute, Your Honor.

23      THE COURT:  I see.  Okay.  You are to be saluted for

24  that.

25      So, it took you a month.  I don't see what the

00028

1  production during November had to do with -- if you knew as of

2  October 28th or 29th, whenever you received plaintiff's letter,

3  that in plaintiff's view, you had given an absurd

4  interpretation to that interrogatory, I don't understand what

5  subsequent document production had to do with your identifying

6  Mr. Kovens as a person whose identity was responsive to that

7  interrogatory.

8       And I certainly don't understand why it would have

9  taken the entire month of November to serve the supplemental

10  response. Although I salute you, again, for wanting to avoid

11  discovery disputes, but obviously we are sitting here now

12  discussing discovery disputes.

13       Do you have any better answer as to why it would have

14  taken a month, other than, well, Judge, there are holidays in

15  November?

16       MR. CAHN:  Other than drafting it, sending it to the

17  client, getting the client's signature, Thanksgiving vacation,

18  and they were in the middle of switching local counsel at that

19  point, no, I don't, Your Honor.

20       THE COURT:  All right.  I think you have two more

21  minutes on your five.

22       MR. CAHN:  Your Honor, I have nothing further.

23       THE COURT:  Okay.  Mr. Manak, you have five.

24       MR. MANAK:  Yes, Your Honor.  I don't know if there

25  are any other motions you specifically want us to address.

00084
1        MR. MANAK:  Yes.

2        THE COURT:  So, that should be included in this new

3 Case Management Order that you are going to work out together.

4        MR. MANAK:  Terrific, Your Honor.

5        For the record, currently I understand our opposition

6 to the summary judgment motion on trade dress is due on April

7 25th.  So, we now do not have to file that opposition on the

8 25th?

9        THE COURT:  Exactly.

10        MR. MANAK:  Okay.  We will put that into the Case

11 Management Order.

12        THE COURT:  Exactly.

13        MR. MANAK:  Thank you, Your Honor.

14        THE COURT:  Did you want to take a look at your list

15 and make sure you've got everything?

16        MR. MANAK:  Yes.

17        (Pause in the proceeding.)

18        MR. MANAK:  I believe so.  There is a motion that the

19 defendants had filed for sanctions concerning a Protective

20 Order.  I don't know if that has been fully briefed.

21        THE COURT:  What is that about, Mr. Cahn?

22        MR. MANAK:  It was just filed yesterday.

23        MR. CAHN:  Mr. Bradley will --

24        MR. BRADLEY:  It was just filed yesterday.  The

25 concern was that in their opposition to the motion for a TRO,

00085

1  they used truth as a defense, saying look at what we learned

2  during the 30(b)(6) deposition of Harvey Grossblatt. And that

3  was the basis of their press release. What they learned in a

4  confidential deposition was not to be used for anything other

5  than for purposes of this litigation. So, we objected to them

6  using that as the basis for a press release, to release

7  confidential information about our client and their engineering

8  department and things of that nature. We are prepared to

9  withdraw that, Your Honor.

10      THE COURT: All right. It is withdrawn.

11      MR. BRADLEY: And we also filed a motion to strike and

12  exhibit. We will withdraw that, also.

13      THE COURT: It is withdrawn.

14      MR. MANAK: We will just state for the record, Your

15  Honor, that we did not use Mr. Grossblatt's testimony as the

16  basis for the press release. That allegation is not correct.

17      THE COURT: All right. The deadline for this further

18  fact and expert discovery will be June 20th.

19      So, on or before next Wednesday, April 23rd, counsel

20  are to submit a Revised Case Management Order, incorporating

21  what we have agreed to here on the record. Namely, the

22  additional document production, if any, the supplementation of

23  interrogatory answers, the additional depositions of Mr.

24  Kovens, the expert depositions, and the release of documents

25  covered by Confidentiality Orders and Protective Orders in

**Hearing Transcript 4/17/03**                    **Page 85**