IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| LEVITON MANUFACTURING CO., INC. | ) | |
| | ) | |
| (Plaintiff) | ) | |
| v. | ) | 01CV3855 AMD |
| | ) | |
| UNIVERSAL SECURITY INSTRUMENTS, INC. et al. | ) | |
| | ) | |
| (Defendants) | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION FOR ORDER TO SHOW CAUSE WHY SANCTIONS SHOULD NOT BE ENTERED AGAINST <u>PLAINTIFF AND ITS COUNSEL FOR VIOLATING THE PROTECTIVE ORDER</u>**

Defendants, Universal Security Instruments, Inc. and USI Electric, Inc. (collectively "USI") hereby submit this brief reply to address a few issues raised in Plaintiff Leviton Manufacturing Co. Inc.'s opposition and related papers.

**REPLY**

**I.   MR. SUTTON'S DECLARATION IS INACCURATE**

Viewed in its best light, Mr. Sutton's declaration is "inaccurate." The contemporaneous correspondence between the parties and the timing of events that actually transpired facially refute many of the averments made by Mr. Sutton. First, in paragraph 5, Mr. Sutton states that "after reading Defendants' Motion, I telephoned counsel for Defendants and conveyed the facts which are set forth below . . . ." Sutton Decl. at ¶ 5. That is not what happened.

USI filed its motion to show cause on August 13, 2003, after Leviton refused USI's repeated requests for an explanation of how Leviton had learned of the sales of Yatai units in 2002 in Canada by a USI customer. USI, not Leviton, requested the meet-

and-confer teleconference for August 20, 2003. On August 19, 2003, USI wrote to Leviton's counsel to schedule the required meet-and-confer relating to USI's motion to compel the production of Leviton's catalogs (which is unrelated to the present motion to show cause). *See* Letter from Maurice U. Cahn, Esq. to Brian J. Kelly, Esq. dated August 19, 2003 (Exhibit 1).[1]

During the August 20, 2003 meet and confer conference with Mr. Bradley, after discussing USI's motion to compel, Leviton then asked USI to withdraw its motion to show cause. USI's counsel again asked Leviton's counsel to simply tell USI the non-confidential means through which the sale of Yatai units the prior year was discovered. Leviton's counsel refused to provide any information. Accordingly, Mr. Sutton's statement that he "conveyed the facts which are set forth [in his declaration]" during this teleconference is untrue. As the contemporaneous correspondence clearly shows, USI's counsel sent Mr. Sutton a letter that same evening following up on the conversation and again asking Leviton to simply disclose the non-confidential means through which it learned of USI's Canadian customer and the sale of Yatai units in 2002:

> Next, as I indicated, I will relay your request that we voluntarily withdraw our motion to show cause to avoid a request for fees in the event an opposition brief is filed. However, I once again ask that you simply provide us with the non-confidential means through which Leviton learned of USI's Canadian client and its importation and sale of USI's GFCIs.

August 20, 2003 Letter from William E. Bradley to Paul J. Sutton (Exhibit 2).

---

[1] This letter also demonstrates the problematic veracity of Mr. Sutton's averments. In ¶ 15 of Mr. Sutton's declaration he averred that he "telephoned opposing counsel, Mr. Cahn, and informed him and his associate by telephone" of reports of shock hazards. In the August 19 letter, Mr. Cahn alerted counsel that he would not be available or participating in the meet and confer, which he did not. Thus, Mr. Sutton's statement is untrue.

2

Clearly, no facts or explanation was provided by Mr. Sutton during this teleconference. Indeed, the first time USI was apprised of the "facts" in Mr. Sutton's declaration was when it received Leviton's opposition brief.

Mr. Sutton also states that he is "left with the impression that my alerting opposing counsel to the hazards presented by these defective GFCIs" may be a motive for the present motion. The timeline clearly refutes such a motive. The present motion was filed on August 13, 2003, after two weeks of refusals from Leviton to respond to USI's inquiries. Mr. Sutton did not inform USI's counsel of alleged problems with the 2003 UL-Approved Shanghai devices until August 20, 2003. Clearly, the present motion predates any conversation with Mr. Sutton concerning these devices. Indeed, another contemporaneous letter to Leviton's counsel the night of August 20, 2003 establishes the errors in Mr. Sutton's timeline. *See* Letter from William E. Bradley, Esq. to Barry Madigoff, Esq. dated August 20, 2003 (Exhibit 3).[2] Interestingly, Mr. Sutton's "alerting" opposing counsel of non-compliance with UL and potential hazards occurred 6 days **before** the UL press release. This scenario fairly implicates Mr. Sutton as being, at least, privy to non-public UL investigation and test data, if not an active participant in its creation.

## II.    LEVITON'S EXPLANATION IS UNSUPPORTED

In opposition to USI's motion, Plaintiff offers the declaration of Mr. Sutton for the purposes of stating that he received a call from Mr. Massabni regarding infringing GFCIs and that he advised Mr. Massabni to contact Canadian counsel. No date when this call took place is provided. No declaration from Mr. Massabni to support this position is

---

[2] The letter is addressed to Mr. Madigoff instead of Mr. Sutton because of confusion on the part of USI's counsel as to who raised the alleged UL and CPSC concerns.

3

provided. No declaration from Canadian counsel to support this position is provided. No photocopies of the packaging and/or the alleged infringing devices obtained by Mr. Massabni are provided. No sales receipts or other indication as to where, when and from whom the alleged infringing devices were bought are provided. All of the foregoing should have been readily available to Leviton in opposing this motion. Consequently, such self-serving, unsubstantiated hearsay should be utterly disregarded.

It is noteworthy, however, in the July 30, 2003 cease and desist letter to USI's Canadian customer, counsel for Leviton states that:

> *It has been reported to us* that you have, without a license from or the consent of Leviton, manufactured, imported into Canada, offered to sell, distributed and sold in Canada, Ground Fault Circuit Interrupting products which embody the characteristics of the Device and which infringe upon the Patent and Leviton's rights thereunder.

*See* Exhibit 11 to USI's Opening Brief (emphasis added). This passage is particularly noteworthy because 1) it indicates that Canadian counsel was informed of infringement (as opposed to having had done its own infringement investigation based on devices provided by Leviton), and 2) it is phrased in the past tense, as opposed to present tense, thereby indicating that it is addressing the Yatai devices which were sold in 2002 as opposed to the Shanghai Meihao products being sold for the past year (e.g., "sold in Canada" as opposed to "are selling in Canada").

### III. USI HAD GOOD CAUSE TO FILE THIS MOTION

As the Declaration of Harvey Grossblatt attached hereto as Exhibit 4 demonstrates, USI had good cause to ask Leviton for the non-confidential means through which the sale of devices more than a year ago in Canada was uncovered. To summarize, USI has had a number of occasions in which events suggest that

4

confidential information in the hands of Leviton's attorneys may have been misused. First, shortly after producing confidential documents containing the identities of USI's sales representative and distributors, USI began receiving reports that Leviton personnel had contacted them and indicated that Leviton would no longer deal with them or allow them to distribute Leviton products if they continued to carry USI products. Grossblatt Decl. at ¶ 12, 13. Mr. Grossblatt believes that the identities of these individuals were learned through the confidential documents. Grossblatt Decl. at ¶ 14.

Secondly, shortly after Mr. Grossblatt's deposition in this case, Leviton issued a press release asserting, *inter alia*, that USI was falsely portraying to the public that its products were designed and engineered in the United States. Grossblatt Decl. at ¶ 16. In response to a motion for a temporary restraining order filed by USI in connection with this press release, Leviton asserted truth as a defense and relied solely upon its characterization of the confidential deposition testimony of Mr. Grossblatt to support its position. Grossblatt Decl. at ¶19, 20. This flagrant misuse of confidential testimony for purposes outside this litigation (namely, a press release), and the prior concerns over misuse of confidential information, led USI to file a motion for sanctions. Grossblatt Decl. at ¶ 21. The motion was withdrawn the next day, before it even reached the clerk's office,[3] and before Leviton responded, at the end of the previously scheduled hearing on all pending motions. *See* Grossblatt Decl. at ¶ 22.

---

[3] The motion was filed under seal and thus had to be sent to the Court via overnight courier.

5

On July 30, 2003, USI's Canadian customer received a cease and desist letter accusing infringement of the Canadian counterpart to the '894 patent. Grossblatt Decl. at ¶ 23. This letter was troubling because the Canadian customer had not sold a Yatai GFCI in more than a year. Grossblatt Decl. at ¶ 25. The past tense of the letter, its indication that counsel was "informed" of infringement, and the fact Yatai units were sold in the past by this customer, suggested that Leviton now knew of this customer's sales activity which occurred over a year ago. Mr. Grossblatt's confidential testimony is the only known source of the fact that this customer sold Yatai units in the past. Grossblatt Decl. at ¶ 27.

In view of the repeated indications that confidential information may have been misused, USI authorized counsel to inquire as to the non-confidential means through which the identity of this customer and the sales of Yatai devices were discovered. Grossblatt Decl. at ¶ 28. Despite repeated requests, Leviton refused to provide any information. *See* Grossblatt Decl. at ¶ 29.

The timing of the cease and desist letter suggests that Leviton was upset that a declaratory judgment had been filed and USI would not be the vanguard of the patent litigation and sought another mechanism to hurt USI's business or force additional litigation costs on USI.

## IV.    DEFENDANTS HAVE NOT RAISED FRIVOLOUS ISSUES

In closing its opposition brief, Leviton asserts three instances of alleged frivolity. The first being USI's motion to disqualify. USI submits that the defenses and issues which have evolved since the motion was filed demonstrate its merit. *See Carnegie Mellon University v. Schwartz*, 105 F.3d 863 (3rd Cir. 1997)(reversing dismissal of a

6

malpractice case in view of the potential injury stemming from a error in a patent and its belated correction). The second accused instance was USI's first motion regarding the protective order. As outlined above, USI had good cause to bring that motion. Leviton's reply brief to the temporary restraining order could not be a clearer indication of the source of the information in the March 2003 press release.

Finally, Leviton attacks the propriety of Defendants' response to Interrogatory No. 3. The original full answer sheds more light on the controversy:

> Subject to, and without waiving the foregoing objections, Defendants became aware of the patent-in-suit on December 13, 2001 when Hugh Marbury contacted Maurice Cahn and Frederick Samuels via telephone to ask if they would accept service of process on behalf of Defendants. In addition to these individuals, Defendants have identified the following individuals that possess present knowledge of the circumstances concerning the acquisition of an awareness of the patent-in-suit:
>
> > John C. Dougherty
> > Piper, Marbury, Rudnick & Wolff LLP
> > 6225 Smith Avenue
> > Baltimore, MD 21209
> >
> > Paul J. Sutton
> > Greenberg, Traurig LLP
> > Lipstick Building
> > 885 Third Avenue
> > New York, NY 10022
> >
> > Joseph M. Manak
> > Greenberg, Traurig LLP
> > Lipstick Building
> > 885 Third Avenue
> > New York, NY 10022

Deciding what the "patent-in-suit" is for the purposes of a litigation wherein the patent has been corrected is a valid inquiry:

> In light of the patents' complicated prosecution history, the Court must first identify which version of the patents – particularly the '127 Patent – is presently in dispute. Following the issuance of the '127 Patent, Karol

filed a certificate of correction with the Patent Office. Importantly, however, the Patent Office did not grant Karol's requested certificate until after Karol filed the present suit. Accordingly, the patent before the Court in the present dispute is the uncorrected version of the '127 Patent.

*Karol v. The Burton Corp.,* 234 F.Supp.2d 450, 452 (D. Vt. 2002). Thus, the response is correct. USI learned of the December 11, 2001 corrected '894 patent as set forth in its response. After Plaintiff clarified that it was inquiring about knowledge of any of the versions of the '894 patent, USI supplemented its answer. USI was taking exception with a definition, not trying to hide information.[4]

## CONCLUSION

For the foregoing reasons, Defendants request that their motion be granted.

Respectfully submitted,

By: _____/s/_____
Maurice U. Cahn, Esq.
William E. Bradley, Esq.
CAHN & SAMUELS, LLP
2000 P Street, NW, Suite 200
Washington, D.C. 20036
(202) 331-8777

Attorneys for Defendants

---

[4] USI identified Mr. Kovens as the individual first learning of the '894 patent after learning of the California litigation. It was not until after the close of discovery that Leviton subpoenaed Mr. Kovens.